USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 2/26/26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
                                                        :
SONYA SHAYKHOUN,                                        :
                                                        :
                                    Plaintiff,          :
                                                        :
              -against-                                 :
                                                        :
THE DAILY MAIL, et al.,                                 :
                                                        :
                                    Defendants.         :
                                                        :
------------------------------------------------------- x
```

1:24-cv-09978 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Sonya Shaykoun, proceeding *pro se*, brings this action for copyright

infringement, violations of her First Amendment rights, and other state-law related claims.

Before the Court is a motion to dismiss for failure to state a claim filed by Defendants The Daily

Mail, Dailymail.com, Daily Mail and General Trust PLC ("DMGT"), and Noa Halff

(collectively, the "Daily Mail Defendants"), a motion to dismiss for failure to state a claim filed

by Defendants The Daily Beast Company LLC, AJ McDougall, Ben Sherwood, Joanna Coles,

IAC Inc., Tracy Connor, and Barry Diller (collectively, the "Daily Beast Defendants") , and a

motion to dismiss for failure to state a claim filed by Defendants Independent Digital News and

Media Limited (sued herein as "The Independent"), Bevan Hurley, Georgie Greig (sued herein

as "Georgie Greig"), Louise Thomas, and Richard Best (collectively, the "Independent

Defendants"). *See* ECF Nos. 61, 64, 67. For the reasons stated below, all three motions are

**GRANTED**.

## BACKGROUND

I.    **Factual History**

Sonya Shaykhoun ("Plaintiff") is a licensed New York attorney with 21 years of experience, including expertise in intellectual property licensing, proceeding *pro se* in this action. *See* ECF No. 51, ¶¶ 1, 33, 37 ("Second Amended Complaint" or "SAC").

a.    **The Post**

On May 17, 2023, Plaintiff posted a "Tweet" on X.com regarding an unlicensed vendor in Riverside Park. ("the Tweet"). *See* SAC ¶ 47. Plaintiff posted the following Tweet:

> Yesterday I was coming back from tennis in Riverside Park and came upon this ad hoc unlicensed food stand. They were calling out to people to buy from them and I asked them 'where's your permit' cuz we all know the permit has to be displayed. Well, the woman in blue got belligerent and started filming me and refused to show me her permit. She started filming me and getting increasingly aggressive. I called her a name. Then I called 911 @nypd24 what happened with this? The officers never called me back.
>
> This was at the 99th street entrance. We have beautiful parks, if you see ppl defacing them by setting up illegal stands, call the police. Time to take back our beautiful City.

ECF No. 63-1 at 24. The Tweet garnered nearly 7 million views and sparked significant engagement, both negative and positive. *See* SAC ¶ 47 (noting that "there were so many messages unde[r] the Tweet that it is impossible to sort through them"); *see also* ECF No. 63-1. Plaintiff made $170.97 from the Tweet through X.com's monetization program from August 9, 2023 to May 27, 2024. *See* SAC ¶ 47. Plaintiff thereafter decided to change her X account from public to private "to protect her safety," thereby halting any future earnings. *See id.*

b.    **The Articles**

On May 18, 2023, *The Daily Beast* published an article written by news reporter AJ McDougall, entitled "*Lawyer Roasted for Calling 911 on 'Unlicensed' Food Vendor in NYC*

*Park*" (hereafter "The Daily Beast Article"). *See* SAC ¶¶ 49-50; *see also* ECF No. 63-1 at 14. The Daily Beast Article partially embedded the Tweet but included a hyperlink to the full, original tweet and did not include the two photographs Plaintiff included in the original Tweet. *See id* at 16. On May 19, 2023, the Independent published an article written by Bevan Hurley titled '*NYC lawyer roasted on Twitter for reporting illegal food stand rails against city's 'rapid deterioration.'*" (hereafter "The Independent Article"). *See* ECF No. 63-1 at 3. The Independent Article embedded the Tweet in the article, with only part of the Tweet's full text visible, and did not include the two photographs included in the original Tweet. *See id*. at 6.  On May 29, 2023, the Daily Mail also published an article written by Noa Halff titled "*New York City lawyer is roasted for calling 911 on two female vendors selling food in Upper West Side park without a permit: 'Get a life, Karen.'*" *See id*. at 22. The Daily Mail article embedded the entire Tweet, including the two photos Plaintiff took and included in the original post.

