**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SONYA HASHIM SHAYKHOUN, ESQ.**

                **Plaintiff,**

                                **Civil Action No.**
                                **1: 24-cv-09978-ALC**

**v.**                            **THIRD AMENDED COMPLAINT**

**AL JAZEERA MEDIA NETWORK**        **Date Filed: April 8, 2026**

**PILLSBURY (CURRENT AND ALUMNI)**

DAVID T. DEKKER, ESQ.
EDWARD FLANDERS, ESQ.
EDWARD A. PERRON, ESQ.
OSAMA ABU DEHAYS
PILLSBURY WINTHROP SHAW PITTMAN LLP
DEBRA ERNI

**THE DAILY CALLER**

ETHAN BARTON
JOHN HAWLEY
LUKE ROSIAK
THE DAILY CALLER NEWS FOUNDATION ("DCNF")

**THE DAILY MAIL**

THE DAILY MAIL
DAILYMAIL.COM
DAILY MAIL AND GENERAL TRUST PLC ("DMGT"),
NOA HALFF
JONATHAN HARMSWORTH, 4th VISCOUNT ROTHERMERE

**THE DAILY BEAST**

THE DAILY
BEAST COMPANY LLC ("TDB")
AMANDA J. MCDOUGALL (A/K/A AJ MCDOUGALL)
BEN SHERWOOD,
JOANNA COLES
IAC INC. ("IAC")
TRACY CONNOR
BARRY DILLER


**THE INDEPENDENT:**

BEVAN HURLEY
THE INDEPENDENT
GEORDIE GREIG
LOUISE THOMAS
RICHARD BEST


**THE LAW FIRMS AS AGENTS OF THE RICO**

BALLARD SPAHR LLP
THOMAS SULLIVAN, ESQ.
SAUMYA VAISHAMPAYAN, ESQ.


CAMERON STRACHER, ESQ.

DAVIS WRIGHT TREMAINE LLP
KATHERINE M. BOLGER
LINDSEY B. CHERNER


## THIRD AMENDED COMPLAINT

# Table of Contents

THIRD AMENDED COMPLAINT ..................................................................................... II

*TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION ..................... v*

**I.    STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)** ................... V

**II.   FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(D))** ........................... VI

**III.  42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION** ................ VI

**IV.   (18 U.S.C. § 1512) EQUITABLE POWERS AND ALTERNATIVE SERVICE** ............... VII

**V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY** ........................................................................................VIII

**I.    PRELIMINARY STATEMENT** .............................................................................. 1

**II.   JURISDICTION & VENUE** ................................................................................... 2

**III.   PARTIES** ............................................................................................................. 3

A. PLAINTIFF .............................................................................................................. 3
B.    THE STATE ACTORS AND ENTERPRISE CORE ..................................................... 4
C.    PILLSBURY (FARA NO. 5198) AS A STATE ACTOR: THE ENTWINEMENT DOCTRINE ............. 4
D.    JOINT PARTICIPATION IN THE WITNESS NEUTRALIZATION ................................. 4
E.    THE PUBLIC FUNCTION EXCEPTION ................................................................... 5
F.    THE "LOBBYING MEMBRANE" ............................................................................. 6
G.    THE INSTITUTIONAL AND STRATEGIC PROXIES ................................................. 7

**STATEMENT OF FACTS** ............................................................................................ 8

**IV.   THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT** ................ 9

**V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE** ............................ 10

**VI.   AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION** ..................... 11

**VII.  THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION** ...................................................................................................... 14

**VIII. THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA** ...... 14

**IX.   THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH** ............. 15

**X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE** ................................................................. 16

**XI.   THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE** ...... 17

**XII.  THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS** ............................................................................................................. 18

**XIII. THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM** .. 19

*XIV.    NOTICE OF ELECTION: ALTERNATIVE SERVICE ................... 20*

**XV.   CAUSES OF ACTION** ....................................................................................... 20

COUNT I:    DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983) .... 20
COUNT II:   CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(D)) ................................... 21

**COUNT III:      CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT)**      23
**COUNT IV:   FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512)** ............................................ 23
   *VERIFICATION* ........................................................................................*25*

# TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION

## I.    STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)

*Adickes v. Kress Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970): The primary authority for "Joint Participation," proving that private law firms and media outlets act under color of law when "entwined" with state and foreign sovereign power……………………………………………………………….. p. 5

*Brentwood Academy v Tennessee Second. Sch. Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001): Supports the "Entwinement Doctrine" regarding Pillsbury's FARA status and public policy functions for Qatar……. p. 4

*Lugar v. Edmondson Oil Company, Inc*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)**:** Establishes that the "prejudgment attachment" of rights (via an inverted Anti-SLAPP statute) constitutes state action………………………… p. 18

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971): authorizes federal intervention in this case by proving that the ten-month "Judicial Abeyance" in state court constitutes the "Bad Faith or Harassment" exception to the standard rule of federal abstention…………………………………………… p. 14

## II.    FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(d))

*Boyle v. United States*, 129 S.Ct. 2237, 173 L.Ed.2d 1265, 556 U.S. 938, 77 USLW 4474 (2009)**:** Establishes the "Association-in-Fact" enterprise, supporting the link between AJMN, Pillsbury, and the Media Proxies……………………………p. 9

*Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989): The foundational authority for "Open-Ended Continuity," proving that the TCO's "regular way of doing business" is racketeering……p. 21

*Salinas v. U.S.*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)**:** Supports RICO Conspiracy liability even for late-joining defendants who do not personally commit every predicate act - the "Moving Train" doctrine…………………… p. 8

