So please, do hang in there, I have high hopes


Osama S. Abu-Dehays    LL.B., Bcomm.

**Director of Legal Affairs**


شبكة الجزيرة
ALJAZEERA NETWORK

Tel: +974 4489 7447 | GSM: +974 3355 9868 | Fax: +974 4489 7270 | Email: | dehayso@aljazeera.net

Address: P.O. Box 23123, Doha, Qatar | Website: http://www.aljazeera.net


**From:** Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
**Sent:** Sunday, December 19, 2010 7:44 PM
**To:** Osama Abu Dehays
**Subject:** Hello from Bahrain

[Quoted text hidden]


Notice: This email is intended only for the use of the individual or entity named above and may contain information that is confidential and privileged. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it.

**Sonya Shaykhoun <shaykhoun@gmail.com>**                  Tue, Dec 21, 2010 at
                                                                      3:17 PM

To: Osama Abu Dehays <Dehayso@aljazeera.net>

Dear Osama,

Thanks for the update - I appreciate the efforts that are being made on my behalf, I really do.  I'll bear with you while this is sorted out, as requested.

In the meantime, wishing you a very happy New Year and looking forward

to seeing you in 2011!

Best regards,
Sonya
[Quoted text hidden]

---

**Sonya Shaykhoun <shaykhoun@gmail.com>**          Thu, Jan 6, 2011 at 10:37 AM

To: Osama Abu Dehays <Dehayso@aljazeera.net>

Dear Osama,

Happy New Year!  I hope that 2011 is treating you well so far.  I am fine.

I am writing to follow up on the below email and to see what the next steps are.

I look forward to hearing from you.

With kind regards,
Sonya

On Tue, Dec 21, 2010 at 3:03 PM, Osama Abu Dehays <Dehayso@aljazeera.net> wrote:
[Quoted text hidden]

---

**Sonya Shaykhoun <shaykhoun@gmail.com>**          Mon, Jan 17, 2011 at 9:12 AM

To: Osama Abu Dehays <Dehayso@aljazeera.net>

Dear Osama,

I hope this email finds you well.  I am fine for the most part.

I have recently been in touch with Maria Coombe at Footprint Legal to explain to her that I am in a serious financial situation now.  I am not sure if she explained to you just how serious it is.  I am on my last BD500 and am late on all my payments for my credit cards, car loan and rent by 1- 2 (going on 3) months.  Back in August, I had paid off nearly all of my credit cards, I had savings and was current in all my financial obligations when Footprint told me it was OK to resign and gave me an anticipated start date of 29 August 2010.  Having gone from nearly BD4000 per month to nothing for five months has been difficult and is now a huge strain.  I am not quite sure what to do - I don't have family to rely on as my mother is on a fixed income

(and I typically have been helping her and other family members which is why my savings was not bigger than it was).

I don't want to make a nuisance of myself and I know the visa is out of your control. However, I'm quickly floating up a river without a paddle and it would be great if an alternative could be found quickly so that I can avoid falling off the waterfall (i.e., eviction from my flat and totally ruining my credit in Bahrain).

Thanks and best,
Sonya

On Tue, Dec 21, 2010 at 3:03 PM, Osama Abu Dehays <Dehayso@aljazeera.net> wrote:
[Quoted text hidden]

**Sonya Shaykhoun <shaykhoun@gmail.com>**     Tue, Nov 23, 2010 at 12:28 PM

To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Hi Maria,

Thanks that's good to know - the way people were talking about it, it made it sound very tricky to leave Doha.

I'm feeling fine, thanks, just taking advantage of the last of my free time!

Have a great rest of your week and weekend - speak next week!

Best regards,
Sonya
[Quoted text hidden]

---

**Sonya Shaykhoun <shaykhoun@gmail.com>**     Mon, Nov 29, 2010 at 1:21 PM

To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Hi Maria,

Will this week be the week?  I hope so as I'm getting low on funds, now, although I'm still enjoying my time off.

Hope all is well.  Let me know the moment you hear from Al Jazeera.

Best regards,
Sonya
[Quoted text hidden]

---

**Maria Coombe <Maria.Coombe@footprintlegal.com>**     Tue, Nov 30, 2010 at 2:57 PM

To: Sonya Shaykhoun <shaykhoun@gmail.com>

Hi Sonya,

I chased both Osama and Nancy, and Osama is sending a high level letter to push things along.  He is going to keep me updated and so I will naturally be in touch as soon as I hear anything.  I just tried to call to update you and so the missed call is from me.

Kind regards,

 **Gmail**    Sonya Shaykhoun <shaykhoun@gmail.com>

# RE: SUSPECT: Re: Fw: المستندات المطلوبة
1 message

**Osama Abu Dehays <Dehayso@aljazeera.net>**    Tue, Jul 20, 2010 at 8:40 PM

To: Sonya Shaykhoun <shaykhoun@gmail.com>

Perfect, thanks Sonya.


I will await news on the certificates, and looking forward to have you join our team

Osama S. Abu-Dehays    LL.B., Bcomm.

**Director of Legal Affairs**

 شبكة الجزيرة
**ALJAZEERA NETWORK**

Tel: +974 489 7447 | GSM: +974 355 9868 | Fax: +974 489 7270 | Email: | dehayso@aljazeera.net

Address: P.O. Box 23123, Doha, Qatar | Website: http://www.aljazeera.net


**From:** Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
**Sent:** Tuesday, July 20, 2010 10:33 AM
**To:** Osama Abu Dehays
**Subject:** SUSPECT: Re: Fw: المستندات المطلوبة


Dear Osama,


Good morning.  Thank you for your email - I am absolutely delighted that I got the job and I am very much looking forward to working with you and your team at Al Jazeera! I feel like I got into Harvard.

Regarding the documents, no problem. I believe Maria mentioned to you that I had all three university certificates sent to the Qatari Embassy in London to be fully legalised and I expect to receive them back this week. I will forward them to you and HR as soon as I get them.

The answers to the other questions are as follows for your information - Maria emailed me this morning also with these questions so I can send them to her and let her pass them on to HR.

My home address in New York is:

825 West End Avenue,

Apt. 11C,

New York, NY 10025

USA

I am single (divorced) and I have no children.

Although I am currently in Bahrain on my Irish passport as it makes travelling in the region a lot easier than if I were to travel on my American passport, I have used my American passport, too. In prefer to continue to use my Irish passport because it is less restrictive than the American one. I forwarded Maria the copy of my Irish passport yesterday. (I have an Egyptian birth certificate, too, although this was by virtue of having an Egyptian father as I was born in NY - I do not have an Egyptian passport or identity card).

About my resignation, too late! I already resigned yesterday once you confirmed the offer. It is not a big deal - I would welcome having a bit more time off to rest and to prepare for the new challenge at Al Jazeera. I would

be shocked if my visa application were to be rejected, but you never know. I'll cross that bridge if I come to it.


Again, thank you so much for offering me this job - I am so excited about working with you, Dr. Mahdi and your team.


Have a great week and let me know if you need anything else from me.


All the best,

Sonya


2010/7/20 Osama Abu Dehays <Dehayso@aljazeera.net>

Dear sonya,

Congratulations on accepting the offer, and thanks for sending the same back to us.

I received this from HR today, and was hoping to forward this to you as early as possible. As you can see below, the guys are requesting some documents in order to get your visa issued, and they are also stating that this may take anytime from 1 to 2 months, however, they are also recommending as a safety measure for you not to change your status (I.e. Resign your current post) until your visa is issued.

I would leave this up to you, as they are right in a way, that a lot of times, a visa stands between a candidate and a job in qatar, I personally did not take that caution when I came here because I wanted to take a long period off between the two jobs, and my notice period didn't allow it, so you will need to make that decision. In all cases, it is extremely important that you supply them with the below asap.


**From:** Abdul Majeed Alakkathody
**To:** Osama Abu Dehays
**Cc:** Ahmad Hassan Ghiyathi
**Sent:** Tue Jul 20 07:38:31 2010
**Subject:** المستندات المطلوبة

السيد/ أسامة ابودهيس    المحترم

مدير إدارة الشؤون القانونية والعقود

تحية طيبة ،،



Sonya Shaykhoun <shaykhoun@gmail.com>

# Fw: المستندات المطلوبة

3 messages

**Osama Abu Dehays <Dehayso@aljazeera.net>**                    Tue, Jul 20, 2010 at 7:49 AM
To: "shaykhoun@gmail.com" <shaykhoun@gmail.com>

Dear sonya,

Congratulations on accepting the offer, and thanks for sending the same back to us.

I received this from HR today, and was hoping to forward this to you as early as possible. As you can see below, the guys are requesting some documents in order to get your visa issued, and they are also stating that this may take anytime from 1 to 2 months, however, they are also recommending as a safety measure for you not to change your status (I.e. Resign your current post) until your visa is issued.

I would leave this up to you, as they are right in a way, that a lot of times, a visa stands between a candidate and a job in qatar, I personally did not take that caution when I came here because I wanted to take a long period off between the two jobs, and my notice period didn't allow it, so you will need to make that decision. In all cases, it is extremely important that you supply them with the below asap.

**From:** Abdul Majeed Alakkathody
**To:** Osama Abu Dehays
**Cc:** Ahmad Hassan Ghiyathi
**Sent:** Tue Jul 20 07:38:31 2010
**Subject:** المستندات المطلوبة

السيد/ أسامة ابودهيس    المحترم

مدير إدارة الشؤون القانونية والعقود

تحية طيبة ،،

نود الإحاطة بأنه تم استلام موافقة السيدة/ سونيا شيخون Â على عرض العمل الخاص بها

أولاً سيتم طلب تأشيرة العمل لها ,وبالنسبة للمستندات المطلوب موافاتنا بها لاستخراج التأشيرة وهي :

آخر مؤهل علمي مصدق من سفارة دولة قطر .

الحالة الإجتماعية ( متزوج أم أعزب ) .

العنوان في موطن الأصل .

الجنسية السابقة إن وجدت .

وقد يستغرق صدور تأشيرة العمل مابين شهر إلى شهرين تقريبا ، ولحين إصدار التأشيرة أرجو إبقاء وضعها كما هو عليه إلى أن نبلغكم بصدور تأشيرة العمل, وبعد ذلك سيتم التنسيق معها بشأن القدوم للعمل في الدوحة .

وشكرا,,,

**Abdul Majeed Alakkathody**

Senior HR Specialist

HR Planning & Recruitment

**Al Jazeera Network**

Phone   (+974) 489 7232 | Fax    (+974) 489 7337



Sonya Shaykhoun <shaykhoun@gmail.com>

# SONYA SHAYKHOUN

7 messages

**Maria Coombe <Maria.Coombe@footprintlegal.com>**      Mon, Jul 19, 2010
                                                          at 10:37 AM

To: Osama Abu Dehays <Dehayso@aljazeera.net>, Ahmad Hassan Ghiyathi
<ghyathia@aljazeera.net>, Abdul Majeed Alakkathody
<alakkathodya@aljazeera.net>, Mesallam Al Rashdi
<rashdim@aljazeera.net>
Cc: Sonya Shaykhoun <shaykhoun@gmail.com>, Gary Youssef
<Gary.Youssef@footprintlegal.com>

Dear All,

I have confirmed August 29th 2010 as Sonya's start date and she will resign her position at Charles
Russell accordingly.  Her notarised certificates are due to arrive at the end of this week / beginning of next
and Sonya will forward them to you upon receipt.  I copy her into this email so that you can liaise directly
with her regarding next steps for her visa and travel arrangements etc.

Please do let me know if there is anything else that I can do at this stage.

Kind regards,

Maria

Maria Coombe

Director

Footprintlegal

www.footprintlegal.com

maria.coombe@footprintlegal.com

Direct          +971 4 448 7146

Mobile          +971 55 881 8435

This email is for the attention of the addressee only. If you are not the intended recipient, please return it to grazia.mazzurana@ footprintlegal.com. The views expressed in this message are those of the individual and not necessarily those of Footprintlegal.