The Daily Beast Article, The Daily Mail Article and the Independent Article (collectively the "Articles") all generally discuss the controversy generated by the Tweet. *See generally* ECF No. 63-1. The Articles include a reproduction of the Tweet itself, other users' comments and critiques of the Tweet, Plaintiff's responses and defense of the Tweet. *See id*. Plaintiff asked Defendants to retract the articles, but her requests were denied. *See* SAC ¶ 52. Plaintiff states the Articles caused cyberbullying, causing her to privatize her X.com account May 24, 2024, halting any continued earnings through X.com's monetization program and causing loss of clients and job opportunities. *See* SAC ¶ 51.

### c.  The New York State Court Action

Plaintiff originally filed suit in New York Supreme Court on May 16, 2024 against The Daily Beast, the Daily Mail, and a number of individual defendants for claims arising from

publication of their respective articles. (hereafter the "New York State Action"). *See* SAC ¶ 5; *see also generally Shaykohun v. The Daily Mail et al*, No. 1000558-2024 (Sup. Ct., N.Y. Cnty. Nov. 19, 2024). The Independent Defendants were not part of this action. *See id*.; *see also* ECF No. 63-5 ("Order of Discontinuance"). On October 22, 2024, Justice d'Auguste issued an order which *sua sponte* informed Plaintiff about New York's anti-SLAPP law, explaining that she would be responsible for paying "sizable mandatory attorneys' fees" should defendants succeed in dismissing the lawsuit. *See* ECF No. 63-4 ("Sate Court Order"). Justice d'Auguste provided Plaintiff with a ten-day safe harbor to decide whether to discontinue the action to avoid such financially burdensome fees. *See id*. Plaintiff argues that Defendants' invocation of the anti-SLAPP statute in the New York State Action chilled her right to redress "in that the judge threated Plaintiff with paying the Defendants' fees and denied the Plaintiff discovery." *See* SAC ¶ 12. Plaintiff further alleges she was forced to withdraw her claims by the judge. *See id*. Plaintiff thereafter filed a notice of voluntary withdrawal. *See* Order of Discontinuance.

## II.    Procedural History

On December 17, 2024, Plaintiff filed her complaint initiating this action. *See* ECF No. 1. On March 17, 2025, Plaintiff filed a First Amended Complaint. *See* ECF N0. 29. On March 28, 2025, all three sets of Defendants moved to a pre-motion conference regarding anticipated motions to dismiss on multiple bases, including but not limited to, Plaintiff's failure to register her relevant work with the United States Copyright Office prior to filing suit. *See* ECF Nos. 34-36. Plaintiff registered her Tweet with the United States Copyright Office on March 31, 2025. *See* ECF No. 51-1 (Copyright Certificate of Registration). Plaintiff thereafter filed a Second Amended Complaint on May 2, 2025 to include the Copyright Certificate for the relevant work. SAC. Following the filing of the amended complaint, Defendants again moved for a pre-motion

conference in connection with their anticipated motions to dismiss. *See* ECF Nos. 52-54. On May 12, 2025, the Court granted Defendants leave to file their motions to dismiss, specifically on Plaintiff's causes of action under federal law and whether, if those causes of action are dismissed, the Court should consider the remaining state law claims. *See* ECF No. 58. On June 16, 2025, The Daily Mail Defendants filed their motion to dismiss the Second Amended Complaint. *See* ECF No. 61. That same day, The Daily Beast Defendants filed their motion to dismiss. *See* ECF No. 64. That same day, The Independent Defendants filed their motion to dismiss. *See* ECF No. 67. On July 21, 2025, Plaintiff filed her opposition to each of the Defendants motions. *See* ECF Nos. 70-71. On August 4, 2025, all three sets of defendants filed their reply briefs in further support of their motions to dismiss. *See* ECF Nos. 72-74. The Court considers the issue now fully briefed.

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the

complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the Court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## II.    *Pro Se* **Pleadings**

Generally, "[c]ourts must afford *pro se* plaintiffs 'special solicitude'" in reviewing their filings. *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (citation omitted). Ordinarily, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, where a party is a licensed attorney, the party does not receive any 'special solicitude.'" *Tyson-Phillips v. Rubio*, 779 F.Supp.3d 440, 455 (S.D.N.Y. 2025) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102-103 (2d Cir. 2010)); *see also Bank v. Alarm.com Holdings, Inc.*, 828 F.App'x 5, 7 (2d Cir. 2020) ("As an initial matter, although he is proceeding *pro se*, [plaintiff] is a licensed attorney  and is not entitled to any special solicitude.").