## III.    42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION

*Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998): **CRITICAL:** Explicitly recognizes that a conspiracy to cause the termination of "at-will" employment (or the "Economic Execution" of a career) constitutes an *injury    to    property    under    the    KKK    Act    and RICO*…………………………………………………………..p.p. 9,  23

*Phipps v. Kuonen,* 2025 NY Slip Op 05268, Index No. 513984/21, No. 2021-08919 (N.Y. App. Div. Oct 01, 2025): acts as a forensic "foil" to demonstrate how the New York judiciary's application of the "pure opinion" defense under the Anti-SLAPP

statute is being utilized to achieve Constitutional Erasure by eliminating property interests in reputation without discovery…………………………………………….. p. 18

*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971): Establishes the "Stigma-Plus" test; that when the state (via the judiciary/statute) attaches a "badge of infamy" (the "Karen" script) that alters legal status, Due Process is required…..………………………………………………………………p. 21

## IV.    (18 U.S.C. § 1512)    EQUITABLE POWERS AND ALTERNATIVE SERVICE

*Mullane v. Central Hanover Bank Trust Co*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950): The gold standard for "Actual Notice," justifying Plaintiff's election of service    via    digital    and    postal    protocols    given    tactical compulsion...............................................................................................................p. 20

*International Shoe Co v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945): Supports personal jurisdiction over the transnational defendants based on their "Minimum Contacts" and "Digital Arson" directed at the District…………………………………………………………………………………..p. 3

## V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY

*Savile v. Roberts*, 1 Ld. Raym. 374 (1698): As cited in the Preliminary Statement, this 328-year-old "plinth" of law confirms that damage to a person's "fame" is a compensable injury to Property…………………………………………….. p. 2, p. 21


Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026…………p. 1

## I.    PRELIMINARY STATEMENT

1.    Plaintiff, an eighteen-year veteran of the New York Bar, brings this Third Amended Complaint ("TAC") at the behest of this Court pursuant to its February 26, 2026, Order ("Order") which grants Plaintiff "leave to amend as to the Section 1983 and declaratory relief claims." While the Order granted leave to amend the Section 1983 and declaratory relief claims, the forensic drafting process revealed that these claims are inextricably linked to a broader transnational pattern. Consequently, Plaintiff expands this TAC to address a coordinated campaign of professional retaliation – a "Market Erasure" – executed by a Transnational Criminal Organization ("TCO") Plaintiff discovered while auditing Al Jazeera Media Network ("AJMN") in Doha (2011–2014). The TCO operates globally through an institutional network of elite law firms and media proxies to shield its operations and suppress Plaintiff's forensic findings.

2.    This is not a "defamation" case, nor is it a repackaging of defamation claims. Plaintiff brings this action under 42 U.S.C. § 1983 and Civil RICO to recover for a coordinated Market Erasure via a seven-year-long continual press assault triggered by Plaintiff's 2019 attempt to expose Osama Abu Dehay's ("Osama") lack of Jordanian law license. Lord Holt recognized in 1698, the "plinths" of law are reputation, personal security, and property[1] ("Three

---

[1] Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026. "Anglo-American law has long recognized a tort remedy for malicious prosecution. The interests jeopardized by malicious prosecution have been described as 'the plinths upon which the English Law has been reared – reputation, personal security, and property.' In 1698, Lord Holt recognized 'three sorts of damages, any of which would be sufficient ground to support this action': (1) The damage to a man's fame, as if it were a matter whereof he is accused be scandalous…(2) [Damages] done to the person; as where a man is put in danger to lose his life, or limb, or liberty, which has been always allowed in good foundation of such an action…(3) [Damages] to a man's property, as where he is forced to expend his money in necessary charges, to acquit himself of the crime of which he is accused…"

Plinths") are compensable interests. *See Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (confirming that damage to a man's fame is a sufficient ground to support an action for damages.) This TAC aligns with the words of Lord Holt: "if the plaintiff has a right, he must of necessity have a means to vindicate and maintain it."

3.      The Enterprise used "unlawful means" e.g., wire fraud and witness tampering, to interfere with Plaintiff's Three Plinths (Reputation, Personal Security, and Property). This coordinated interference seeks to protect the $Trillion extraction and achieve witness neutralization. The Enterprise launched these attacks to suppress Plaintiff's documented evidence of the licensure void and the professional omissions of the "institutional shield" provided by Pillsbury (FARA No. 5198) and media proxies.

5.      Plaintiff seeks redress through four specific federal mandates: **Count I (42 U.S.C. § 1983):** Deprivation of Fourteenth Amendment property and professional standing under, facilitated by Joint Participation and judicial omission. **Count II (18 U.S.C. § 1962(d)):** A 15-year pattern of Wire Fraud and Witness Tampering executed to protect the TCO's extractions. **Count III (42 U.S.C. § 1985(2)):** Conspiracy to obstruct justice and retaliate against a federal witness under the Civil Rights Act of 1871 (the "KKK Act"). **Count IV (18 U.S.C. § 1512):** Federal Witness Tampering for the post-order retaliatory "Market Erasure" intended to obstruct this federal proceeding.

## II.    JURISDICTION & VENUE

6**.      Federal Question Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under the Civil Rights Act (42 U.S.C. § 1983), the RICO Act (18 U.S.C. § 1961 et seq.), and Federal Witness Tampering (18 U.S.C. § 1512.)

7.    **The State Action Nexus:** Jurisdiction over the Law Firm Defendants is proper under § 1983 because they acted "under color of law" through joint participation with a foreign state. Defendant Pillsbury (FARA No. 5198) is a registered agent for the State of Qatar, performing "public policy" functions "entwined" with state authority.