If you would like more information about Footprintlegal, please visit our website at www.footprintlegal.com. Footprint Consultancy Services JLT (licence no.JLT-65355) trading as Footprintlegal is registered and licensed as a freezone company under the rules and regulations of DMCCA. Level 29, Reef Tower, JLT Dubai, PO Box 115738, Dubai, UAE

**Sonya Shaykhoun <shaykhoun@gmail.com>**                 **Wed, Jul 21, 2010 at 2:59 PM**

To: Osama Abu Dehays <Dehayso@aljazeera.net>, ghyathia@aljazeera.net, alakkathodya@aljazeera.net, rashdim@aljazeera.net
Cc: Gary Youssef <Gary.Youssef@footprintlegal.com>, Maria Coombe <Maria.Coombe@footprintlegal.com>

Dear All,

Thank you again for extending the job offer to work in Al Jazeera's legal department with Osama and his team. I am very honored and very excited.

By now, you should have the information you requested yesterday vis-a-vis my nationalities, my address in my domicile (NY) and my marital status.

Just to let you know, my university certificates are with the Qatari Embassy in London now and the Consular Section is taking care of the entire legalisation process for me. I understand the papers will be ready by the end of the London week (Friday) and I should have them by Saturday/Sunday. At which point, I will courier them to Mesallem directly and wait for further instructions/information regarding my visa, etc.

I am looking forward to seeing you all soon and to joining the Al Jazeera team.

Thank you again, Maria, for facilitating this.

With best regards,
Sonya
[Quoted text hidden]

**Sonya Shaykhoun <shaykhoun@gmail.com>**                Mon, Jul 26, 2010 at
                                                              9:27 AM

To: Osama Abu Dehays <Dehayso@aljazeera.net>, ghyathia@aljazeera.net,
alakkathodya@aljazeera.net, rashdim@aljazeera.net
Cc: Gary Youssef <Gary.Youssef@footprintlegal.com>, Maria Coombe
<Maria.Coombe@footprintlegal.com>

Dear All,

I am happy to report that I received my fully legalised university certificates
from the Qatar Embassy in London this morning. I will send them by FedEx
to Mesallem this afternoon.

Kind regards,
Sonya

[Quoted text hidden]

**Maria Coombe**                                         Mon, Jul 26, 2010 at
**<Maria.Coombe@footprintlegal.com>**                          9:29 AM
To: Sonya Shaykhoun <shaykhoun@gmail.com>

Good stuff! One more step...!

I'm leaving tomorrow but will give you a call on Sunday when I get back.

Take care,

Maria

**From:** Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
**Sent:** Monday, July 26, 2010 10:28 AM
**To:** Osama Abu Dehays; ghyathia@aljazeera.net; alakkathodya@aljazeera.net; rashdim@aljazeera.net
**Cc:** Gary Youssef; Maria Coombe
**Subject:** Re: SONYA SHAYKHOUN

[Quoted text hidden]

**Sonya Shaykhoun <shaykhoun@gmail.com>**                Mon, Jul 26, 2010 at

https://mail.google.com/mail/?ui=2&ik=10a77b78a5&view=p...    1/24/2012

9:32 AM

To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Oh my goodness, isn't someone on the ball the morning?!  LOL!

I'm so relieved and excited and it's all working out so well - did I tell you
another friend of mine is moving to Qatar to work with QTel and we're flat-
sharing and she's getting a fantastic rate by Qatari standards because of
the QTel connection.

I wish you well, Maria, in the upcoming week.

All the best,
Sonya

[Quoted text hidden]

**Maria Coombe <Maria.Coombe@footprintlegal.com>**    **Thu, Aug 26,**
**2010 at 8:31 PM**

To: Sonya Shaykhoun <shaykhoun@gmail.com>, Osama Abu Dehays
<Dehayso@aljazeera.net>, ghyathia@aljazeera.net,
alakkathodya@aljazeera.net, rashdim@aljazeera.net

Dear All,

I hope that all is well?  I am conscious that obtaining visas etc. may take a little longer during the
summer months and was wondering whether we had an update as to the status of Sonya's?  I suspect
that you will have more of a steer after Eid, but if there is any information that you need, please do let
us know.

Kind regards,

Maria

Maria Coombe

Director

Footprintlegal

www.footprintlegal.com


maria.coombe@footprintlegal.com

Direct          +971 4 448 7146☏

Mobile          +971 55 881 8435


This email is for the attention of the addressee only. If you are not the intended recipient, please return it to grazia.mazzurana@footprintlegal.com. The views expressed in this message are those of the individual and not necessarily those of Footprintlegal.

If you would like more information about Footprintlegal, please visit our website at www.footprintlegal.com. Footprint Consultancy Services JLT (licence no.JLT-65355) trading as Footprintlegal is registered and licensed as a freezone company under the rules and regulations of DMCCA. Level 29, Reef Tower, JLT Dubai, PO Box 115738, Dubai, UAE


**From:** Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
**Sent:** 26 July 2010 07:28
**To:** Osama Abu Dehays; ghyathia@aljazeera.net; alakkathodya@aljazeera.net; rashdim@aljazeera.net
**Cc:** Gary Youssef; Maria Coombe
**Subject:** Re: SONYA SHAYKHOUN


Dear All,

[Quoted text hidden]

---

**Sonya Shaykhoun <shaykhoun@gmail.com>**          Thu, Jan 12, 2012 at 11:58 PM

To: Mary Shakun <mary.shakun@gmail.com>, mary shaykhoun <mshakun@me.com>

[Quoted text hidden]

---



Sonya Shaykhoun <shaykhoun@gmail.com>

# Resignation

| | |
|---|---|
| Sonya Shaykhoun <Sonya.Shaykhoun@charlesrussell.co.uk> | Mon, Jul 19, 2010 at 9:42 AM |

To: Clive Hopewell <Clive.Hopewell@charlesrussell.co.uk>
Cc: Elaine Emmington <Elaine.Emmington@charlesrussell.co.uk>, Andrew Sharpe <Andrew.Sharpe@charlesrussell.co.uk>, Muriel Murray <Muriel.Murray@charlesrussell.co.uk>

Dear Clive,

I called you on your London extension although I think it is still too early there. I would have preferred to tell you this over the phone or in person.

I am writing to inform you that I have decided to leave Charles Russell and to give you the requisite 30 days' notice in writing as my employment contract requires. Accordingly, my last day at Charles Russell will be Wednesday 18 August 2010.

Thank you.

Kind regards,
Sonya

**Sonya Shaykhoun | Attorney (Member, New York Bar)**
**for and on behalf of Charles Russell LLP**

PO Box 31249, Floor 31, Bahrain World Trade Centre, West Tower, Isa Al Kabeer Avenue, Manama
(T) +973 17 133 208
(F) +973 17 133 201

www.charlesrussell.co.uk

*Please note our working week is Sunday to Thursday. (GMT +03:00)*
Please consider the environment. Do you really need to print this email?

This is an email from Charles Russell LLP. The contents of this email are confidential to the ordinary user of the email address to which it is was addressed. No-one else may place any reliance upon it, or copy or forward all or any of it in any form. If you receive this email in error, please accept our apology. We should be obliged if you would telephone our postmaster on +44 (0)20 7203 5000 or email postmaster@charlesrussell.co.uk.

Charles Russell LLP is a limited liability partnership registered in England and Wales, registered number OC311850, and is regulated by the Solicitors Regulation Authority. Any reference to a partner in relation to Charles Russell LLP is to a member of Charles Russell LLP or an employee with equivalent standing and qualifications. A list of members and of non-members who are described as partners, is available for inspection at the registered office, 5 Fleet Place, London EC4M 7RD.

Main telephone number: +44 (0)20 7203 5000 Website: http://www.charlesrussell.co.uk

   **Sonya Shaykhoun <shaykhoun@gmail.com>**

## My Irish passport copy

1 message

**Sonya Shaykhoun <shaykhoun@gmail.com>**    Sun, Jul 18, 2010 at 3:33 PM
To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Dear Maria,

Please find attached a valid copy of my Irish passport as required by the Al Jazeera offer letter.

With kind regards,
Sonya

📎 **Scan001.PDF**
109K

Case 1:24-cv-09978-ALC    Document 78-2    Filed 04/10/26    Page 17 of 81

*Iarrann Áire Gnóthaí Eachtracha na hÉireann ar gach n-aon lena mbaineann ligean dá shealbhóir seo, saoránach d'Éirinn, gabháil ar aghaidh gan bhac gan chosc agus gach cúnamh agus caomhnú is gá a thabhairt don sealbhóir.*

*The Minister for Foreign Affairs of Ireland requests all whom it may concern to allow the bearer, a citizen of Ireland, to pass freely and without hindrance and to afford the bearer all necessary assistance and protection.*

AN tAONTAS EORPACH
EUROPEAN UNION
UNIÓN EUROPEA
DEN EUROPÆISKE UNION
EUROPÄISCHE UNION
ΕΥΡΩΠΑΪΚΗ ΕΝΩΣΗ
UNION EUROPEENNE
UNIONE EUROPEA
EUROPESE UNIE
UNIÃO EUROPEIA
EUROOPAN UNIONI
EUROPEISKA UNIONEN

ÉIRE
IRELAND
IRLANDA
IRLAND
IΡΛΑΝΔIΑ
IRLANDE
IERLAND
IRLANTI

PAS   PASSPORT
PASAPORTE  REISEPASS  ΔIABATHPIO  PASSEPORT
PASSAPORTO  PASPOORT  PASSAPORTE  PASSI  PASS

W 042596

Sloved/Surname/Nom (1)

SHAYKHOUN

Réamhainn (nascha)/Forename(s)/Prénom(s) (2)

SONYA H.

Náisiúntacht/Nationality/Nationalité (3)     Data breithe/Date of birth/Date de naissance (4)

Éireannach/ Irish     12 Mé./JUNE 1972

Gnéas/Sex/Sexe (5)     Áit bhreithe/Place of birth/Lieu de naissance (6)

F.     S.A.M — U.S.A.

Dáta eisiúna/Date of issue/
Date de délivrance (7)

05 EAN./JAN.
2001

Au leíchun/Date of expiry/
Date d'expiration (8)

05 EAN./JAN.
2011

Údarás/Authority/Autorité (9)

Sínú an tsealbhóra/Signature of holder/Signature du titulaire (10)

Sonya Shaykh

| (1) | Apellido/Efternavn/Name/Επώνυμο/Cognome/Naam/Apelido/ Sukunimi/Efternamn |
| (2) | Nombre/Fornavn/Vorname/Όνομα/Nome/Voornaam/Nome/ Etunimi/Förnamn |
| (3) | Nacionalidad/Nationalitet/Staatsangehörigkeit/Ιθαγένεια/ Cittadinanza/Nationaliteit/Nacionalidade/Kansalaisuus/Nationalitet |
| (4) | Fecha de nacimiento/Fødselsdato/Geburtsdatum/Ημερομηνία γεννήσεως/ Data di nascita/Geboortedatum/Data de nascimento/Syntymäaika/ Födelsetid |
| (5) | Sexo/Køn/Geschlecht/Φύλο/Sesso/Geslacht/Sexo/Sukupuoli/Kön |
| (6) | Lugar de nacimiento/Fødested/Geburtsort/Τόπος γεννήσεως / Luogo di nascita/Geboorteplaats/Lugar de nascimento/ Syntymäpaikka/Födelseort |
| (7) | Fecha de expedición/Udstedelsesdato/Ausstellungsdatum/ Ημερομηνία εκδόσεως/Data di rilascio/Datum van afgifte/Data de Emissão/Myöntämispäivä/Utfärdat den |
| (8) | Fecha de caducidad/Gyldigt indtil/Gültig bis /Λήγει στις/ Data di scadenza/Geldig tot/Cessação de validade/Viimeinen voimassaolopäivä/Giltigt t.o.m. |
| (9) | Autoridad/Pasudstedende myndighed/Behörde/Αρχή/Autorità/ Instantie/Autoridade/Viranomainen/Myndighet |
| (10) | Firma del titular/Indehaverens underskrift/Unterschrift des Passinhabers/Υπογραφή του κατόχου/Firma del titolare/ Handtekening houder/Assinatura do titular/Haltijan nimikirjoitus/Passinnehavarens namnteckning |
| (11) | Hijos/Børn/Kinder/Παιδιά/Figli/Kinderen/Filhos/Lapset/Barn |

24     2

RESIDENCE PERMIT    رقم البطاقة   0408350

National ID.:
Passport No.:       720142946
Nationality:        W042596
RP Rank&Type:       IRISH REPUBLIC
RP Issue Date:      972452 - WORK
RP Expiry Date:     11/May/2010
Occupation:         16/Aug/2012

SONYA H. SHAYKHOUN

    Sonya Shaykhoun <shaykhoun@gmail.com>

# Signed Letter of Offer and Acceptance

3 messages

**Sonya Shaykhoun <shaykhoun@gmail.com>**              Sun, Jul 18, 2010 at
                                                                    3:31 PM

To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Dear Maria,

I am delighted to accept the offer from the Al Jazeera Network and my
signed acceptance is attached to this email.