**DISCUSSION**

Plaintiff brings this action for copyright infringement, violations of her First Amendment rights, and other state-law related claims. The Court addresses Plaintiff's copyright infringement claim before turning to her Section 1983 claim and request for declaratory relief. The Court lastly considers whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**I.      Failure to State a Claim for Copyright Infringement**

"In order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation omitted). Defendants argue that Plaintiff fails to state a copyright infringement claim for two independent reasons. First, Plaintiff failed to register her Tweet with the United States Copyright Office prior to initiating this suit, which they argue bars Plaintiff from now bringing her copyright infringement claim. Second, Defendants each argue an affirmative defense of fair use.

To evaluate these arguments the Court considers the factual allegations in the Second Amended Complaint and takes judicial notice of the Tweet and the Articles, which are either attached as exhibits or "relied on by, linked to in, and thereby incorporated into" the Second Amended Complaint. *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007, 2022 WL 784049, at *1 (S.D.N.Y. Mar. 14, 2022); *see also* SAC-1 (referring to inclusion of the Articles as Exhibit 1. There is no dispute that these exhibits, provided in full by Defendant Daily Mail in

7

support of its motion, are true and correct versions of the exhibits. *See generally* Plaintiff's

Oppositions at ECF Nos. 71-72.

### a. Plaintiff's Fails to Plead Timely Registration

"Proper registration is a prerequisite to an action for infringement." *Sara Designs, Inc. v.

A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017); *see also Fourth Est.

Pubc. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) ("[R]egistration is akin to

an administrative exhaustion requirement that the owner must satisfy before suing to enforce

ownership rights."). "Under the Copyright Act, 'no civil action for infringement of the copyright

in any United States work shall be instituted until preregistration or registration of the copyright

claim has been made in accordance with this title.'" *Id.* (quoting 17 U.S.C. § 411(a)); *see also

Zonis v. Grubman*, No. 20-CV-7181, 2022 WL 597447, at *1 (S.D.N.Y. Feb. 28, 2022)

("[A]lthough registration with the United States Copyright Office is not required to obtain

copyright protection, . . . registration is required to bring an infringement action in federal court."

(internal citations omitted)). "What is more, the failure to register a copyright in advance of filing

a lawsuit cannot be cured through amendment and thus requires dismissal." *Zonis*, 2022 WL

597447, at *1.

This prerequisite is fatal to Plaintiff's claims. Plaintiff concedes that the Tweet was not

registered when she filed this lawsuit. *See* Compl. ¶ 59. Nonetheless, Plaintiff argues that her

failure to register the copyright before filing is a procedural defect that may be cured by

amendment post-registration. This Court finds otherwise. It is true that where a complaint fails to

plead that Section 411(a)'s requirements were satisfied prior to filing, such a pleading defect may

be cured by an amended complaint that alleges that Section 411(a)'s requirements were actually

satisfied at the time the original complaint was filed. *See Malibu Media, LLC v. Doe*, No. 18-CV-

10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019). However, that is not the case here. Plaintiff's amendment does not allege the copyright was registered at the time of the original complaint being filed. Rather, Plaintiff's amendment only establishes that the copyright was registered prior to the filing of the amended complaint. Thus, the original complaint was "'defective and subject to dismissal.'" *Id*. at *2. An amended complaint cannot cure this defect, as such an outcome would "make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit." *Id.* at *2. Indeed, such an outcome would allow a plaintiff to "file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred." *Id*. at *2. Accordingly, Plaintiff's failure to register a copyright for the Tweet prior to filing this suit is fatal to her copyright claim and such claim is hereby **DISMISSED**. In addition to failing to state a claim due to her failure to timely register the copyright, her claim fails under the doctrine of fair use.

### b.  Defendants' Affirmative Defense of Fair Use

"Under the Copyright Act of 1976, fair use is a complete defense to a claim of copyright infringement." *Grant v. Trump*, 563 F. Supp. 3d 278, 283 (S.D.N.Y. 2021) (citing 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright.")).