8.    **Supplemental Jurisdiction:** This Court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367, as they form part of the same case or controversy as the federal RICO and Civil Rights claims.

9.    **Personal Jurisdiction:** Jurisdiction is proper because Defendants: (a) reside or transact business in this District; or (b) committed tortious acts, including witness tampering and a targeted attack on Plaintiff's Three Plinths, specifically directed at a Plaintiff residing and practicing law within this District. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (holding that personal jurisdiction exists over non-resident defendants who have "minimum contacts" with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.)

10.    **Venue:** Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a). A substantial part of the events occurred in this District.

11.    This action is timely pursuant to the Continuous Violation Doctrine, as the Enterprise executed a fresh Overt Act of witness neutralization on March 2, 2026, within the Court-ordered amendment period of this federal proceeding.

## III.    PARTIES

### A. Plaintiff

12.    Plaintiff Sonya Hashim Shaykhoun, Esq. is an eighteen-year veteran of the New York Bar (2008, Atty. Reg. # 4633293) with more than 22 years of experience in transactional,

commercial, and regulatory matters, including senior in-house roles at major media and aviation entitles in the Arabian Gulf region (Exhibit A). She holds a Masters in English (St Andrews), a BA in Arabic and Law (SOAS), an LL.M. in Corporate and Commercial Law (SOAS), and a specialized LL.M. in Corruption, Law and Governance (Sussex/ROLACC.)

**B.      The State Actors and Enterprise Core**

13.      **Al Jazeera Media Network ("AJMN"):** A Qatari private company for public benefit based in Doha, Qatar, controlled by the Government of Qatar.

14.      **Osama Abu Dehays ("Osama")** is a Canadian Jordanian national who served as Chief Legal Officer of AJMN from approximately 2009 to 2012. Osama is currently a partner and managing partner of the Doha office of Pillsbury Winthrop Shaw Pittman LLP and listed on a Pillsbury FARA Form (Exhibit B.)

**C.      Pillsbury (FARA No. 5198) as a State Actor: The Entwinement Doctrine**

15.      **Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"):** A global law firm and Registered Foreign Agent (No. 5198) in connection with activities on behalf of the Embassy of Qatar (Exhibit C) and related entities. Pillsbury's status as a Foreign Agent performing "public policy" functions creates a "symbiotic relationship" with the sovereign that satisfies the federal standard for state action. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) (holding that a private entity's character can be that of a state actor when it is "entwined" with governmental management or control.)

**D.      Joint Participation in the Witness Neutralization**

16.      Under 42 U.S.C. § 1983, liability attaches to any person who, "under color of any statute, ordinance, regulation, custom, or usage," subjects a citizen to the "deprivation of

any rights, privileges, or immunities secured by the Constitution." Pillsbury (FARA No. 5198) acted under color of law by willfully participating in a joint venture with the State of Qatar, an entwinement that used the "custom and usage" of the firm's diplomatic and legal status to execute a Market Erasure. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (holding that private parties, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.) This entwinement crystallized when the Enterprise deployed these state-deprived powers to neutralize Plaintiff as a witness to the $Trillion extraction and the Licensure Deficit (¶28.)

17.      This joint participation need not be direct; it may be established indirectly through a symbiotic relationship where the private actor's conduct is so "entwined" with state authority as to be fairly attributable to the state. Pillsbury's status as a Registered Foreign Agent for the Embassy of Qatar (FARA NO. 5198) provides the institutional membrane through which this entwinement operates, utilizing "white shoe" legitimacy to perform the public function of shielding a sovereign's $Trillion extraction from forensic audit.

**E.      The Public Function Exception**

18.      When Pillsbury (FARA No. 5198) utilizes its "white shoe" status to sanitize the deficient credentials Osama after Plaintiff's 2020 actual written notice to the Pillsbury Partnership (Exhibits D to Exhibit G) it constitutes *inter alia* a state-sanctioned omission intended to protect the Enterprise. Upon information and belief, the Enterprise is covering up a Swiss Army Knife of fraud.

**F.    The "Lobbying Membrane"**

19.    Pillsbury (FARA No. 5198) used its "award-winning lobbyists" through its Government Law & Strategies Practice to execute a "silver-bullet" solution[2]: branding Plaintiff a "Karen" to reduce the legal and regulatory risk of employing an unlicensed operative for fourteen years.

20.    The Institutional Shield exists to support: (i) **The Veneer of Legitimacy:** Pillsbury's (FARA No. 5198) uses its "white shoe" sanitize to sanitize the gap in Osama's legal credentials ensuring that corporate governance and judicial bodies rely on the firm's reputation instead of performing independent forensic due diligence; (ii.) **The "Relay of Fraud":** As Senior Legal Counsel and auditor at AJMN, Plaintiff observed how this shield is the mechanism used by the TCO uses to facilitate the "Lateral Relay" i.e., moving the fraud from Doha to the London and New York legal markets while suppressing any professional audit; (iii.) **Economic Incentive:** The Enterprise operates on a logic of mutual compromise and unjust enrichment. Each TCO participant receives a "cut" in the form of performance premiums or inflated salaries, incentivizing their continued conscious avoidance of the fraud.

21.    **The March 2nd Transformation:** This shield facilitated the March 2, 2026, strike on Reason.com, published 96 hours after the Order (Exhibit H.) Citing defense counsel Sullivan and Vaishampayan exclusively, this act masqueraded as "legal commentary" on a case that never hit the press but functioned as a Predicate Act of Witness Tampering to ensure the $Trillion extraction remains buried ("it makes me question the Twitter account

---

[2] Pillsbury, Government Law & Strategies, https://www.pillsburylaw.com/en/services/regulatory/government-law-and-strategies/ (last accessed April 5, 2026).

title, "The Commercially Savvy Lawyer," which is Plaintiff's online moniker and professional brand.)