I would like to confirm that my university certificates are currently with the
Qatari Consulate in London, where they are being notarised accordingly. I
will forward them to you or to Mesallem Al-Rashdi at Al Jazeera once I
receive them as per your instructions.

Additionally, I would like to reiterate that, although my current residence
permit in Bahrain is registered under my Irish passport, this is so purely
because there had been a chance that I would have to go to Iran for work
and travelling on my American passport would have made this impossible.
My domicile is actually New York and not Ireland as the offer letter
stipulates.

The offer letter stipulates that I should send a valid copy of my passport. I
will resend this under separate cover.

Thank you so very much for facilitating this exciting new chapter in my
career! I'm very much looking forward to starting soon and to meeting you
in person before the end of the year to thank you in person.

Best wishes,
Sonya

---

Scan001.PDF
30K

**Maria Coombe <Maria.Coombe@footprintlegal.com>**        Mon, Jul 19,
                                                                2010 at 7:42 AM

To: Sonya Shaykhoun <shaykhoun@gmail.com>

Good Morning Sonya,

Congratulations once again!  I wanted to confirm that this has been sent to Al Jazeera (both to Osama and to the HR team) and I am waiting for them to confirm receipt and that they are happy for you to go ahead and resign your position at Charles Russell.  I have suggested August 29th 2010 as your start date and will let you know Osama's thoughts.  I also forwarded your passport, mentioned the domicile being NY and let them know where you are at with the certificates, so for the moment, everything is in their camp.  I'll give you a call later today as soon as Osama confirms that  you can resign.

It has been an absolute pleasure working with you and I look forward to meeting you in person when I come to Doha at the end of the year!  Congratulations once again!

Best wishes,

Maria

Maria Coombe

Director

Footprintlegal

www.footprintlegal.com

maria.coombe@footprintlegal.com

Direct         +971 4 448 7146

Mobile        +971 55 881 8435

This email is for the attention of the addressee only. If you are not the intended recipient, please return it to grazia.mazzurana@ footprintlegal.com. The views expressed in this message are those of the individual and not necessarily those of Footprintlegal.

If you would like more information about Footprintlegal, please visit our website at www.footprintlegal.com. Footprint Consultancy Services JLT (licence no.JLT-65355) trading as Footprintlegal is registered and licensed as a freezone company under the rules and regulations of DMCCA. Level 29, Reef Tower, JLT Dubai, PO Box 115738, Dubai, UAE

**From:** Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
**Sent:** Sunday, July 18, 2010 4:32 PM
**To:** Maria Coombe
**Subject:** Signed Letter of Offer and Acceptance

[Quoted text hidden]

**Sonya Shaykhoun <shaykhoun@gmail.com>**                    Wed, Jan 19, 2011 at
                                                                          4:05 PM
To: Maria Coombe <Maria.Coombe@footprintlegal.com>

Maria,
Please see the below email in which you confirmed that you were waiting
for the go-ahead from Al Jazeera - you called me up on the 20th of July and
told me that it was OK to resign.
Sonya

[Quoted text hidden]

**Maria Coombe**                                          Wed, Jul 14, 2010 at
**<Maria.Coombe@footprintlegal.com>**                              1:08 PM
To: Sonya Shaykhoun <shaykhoun@gmail.com>

You're welcome!  Start date wise, it's always "tomorrow is better than yesterday!".  When would best suit you?


Maria


From: Sonya Shaykhoun [mailto:shaykhoun@gmail.com]
Sent: Wednesday, July 14, 2010 2:06 PM
[Quoted text hidden]


[Quoted text hidden]


**Sonya Shaykhoun <shaykhoun@gmail.com>**                Wed, Jul 14, 2010 at
                                                               1:11 PM
To: Maria Coombe <Maria.Coombe@footprintlegal.com>

:)

I have to give thirty days' notice.  So, say I sign this offer by Sunday the 18th of July, I'd give in my notice then bringing us to the 17th of August.  I suppose the 29th of August would be ideal as I'd have time to organise myself and get some R&R before I start this new challenge (and as I wouldn't be taking leave for the first 6 months) but I could do the 22nd, too. What do you think is best?

[Quoted text hidden]


**Maria Coombe <Maria.Coombe@footprintlegal.com>**       Wed, Jul 14, 2010
                                                          at 1:16 PM
To: Sonya Shaykhoun <shaykhoun@gmail.com>

I suggest that we say exactly that to them, that way we're showing flexibility but also showing commitment to throwing yourself into the new role by taking some time out first.  Does that sound fair to you?


From: Sonya Shaykhoun [mailto:shaykhoun@gmail.com]

 **Gmail**
by Google

**Sonya Shaykhoun <shaykhoun@gmail.com>**

# Al Jazeera

1 message

**Maria Coombe <Maria.Coombe@footprintlegal.com>**

Mon, Jul 12, 2010
at 10:59 AM

To: Sonya Shaykhoun <shaykhoun@gmail.com>

Dear Sonya,

They say that good things happen to those who wait... Congratulations! Al Jazeera are making you an offer! I attach details, please let me know once you have had the chance to look over it.

I hope that this is the news that you were hoping for!

Best wishes,

Maria

Maria Coombe

Director

Footprintlegal

www.footprintlegal.com

maria.coombe@footprintlegal.com

Direct         +971 4 448 7146

Mobile        +971 55 881 8435

This email is for the attention of the addressee only. If you are not the intended recipient, please return it to grazia.mazzurana@ footprintlegal.com. The views expressed in this message are those of the individual and not necessarily those of Footprintlegal.

If you would like more information about Footprintlegal, please visit our website at www.footprintlegal.com. Footprint Consultancy Services JLT (licence no.JLT-65355) trading as Footprintlegal is registered and licensed as a freezone company under the rules and regulations of DMCCA. Level 29, Reef Tower, JLT Dubai, PO Box 115738, Dubai, UAE

**Sonya.pdf**
512K



ALJAZEERA NETWORK  شبكة الجزيرة

ص.ب. ٢٣١٢٣ الدوحة، قطر
هاتف ٤٨٩٧٤٢٩ ٩٧٤+
فاكس ٤٨٩٧٣٣٧ ٩٧٤+
HR@aljazeera.net
www.aljazeera.net

P.O. Box 23123 DOHA, QATAR
TEL. +974 4897429
FAX +974 4897337
HR@aljazeera.net
www.aljazeera.net

Date:  12-Jul-10

Ref:  JSN/LA/        /2010

**Ms. Sonya Shaykhoun**

We are pleased to extend you a conditional employment offer according to the following benefits and terms:

| | | |
|---|---|---|
| Job Title | : | Legal Counsel |
| Monthly Basic Salary | : | (22,500 Q.R) Twenty-two thousand & Five Hundred Qatari Riyals. |
| Monthly Housing Allowance | : | Single (12,000 Q.R)        Married (14,000 Q.R) According to HR Personnel Policy |
| Furniture Allowance | : | (45,000 Q.R) Only after successfully passing probationary period. |
| Probation Period | : | Six Months. |
| Airline Tickets | : | (Economy Class, From & Ireland): On annual leave for the employee, spouse and three children under the age of 18 years, and on the arrival of the family after completing the probation period. |
| Annual Leave | : | (30) Working days per year. |
| Education | : | The Net Work will participate in school fees in the State of Qatar for Three children until the age of 18 years as following.<br>                -From first grade till sixth grade amount of        (15,000 Q.R),<br>                -From seventh grade till Twelfth grade mount of     (20,000 Q.R), |
| Medical Treatment | : | The Network shall take care of all the fees regarding the issuing and renewal of the Health Insurance cards. Also will take care of medical treatments expenses of the employee, spouse and children under the age of 18 years in a selected governmental and private Hospital proved by the network. |

- During the probation period, both parties may terminate the contract of employment without notice and without any legal or financial obligations on their part.
- This offer shall not be binding on Al Jazeera Satellite Network (JSN) unless a contract of employment is signed by you and all employment procedures have been completed.
- If you are in agreement with all the terms specified above, you are kindly requested to sign below and e-mail the signed copy with a valid copy of your passport and the university degree (notarized by the embassy of the State of Qatar) within one week of the date above.
- Any delay in receiving this offer may result in its cancellation.

We look forward to having you join our team in Doha soon.

Best Regards,

For: Al-Jazeera Network

Mesallam Mubarak Al Rashid
Manager, HR Planning & Recruitment Department

☐ Accept           ☐ Reject

Signature: _____

AM

Shaykhoun v Daily Mail et al
1:2024cv09978

Third Amended Complaint
Filed April 8, 2026

# EXHIBIT M:
## *Jordanian Bar Association Rules – How to Become a Lawyer:*
### *https://www-jba-org-jo.translate.goog/Ar/Pages/كيف_تصبح_محاميا؟_x_tr_sl=ar&_x_tr_tl=en&_x_tr_hl=en&_x_tr_pto=wapp*





Shaykhoun v Daily Mail et al
1:2024cv09978

Third Amended Complaint
Filed April 8, 2026

# EXHIBIT M:
## *Jordanian Bar Association Rules – How to Become a Lawyer:*
### *https://www-jba-org-jo.translate.goog/Ar/Pages/كيف تصبح محاميا؟ x tr sl=ar& x tr tl=en& x tr hl=en& x tr pto=wapp*

Log in    Q

# How to become a lawyer

Main Training / How to become a lawyer /

Partner

Legislative updates

Case 1:24-cv-09978-ALC    Document 78-2    Filed 04/10/26    Page 30 of 81

# Training

Any wishing to register name in the lawyers' must submit a paper to application to the Bar Association Registration in the registration of trainee lawyers, by documents proving that:

01

Jordanian nationality.

02

He turned twenty-one.

03

He is not of a felony or a moral misdemeanor, or found guilty by a disciplinary authority of an offense honor and morals.

Case 1:24-cv-09978-ALC    Document 78-2    Filed 04/10/26    Page 31 of 81

04

Resident of the Hashemite Kingdom of Jordan.

05

Holding at least a first degree degree in law from a university or institute recognized by the Ministry of Higher Education

# Principles and rules:

01

A- Applications for registration in the registration of lawyers that meet the legal requirements are submitted to the Bar Association Council for more than a year, the first time the month of February and are during the month of March, and the second time during the month of August and are during the month of September.

02

A- Applications for registration in the registration of lawyers that meet the legal requirements are submitted to the Bar Association Council for more than a year, the first time the month of February and are during the month of March, and the second time during the month of August and are during the month of September.

03

A lawyer may not accept a trainee lawyer into his office until he has been practicing law as a senior lawyer or has held a judicial position in the sense In the Law on the Independence on the Judiciary, or both, for a period not less than five years, provided that he may only accept one trainee lawyer.

04

A. The trainee lawyer must keep at his office's and the guid to attend proceedings to legal proceedings there and in the courts across his training period, except on days when he is missing for a legitimate reason. The mentor lawyer must notify the Bar Association if the training is lawyer is absent or not attending training satisfactorily. In she cases, the Bar Association may add a period of time to the trainee's training period as it deems appropriate. If the Bar Association determines at any time that the training of the lawyer has permanently discontinued his training, it may remove his name from the registration of trainee lawyers.

05

A- After six months of training, the trainee lawyer may plead before the Magistrates' Courts under the supervision of his mentor, after obtaining permission to do so from the Bar Association Council. He may also plead before the Courts of First Instance after one year of training under the supervision of his mentor and with the permission of the Council.

Case 1:24-cv-09978-ALC     Document 78-2     Filed 04/10/26     Page 33 of 81

A trainee lawyer may, on behalf of his mentor, conduct all matters related to the practice of law except for pleading before the Courts of Appeal and Cassation.

06

A- The trainee lawyer may change his mentor by requesting the reasons for doing so, along with a notice from his former mentor detailing his attendance, practice, and conduct during the period he practiced in his office, and another notice from his new mentor including his commitment to accept him in his office to complete his training period under his supervision and responsibility.