To determine whether use of a work is fair, courts consider several factors:
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 541–42 (S.D.N.Y. 2019) (internal quotation omitted). "[T]hese four factors are non-exclusive. . . [and] to be explored, and the results

weighed together, in light of the purposes of copyright." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (internal quotation omitted).

"[F]air use is an affirmative defense to a claim of copyright infringement, the proponent of which bears the burden of justifying its taking." *Romanova v. Amilus Inc*, 138 F.4th 104, 110 (2d Cir. 2025) (citing *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 547 n.21 (2023) (hereinafter "*Warhol*")). While fair use is typically a "mixed question of fact and law," *Swatch*, 756 F.3d at 81, "such a defense may be 'so clearly established by a complaint as to support dismissal of a copyright infringement claim,'" *Kelley v. Morning Bee, Inc.*, No. 1:21-CV-8420, 2023 WL 6276690, at *11 (S.D.N.Y. Sept. 26, 2023) (quoting *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)). "Accordingly, when 'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss." *Yang*, 405 F. Supp. 3d at 542 (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)).

Because fair use can be clearly ascertained based on the Tweet, the Articles, and pleadings, the Court addresses it on Defendants' motions to dismiss. This complete factual record renders any potential discovery inconsequential. To evaluate the affirmative defense, the Court takes each fair use factor in turn.

### i. Purpose and Character of the Use

The first fair use factor calls for examination of "the purpose and character of the use," including whether "the use merely supersedes the objects of the original creation, or instead transforms it. *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 580 (S.D.N.Y. 2020) (internal quotation omitted). "[T]ransformative uses tend to favor a fair use finding because a transformative use is one that communicates something new and different from the original or

expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). While "[t]he commercial nature of the secondary use is also relevant . . . where it is found to be transformative courts 'do not place much significance on that fact due to the transformative nature of the work.'" *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 605 (S.D.N.Y. 2020) (quoting *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013)).

As the Second Circuit recently articulated, "there must be *justification* for copying, which, but for the finding of fair use, would likely infringe the exclusive rights of the rights holder." *Romanova v. Amilus Inc*, 138 F.4th 104, 119 (2d Cir. 2025) (emphasis in original). The Supreme Court has "stress[ed] the importance of a transformative purpose as justification for the copying – that the copying transmit a message that differs from the message communicated by the original." *Id.* at 118 (citing *Warhol*). Such "justification is often found when the copying serves to critique, or otherwise comment on, the original, or its author." *Id*. at 119. Indeed, "[u]se of a copyrighted work for a news report, where the copyrighted work is itself the subject of the story, such as a news article about a viral video which displays a clip of that video to illustrate what all the fuss is about usually constitutes fair use." *Richardson v. Townsquare Media, Inc.*, No. 24-CV-4217 (AKH), 2025 WL 89191, at *2 (S.D.N.Y. Jan. 14, 2025) (internal quotations and citations omitted). The same goes for social media posts. *See Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 352 (S.D.N.Y. 2022) ("When an individual's decision to disseminate an Instagram post is the very thing the article is reporting on, the use of the Instagram post and its

copyrighted material in the reporting has been deemed sufficiently transformative to support a fair use defense.") (internal quotations and citations omitted).

Each set of Defendants' use of the Tweet was transformative. The Articles each discussed the Tweet and the online response to it, including users' commentary and critiques. "In the context of news reporting and analogous activities, . . . the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). Defendants' use of Plaintiff's Tweet in their respective Articles was transformed into a news report on the viral Tweet and ensuing controversy around it. While the purpose of Plaintiff's Tweet originally was likely to share her firsthand experience, another purpose of the Tweet appeared to encourage the public to report unlicensed food stands. *See* ECF No. 63-1 at 24 (Plaintiff tweeted in part "We have beautiful parks, if you see ppl defacing them by setting up illegal stands, call the police. Time to take back our beautiful City."). Plaintiff's Tweet invited public attention to the issue. In response, the purpose of Defendants' Articles was to report on the public response to her call to action by highlighting the ensuing criticism and commentary surrounding the Tweet.

Lastly, while "courts considering the first [fair use] factor  are directed to consider whether a defendant acted in bad faith in its use of the copyrighted material," good or bad faith "generally contributes little to fair use analysis." *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 605-06 (S.D.N.Y. 2020). In any event, Plaintiff has not sufficiently alleged facts that

establish bad faith on the part of Defendants. Drawing all reasonable inferences for Plaintiff, the Court finds this first factor favors fair use.