22. The "silver bullet" is not a legal defense; it is a market erasure protocol. By leveraging its global connections to categorize a whistleblower, a non-Big-Law anomaly who spent 15 years honing her legal and auditing skill set in the GCC and who knows where the bodies are buried - as "unstable," Pillsbury ensures that the $Trillion extraction remains buried behind a wall of "expert" influence.

## G.    The Institutional and Strategic Proxies
### The Media Defendants
23. In participating in the engineered take-down of Plaintiff, the Media Defendants a/k/a "Propaganda Proxies" functioned as the "silver bullet" to neutralize the legal and regulatory risk posed by Plaintiff's unique knowledge and chill her First Amendment rights.

### *The Defense Firms (strategic proxies)*
24. Plaintiff alleges that the Defense Firms – Ballard Spahr, Davis Wright Tremaine ("DWT"), and Cameron Stracher - have transitioned their roles as legal advocates to joint participants in the Pillsbury (FARA No. 5198) /Enterprise. Their conduct is not a defense of their clients, but an active contribution to witness neutralization.

25. Defendants Katherine Bolger ("Bolger") et al. (DWT) formally joined the Continuum in June 2025 by weaponizing a state-authorized "blind spot" in the N.Y. Anti-SLAPP statute. By resurrecting a "fee motion" on a dormant matter, Bolger executed a fee ambush designed to bankrupt the Plaintiff and deter her from progressing this litigation.

26. Following this Court's Order, Cameron Stracher ("Stracher"), in lockstep with Sullivan and Vaishampayan, executed a "live" act of Federal Witness Tampering. Stracher made a verbal extortionate demand for $0.00 legal release (a thing of value) for no

consideration and insisting that The Independent "had nothing to do with it" while Sullivan and Vaishampayan commissioned the simultaneous denigrating article in Reason.com, exclusively referencing Ballard Spahr counsel (¶21.) Such conduct constitutes Federal Witness Tampering (18 U.S.C. § 1512) and Extortion (18 U.S.C. § 1951).

27.    **The "Moving Train" of Adoptive Liability**: Under 18 U.S.C. § 1962(d), late-joining Defendants, i.e., TDC (2019), DWT, Ballard Spahr (2026), and Stracher (2026), assume liability for the prior and subsequent acts of the Enterprise. Their decision to execute the $0.00 release demand (the coordinated attrition) while on Actual Notice of Osama's license fraud constitutes a formal adoption of the TCO's 15-year campaign. *See Salinas v. United States*, 522 U.S. 52 (1997) (holding that a conspirator may be liable for a RICO conspiracy even if they do not personally commit or agree to commit the predicate acts, so long as they intend to further the enterprise's common purpose).

**STATEMENT OF FACTS**

28.    Plaintiff's Arabic fluency and 22-year transactional experience in the Gulf equipped her to identify the $Trillion extraction. From 2011 to 2014, as Senior Legal Counsel at AJMN, Plaintiff's internal reviews of high-value projects, including Al Jazeera Turk, exposed critical governance failures, kickbacks, and the inconsistencies in Osama's Licensure Deficit and background inconsistencies (Exhibit I.)

29.    After AJMN terminated Plaintiff for having her finger on the pulse of internal corruption, Plaintiff earned an LL.M. in Corruption, Law and Governance (Sussex/ROLACC), refining her ability to document the Enterprise's irregularities. Her professional discipline was further evidenced between 2015–2017 when, despite being

trapped under the Kafala System, she successfully litigated an employment breach *pro se* in the Qatari Civil Court.

30.    In 2019, Plaintiff attempted to expose Osama's fraudulent 2002 Jordanian Bar membership via the DCNF. Defendants, perceiving Plaintiff as a threat, retaliated by activating journalists to execute a continual targeted smear campaign – that has yet to stop - intended to chill her whistleblowing efforts.

31.    Directly resulting from this coordinated "Market Erasure," Plaintiff - a dual-LL.M. attorney licensed in New York since 2008 - has been relegated to $30–$50 per hour document review projects. Destroying Plaintiff's senior-level earning capacity constitutes a cognizable injury to protected property interests in her law license, reputation, and business relationships under *Haddle v. Garrison,* 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998).

## IV.    THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT

32.    The "Enterprise" is a transnational Association-in-Fact comprised of the TCO Core (embedded within the legitimate entities of AJMN and the Qatari Sovereign), Pillsbury (FARA No. 5198), and various "Media or Propaganda Proxies" and "Strategic Defense Proxies." *See Boyle v. United States*, 556 U.S. 938 (2009) (holding that an association-in-fact enterprise requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.)

33.     The Enterprise's common purpose is the continuous, 15-year extraction of sovereign assets (the $Trillion extraction), pecuniary benefits, and the protection Osama's Licensure Deficit.

34.     **The Three Pillars of the Enterprise Hierarchy**: The Enterprise functions through a succession of misrepresentations, where the TCO Core provides the capital and the "Original Sin" of Osama's Licensure Deficit, while the institutional shield (FARA No. 5198) and Media Proxies provide the legitimate membrane" required to enforce silence and protect the $Trillion extraction. Specifically: (i.) **The TCO Core**: Embedded within AJMN, Plaintiff observed how this core provides the funding and Osama's Licensure Deficit - which serves as the "Original Sin" required to facilitate the $Trillion extraction; (ii.) **The Institutional Shield (The Legitimate Membrane)**: Pillsbury (FARA No. 5198) provides the "white shoe" status used to sanitize the fraud and ignore questions about Osama's legal credentials to protect the "golden goose," i.e., a deep-pocketed GCC sovereign client; (iii.) **The Media Proxies (Enforcers of Silence)**: These actors execute the "Karen" script, from August 3, 2019, through March 2, 2026, to achieve witness neutralization before the fraud can be exposed in the media or a state or federal forum.