07

To the senior lawyer who registers the trainee lawyer in his office:

08

The Bar Association organizes lecture programs specifically for trainee lawyers, which include:

09

A- The training committee shall, during the month of December of each year, prepare a complete program of training lectures for the following year and a list of the names of the lecturers in this program, and announce this in the Bar Association building, the lawyers' chambers in the courts and the branch centers.

B- When preparing the annual lecture program, the training committee should ensure that the topics of the training lectures are diverse so that trainee lawyers can become familiar with the various fields and activities of

10

the legal profession.

C- The annual training lecture program begins in March of each year.

The trainee lawyer must attend training lectures regularly, and the Bar Association Council may deduct five days from the training period if the trainee lawyer misses any lecture without a legitimate excuse. A special record is prepared for this purpose, which the trainee lawyer signs upon attending the lecture and after it has ended.

11

Upon completion of the annual training lecture program, the training committee submits a written report to the Bar Association Council containing its observations and recommendations regarding the program and the trainee lawyers.

12

A- The trainee lawyer must prepare, during his training period, a research paper on any legal topic or any topic related to the profession or training, and submit this research a year or more before the end of his training period.

13

Case 1:24-cv-09978-ALC    Document 78-2    Filed 04/10/26    Page 35 of 81

A- The research is discussed by a committee consisting of three professor lawyers or those with experience in the field of research, chosen by the Bar Association Council each time, and the trainee lawyer must present his research orally before the discussion committee.

14

A - The Bar Association holds a written and an oral examination for trainee lawyers twice a year in accordance with the provisions and conditions of the training and the instructions of the Bar Council. The first is held during the month of April and applications to participate in the examination are submitted during the month of March. The second is held during the month of October and applications to participate in it are submitted during the month of September of each year.

15

A. The examination shall be conducted, supervised, and its results verified by one or more committees, each composed of three senior lawyers or one judge and two senior lawyers. These committees shall be selected by the Bar Association Council before each examination.

16

The name of a trainee lawyer shall not be transferred from the register of trainee lawyers to the register of senior lawyers unless he has passed the (discussion of the research) and the professional examination (written and oral) as specified in this system.

17

Newsletter

Subscribe to our newsletter to receive all the latest news on important issues and lawyers.

Subscribe to our newsletter



Applications of the legislative system

Complaints and suggestions

Jobs

Useful links





All rights reserved © 2023 to the Jordanian Bar Association

Echo TechnologyDesign and development by

Shaykhoun v Daily Mail et al
1:2024cv09978

Third Amended Complaint
Filed April 8, 2026

# EXHIBIT N:
## *Index No. 100558/2024 – Notice of Cross-Motion for Sanctions Against Katherine M. Bolger, Lindsey B. Cherner and Davis Wright Tremaine LLP dated June 11, 2025 and Related Affirmation In Support*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

SONYA SHAYKHOUN, ESQ.,

                                                    Index No.  100558/2024

                    Plaintiff,

                                                    Mot. Seq. No. 006

          -v-

                                                    Judge d'Auguste

THE DAILY MAIL, DAILYMAIL.COM,
DAILY MAIL AND GENERAL TRUST PLC            **NOTICE OF CROSS-MOTION**
("DMGT"), NOA HALFF, THE DAILY BEAST        **FOR SANCTIONS AND/OR**
COMPANY LLC ("TDB"), AJ MCDOUGALL,          **COSTS PURSUANT TO**
BEN SHERWOOD, JOANNA COLES, IAC             **22 NYCRR 130-1.1,**
INC., BARRY DILLER,                         **JUDICIARY LAW § 487, AND**
                                            **THE NEW YORK RULES OF**
                                            **PROFESSIONAL CONDUCT**
                    Defendants.
-------------------------------------------------------------X

PLEASE TAKE NOTICE, that upon the annexed Affirmation of Sonya Shaykhoun, Esq. dated June 11, 2025, and exhibits thereto, and upon all prior pleadings and proceedings herein, the undersigned will cross-move this Court before the Honorable Judge James d'Auguste J.S.C., at the Supreme Court , at 71 Thomas Street, Rm. 103, New York, N.Y. 10013, before Hon. James d'Auguste J.S.C., on July 1, 2025 at 9:30 A.M. or as soon thereafter as counsel can be heard, for an order pursuant to 22 NYCRR-130-1.1, Judiciary Law § 487, and the New York Rules of Professional Conduct:

1.  Denying the Daily Beast Defendants' motion for attorneys' fees (NYSCEF Doc. No. 34) without oral arguments and with prejudice;

2.  Pursuant to 22 NYCRR § 130-1.1, imposing sanctions and awarding costs, including reasonable attorneys' fees, against the attorneys Katherine M. Bolger, Esq., Lindsey B. Cherner, Esq., and their law firm, Davis Wright Tremaine LLP (collectively, the "DB Attorneys"), representing the Daily Beast Company, LLC, AJ McDougall, Ben Sherwood, Joanna Coles, IAC. INC., and Barry Diller ("DB Defendants"), for frivolous conduct. The frivolous conduct consists of violating the Court's January 15, 2025, Order to Show Cause –

Signed (document No. 32, Motion #03) which allowed Plaintiff to voluntarily withdraw the above-referenced case as of December 31, 2024 "without prejudice and without liability".

3.  Pursuant to Judiciary Law § 487, for an appropriate sanction or other relief as the Court deems just, based on the DB Attorneys' knowing and intentional deceit or collusion with intent to deceive the Court.

4.  Referring Katherine M. Bolger, Esq., Lindsey B. Cherner, Esq., and Davis Wright Tremaine LLP's conduct to the appropriate disciplinary committee or body, or in the alternative, taking such other remedial action as this Court deems just, in light of violations of the New York Rules of Professional Conduct as incorporated into the foregoing statutory and regulatory standards.

5.  Granting such other and further relief as the Court may deem just and proper. for a frivolous and harassing fee motion,";

6.  Awarding Plaintiff costs, including expenses incurred responding to Katherine M. Bolger, Esq. et. al.'s questionable fee motion;

7.  Imposing a penalty up to $10,000, payable to the Lawyer's Fund for Client Protection; and,

8.  Granting such other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that Plaintiff respectfully request that this the cross-motion be determined on submission only, without oral argument, pursuant to the Court's discretion under CPLR 2214(d) and applicable rules of practice. Pursuant to CPLR 2214(d), answering papers, if any, are due no later than seven days prior to the return dates, i.e., June 25, 2025. This cross-motion has been served at least 12 days prior to the return date to comply with CPLR 2214(b) and CPRL 2215.

Dated:    June 11, 2025
          New York, NY

                                        Respectfully submitted,

                                        /s/ Sonya Shaykhoun, Esq.
                                        Sonya Shaykhoun, Esq.
                                        Law Offices of Sonya Shaykhoun, Esq.
                                        825 West End Avenue,
                                        New York, NY 10025
                                        Tel:    929-996-5662
                                        Email: sonya@shaykhounlaw.com
                                        *Plaintiff Pro Se*

CC:       Katherine M. Bolger, Esq.
          Lindsey B. Cherner, Esq.
          Davis Wright Tremaine LLP

## AFFIRMATION OF TRUTH OF STATEMENT

I affirm this 11th day of June 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand this document may be filed in an action or proceeding in a court of law.

Dated:   June 11, 2025
         New York, NY

/s/ Sonya Shaykhoun, Esq.
Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Ave,
New York, New York 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662
*Attorney Pro Se*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

SONYA SHAYKHOUN, ESQ.,

                Plaintiff,

      -v-

THE DAILY MAIL, DAILYMAIL.COM,
DAILY MAIL AND GENERAL TRUST PLC
("DMGT"), NOA HALFF, THE DAILY BEAST
COMPANY LLC ("TDB"), AJ MCDOUGALL,
BEN SHERWOOD, JOANNA COLES, IAC
INC., BARRY DILLER,

                Defendants.
------------------------------------------------------------X

Index No.  100558/2024

Mot. Seq. No. 006

Hon. Judge James d'Auguste

**AFFIRMATION IN SUPPORT OF CROSS-MOTION FOR SANCTIONS AND
OPPOSITION TO FEE MOTION PURSUANT TO 22 NYCRR 130-1.1**

STATE OF NEW YORK
COUNTY OF NEW YORK ss:

I, Sonya Shaykhoun, Esq., being duly sworn, depose and say:

## I.    INTRODUCTION

1.    I am the pro se Plaintiff, a transactional attorney with limited litigation experience, submitting this affirmation to:

    (a)    oppose the Daily Beast Defendants' fee motion for $13,375 in attorneys' fees (NYSCEF Doc. No. 34, "Bolger Fee Motion" or "Fee Motion"); and,

    (b)    cross-move for sanctions against Katherine M. Bolger, Esq. ("Bolger"), Lindsey B. Cherner, Esq. ("Cherner"), and Davis Wright Tremaine LLP ("DWT") (collectively, the "DB Attorneys") for attorney misconduct under:

(a)    22 NYCRR 130-1.1;

(b)    Rules of Professional Conduct; and,

(c).    Judiciary Law S 487.

2.    In addition, the Bolger Fee Motion fails to state a claim and, among other reasons, should be dismissed pursuant to CPLR 3211(a)(7).

3.    References Katherine M. Bolger, Esq. include Cherner. and DWT to the extent it makes sense in the context. Culpability for the frivolous (i.e., punitive and persecutorial) Fee Motion filed by Bolger. on June 2, 2025, lies with the Daily Beast Defendants' attorneys – namely Bolger, Cherner, Esq. and, DWT collectively ("DB Attorneys").

4.    The Fee Motion, filed on June 2, 2025, violates the Court's January 15, 2025, binding and enforceable discontinuance order "without prejudice and without liability" (NYSCEF Doc. No. 27, "Signed Order", Exhibit 1). The Signed Order, which was the Order of Voluntary Discontinuance (NYSCEF Doc. No. 26) ("Voluntary Discontinuance") that the Plaintiff filed on December 31, 2024, discontinued the Supreme Court action ("SC Lawsuit") "without prejudice and without liability" pursuant to the November 20, 2024, off-the-record agreement ("November Conference").

5.    The Fee Motion seeking $13,375 in attorneys' fees incurred to defend this action is part of a Bolger's pattern of bullying and intimidation of the Plaintiff and seeks to relitigate the SC Lawsuit and rewrite history. It is untimely and seeks to compel the Plaintiff into withdrawing the Southern District of New

York action (Case No. 1: 24-cv-09978-ACL, "SDNY Action). This conduct warrants sanctions, costs, and disciplinary referral.

6.    The Fee Motion is not a good-faith pursuit of legitimate legal remedies but rather a baseless and desperate attempt to prolong litigation, harass the Plaintiff, and unjustly extract fees in a matter that has already been dissolved via the Signed Order that explicitly stipulates "without prejudice and without liability" in favor of the Plaintiff. Therefore, the Plaintiff respectfully requests the following from the Court:

(a)    dismissal of the Fee Motion **without oral argument and with prejudice**;

(b)    sanctions, including costs and a $10,000 penalty; and,

(c)    a reprimand and/or disciplinary referral for the DB Attorneys.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### SC Lawsuit Initiation

7.    On May 16, 2024, the Plaintiff filed the SC Lawsuit against the Daily Beast Defendants (and the other Defendants) for their publication of an article entitled "*NYC Lawyer Roasted for Calling 911 on a Food Vendor*" ("Article"). In the now dissolved SC Lawsuit, the Plaintiff asserted the following causes of action: i) vicarious liability/defamation/defamation per se; ii) injurious falsehood; iii) negligent representation causing harm; iv) fraudulent inducement; v) fraud and deceit; vi) equitable fraud; vii) equitable estoppel/promissory estoppel; viii) quasi-contract/breach of contract/prima

facie tort (intentional or malicious harm to Plaintiff); ix) emotional distress; x) unjust enrichment; xi) copyright infringement; and, xii) breach of privacy causes of action.