ii.  Nature of the Work

The second fair use fact—the nature of the copyrighted work—"accounts for the fact that 'some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 87 (2d Cir. 2014) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)).

> The Second Circuit has identified two sub-factors to consider: "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (quoting *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006)). "Because both creative and factual original works are entitled to some level of copyright protection," the second fair use factor is rarely significant to the analysis of a published work. *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017). The second fair-use factor has "limited weight" in determining fair use where transformative use has been established.  *See Blanch v. Koons*, 467 F.3d 244, headnote 9 (2d Cir. 2006).

First, Plaintiff's Tweet was initially posted to her then-public X.com account on May 17, 2023. *See* SAC ¶ 47. Further, Plaintiff acknowledges her Tweet went viral and garnered nearly 7 million views. *See id*. The publishing of the Tweet online supports a finding of fair use. *See Richardson v. Townsquare Media, Inc.*, No. 24-CV-4217 (AKH), 2025 WL 89191, at *3 (S.D.N.Y. Jan. 4, 2025) (finding the nature of the work weighed in favor of a fair use finding where the original video was published online); *see also Boesen v. United Sports Publications, Ltd.*, No. 20-

CV-1552, 2020 WL 6393010, at *5 (E.D.N.Y. Nov. 2, 2020) (finding "the photograph does not incur the same protections as an unpublished work because plaintiff has published it on his own social media page and website").

Second, Plaintiff's Tweet is factual and served a predominantly informational purpose. Plaintiff concedes she created the Tweet to describe her encounter with the vendors in the park. *See* SAC ¶ 47. Further, Plaintiff's Copyright Certificate of Registration lists the Tweet as a "nonfiction work." *See* ECF No. 51-1. Accordingly, the Court finds the second factor favors fair use.

iii.  <u>Portion of the Work Used</u>

The third fair use factor—"the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3)—"asks whether the copying used more of the copyrighted work than necessary and whether the copying was excessive." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014). Nevertheless, "[t]he secondary use must be permitted to conjure up *at least* enough of the original to fulfill its transformative purpose." *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013) (emphasis in original). "[I]f copying the original 'any less would make the picture useless to the story,' the substantiality of the copying is 'of little consequence.'" *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (quoting *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000)).

"In the context of news reporting and analogous activities, moreover, the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). The necessity of the inclusion of the whole work is often based on the transformative use and "altered purpose

14

or context of the work, as evidenced by surrounding commentary or criticism." *Id*. Such is the

case here. The Daily Beast Defendants and the Independent Defendants did not embed the

entirety of the Tweet in their Articles. While the Daily Mail Defendants did include the entirety

of the Tweet, such inclusion is appropriate to "provide the full context of the controversy."

*Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 355 (S.D.N.Y. 2022). Indeed, "[r]educing the

amount of the original work would have provided an incomplete description of the controversy,

or even misrepresented the Post." *Id*. Accordingly, the third factor weighs in favor of fair use.

     iv.  <u>Potential Effect of the Use on the Market or Value</u>

     The fourth and final fair use factor considers "the effect of the use upon the potential market

for or value of the copyrighted work." 17 U.S.C. § 107(4). The relevant inquiry is "whether the

copy brings to the marketplace a competing substitute for the original, or its derivative, so as to

deprive the rights holder of significant revenues because of the likelihood that potential purchasers

may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d

202, 223 (2d Cir. 2015). "When a secondary use competes in the rightsholder's market as an

effective substitute for the original, it impedes the purpose of copyright to incentivize new creative

works by enabling their creators to profit from them." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d

649, 662 (2d Cir. 2018). "Courts look here not for theoretical or speculative harm, but for copying

of 'sufficiently significant portions of the original as to make available a significantly competing

substitute.'" *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (quoting

*Google*, 804 F.3d at 223). While Plaintiff argues she experienced financial harm due to criticism

she received, causing her to privatize her account and lose out on earnings on X.com, this is not

the type of harm recognized here. *See* SAC ¶ 57; *see also Hachette Book Grp., Inc. v. Internet

*Archive*, 115 F. 4th 163, 189 (2d Cir. 2024) ("We ask not 'whether the second work would damage

the market for the first . . . but whether it usurps the market for the first by offering a competing substitute.'"). "That the fair use, being transformative, might well harm, or even destroy, the market for the original is of no concern to use so long as the harm stems from the force of the criticism offered." *NXIVM Corp. v. Ross Inst.*, 364 F. 3d 471, 482 (2d Cir. 2004).