35.     The Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its "regular way of doing business" is the coordination of wire fraud and witness neutralization.

## V.     THE FORENSIC CONTINUUM: DEFINITION AND SCOPE

36.     **The 15-Year Unified Pattern (2011–2026):** Plaintiff defines the "Continuum" as *inter alia* the unbroken, fifteen-year sequence of racketeering and retaliatory acts executed

to protect the TCO, the $Trillion extraction, and Osama's Licensure Deficit. This pattern satisfies both "closed-ended" and "open-ended" continuity, proving that racketeering is the Enterprise's regular method of transnational business. The Continuum could have begun before that but that is when Plaintiff discovered it. See Exhibit J - "Chronology of Events."

37.     **The 7-Year Whistleblower Strike (2019–2026):** Within this 15-year Continuum is the specific, seven-year continual, coordinated reputational assault on Plaintiff's Three Plinths. The answer to why Plaintiff, a senior lawyer but with a limited North American footprint given her extended absence abroad, has graced the paces of Media Defendants' pages lies in the Enterprise, what it is trying to protect, and the disastrous and long reaching consequences for Defendants if subjected to forensic judicial scrutiny. The consequences go beyond the named Defendants, but impact insurers, past and present clients served by Osama, and breach professional conduct rules for the Pillsbury partners who ignored Plaintiff's actual notice (Exhibit K.)

38.     **The Transnational Relay of Misrepresentation:** The Continuum transcends "institutional membranes" through a succession of misrepresentations. The proverbial baton Osama's Licensure Deficit and the related "Oxford Fabrication" was passed from AJMN in Doha (2011–2012) to the "Lateral Relay" in Western law firms (2012–2026), culminating in the "silver bullet" aimed at Plaintiff in the Southern District of New York (2023–2026.)

## VI.     AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION

39.     This matter has its roots in 2010 Doha when Plaintiff interviewed for and got the job of Legal Counsel at AJMN in June-July 2010. Upon information and belief, Osama

sabotaged Plaintiff's onboarding after she received the job offer to join AJMN in July 2010. As a result of a deliberately bungled communication from the recruiter, Plaintiff sat in Bahrain for nearly six months waiting for her Qatari visa to materialize while she spent her savings and debtors' prison loomed. Plaintiff begged Osama to find a solution but her please fell on deaf ears (Exhibit L.) Finally arriving in Doha in February 2011, Plaintiff found the AJMN Contracts Department in a shambles, staffed with non-lawyers posing as lawyers, no files, and no paper trails. It was a corporate governance disaster.

40.    In 2011, Plaintiff learned of an earlier due diligence inquiry conducted by a Qatari colleague at AJMN, Yousef Al-Jaber. Al-Jaber's investigation of the Jordanian Bar Association ("JBA") roster in Amman first identified the Licensure Deficit. This verification galvanized Plaintiff's broader audit of the systemic corruption within the AJMN Contracts Department and established the "Achilles' heel" that the Enterprise later sought to protect through Market Erasure.

41.    The JBA rules on how to become a lawyer are clear. One must be a Jordanian national, resident in Jordan, be 21 or older, hold a degree in law from a recognized university/institute and not convicted of a felony or a moral misdemeanor (Exhibit M.) It is not possible to waive into the Jordanian judiciary with foreign training, even as a Jordanian national.

42.    Osama was terminated from AJMN in March 2012. Plaintiff was promoted and put on an investigative team to investigate mismanagement of funds and hijacked projects. Consequently, Plaintiff was subject to death threats, slashed tires, cancelled travel visas,

sexual harassment, email hacking (personal and professional) to the extent that Plaintiff had a 24/7 CID protective tail.

43.     Plaintiff was terminated from AJMN in December 2014 for monitoring internal corruption by Osama's replacement, himself a Sudanese lawyer with fake credentials who was also part of the TCO.

44.     Plaintiff's deep involvement with high-level and sensitive investigations put a "silver bullet" target on Plaintiff's back. The "silver bullet" is continual targeted hits from 2019 to 2026. By casting Plaintiff as "unstable" and "unsavvy" the Enterprise can protect its vast interests from scrutiny.

45.     The witness neutralization was coupled with economic duress i.e., Stracher's $0.00 release demand, to force a legal surrender. By continuing to strip Plaintiff of her reputation and her income simultaneously, the Enterprise could achieve total witness neutralization during the TAC period.

46.     **The KKK Act Violation**: Under 42 U.S.C. § 1985(2), this coordination to "deter, by force, intimidation, or threat" a witness from attending or testifying in federal court constitutes a *per se* violation of the Civil Rights Act of 1871. The media insults are the "intimidation"; the professional liquidation is the "force."

47.     **Joint Participation in Obstruction:** The March 2, 2026, Reason.com article was not independent commentary; it was a coordinated overt act of witness tampering published 96 hours after this Court's Order. By utilizing defense counsel (Ballard Spahr and Stracher) to execute this strike while on actual notice of the Licensure Deficit, the Defendants formalized their joint participation in the obstruction of a federal proceeding.