### *Amended Complaint*

8. On November 7, 2024, the Plaintiff filed an Amended Complaint (NYSCEF Doc. No. 3) within 20 days of filing the original, compliant with CPLR 3025(a) (see *McCaskey, Davies & Assocs. V. New York City Health & Hosps. Corp.*, 59 N.Y.2d 755, 757 (1983)). The Plaintiff vehemently objects to the misleading and false characterizations in ¶¶ 11–13 of the Bolger Motion. The Plaintiff did not disobey the Judge's explicit guidance by filing an Amended Complaint (NYSCEF Doc. No. 3.). Pursuant to CPLR 3025(a), a plaintiff can amend their complaint once without court permission within 20 days after serving the original complaint, or 20 days after service of the responsive pleading, or 10 days after service of notice of entry of an order on motion to dismiss, whichever is later. Bolger's claim that this was disobedient is false, as no court prohibited it.

9. Bolger's cynical mischaracterization of the Plaintiff's Amended Complaint refers to the Court's October 22. 2024, Decision and Order, Motion Seq. No. 002 ("October Order") (Exhibit 2), which was in response to the Plaintiff's Order to Show Cause to extend the time of service on the Defendants, which request the Court granted. The Decision + Order on Motion included the

following gentle suggestion and "non-final disposition" from Hon. James d'Auguste:

As a final matter, the Court strongly suggests that plaintiff familiarize herself with New York's Anti-SLAPP laws given the potential for a sizable mandatory attorneys' fees award defendants might secure against her should they secure dismissal of this litigation. As plaintiff may be unaware of the potential financially burdensome damages that may await her by proceeding with this lawsuit, the Court will provide her with a ten-day safe harbor, from the date of this order, to discontinue this action *nunc pro tunc* to its commencement to avoid this exposure. Plaintiff is directed to serve a copy of this order upon defendants within five business days.

| 10/22/2024 | | | | |
|---|---|---|---|---|
| DATE | | | James d'Auguste, J.S.C. | |
| CHECK ONE: | ☐ CASE DISPOSED | | [X] NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | [X] OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

### *November Conference*

10.   On November 20, 2024, the Court convened a pre-trial conference with the Defendants' attorneys, including Cherner, although Bolger, who sent Rachel F. Strom, Esq. in her stead, was absent ("November Conference"). The November Conference, which was off-the-record, resulted in a collective good-faith agreement with the Plaintiff, the Defendants' attorneys, including Cherner, that, if the Plaintiff withdrew her case by December 31, 2024, then she would not bear any attorneys' fees under the New York Anti-SLAPP Laws. The DB Attorneys knew and know about this good faith agreement, and they confirmed their agreement thereto when they filed the Notice of Entry of the Signed Order without reservation on January 27, 2025.

Page 5 of 51

11. The Court's instructions were clear: withdraw the case voluntarily before December 31, 2024, to avoid liability for attorneys' fees. The Voluntary Discontinuance was unconditional, except for the December 31, 2024, deadline. Hon. Judge d'Auguste made no mention of the Voluntary Discontinuance having to be "with prejudice". Hon. Judge d'Auguste J.S.C. surveyed the attorneys *in situ* for the Daily Mail Defendants, namely Thomas Sullivan, Esq. and Saumya Vaishampayan, Esq. of Ballard Spahr (the "DM Lawyers"), as well as Cherner, who was sitting exactly to the Plaintiff's left at the same desk in the courtroom. The Plaintiff witnessed the three attorneys present agree with Hon. Judge d'Auguste J.S.C. to give the Plaintiff until December 31, 2024, to decide how to proceed. The Parties present in the proceedings on November 20, 2024, collectively made a good faith agreement that, if the Plaintiff withdrew the SC Lawsuit, then she would not be liable for attorneys' fees under the New York anti-SLAPP laws. The Plaintiff specifically remembers this because Hon. Judge d'Auguste polled each of the Defendants' attorneys present about their respectively hourly rates and he did "napkin math" to calculate how much each lawyer charged and what the Plaintiff's liability might be for their collective attorneys' fees if she proceeded with the SC Lawsuit. Hon. Judge d'Auguste made no other conditions on the Voluntary Discontinuance. **The bottom line was: withdraw before December 31, 2024, to avoid liability for attorneys' fees.**

*Voluntary Discontinuance*

12. Pursuant to Hon. Judge d'Auguste's instructions and the good-faith agreement the parties made during the November Conference, the Plaintiff filed a Voluntary Discontinuance (NYSCEF Doc. No. 26), which Judge d'Auguste signed on January 15, 2025, stating "without prejudice and without liability" (NYSCEF Doc. No. 28).

13. **No judicial orders or prohibitions barred the Plaintiff from exercising her rights in this timeframe CPLR 3015(a).** It is baseless and offensive for Bolger to paint the Plaintiff as disobedient or acting improperly in the conduct of the SC Lawsuit. This misrepresentation is consistent with Bolger's overall litigation strategy and technique, which persistently seeks to demonize and antagonize the Plaintiff through bullying, disparaging rhetoric, and demonstrably false statements. An example of Bolger's discourteous and unprofessional approach is where she writes at ¶15 in the Fee Motion that "On December 31, 2024, Plaintiff filed a self-styled 'Order of Voluntary Discontinuance'" as though the form of the Voluntary Discontinuance should disable its substance and effect. The Plaintiff is not a litigator, but in reviewing countless court documents during this litigation, the Plaintiff has observed that every lawyer has their own nuanced style of drafting motions and briefs. Prioritizing procedural technicalities over the merits of a case often reflects lack of confidence in the substantive strength of one's position. The way the

Plaintiff drafted the Voluntary Discontinuance did not stop Judge d'Auguste from signing it on January 15, 2025.

14. In ¶13 of the Bolger Motion, Bolger omits two vital facts that inform Bolger's misguided attempts to harass the Plaintiff:

    i.    Bolger was absent from the pivotal November Conference; and,

    ii.    Hon. Judge d'Auguste J.S.C. made a good-faith deal with the Plaintiff and the Defendants' attorneys, including Cherner, in the November Conference.

15. Bolger further demonizes the Plaintiff by depicting the filing the SDNY Action on December 27, 2025, and the Plaintiff's subsequent amendments as necessarily opening the door to the DB Defendants' and the DB Attorneys' frivolous Fee Motion. It is instructive to parse ¶16 of the Fee Motion to understand exactly how Bolger is trying to manipulate the facts to fit her false narrative, patently ignoring the binding and enforceable nature of the Signed Order:

    i.    "Meanwhile, on December 27, 2024, Plaintiff had already filed-but not yet served-a new complaint against the DB Defendants, arising out of the same Article, in the Southern District of New York (the 'SDNY Action')." There was nothing to stop the Plaintiff from filing the SDNY Action. As a pro se litigant and a transactional attorney who studied law in the UK, the Plaintiff was and is still learning the ways of the U.S. Court System. The Court's instructions to the Plaintiff - neither in

the October Order nor the November Conference - did not indicate that she was barred from filing a lawsuit in the SDNY.

ii. Bolger continues, "Plaintiff has since amended her complaint twice in the SDNY Action, and the DB Defendants will file a motion to dismiss on or before June 16, 2025. See *Shaykhoun v. Daily Mail et al*, No. 1:24-c-09978-ALC, Dkt. No. 58 (S.D.N.Y.)." The Plaintiff was entitled to refile her case in the SDNY, which is the correct and proper venue for the federal copyright infringement claim, which claim is gaining traction in the SDNY Action.

iii. Bolger's final sentence is the most mystifying and unfounded, "Because Plaintiff has continued to pursue her meritless claims in the face of multiple warnings concerning the risk of an attorneys' fees award against her, the DB Defendants are left with little choice but to invoke their rights under New York's anti-SLAPP law." First, while the Court gently warned the Plaintiff against pursuing the SC Lawsuit because of the Anti-SLAPP laws and advised the Plaintiff to file the Voluntary Discontinuance (which she did), the Court ultimately explicitly approved the Signed Order "without prejudice and without liability".

16. When Bolger refers to "multiple warnings" she means the multiple threats that she leveled at the Plaintiff to scare her off. Bolger has no authority over the Plaintiff nor over the Court. During the November Conference, Hon. Judge d'Auguste extrapolated the potential costs to the Plaintiff if the Plaintiff

pursued the SC Lawsuit beyond December 31, 2024. As such, the Court proposed that the Plaintiff file the Voluntary Discontinuance, which she did in compliance with the Court's guidance. In addition, the email exchanges that Bolger references in the Fee Motion ¶¶ 5, 6 (NYSCEF Docs. No. 35 and 36) were not part of the Court's proceedings. After interacting with Bolger since October 2024, the Plaintiff has observed that Bolger overreaches her authority. Bolger is the DB Defendants' attorney, not the judge and not the Plaintiff's boss. Bolger has no authority to block the Plaintiff from seeking justice and she repeatedly exploits the Plaintiff's pro se status and the fact that the Plaintiff is not a litigator but a transactional attorney.

17. The SC Lawsuit is dissolved, and the case is closed. Moreover, if the Plaintiff had erred in filing the SDNY Action, surely the presiding judge would have thrown the case out by now (i.e., nearly six months later)? Instead, Judge Carter granted the Plaintiff an important cure which sustains the SDNY Action. Where is the Plaintiff's fault in all of this? Indeed, the DB Defendants did not have a choice in invoking their rights under New York's Anti-SLAPP law because:

   i.    the NYCR § 70-a does not apply to the Voluntary Discontinuance as the case was not dismissed, and

   ii.   even if it NYCR § 70-a did apply (which it does not), the specific terms of the Voluntary Discontinuance ("without prejudice and without liability") are memorialized in the Signed Order, which bars the pursuit

of the Fee Motion, which pursuit is frivolous and sanctionable (*Kyowa Seni, Co., Ltd. v ANA Aircraft Technics, Co., Ltd.,* ___AD3d___, 2025 NY Slip Op 03281 [2025]).

18. In an early attempt to bully the Plaintiff out of pursuing her claim, at ¶ 14 in the Bolger Motion, Bolger describes how she attempted to settle the SC Lawsuit with the Plaintiff on November 26, 2024, in consideration of the DB Defendants' Attorneys' attorneys' fees. This duplicative and insubstantial offer to settle on November 26, 2024 (while the Hon. Judge d'Auguste J.S.C. had already given the Plaintiff until December 31, 2024, to voluntarily withdraw the SC Lawsuit) demonstrates the extent to which Bolger was and continues to be disconnected from the chronology of the SC Lawsuit.

19. The Bolger Motion is made in bad faith and ignores what transpired during the November Conference. Given that Cherner (or indeed Rachel F. Strom, Esq. who is a DWT partner and attended/ disrupted the November Conference in Bolger's stead but was not a part of the proceedings, (Exhibit 3)) was present at the Court and an active party to the agreement made with the Court in the November Conference, it is perplexing and worrying from a professional conduct perspective that Cherner went along with the frivolous and misguided Bolger Motion. Though Cherner is a more junior lawyer than Bolger (and the Plaintiff, for that matter), Cherner is bound by the New York Rules of Professional Conduct (NYRPC). Why did Cherner participate in Bolger's

vindictive and misguided filing of this frivolous and punitive Fee Motion? This legal frivolity is sanctionable.

## Case Disposition

20.    Per the Part 55 clerk, Gina Volcy's March 12, 2025, email to the Plaintiff and the Defendants' attorneys, "The case is disposed":

RE: 100558/2024 SONYA SHAYKHOUN ESQ. v. THE DAILY MAIL et al

S    SFC-Part55-Cierk<SFC-Part55-Cierk@nycourts.gov>    ☺ ↩ ↩ ↪ ⊘ 🔡 ⋯

To: rachelstrom@dwt.com;  KateBolger@dwt.com;  +4 others    Wed 3/12/2025 2:33 PM

🚩 Flagged

ℹ You replied on Wed 3/12/2025 3:59 PM

Start reply with:    [ Thank you for letting me know. ]    [ Ok, thank you. ]    [ Thank you for the update. ]

Counselors,

Please be advised there is no court appearance on 3/19/2025. The case is disposed.

Thank you,

Gina Volcy
Part 55 clerk

↩ Reply     ↩ Reply all     ↪ Forward

## SDNY Action

21.    Since the Court did not prohibit the Plaintiff from filing another case against the DB Defendants, the Plaintiff filed the SDNY Action, primarily for copyright infringement of the May 17, 2023, tweet that the DB Defendants swiped and used in the Article without the Plaintiff's consent ("Tweet"), distinct from the SC Lawsuit's claims. Judge Carter granted a cure for the Tweet's registration

defect, weakening the arguments that the DB Attorneys' can use in their motion to dismiss due in the SDNY Action by June 16, 2025 (Exhibit 4).