"Because a news article recontextualizes a work and serves a different purpose, it is unlikely that someone who wanted to purchase the work would find reviewing the news article an adequate substitute." *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198 (S.D.N.Y. 2021). This is especially true "where an original work is reproduced not on its own, 'but as part of an embedded post, alongside text and another image.'" *Richardson v. Townsquare Media, Inc.*, No. 24 CIV. 4217, 2025 WL 89191, at *3 (S.D.N.Y. Jan. 14, 2025) (quoting *Walsh*, 464 F. Supp. 3d at 586). Because the use of the Tweet here was not reproduced on its own but rather incorporated into the Articles as part of a larger news story discuss the controversy surrounding the viral Tweet, the Court finds there is little risk that someone looking to purchase or license the Tweet would do so by choosing any of the Articles rather than the Tweet itself. Defendants are not in competition with Plaintiff such that any revenue to Plaintiff would have been diverted to Defendants. Drawing all inferences in Plaintiff's favor, the Court finds that Defendants' use is unlikely to compete with Plaintiff. Accordingly, the fourth factor weighs in favor of fair use.

### v.  Totality of the Factors

"The four non-exclusive statutory factors discussed above are to be weighed together, along with any other relevant considerations, in light of the goals of copyright laws." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (citing *Authors Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015)). On the face of the Second Amended Complaint and incorporated exhibits, the Court finds all four factors weigh in favor of free use.

Accordingly, the Court concludes Defendants' use of the Tweet was fair. Thus, even if Plaintiff's copyright claim were not dismissed for the independent reason of her failure to register the Tweet prior to filing suit, Plaintiff's copyright claim would nonetheless be **DISMISSED** as Defendants have established the affirmative defense of fair use.

## II.    Plaintiff Fails to Plead Section 1983 Claims Against Defendants

Plaintiff alleges violation of her First Amendment rights under the color of state law. *See* Compl. ¶¶ 127-130. The Court broadly construes Plaintiff's First Amendment violation claims as being brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). To state a claim under Section 1983, "a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Dabah v. Franklin*, No. 19-CV-10579 (ALC), 2022 WL 973834, at *3 (S.D.N.Y. Mar. 31, 2022), *aff'd* No. 22-CV-845, 2023 WL 3577872 (2d Cir. May 22, 2023). The Supreme Court has held that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Defendants here are not state actors. *See, e.g., Chao v. 979 Second Ave. LLC,* No. 25-CV-00778 (ALC), 2025 WL 1224191, at *4 (S.D.N.Y. Apr. 24, 2025) (dismissing *pro se* plaintiff's Section 1983 claim for failure to state a claim as defendants were not state actors), *appeal filed*, No. 25-CV-1354 (2d Cir. May 29, 2025). As such, Plaintiff must allege Defendants "acted in concert with the state actor to commit an unconstitutional act." *Ciamriello v. Cnty. Of Nassau*, 292 F.3d 307, 324 (2d. Cir. 2022). "A private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents." *Id*. "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983

claim against the private entity." *Id*. Plaintiff alleges Defendants acted in concert with New York's Anti-SLAPP laws. Compl. ¶ 128. Specifically, Plaintiff alleges that Defendants argued for the application of New York's anti-SLAPP laws to her New York State Action which led to the judge threatening her with paying Defendants' fees and denying her discovery, ultimately leading to her voluntarily withdrawing the action. Compl. ¶ 12. First, it is not clear that a statute or law is to be considered a state actor. In any event, Defendants invocation of a state law in the state court action does not constitute joint activity or acting under the color of state law. *See Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) ("It is well established that '[a] private party does not act under color of state law when [he] merely elicits but does not join in an exercise of official state authority.'"). Indeed, "the mere invocation by defendants of New York's legal procedures does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor." *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984). Plaintiff alleges that Defendants sought to invoke New York's anti-SLAPP law in the New York State Action and that the judge agreed with its applicability. Without more, this is insufficient to establish joint action. *See, e.g. Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."). As such, Plaintiff fails to sufficiently allege that Defendants acted under the color of state law.