## VII.   THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION

48.     **The 10-Month Silence (June 2025–Present):** Plaintiff identifies a critical failure in the state-court machinery: the Cross-Motion for Sanctions against Bolger, Cherner, and DWT remains unadjudicated for ten months (Exhibit N.) This sustained silence - a "Procedural Blockade" - creates a state-sanctioned "Safe Harbor" for the Enterprise's enforcers to execute a "Market Erasure" under color of law. Because this abeyance constitutes "Bad Faith or Harassment" that renders the state forum inadequate to protect Plaintiff's constitutional property interests, federal intervention is authorized under the exception to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). Consequently, the Enterprise's joint participation with the state in maintaining this blockade subjects Plaintiff to a deprivation of rights that only this Court can redress.

## VIII.  THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA

49.     **The Predicate Fraud and the "Bounty":** Since 2011, the Enterprise has utilized the Licensure Deficit to facilitate a multi-million dollar "Bounty" for Osama. His partnership salary, predicated on the fraudulent misrepresentation of his Jordanian legal credentials, constitutes a series of distinct RICO Predicates of Wire Fraud (18 U.S.C. § 1343). This "Bounty" incentivizes the oversight of the structural "shambles" within the AJMN Contracts Department that facilitated the $Trillion extraction

50.     **The Capital Surge and Witness Neutralization:** The Enterprise utilized Plaintiff's forensic alerts, including the 2020 Notice to Pillsbury (FARA No. 5198), as a "market signal" to increase capital flow to the institutional shield. This is evidenced by the 2025 opening of the Pillsbury Doha Office (Exhibit O) with conspicuously little to none of the typical press or fanfare, which functioned as a performance premium for witness

neutralization, incentivizing the Law Firm Defendants to maintain "conscious avoidance" of the Licensure Deficit.

51. **The Economic Execution of Plaintiff:** Conversely, the Enterprise systematically liquidated Plaintiff's career through the "Market Erasure" script. While the Enterprise associates received performance premiums, the Propaganda Proxies devalued Plaintiff's eighteen-year license to zero relegating a senior-level attorney to $30–$50 per hour document review projects.

52. **The Institutional Shield:** Pillsbury (FARA No. 5198) represents the maturation of the "Lateral Relay" - a blueprint utilizing global law firms to sanitize irregularities and protect the $Trillion extraction from New York discovery.

## IX.   THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH

53. The Continuity of Retaliation and Predicate Wire Fraud: The Enterprise's campaign of witness neutralization began with a bad-faith investigation at Qatar Airways, including a solicited physical assault that necessitated Plaintiff's 2019 swift exfiltration to New York. Upon her return, the Enterprise executed a "honeypot" operation via Propaganda Proxies to identify and neutralize Plaintiff's forensic findings. This culminated in a "bait-and-switch" pivot: after being vetted by John Hawley and Luke Rosiak regarding the Licensure Deficit, the proxies coordinated with Pillsbury (FARA No. 5198). Specifically, Pillsbury's Matt Hyams transmitted fraudulent licensure data about Osama, asserting his Jordanian Bar No. is 11840, over interstate wires to suppress the audit (Exhibit P). Rather than correcting the record, the Enterprise utilized these electronic transmissions (18 U.S.C. § 1343) to publish inverted the August 3, 2019 "hit piece" functioning as a paid performance

Page 15 of 34

for the Enterprise to "chill" Plaintiff's testimony an protect the $Trillion extraction (Exhibit Q). When challenged, Hawley said he had to take care of his family (Exhibit R.) This coordinated strike constitutes a pattern of Federal Witness Tampering (18 U.S.C. § 1512) that remains active through the March 2, 2026, strike. Then Editor-in-Chief of The Daily Caller's agreement to unpublish the hit piece on April 9, 2021, belies the fraudulent nature of the "hit piece" piece about Plaintiff (Exhibit S.)

## X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE

54.    **The Post-Hoc "Fix" and Conscious Avoidance**: In 2019, Plaintiff provided direct actual notice and documentary evidence of the Licensure Deficit to the Solicitors Regulatory Authority (SRA) in Birmingham, England and Pillsbury (FARA No. 5198.) The SRA investigation into Osama failed because of bureaucratic reticence and potential corruption (Exhibit T.) Plaintiff emailed Pillsbury partners Debra Erni[3] Edward Flanders, David Dekker, and Edward Perron (now retired) about Osama (Exhibits D – G.) Rather than investigating the deficit, Pillsbury engaged in "conscious avoidance" to protect its Qatari billable relationship, tactically assigning a "co-chair" to oversee the Middle East Practice in London and to buffer Osama while maintaining its institutional shield. To obstruct the audit, the Enterprise utilized sovereign leverage ("Wasta" – nepotism and/or a bribe in Arabic slang) to execute a post-hoc insertion of Osama into the JBA roster (Exhibit U.) This 2019 administrative "fix" - evidenced by a digital photograph appearing in a record that was "dark" for seventeen years -cannot retroactively sanitize fourteen years of Wire Fraud (18

---

[3] Debra Erni is now with Holland & Knight in London: https://www.hklaw.com/en/professionals/e/erni-debra. Accessed April 8, 2026.

U.S.C. § 1343.) By accepting this forensic impossibility as "proof" of a 2002 license, the Defendants formalized their joint participation in the RICO Conspiracy.

## XI.    THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE

55.    **Internal Corroboration and the Doha "Smuggling"**: While performing high-level document review for Pillsbury (FARA No. 5198) via one of the document review agencies in mid-2025, Plaintiff observed internal communications promoting the Doha office while it remained publicly non-existent. This internal campaign confirms that Pillsbury actively holds Osama out as a licensed lawyer despite the Licensure Deficit. The Enterprise's subsequent "smuggling" of Osama to Doha -a jurisdiction without an American extradition treaty - constitutes a deliberate act to obstruct this litigation (18 U.S.C. § 1512.)