*Fee Motion A Coercive Ploy Unraveled: The Fee Motion's Intimidation Tactics Falter Amid A Foreclosed SDNY Defense*

22. On June 2, 2025, nearly five months after the Signed Order, Bolger filed the Fee Motion, seeking $13, 375 in fees, falsely claiming the SDNY Action involves the "same claims" and misrepresenting the Amended Complaint as disobedient.

23. Bolger's tardy and cynical attempt to apply the New York Anti-SLAPP laws, after the binding Signed Order and after she filed the Notice of Entry without reservation, must be quashed. The Fee Motion is unfounded and unreasonable. The goal is to intimidate the Plaintiff into withdrawing the SDNY Action, which is a tactic Bolger persistently utilizes in the SDNY Action (to bully the Plaintiff into withdrawing the SDNY Action (Exhibit 5). Part of that Exhibit is here:



RE: Shaykhoun v. Daily Beast

**BK**  Bolger, Kate<KateBolger@dwt.com>
To: ⊗ Sonya Shaykhoun                                    Wed 3/5/2025 11:59 AM
Cc: Cherner, Lindsey <LindseyCherner@dwt.com>

🔵 You replied on Wed 3/5/2025 5:29 PM

Start reply with:  [ Noted. Thank you. ]  [ Thank you for your response. ]  [ Understood. Thank you. ]

Dear Ms. Shaykhoun:

If you do not withdraw the SDNY Complaint, we will file our attorneys' fees and costs applications for both the Supreme Court action and the SDNY action in due course.

For the avoidance of doubt, the Daily Beast Defendants will not be taking down the Article and reject the below offer.

Thanks,
Kate Bolger

**Kate Bolger**
Partner, Davis Wright Tremaine LLP

P 212.402.4068  E katebolger@dwt.com
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
DWT.COM

24.    Early in the SC Lawsuit, the Plaintiff observed that Bolger plays fast and loose with the rules. Specifically, Bolger attempted to avert service for two of the DB Defendants, Ben Sherwood and Joanna Coles, despite accepting service for all the other DB Defendants. When the Plaintiff questioned Bolger about this, she responded in a disingenuous and slippery fashion, a part of which exchange is as follows (see Exhibit 6 for the full exchange):



This exchange demonstrates what the Plaintiff describes as a lack of transparency and trickiness that aims to trip her opponents up rather than adhering to the rules of engagement prescribed by the NYRPC.

25. Bolger's criticisms around the Plaintiff's filing of the SDNY Action are unfounded and a breach the NYRPC because they take aim at the Plaintiff's legitimate copyright federal claims. The main cause of action in the SDNY Action is distinct different from the main causes of action in the SC Lawsuit, which were defamation and defamation per se. The top cause of action in the SDNY Actions is copyright infringement. The presiding judge, Judge Andrew Carter, recently granted the Plaintiff an unprecedented (in the SDNY) right to cure the lack of copyright registration of the Tweet before commencing litigation ("Copyrighted Tweet") despite the *Fourth Estate Public Benefit v. Wall-Street.com*, 586 U.S. (2019) precedent (Exhibit 4).

26. The presiding judge's recent ruling in the SDNY Action granting the Plaintiff the copyright cure upsets Bolger's presumed defense in the SDNY Action as the DB Defendants and Bolger can no longer rely on the Plaintiff's procedural misstep in the SDNY Action by failing to register the Copyrighted Tweet before commencing that action. Now, the DB Defendants and Bolger must rely on a fair use defense, which, is the weaker defense and renders their defense moot. With the June 16, 2025, fast approaching, the Fee Motion is a clear and inherent attempt to bully the Plaintiff into forfeiting her SDNY Action. It is a desperate gambit; harassment underscored by a doomed SDNY defense.

## III.    LEGAL STANDARD

*Frivolous Conduct - 22 NYCRR 130-1.1*

27.    22 NYCRR 130-1.1 is part of the New York court rules governing the imposition of costs and sanctions for frivolous conduct in civil litigation. Specifically, it defines what constitutes "frivolous conduct" for the purposes of award costs (e.g., reasonable attorneys' fees) or imposing sanctions (e.g., monetary penalties or disciplinary referrals) on parties or their attorneys. (*Gallo v DMHZ Corp.*, 2012 NY Slip Op 33970[U] [Sup Ct, NY County 2012])

28.    22 NYCRR 130-1.1(c)(1) - (3). 22 NYCRR 130-1.1(c)(2) (22 NYCRR 130-1.1 (Lexis Advance through May 30, 2025)) states, "For the purposes of this Part, conduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false".[1] Bolger's Fee Motion meets these criteria in that it aims to harass and compel the Plaintiff to withdraw the SDNY Action and it contains false statements about the nature of the SC Lawsuit as well as glaring legal errors. The Fee Motion is therefore patently frivolous and sanctionable.

29.    22 NYCRR 130-1.1(c)(3) further states, "(3) it asserts material factual statements that are false. Frivolous conduct shall include the making of a

---

[1] New York State Unified Court System, Rules of the Chief Administrative Judge, Part 130. Costs and Sanctions, https://ww2.nycourts.gov/rules/chiefadmin/130.shtml, last visited June 3, 2025.

Page 17 of 51

frivolous motion for costs or sanctions under this section. In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (*Cecora v De La Hoya*, 106 AD3d 565 [1st Dept 2013]; *Marx v Rosalind & Joseph Gurwin Jewish Geriatric Ctr. of Long Is., Inc.*, 148 AD3d 696 [2d Dept 2017]; (*Cruz v Komatsu Am. Corp.*, 2023 NY Slip Op 30659[U] [Sup Ct, NY County 2023]). The Fee Motion offends 22 NYCRR 130-1.1 because it frivolous since it is fueled by *inter alia* Bolger's misapplication of the New York Civil Rights Law § (70-a)(1) and the mischaracterization of the facts, especially that the binding Signed Order is effective and enforceable. The Bolger Motion further seeks to "delay or prolong the resolution of the litigation" and "harass or maliciously injure" the Plaintiff, whose financial situation has been badly impaired by the actions of the DB Defendants. The Bolger Motion attacks the Plaintiff's pocketbook because the Plaintiff refuses to withdraw her SDNY Action.

30.    22 NYCRR S 130-1.1 gives the judge latitude in how to apply the sanctions: "(d) An award of costs or the imposition of sanctions may be made either upon motion in compliance with CPLR 2214 or 2215 or upon the court's own initiative, after a reasonable opportunity to be heard. The form of the hearing

Page 18 of 51

shall depend upon the nature of the conduct and the circumstances of the case." In the current instance, the Plaintiff respectfully asks the Court to deny the DB Attorneys' request for an oral hearing and to dismiss the Fee Motion outright for the reasons outlined herein (*Cecora*).

31. Section 130-1.1 of the Uniform Rules of New York Trial Courts provides the court with broad discretion to award attorneys' fees and costs and impose sanctions for frivolous conduct. 22 NYCRR 130-1.1(a).

32. While *Hahn v. United States DOC*, 2013 U.S. Dist. LEXIS 84974 (D.N.J. June 17, 2013) arises from federal litigation and addresses the Rooker-Feldman doctrine, it is persuasive in that it underscores a relevant and instructive principle: litigants may not revive resolved matters under the guise of new or collateral motions where the core issues have already been fully and fairly adjudicated. In *Hahn*, the court refused to permit relitigation disguised as independent claims when the plaintiff's injuries were already subject to prior proceedings. Similarly, here, the binding and enforceable January 15, 2025, Signed Order, which was entered after robust negotiation and an off-the-record good faith agreement among the relevant parties who attended the November Conference, clearly states that the Plaintiff withdrew the SC Lawsuit "without prejudice and without liability". Any attempt now to circumvent that resolution via this belated and frivolous Fee Motion is not only improper but mirrors the kind of tactical abuse of process and weaponization that *Hahn* implicitly cautions against. The Plaintiff respectfully asks the Court to prevent

Bolger from reopening the closed chapter of litigation so she can intimidate the Plaintiff into dropping the SDNY Action. The Signed Order left no ambiguity, the Plaintiff's Voluntary Discontinuance blocks the applicability of New York Civil Rights Law § 70-a(1) and Bolger missed the ample opportunities she had to request the reservations she now seeks (improperly).

### Collateral Estoppel: Delayed And Defective: The Fee Motion's Fatal Tardiness and Dishonesty

33. The Fee Motion is barred by collateral estoppel, as the Signed Order constitutes a final judgement on fee liability, precluding relitigation of Anti-SLAPP fees [*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2s 343, 347 (1999); *Schleifer Nance & Co. v. Estate of Warhol*, 194 A.D.2d 414, 415 (1st Dept. 1993). Similarly, collateral estoppel prevents the DB Attorneys from contesting the Plaintiff's liability for fees, an issue necessarily decided by the Signed Order after a full and fair opportunity to litigate at the November Conference (*Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001); *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276 (1988)). By ignoring these preclusive doctrines, Bolger's Fee Motion is frivolous, violating 22 NYCRR 130-1.1(c)(1) and breaches the NYRPC. Bolger's intimidation during the SDNY Action compounds this harassment (130-1.1(c)(2). *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984)).

34. Bolger's attempt to bulldoze over the Plaintiff's rights enshrined in the "without prejudice and without liability" reservation in the Signed Order and to proceed as though that language is not included therein is frivolous (*Owens*

Page 20 of 51

*v Tompkins Bank of Castile*, 170 AD3d 1683 [4th Dept 2019]). Owens states "'**Under the general rule in New York, attorneys' fees are deemed incidental to litigation and may not be recovered unless supported by [\*\*791] statute, court rule or written agreement of the parties**' (*Flemming v Barnwell Nursing Home & Health Facilities, Inc.*, 15 NY3d 375, 379, 938 NE2d 937, 912 NYS2d 504 [2010], citing *Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491, 548 NE2d 903, 549 NYS2d 365 [1989])". The Signed Order was a direct result of the November Conference and had Bolger attended, she would have known that. Cherner attended the November Conference on behalf of the DB Attorneys and should have advised Bolger and DWT accordingly (*Matter of Schwartz*, 176 AD3d 57 [2d Dept 2019]). In *Owens*, the Court granted the defendants' fees request but that was because "Here, it is undisputed that plaintiffs agreed in the loan documents to pay defendants' reasonable fees and costs in connection with enforcing their rights under those agreements." The principle applies to the SC Lawsuit and supports the dismissal of the Bolger Motion because the Signed Order incontrovertibly guarantees that the Plaintiff could refile a lawsuit against the DB Defendants (as she did in the SDNY Action and the presiding judge did not dismiss that federal case) and that she would not be liable for the Defendants' attorneys' fees, i.e., "without liability".

35.  The Bolger Motion must fail because of collateral estoppel. Bolger's Fee Motion disregards the Court's directive and is woefully late. *Succession Picasso v*

*Spedding*, 1997 US Dist LEXIS 1481 [SDNY Feb. 11, 1997] stipulates that "the doctrine of collateral estoppel precludes relitigation of identical issues of fact or law previously decided in a prior action and decisive in the present action. See, e.g. *Long Island Lighting Co. v. Imo Industries Inc.*, 6 F.3d 876 (2d Cir. 1993)". Bolger's Fee Motion relitigates issues that have been resolved as the Signed Order demonstrates. The Bolger Fee Motion is a cynical ploy to harass the Plaintiff amid the SDNY Action.

## *Judiciary Law § 487*

36.   "Similar to fraud, Judiciary Law § 487 - covering intentional deceit and collusion - **imposes liability for the making of false statements with scienter**. But, Judiciary Law § 487 is not a codification of common law fraud and therefore does not require a showing of justifiable reliance. In other words, liability under the statute does not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement. Given the requirement that the conduct involve deceit or collusion and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency. Indeed, because a violation of Judiciary Law § 487 is a crime, an appellate court must be circumspect to ensure that penal responsibility is not extended beyond the fair scope of the statutory mandate" (*Bill Birds, Inc. v Stein Law Firm, P.C.*, 35 NY3d 173 [2020]; *Villalba v Houslanger & Assoc., PLLC*, 2022 US Dist LEXIS 55076 [EDNY Mar. 28, 2022,

No. 19-CV-4270 (PKC) (RLM)]). The *Bill Birds* case clarifies that liability under Judiciary Law § 487 does not require the court or party to be misled, only that the attorney made intentional false statements with scienter, thus supporting the Plaintiff's argument that the Bolger Motion is a mischaracterization of the Plaintiff's lawful amendment as disobedient as intentionally misleading, regardless of whether the Court was deceived.