Further, Plaintiff also fails to allege that Defendants' conduct deprived Plaintiff of a right guaranteed by the U.S. Constitution. Plaintiff alleges her First Amendment right to petition was "chilled" by Defendants usage of the anti-SLAPP statute which led to her voluntarily withdrawing her claims in the New York State Action. *See* SAC. ¶ 128. Plaintiff further alleges

her speech and access to the courts were suppressed. *See* SAC. ¶ 129. These allegations are insufficient to establish Plaintiff was deprived of a constitutional right.

The right to petition the government for a redress of grievances is protected by the First Amendment. U.S. Const. amend. I. "However, the right to petition is not the right to a favorable or successful determination." *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492 NSR), 2019 WL 2210798, at *11 (S.D.N.Y. May 21, 2019). "The right of access to the courts is part of the right to petition." *Id.* (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002).

Here, Plaintiff fails to state a facially plausible claim that Defendants deprived her of the right to petition or access the courts. Despite Plaintiff's allegations that her right to petition has been chilled, she has brought suit twice now- once in New York state court and now in federal court. Indeed, Plaintiff concedes she voluntarily withdrew her claims in the New York State Court Action. Compl. ¶ 128. As such, Plaintiff has failed to allege that she has been deprived of her right to petition. *See, e.g., Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) ("[A]ny claim that plaintiffs were deprived of their right to petition the government for redress is belied by the fact of their bringing this lawsuit.").

Accordingly, Plaintiff's Section 1983 claim is hereby **DISMISSED** for failure to state a claim.

## III.    The Court Dismisses Plaintiff's Claim for Declaratory Relief

Plaintiff requests declaratory relief based on the alleged unconstitutionality of the anti-SLAPP laws. Comp. ¶¶ 131-33. "Where, as here, a plaintiff's substantive claims are dismissed, a standalone claim for declaratory judgment is properly dismissed as well." *Brainbuilders LLC v.*

*EmblemHealth, Inc.*, 2022 WL 3156179, at *17 (S.D.N.Y. Aug. 8, 2022). Accordingly, Plaintiff's Claim for Declaratory Relief is hereby **DISMISSED.**

**IV.    The Court Declines to Exercise Supplemental Jurisdiction Over Remaining Claims**

The Court takes no position on whether Plaintiff sufficiently states the remaining state law claims. The Court only considers whether to exercise supplemental jurisdiction over such claims. Pursuant to Title 28, United States Code Section 1367, "district courts decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Second Circuit has made clear that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Ferrari v. Cuomo*, No. 23-CV-7715 (KPF), 2025 WL 965131, at *16 (S.D.N.Y. Mar. 31, 2025) (quoting *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Strs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)). Indeed, such is the case here. Accordingly, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

**V.    Leave to Amend**

The Court considers whether to grant Plaintiff leave to amend her complaint. Federal Rule of Civil Procedure 15(a)(2) requires courts provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); s*ee also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). That said, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

Further, district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile to so do. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *See also Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020) (leave may be denied where amendment would be futile). As "failure to register a copyright cannot be cured after a lawsuit has been filed," the Court **DENIES** Plaintiff leave to amend her copyright infringement claim. *Zonis*, 2022 WL 597447, at \*2. Further, although Plaintiff has failed to "identif[y] any amendments that would alter the Court's analysis" as to the Section 1983 and declaratory relief claims, she has requested leave to amend, and it is plausible that additions to her complaint may allege sufficient facts to state a cause of action. *Bellocchio v. Garland*, 614 F. Supp. 3d 11, 20 (S.D.N.Y. 2022); *see also Glob. Tech Indus. Grp. Inc. v. Wells*, No. 21 CIV. 06891 (ER), 2022 WL 2872298, at \*6 (S.D.N.Y. July 21, 2022). Accordingly, the Court **GRANTS** Plaintiff leave to amend her complaint in light of this opinion.

## CONCLUSION

For the foregoing reasons, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Plaintiff's infringement claim is **DISMISSED WITH PREJUDICE.** Plaintiff's Section 1983 and declaratory relief claims are **DISMISSED WITHOUT PREJUDICE**. The Court hereby **GRANTS** Plaintiff leave to file an amended complaint as to the Section 1983 and declaratory relief claims. Plaintiff should submit such amended complaint by April 8. Defendants should file a letter, indicating whether they wish to file a motion to dismiss by April 24.

The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 61, 64, and 67.

**SO ORDERED.**

Dated:   February 26, 2026
        New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**