56.    **The Binding Agent (Mutual Compromise)**: The Enterprise is anchored by a "culture of compromise" where professionals are integrated through mutual documentation of illicit activities. This "binding agent" ensures that witnesses to the $Trillion extraction remain silent to protect their professional security. This operational reality -confirmed to Plaintiff through direct professional admissions -explains the precision of the "Karen" script overseen by Defendant Richard Best, whose tenure in Dubai provided the tactical exposure to implement this GCC-specific mechanism of mutual control.

57.    **Corporate Sabotage and the "Suitcase" Predicates**: The Enterprise utilized "corporate saboteurs" within AJMN to prevent the establishment of foreign bureaus, thereby facilitating a "suitcase money" protocol for moving capital. Plaintiff's attempts to discipline this structural failure and establish bank accounts nearly got her killed as it

directly threatened the Enterprise's operational secrecy, resulting in the subsequent witness neutralization campaign and "Market Erasure" script.

## XII. THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS

58. **The Fair Use Mirage and State Action**: The Media Defendants utilized the First Amendment and the "Fair Use" doctrine as a **"mirage"** to obscure active racketeering. While a newspaper may report a tweet under fair use, it may not coordinate with a foreign sovereign or RICO Enterprise to execute a professional liquidation. By inverting the N.Y. Anti-SLAPP law (Civil Rights Law § 76-a) into a state-authorized shield, the Defendants utilized this "pure opinion" mirage to eradicate Plaintiff's property interests without discovery. See *Phipps v. Kuonen*, 2025 NY Slip Op 05268 (N.Y. App. Div. Oct 01, 2025) (demonstrating the judiciary's use of the "pure opinion" defense to eliminate property interests in reputation). Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), this joint participation in the seizure of property pursuant to a state statute characterizes the Media Defendants as state actors.

59. **Statutory Violations (RICO and § 1985)**: The March 2, 2026, "Post-Order Insult" published 96 hours after this Order - citing only Ballard Spahr counsel - proves a coordinated script of Witness Tampering (18 U.S.C. § 1512) and Extortionate Attrition (18 U.S.C. § 1951.) This tactical compulsion, combined with Stracher's demand for a $0.00 release, constitutes a digital iteration of the intimidation prohibited by 42 U.S.C. § 1985(2.) Despite having actual notice of the Licensure Deficit, Pillsbury (FARA No. 5198) neglected its duty to prevent this conspiracy, instead providing the "Institutional Membrane" to finance the smear (42 U.S.C. § 1986). This coordinated liquidation enforces the "Karen"

script as a market signal to neutralize the Plaintiff and safeguard the Enterprise's $Trillion extraction.

## XIII. THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM

60.     **The Illicit "Bounty" and Witness Neutralization**: Since 2012 when he joined Bird & Bird, Osama has drawn a continuous partnership salary estimated in the tens of millions, predicated on the fraudulent misrepresentation of his Jordanian licensure. Each electronic transmission of this salary constitutes a distinct RICO Predicate of Wire Fraud (18 U.S.C. § 1343.) This "bounty" necessitated the professional liquidation of Plaintiff - the sole auditor capable of exposing the $Trillion extraction. To enforce Plaintiff's silence regarding the Enterprise's "suitcase money" protocols at AJMN, the TCO utilized a 15-year campaign of tactical compulsions, including the weaponization of Qatar's Kafala System and financial hostage-taking, to achieve witness neutralization.

61.     **The Time-Extraction Racket and Irreparable Harm**: Plaintiff has been forced to divert fifteen years of her prime earning capacity into a state of involuntary forensic servitude to combat the Enterprise's assaults on her Three Plinths. This "time-extraction racket" is designed to preclude Plaintiff's practice of law while she defends her life against the Enterprise's "target beacons." The Daily Mail's intentional publication of Plaintiff's residential data signaled for Plaintiff's physical liquidation. This psychological and physical assault constitutes irreparable harm that cannot be remedied by money alone, necessitating a mandatory injunction to unpublish the retaliatory articles and redact all private data.

**XIV.   NOTICE OF ELECTION: ALTERNATIVE SERVICE**

62.    **The FCPA and Honest Services Fraud**: The Enterprise utilized the Licensure Deficit and the "Lateral Relay" to facilitate payments to foreign officials, securing legal mandates through a "Quid Pro Quo of Silence." These acts constitute violations of the Foreign Corrupt Practices Act (15 U.S.C. § 78dd-1) and Honest Services Fraud (18 U.S.C. § 1346.) By providing an "institutional shield" for an unlicensed professional, the Law Firm Defendants deprived the Sovereign, i.e., Qatar, of honest services, a recognized RICO predicate that anchored the $Trillion extraction.

63.    **FARA Non-Disclosure and State Action**: The failure of Pillsbury (FARA No. 5198) to disclose the Licensure Deficit in its Department of Justice filings violates 22 U.S.C. § 611. This non-disclosure provides the "color of law" for the Section 1983 claim and facilitated the "Market Erasure" of Plaintiff's anti-corruption credentials.

64.    **Service and the April 8 Machine**: Pursuant to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), Plaintiff elects service via U.S. Mail and Email to bypass the Enterprise's "Jurisdictional Safe Harbor" and ensure the Licensure Deficit data is brought before this Court by the April 8 deadline.

**XV.    CAUSES OF ACTION**

**COUNT I:   DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983)**
**(Against All Defendants for Constitutional Erasure via Joint Participation)**

65.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. **State Action via Joint Participation**: The private Defendants acted under color of law by willfully participating in joint activity with the State of Qatar and the New York State Judiciary.