37.    Judiciary Law § 487 provides that an attorney or counselor who falls foul of the law "[i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages to be recovered in a civil action." The bottom line is that lawyers who lie to the court or any party can be held accountable and "the statute 'focuses on the attorney's intent to deceive, not the deceit's success'" *Amalfitano v. Rosenberg*, 12 NY3d 8 [2009] at 14; *Ostrander v. Mullen*, 233 A.D.3d 1484 [4th Dept. 2024]); *Wang Real Prop. LCC v Hon*, 2022 N.Y. Misc. LEXIS 23179 [Sup Ct, Queens County Apr. 5, 2022, No. 714142/20]. Per *Creadore v Rosenberg & Estis, P.C.*, 2023 NY Slip Op 31253[U] [Sup Ct, NY County 2023], "The First Department has held that "(r)elief under a cause of action based upon Judiciary Law §487 is not lightly given and requires a showing of egregious conduct or a chronic and extreme pattern of behavior on the part of the defendant attorneys that caused damages. Allegations regarding an act of deceit or intent to deceive must be stated with particularity. The claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient." *Facebook, Inc. v. DLA*

*Piper LLP (US)*, 134 A.D.3d 610, 610 (2015)." The Bolger Motion, in conjunction with the DB Attorneys' demonstrated history of bullying tactics (i.e., not receiving service on behalf of Sherwood and Coles, demanding that the Plaintiff withdraw the SDNY Action "or else", and filing the punitive Fee Motion) comprises "egregious conduct" or "chronic or extreme pattern of behavior on the part of the defendant attorneys".

38. The Plaintiff asserts that the DB Attorneys engaged in additional deceitful conduct under Judiciary Law § 487(1) through their letter to the Court dated June 5, 2025 ("Letter") (Exhibit 7) which falsely asserts that "all parties to this action are actively litigating these same claims in the Southern District of New York". This statement is demonstrably false, as the Plaintiffs top three claims in the SDNY Action are distinct from those in the dissolved SC Lawsuit. Bolger's misrepresentation, made with knowledge of the differences between the two lawsuits, constitutes intentional deceit with scienter, as required under §Judiciary Law 487 (*Bill Birds*). Moreover, Bolger's failure to remember the dissolution of the SC Lawsuit's dissolution (i.e., when she threatened the Plaintiff in March 2025 with a fee motion if the Plaintiff did not withdraw her SDNY Action on Bolger's orders), as confirmed by the Part 55 Clerk, having filed a Notice of Entry (NYSCEF Doc. No. XX) without reservation, further evinces her intent to mislead the Court and harass the Plaintiff. Bolger's conduct is part of a broader pattern of deceptive and vexatious litigation tactics, including the mischaracterization of the Plaintiff's lawful amendment

of her Complaint (Exhibit 2) as disobedient in ¶¶11-13 of the Bolger Motion. Such actions not only violate Judiciary § 487 but also abuse of the judicial process, warranting dismissal of the frivolous Fee Motion without granting an oral hearing and the imposition of sanctions against the DB Attorneys (*Citibank (S.D.) N.A. v. Jones*, 272 AD2d 815 [3d Dept 2000]).

39. That a partner, like Bolger, in a white shoe law firm like DWT, would proceed with the Fee Motion, **even though the Voluntary Discontinuance blocks her from relying on New York Civil Rights Law § 70-a (1) because <u>there was no CPLR 3211(g) dismissal</u>, is worrying**. Because Bolger is a partner in a white shoe law firm and she included a precis of her professional highlights and accolades in the Bolger Motion, it follows that she must know this voluntary discontinuance/dismissal distinction and is therefore hoping to exploit the Plaintiff's Pro Se status by falsely asserting her position is correct. "Under Judiciary Law § 487(1), an attorney who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party is guilty of a misdemeanor and may be liable to the injured party for treble damages in a civil action" (*Bill Birds*).

### *Pro Se Context*

40. The Plaintiff is a seasoned attorney with over twenty years of international cross-border transactional experience in highly technical and regulated industries and has regularly handled (singlehandedly) important, cross-border, multi-million-dollar and multi-billion-dollar projects. In addition, the

Plaintiff has spent 12 years in higher education at prestigious universities. The Plaintiff holds an MA Honors Degree in English Language and Literature (University of St. Andrews), a BA in Arabic and Law (SOAS, University of London), and LL.M. in Corporate and Commercial Law, and an LL.M. in Corruption, Law and Governance from the University of Sussex and the Rule of Law and Anti-Corruption Center (Doha). Despite her extensive professional experience and higher education, the Plaintiff has limited litigation experience. That said, the Plaintiff has been a member of the New York State Bar in good standing since 2008 (the Plaintiff passed the New York Bar Exam in July 2007 but, because she was living in Bahrain full time, she did not swear in until September 2008, when she was in NYC because her younger sister committed suicide in August 2008). After the Oath Ceremony at the Appellate Court in the First Division, the Plaintiff sat through her first CLE on professional conduct, the topic of which was proper conduct and ethics for lawyers, which stayed with her to date. In addition to admonishing the new attorneys not to punch or swear at their future counterparts, the senior attorneys emphasized the importance of being ethical. The Plaintiff prides herself on being ethical and a stickler for the rule of law. The Plaintiff is admitted to the S.D.N.Y. and the E.D.N.Y. as of June and July 2004 respectively.

41. Per Judge d'Auguste's advice during the November Conference, the Plaintiff tried to consult with a litigator, but no one was able or willing to assist her.

The Plaintiff has faced financial embarrassment since the publication of the Article and, because of the impact on her career and law practice, was not in the position to pay a litigator out of pocket. This baseless Fee Motion, considering the Plaintiff's Pro Se status, further underscores Bolger's harassment tactics, which exploit the fact that the Plaintiff is pro se and does not hold a JD from an American law school but is British-educated, and supports the Plaintiff's request that the Court sanction the DB Attorneys under 22 NYCRR 130-1.1, the Judiciary Law § 487, and the NYRPC.

## IV.    ARGUMENT

## A.    The Fee Motion is Frivolous and Should be Dismissed

### Violation of the Signed Order

42.    The Signed Order's "without prejudice and without liability" provision, reflecting the Court's guidance during the November Conference agreement, explicitly bars fee liability. Bolger has presented the Court with a disingenuous and false narrative, full of critical omissions and mischaracterizations, despite the binding and enforceable nature of the Signed Order (see, *McLean v Prime Title Search, LLC*, 2013 N.Y. Misc. LEXIS 6179). "A motion made pursuant to CPLR S 3211(a)(1) warrants dismissal only if the documentary evidence submitted utterly refutes, and conclusively establishes a defense to, the asserted claims as a matter of law (see, Goshen v. Mutual Life Ins. Co., 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 [2002]). For the evidence to be considered 'documentary' under that statute, such evidence must be of undisputed authenticity, unambiguous and undeniable (see, *Kokpelowitz &*

*Co., Inc. v. Mann,* 83 A.D.3d 793, 921 N.Y.S.2d 108 [2 Dept. 2011])". The Fee Motion is necessarily barred by the binding nature of the Signed Order. In pursuing the Fee Motion, the DB Defendants are wasting time and resources of the Court, Bolger's clients (the DB Defendants), and the Plaintiff. Accordingly, the Fee Motion is frivolous (see (*Matter of Kover,* 134 AD3d 64 [1st Dept 2015]). Bolger's Fee Motion, filed 147 days later, ignores this binding directive (*Mclean*).

### Failure to State a Claim

43.  The Fee Motion further fails to state a claim under CPLR 3211(a)(7), as it does not establish a viable basis for the Anti-SLAPP fees under N.Y. Civil Rights Law § 70-a. Accepting Bolger's allegations as true, §70-a requires a CPLR 3211(g) dismissal, which did not occur due to the Voluntary Discontinuance (¶7). The Signed Order's "without liability" directive (¶15) further precludes relief, rendering the motion legally deficient (*Leon v. Martinez,* 84 N.Y.2d 83, 87-88 [1994]; Kyowa Seni, Co. Ltd. v. *ANA Aircraft Technics,* Co. Ltd., 2025 NY Slip Op 03281 [1st Dept. 2025]).

### Collateral Estoppel

44.  The Signed Order constitutes a final judgement on fee liability, precluding relitigation after a full opportunity to litigate at the November Conference and in the 30-day window after the entry of the Signed Order (*Ceccarelli v Morgan Stanley Priv. Bank N.A.,* 763 F Supp 3d 550 [SDNY 2025]). *Ceccarelli* stipulates that "The New York Court of Appeals has identified two

requirements for collateral estoppel to apply: (1) 'the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) **"the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'** *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 492 N.Y.S.2d 584 (N.Y. 1985)." Bolger's attempt to circumvent this is frivolous and collateral estoppel precludes Bolger from relitigating the SC Lawsuit via the Fee Motion (*789 St. Marks Realty Corp. v Michetti*, 212 AD2d 535 [2d Dept 1995]). *Ceccarelli* applies to the Fee Motion and supports its dismissal because the issue of the Plaintiff's liability for attorneys' fees has been settled by the binding Signed Order. Collateral estoppel bars the DB Attorneys from relitigating the attorneys' fees issue *Buechel v Bain*, 97 NY2d 295 [2001]; *Ryan v NY Tel. Co.*, 62 NY2d 494 [1984].

45.    The SC Lawsuit has been dissolved since January 15, 2025. Bolger filed a Notice of Entry on January 27, 2025. Bolger's five-month delay post-Notice of Entry ignores this resolution, warranting sanctions. Bolger had a "full and fair opportunity to litigate in the prior proceeding" (*Conason v Megan Holding, LLC*, 25 NY3d 1 [2015]). Suddenly and cynically, Bolger has filed the Fee Motion, less than two weeks before the June 16, 2025, deadline for the DB Defendants' submission of the dismissal motion in the SDNY Action If Bolger believes that this frivolous Fee Motion will move the Plaintiff to withdraw her SDNY complaint, she is wildly mistaken.

46. Although this is a federal case, *Ranasinghe v Kennell*, 2017 US Dist LEXIS 10512 [SDNY Jan. 24, 2017, No. 16-CV-2170 (JMF)] is persuasive here. In *Ranasinghe* Judge Furman opened his Opinion and Order with the following statement: "It is a 'fundamental precept' of the American legal system 'that a *right, question or fact distinctly put in issue and directly determined by a court* of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.' *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) (internal quotation marks omitted). This precept, embodied in the doctrines of *res judicata* and collateral estoppel, is 'central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.' *Id.* Indeed, '[t]o preclude parties from contesting matters that they have [*2] had a full and fair opportunity to litigate' not only 'protects their adversaries from the expense and vexation attending multiple lawsuits,' but also 'conserves judicial resources[] and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' *Id.* at 153-54." Allowing Bolger to pursue this frivolous Fee Motion, which defies the Signed Order's binding "without liability" directive, would inequitably nullify the good-faith agreement and burden the Court unnecessarily with resolved matters (22 NYCRR 130-1.1(c)(1).It would be inequitable to allow Bolger to proceed with this Fee Motion, which is an affront to the authority of the Court and seeks to bulldoze over the good faith agreement per the binding Signed Order.

Page 30 of 51

*Inapplicability of anti-SLAPP Law*

47.    The Anti-SLAPP statute (N.Y. Civil Rights Law § 70-a) does not apply to the Fee Motion, as no CPLR 3211(g) dismissal occurred. The Plaintiff voluntarily withdrew her case, it was not dismissed by the Court, **which is a crucial distinction in determining the applicability of N.Y. Civil Rights Law § 70-a. The Voluntary Discontinuance and Signed Order bar Bolger from seeking attorneys' fees. Bolger's conduct is deceitful at worst and belies slopping case management on her part at best.** The SC Lawsuit was voluntarily discontinued, not dismissed, making the Fee Motion baseless (*Kyowa Seni, Co., Ltd. v. ANA Aircraft Technics, Co., Ltd.*, 2025 NY Slip Op 03281 [1st Dept. 2025]).