67. **Procedural Blockade**: Defendants leveraged the ten-month judicial abeyance in the state court as a "safe harbor" to execute a financial "Squeeze Play" and contribute to the "Market Erasure" of the Plaintiff.

68. **Fourteenth Amendment Deprivation**: These acts resulted in a *per se* deprivation of Plaintiff's property interest in her professional standing since 2004 and membership in the New York Bar since 2008. See *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding that Due Process is required when a state's action attaches a "badge of infamy" that alters an individual's legal status or professional standing); see also *Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (Lord Holt, C.J.) (confirming that damage to a person's fame is a compensable injury to property.)

## COUNT II: CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(d))
### (Against All Defendants for a 15-Year Pattern of Racketeering)

69. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70. **The Association-in-Fact Enterprise:** Defendants are associated-in-fact as a transnational enterprise - a "Swiss Army Knife" of fraud - coordinated to extract sovereign assets and shield those extractions from forensic audit. This Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its regular way of doing business is the coordination of wire fraud and witness neutralization. See *Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195

(1989) (holding that RICO continuity is established when predicate acts are part of a defendant's regular way of conducting business.)

71.    **The TCO Core and Institutional Membrane**: The TCO embedded within the Qatari Sovereign and AJMN serves as the administrative core, while Pillsbury (FARA No. 5198) provides the "white shoe" institutional membrane required to sanitize the $Trillion extraction.

72.    **Predicate Acts: Wire Fraud (18 U.S.C. § 1343)**: The Enterprise utilized a Succession of Misrepresentations regarding Osama's purported Jordanian law license and the apparent "Oxford Fabrication" (Exhibit V) as material inducements to secure multi-million-dollar legal mandates and partnership salaries.

73.    **Predicate Acts: Witness Tampering (18 U.S.C. § 1512)**: The Enterprise executed a coordinated campaign of witness neutralization, including the "Karen" script and the March 2, 2026, Post-Order Insult, specifically intended to discourage the Plaintiff's participation in federal proceedings.

74.    **Predicate Acts: Extortion (18 U.S.C. § 1951)**: Following this Court's February Order, the Enterprise utilized tactical compulsion, specifically the $0.00 release demand coupled with the threat of professional disparagement, to force a legal surrender for no consideration.

75.    **Honest Services Fraud (18 U.S.C. § 1346)**: By shielding an unlicensed Jordanian lawyer, Pillsbury deprived the Sovereign of its right to the "Honest Services" of a legitimate professional, a specific fraud that anchored the $Trillion extraction.

**COUNT III:     CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT)**

**(Against All Defendants for Conspiratorial Retaliation Against a Federal Witness)**

76.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

77.     **The *Haddle v. Garrison* Standing**: Pursuant to the Civil Rights Act of 1871, it is unlawful for two or more persons to conspire to deter, by force, intimidation, or threat, a witness from attending or testifying in any court of the United States.

78.     **Interference with Professional Marketability**: Defendants conspired to interfere with Plaintiff's business relationships - relegating her to $30 - $50-per-hour document review projects - specifically to intimidate her into abandoning her role as a whistleblower in this federal action.

79.     **The $4.5 Billion Delta**: This conspiratorial interference constitutes a direct injury to Plaintiff's property and business interests, for which the statute provides a federal remedy.

**COUNT IV:     FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512)**
**(Against All Defendants for Post-Order Retaliation)**

80     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

81.     **Obstruction of a Federal Proceeding**: Following this Court's Order, Defendants executed a retaliatory campaign intended to obstruct the due administration of justice.

82.     **The March 2026 Overt Act**: The publication of disparaging material in Reason.com during a court-ordered amendment period was a tactical market erasure designed to force Plaintiff's withdrawal from the case.

**PRAYER FOR RELIEF: WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants, jointly and severally, for: (A) Special Damages in an amount no less than $1.5 Billion, representing the forensic delta of Plaintiff's career liquidation and loss of professional property; (B) Treble Damages pursuant to 18 U.S.C. § 1964(c); (C) Compensatory and Punitive Damages for the coordinated reputational assault and witness tampering, in an amount to be determined at trial; (D) Equitable Relief, including a permanent mandatory injunction restraining Defendants from further interference with Plaintiff's professional marketability and a redaction of residential data; and (E) Costs and Fees, including reasonable attorneys' fees and the costs of this litigation.

Respectfully Submitted,

/s/ Sonya Shaykhoun, Esq.

Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

**VERIFICATION**

I, **Sonya Hashim Shaykhoun, Esq.**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that:

1. I am the Plaintiff in the above-captioned action.

2. I have read the foregoing Third Amended Complaint and know the contents thereof.

3. The factual allegations contained therein, including the mathematical impossibility of Defendant Osama's licensure, the $Trillion extraction from AJMN, and the March 2026 retaliatory "Insult" are true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4. I possess the specialized forensic training and first-hand evidentiary knowledge required to act as a sovereign auditor who, from 2012 to 2014, personally investigated an integral part of the described Transnational Criminal Organization.

Executed on this 8th day of April 2026, in New York, New York.

Respectfully Submitted,

/s/ Sonya Shaykhoun, Esq.

Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, I hereby certify that this Memorandum of Law complies with the length limitations set forth in the Individual Practices of Judge Andrew L. Carter, Jr. This document was prepared in Century Schoolbook 12-point font and contains **6066** words, exclusive of the parts of the memorandum exempted by the Court's rules. In preparing this certification, I relied on the word count of the word-processing system used to prepare the document.

Dated: April 8, 2026

*/s/ Sonya Shaykhoun,Esq.*
Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531