48.    Bolger is attempting to lay the foundation for a defense in the SDNY Action that the Plaintiff lost in the SC Lawsuit so that she can assert that the Plaintiff is a serial litigator and a serial loser. This is disingenuous. Filing the Fee Motion to build an Anti-SLAPP defense in the SDNY Action on the deceitful assertion that the causes of action in the SDNY Action are the same as in the SC Lawsuit is not a good faith reason to file a Fee Motion. The SC Lawsuit had merit as evidenced by the fact that the copyright infringement cause of action in the SDNY Action has teeth and the presiding judge recently granted the Plaintiff an unprecedented cure to the previously uncopyrighted Tweet that has upset the DB Attorneys' dismissal strategy in the SDNY Action which relied on that now-cured defect.

*Untimeliness*

49.  Today (i.e., the day the Plaintiff filed this Cross-Motion in NYSCEF) is June 11, 2025, exactly 147 days or 4 months and 27 days (including January 15, 2025, but excluding the end date) since January 15, 2025, since Bolger filed the Notice of Entry (NYSCEF Doc. No. 28) without reservation. The purpose of the notice of entry is to confirm that a court order i.e., the January 15, 2025, Signed Order (again, which was "without prejudice and without liability"). The Defendants did not "win the case". The Plaintiff filed the Voluntary Discontinuance as instructed by and agreed with Hon. Judge d'Auguste J.S.C. and the Defendants' attorneys including Cherner during the November Conference. *(Sutton v Plainfield Bd. of Educ.*, 2024 U.S. App. LEXIS 8595 [3d Cir Apr. 10, 2024, No. 22-2062]).

50.  There being no winner of the SC Lawsuit because the Plaintiff voluntarily withdrew her complaint on December 31, 2024, Bolger filed a Notice of Entry, two weeks later. According to the NYSCEF guidelines[2] under the heading "After Entry of Judgement", the notice of entry "tells the person who loses, the date the judgement was entered (recorded) and when the time to appeal started. The person who loses has 30 days to start the appeal process." There was no winner or loser in the SC Lawsuit, presumably the 30-day period would have applied to the DB Defendants. Bolger could have and failed to contest the "without prejudice and without liability" provision in Voluntary Discontinuance and/or binding Signed Order. The Notice of Entry waives the

---

[2] New York State Unified Court System, Judgements, https://nycourts.gov/courthelp/GoingToCourt/judgments.shtml, last visited June 3, 2025.

DB Defendants' fee claims, as NYSCEF guidelines allow 30 days to contest orders.

51. **The NYSCEF guidelines further stipulate in paragraph 2 in the same section, "Once the judgement is entered (recorded), it can be enforced."[3]** Because the Voluntary Discontinuance and Signed Order stipulate that the Plaintiff's discontinuance of the case by and on December 31, 2024, is "without prejudice and without liability", <u>**surely that means that the Plaintiff can also enforce the Voluntary Discontinuance and Signed Order in this Cross Motion as against the DB Defendants and the DB Attorneys.**</u> Per the NYSCEF guidance, the Plaintiff can sue Bolger and the other Defendants to respect the good faith agreement made in the November Conference and the binding Signed Order. The Plaintiff respectfully asks the Court to enforce the Voluntary Discontinuance, and the binding Signed Order which memorialize the November Conference agreement.

52. There was no money judgement at the end of the SC Lawsuit. It concluded with the Plaintiff's Voluntary Discontinuance and the Signed Order that clearly states that it is "without prejudice and without liability". Bolger filed the Notice of Entry without comment or complaint. Why now (i.e., about two weeks before the DB Attorneys' motion of dismissal is due in the SDNY Action)? Waiting five months to ask the Court to amend the Signed Order to include the DB Defendants' attorneys' fees, so close to the June 16, 2025, deadline for the

---

[3] Id.

DB Attorneys to submit a motion to dismiss on behalf of the DB Defendants in relation to the SDNY Action, smacks of desperation. It is unsustainable (*Seymour v Houvanian*, 2023 NY Slip Op 33433 [U] [Sup Ct, NY County 2023]) and frivolous. The time to ask for caveats and conditions has passed. Filing the Fee Motion in June 2025 only makes sense if one reframes it as bad faith and frivolous intimidation tactic to force the Plaintiff to forfeit the SDNY Action. That the Daily Mail Defendants and their Ballard Spahr attorneys, Thomas Sullivan, Esq. and Saumya Vaishampayan, Esq. have not followed suit in filing a fees motion is a significant marker of the frivolity of the Bolger Motion. The Plaintiff notes that the DM Attorneys were present at the November Conference while Katherine M. Bolger, Esq. was absent, which is self-evident based on her bringing this Fee Motion. Perhaps the DM Attorneys understood, as does the Plaintiff, that the Fee Motion is made in bad faith.

### *Harassing Intent*

53. The Fee Motion, timed two weeks before the SDNY Action's motion to dismiss deadline (June 16, 2025), and Bolger's March 2025 threats to the Plaintiff where Bolger threatened to file a fee motion in the Supreme Court unless the Plaintiff withdraws the SDNY Action, evince an intent to harass (22 NYCRR 130-1.1.(c)(2). This is the definition of frivolous in the meaning of 22 NYCRR 130-1.1(c) (*Borstein v Henneberry*, 132 AD3d 447 [1st Dept 2015]); (*In re Jaffe*, 208 AD2d 215 [2d Dept 1995]) and a waste of judicial time and resources under 22 NYCRR § 130-1.1(c)(2).

### B.    The Fee Motion Contains False Statements

*Misrepresentation of Amended Complaint*

54.    Bolger falsely claims the Amended Complaint was disobedient.

*False Claim of "Same Claims"*

55.    Bolger's June 5, 2025, Letter falsely asserts the SDNY Action involves the "same claims" as the SC Lawsuit (Ex. XX). The SDNY Action focuses on copyright infringement, distinct from the SC Lawsuit's defamation claims, constituting intentional deceit under Judiciary Law § 487.

*Omission of November Conference*

56.    Bolger omits her absence from the November Conference and the resulting good-faith agreement barring fee liability, misleading the Court about the Signed Order's context (*Hahn*).

### C.    The DB Attorneys' Conduct Violates Professional Ethics

57.    The NYRPC, effective April 1, 2009, and amended periodically, govern attorney conduct in New York. The following rules are relevant to the alleged misconduct by the DB Attorneys.

*Rule 3.1: Not Meritorious Claims and Contentions*

58.    The Fee Motion lacks legal or factual basis, violating non-frivolous claim requirements.

59.    Rule 3.1 states that "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. A lawyer may bring or defend a proceeding or assert or controvert an issue of the lawyer reasonably believes that facts may be

developed that will provide a basis that is not frivolous." The DB Attorneys' frivolous Fee Motion violates Rule 3.1. By misrepresenting the Plaintiff's Amendment as disobedient, ignoring the Voluntary Discontinuance and the Signed Order, and falsely claiming the SDNY Action involves the "same claims", the DB Attorneys advanced arguments lacking a basis in fact or law, especially given the SC Lawsuit's dissolution and distinct nature of the SDNY Action. The pattern of misrepresentation and the pursuit of a baseless Fee Motion suggest a violation of this rule, supporting the Plaintiff's request for sanctions against the DB Attorneys.

### Rule 3.3: Conduct Before a Tribunal

60. Bolger's false statements (¶¶11-13) breach truthfulness obligations.

61. Rule 3.3(a) stipulates, "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;...(3) offer or use evidence that the lawyer knows to be false". Bolger's statement in the Bolger Motion (¶¶11-13)) and the June 5, 2024, Letter, which includes false assertions (e.g., calling the Amendment disobedient and claiming the SDNY Action involves the "same claims"), violate Rule 3.3 if made knowingly. Bolger's filing of the Notice of Entry without reservation strongly suggests she knew the SC Lawsuit was dissolved, making her representation intentional, thus supporting the Plaintiff's request to sanction the DB Attorneys for b reach of

Rule 3.3 in addition to the Judiciary Law § 487 claim, as both address intentional deceit.

### Rule 4.4: Respect for Rights of Third Persons

62.  The Fee Motion's harassing purpose burdens the Plaintiff without legitimate aim. Rule 4.4(a) stipulates "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person". This speaks to Bolger's litigation strategy involving demonizing the Plaintiff through disparaging and false statements. The frivolous Fee Motion and misrepresentations appear designed to harass and burden the Plaintiff Pro Se, which motion is lacking a legitimate legal purpose.

63.  This violation of Rule 4.4, coupled with the DB Attorneys' deceitful conduct under Judiciary Law S 487(1), including the threat of filing a fee motion to withdraw the SDNY Action and Bolger's pattern of "vexatious litigation tactics" including false statements aimed at portraying the Plaintiff negatively as incompetent and chronically wrong, justifies the Plaintiff's request for dismissal of the Fee Motion and the imposition of sanctions against the DB Attorneys for abusing the judicial process. The Fee Motion also smacks of retaliation for the Plaintiff's not obeying Bolger's orders to withdraw and for the fact that the presiding judge in the SDNY Action granted the Plaintiff a very important cure which demolishes the DB Defendants' defense argument.

*Rule 5.1: Responsibilities of law firms, partners, managers and supervisory lawyers*

64. DWT Failed to supervise Bolger and Cherner, ratifying their misconduct in filing the Fee Motion.

65. Rule 5.1(a) states that "A law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to these Rules. (b)(1) A lawyer with management responsibility in a law firm shall make reasonable efforts to ensure that other lawyers in the law firm conform to these Rules. (2) A lawyer with direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the supervised lawyer conforms to these Rules."

66. Rule 5.1(d) A lawyer shall be responsible for a violation of these Rules by another lawyer if:

(1) the lawyer orders or directs the specific conduct or, with knowledge of the specific conduct, ratifies it; or

(2) the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the other lawyer practices or is a lawyer who has supervisory authority over the other lawyer; and

(i) knows of such conduct at a time when it could be prevented or its consequences avoided or mitigated but fails to take reasonable remedial action; or

(ii) in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable

Page 38 of 51

remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated.

### Rule 5.2 Responsibilities of a Subordinate Lawyer

67. Cherner, despite being a relatively junior lawyer, is liable for participating in the frivolous Fee Motion.

68. Rule 5.2 stipulates:

"(a)   A lawyer is bound by these Rules notwithstanding that the lawyer acted at the direction of another person.

(b)   A subordinate lawyer does not violate these Rules if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an *arguable question of professional duty.*"

### Rule 8.4: Misconduct

69. The DB Attorneys' deceit and harassment prejudice judicial administration (*Smith v. Smith,* 2006 N.Y. Misc. LEXIS 2851 [Sup Ct, Westchester County June 20, 2006, No. 13366/99).Rule 8.4 stipulates that "A lawyer or law firm shall not:...(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (h) engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer". The DB Attorneys' pattern of false statements and frivolous filings constitutes dishonest and deceit (Rule 8.4(c)) and is prejudicial to the administration of justice (Rule 8.4(c)) and is prejudicial

to the administration of justice (Rule 8.4(d)) by wasting judicial resources and harassing the Plaintiff. This reflects poorly on their fitness as lawyers (Rule 8.4(h)).

70. In *Smith*, the headnote stipulates: "Under N.Y. Code Prof. Resp. Canon 7, every attorney has an ethical obligation to zealously represent his or her client. **That obligation, however, is not a license to engage in unrestricted warfare. To the contrary, the outer limit of the conduct of an attorney is that it must come within the bounds of the law. N.Y. Code Prof. Resp. EC 7-1. Thus, an attorney is chargeable with the knowledge that the duty of lawyers to zealously safeguard the rights of their clients does not confer upon them the unbridled prerogative to trespass upon the orderly functioning of the courts or upon the rights of others.**" This prohibition against overreaching one's professional responsibility as an attorney was echoed in *Nath v Texas Children's Hosp.*, 446 SW3d 355 [Tex 2014]: 'An attorney has ethical obligations to both his client and to the judicial system as an officer of the court.16 Though zealous advocacy is expected of an attorney - indeed, it is a professional obligation - the attorney must not permit client desires to supersede the attorney's obligation to maintain confidence in our judicial system.17 As our rules of professional conduct unambiguously require: 'A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate [**27] others.'18 Further, these rules of conduct require an attorney to 'maintain the highest standards of ethical conduct' throughout representation."