1:2024-cv-09978-ALC

# Unified Response Letter-Motion to the Court (April 21, 2026)

1:2024-cv-09978-ALC



**SHAYKHOUN LAW**

Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: +1-929-996-5662 | +1-929-408-4531

RECEIVED SDNY PRO SE OFFICE 2026 APR 21 PM 12: 54

April 21, 2026

**<u>VIA HAND DELIVERY TO PRO SE UNIT</u>**

The Honorable Andrew L. Carter, Jr.
U.S. District Court, Southern District of New York,
40 Foley Square, Room 435
New York, NY 10007

**RE: *SHAYKHOUN V. THE DAILY MAIL ET. AL.*, CASE NO. 1:24-CV-09978-ALC (S.D.N.Y.) – PLAINTIFF'S LETTER ("UNIFIED RESPONSE" OR "LETTER"); REQUEST TO FILE TO THE PERFECTED THIRD AMENDED COMPLAINT ("TAC" OR "PERFECTED TAC"); DENIAL OF MOTIONS TO STRIKE; AND FINDING OF § 1983 LIABILITY PREDICATE.**

Dear Judge Carter:

1. Rule 15(a)(2)'s liberal mandate applies with particular force here because the TAC does not merely add parties but stabilizes the master record by unmasking a mathematical licensure impossibility and a procedural Blockade (¶2). These immutable facts stabilize the record by answering why I have been subjected to synchronized media derision since 2019; it is a retaliatory response to the unmasked licensure deficit. This forensic foundation precludes the finding of "futility" and satisfies the Rule 15 mandate to ensure a determination is on the merits rather than through administrative friction. As an 18-year

**1:2024-cv-09978-ALC**

veteran of the New York Bar and Officer of the Court, I submit this TAC not to harass, but to fulfill my affirmative ethical obligation under Rule 8.3 to report a documented licensure fraud and a mathematical impossibility that has compromised the integrity of the public record; all factual contentions herein are based on immutable forensic evidence and are submitted in good faith pursuant to Rule 11(b).

**2. The Synchronized Retaliatory Protocol (§ 1983 and RICO liability):** The Perfected TAC addresses the Court's mandate to stabilize the record regarding my initial § 1983 and declaratory relief claims. I realized my approach to the 2019 smear campaign was too myopic; the pattern of derision is a systematic retaliatory response to my unmasking of Osama's licensure deficit – a whistleblowing event that only Osama Abu Dehays ("Osama") and Pillsbury (the "Enterprise") had the motive to sponsor. I stake the remainder of my "Three Plinths" on exposing this truth. The state court has functioned as a Due Process Vacuum: (i) an "off-the-record" conference on November 20, 20224, where the Court issued an extrajudicial ultimatum, mandating that I either  pay attorneys' fees or withdraw the action; and (ii) a 314-day administrative blockade (Index No. 100578/2024) ("Blockade") that stalled my June 2025 Cross-Motion for Sanctions (Ex. N/TAC) while providing near-instantaneous attention to Defendants' filings (Ex. 4). The ongoing Blockade facilitates a state-authorized blind spot, serving the interests of all Defendants, including The Independent, whom the state court forbid me from joining. This is evidenced by the April 10, 2026, NYSCEF upload of a fee waived denial (Ex. 3) that was signed in October 2025 but withheld for six months to maintain administrative friction.

This raises a threshold forensic inquiry: **Who are counsels' real clients?** Their unified front confirms they operate as a Phalanx under an unmasked "Shadow Principal." The synchronized nature of the defense suggests a centralized funding source and a common "Shadow Principal" directing the Enterprise's strategy. The record reflects specific instances of "color of law" activity and RICO predicates used to sustain the Enterprise: (i) **Administrative Veneer (RICO Predicate):** The Pillsbury FARA (5198) filing (Exhibit B/TAC) registered a mathematical impossibility with the Department of Justice ("DOJ"), converting a licensure deficit into a National Security concern. Using interstate wires to disseminate fraudulent data to the DOJ constitutes a predicate act under 18 U.S.C. § 1343, providing the "legal veneer" necessary for the April 16 Triple Strike; (ii) **Tactical Harassment:** Defendants converted the state court into a vehicle for administrative harassment by filing an anti-SLAPP fee motion in a terminated action nearly six months after my formal withdrawal (accepted Jan. 27, 2025). This was not a pursuit of justice, but a retaliatory strike designed to create the "administrative friction" Defendants now cite as a reason to strike the TAC. These maneuvers, culminating in the redundant "April 16 Triple Strike" (Ex. 5), constitute joint action and a *per se* deprivation of rights under 42 U.S.C. §1983. Under *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), private actors are liable when they move in lockstep with state authorities to deprive a litigant of due process.

**3. The Completed Constitutional Chill of New York's Anti-SLAPP Law:** The application of the New York anti-SLAPP statute in the state court suit has already

**1:2024-cv-09978-ALC**

effectively extinguished my constitutionally protected property interest in my professional standing. Defendants converted a procedural "shield" into a punitive retaliatory mechanism, by leveraging state-law fee-shifting to penalize my federal filing. This violation of the First Amendment Right to Petition and the Fourteenth Amendment Due Process Clause is not a hypothetical risk; the Blockade, synchronized with the threat of bankruptcy-level fees in a terminated action, has created a present and completed "chilling effect" on my judicial redress. Under the *Erie/Hanna* doctrine, state-law mechanisms cannot be used as forensic silencers to override Rule 15's liberal amendment mandate. The unbalanced rate of response between the state court's near-instantaneous attention to the Defendants versus the 314-day abeyance of my own motions constitutes *prima facie* evidence of the joint participation and concerted activity alleged in the Perfected TAC. I am entitled to discover the origin and funding of the continuous press denigration initiated against me in 2019; as an Officer of the Court, I have a professional and ethical duty to expose this institutional fraud. Public policy and the integrity of the bar demand that this matter be adjudicated on the merits, not suppressed through procedural friction.

**4. The Poirot Principle and the Mandate to Amend:** Drafting the Perfected TAC revealed that, in Hercule Poirot's words, *"I am an imbecile. I only see half the picture."*[1] This case transcends my "unhappiness" over the viral Tweet; it documents a systematic retaliatory response to the unmasking of the global multi-billion-dollar fraud by an Enterprise that considered itself "too big to fail." This institutional hubris necessitates the "forensic silencer" of synchronized media derision to protect a licensure deficit that, if acknowledged, would dismantles the Enterprise's jurisdictional standing. Reverse-engineering the "Karen" sequence reveals that the original defamation and copyright infringement cases missed the wood for the trees. The "wood" is a fundamental jurisdictional fraud at the heart of a global law firm; the "trees" are synchronized delivery mechanisms for a retaliatory protocol. The 2019 "first strike" by *The Daily Caller ("TDC")* was a classic "bait-and-switch," intended to expose Osama's Licensure Deficit but pivoting into a targeted strike against me. TDC executed this pivot just days after Pillsbury PR confirmed Osama's 2002 Jordanian law license, thus inadvertently documenting a mathematical impossibility (Exhibit P/TAC, Ex, 3) under the Jordanian Bar Association ("JBA") founding rules. Poirot observed that once an investigator looks behind the "administrative curtain" to find the hidden motive the suspect's only move is to attack the investigator's methods. Compensated by the Enterprise to suppress the Licensure Deficit, the Media Defendants functioned as the "delivery mechanism" for a RICO Phalanx whose coordination with the Blockade constitutes "joint action" under § 1983.

**5. Rebuttal to Motion to Strike (Rule 12(f)):** Defendants collectively characterize the Perfected TAC as "too long" and a "shotgun pleading," yet dedicate significant portions of their opposition to quibbling over typographical errors. This focus on clerical minutiae is a tactical diversion intended to distract the Court from the serious fraud allegations memorialized in the TAC. Sullivan's request for a 60-day grace period to respond to this

---

[1] The Double Clue." *Agatha Christie's Poirot*, created by Clive Exton, season 3, episode 7, Carnival Film & Television / LWT, 1991.

1:2024-cv-09978-ALC

"futile" pleading belies these assertions (Ex. 6). Leveraging an LL.M. in Corruption, Law and Governance and eight years of professional immersion in Doha, I have tabulated this case in the TAC not as a media dispute, but as a clinical audit of a global multi-billion-dollar fraud. This complexity transcends the First Amendment standards that Defendants, who are media lawyers rather than forensic auditors, use to insulate the collective Shadow Principal. The Extended Chronology (Ex. 7, p.p.2-10, rows 3-14) clearly maps *inter alia* the Licensure Fraud and the actual notice I gave to Pillsbury leadership in March 2020. What Defendants must label "improper" is Pillsbury's institutional failures to address actual notice of Osama's licensure deficit for the duration of his employment, a deficit that underpins his status as a Registered Foreign Lawyer in England and Wales (Ex. 8). The Enterprise's subsequent seven-year retaliatory "rinse and repeat" smear campaign, culminating in the March 2 (Ex. H/TAC) and April 11 (Ex. 9 – includes "conspiracy theory" comments) placements in *The Volokh Conspiracy,* demand the particularity provided in the TAC. The comments under the April 11 post mirror the verbatim rhetoric in Defense Counsel's opposition, suggesting a synchronized "feedback loop" between the media and this litigation. If Sullivan facilitated these placements to prejudice these proceedings, such conduct constitutes a breach of Rule 3.6 and further necessitates the particularity provided in the TAC to survive this extrajudicial "forensic silencer." Under *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), Rule 8(a) does not empower Defendants to strike a complaint simply because it contains the requisite detail to expose an Enterprise. Rule 12(f) disfavors motions to strike and must be denied unless allegations have no possible relation to the controversy. Defendants characterize the TAC as "futile" despite its exposure of the Enterprise's 12-year continuous fraud cemented by the Pillsbury 2014 FARA (5198) filing registering Osama's partnership. Under *Foman v. Davis,* 371 U.S. 178 (1962), leave to amend must be "freely given" to stabilize a record previously obscured by institutional dormancy. As Officers of the Court, Counsel has an affirmative duty under Rule 8.3 to report fraud and the Unauthorized Practice of Law, rather than synchronizing filings to suppress the evidence of it. Defendants' excessive protestation intimates that the TAC has struck the core of the Enterprise. As the maxim holds: *Veritas vos liberabit* ("The truth shall set you free." John 8:12).

**CONCLUSION:** For the reasons set forth above, I respectfully request that the Court: (i) **grant leave** to file the Perfected TAC; (ii) **deny** Defendants' synchronized motions to strike, which seeks to prioritize "marketing predicates" over documented truth; (iii) **find** that the coordination with the 314-day administrative blockade constitutes a valid predicate for Section 1983 liability; and (iv.) **grant** such other and further relief as the Court deems just and proper to stabilize a master record previously obscured by institutional dormancy. Public policy and the "freely given" mandate of Rule 15 demand that the truth be recorded, not suppressed through administrative friction.

**1:2024-cv-09978-ALC**

Respectfully submitted,

Sonya Shaykhoun, Esq.,
*Plaintiff – Attorney Pro Se*

Enclosures:  Ex. 1: Perfected TAC
Ex. 2: Redlined comparison of original TAC filed April 8, 2026
Ex. 3: State Court Order (Index No. 100558/2024) – April 10, 2026
Ex. 4: NYSCEF Filings Screenshot
Ex. 5: ECF Ledger – April 16 Triple Strike
Ex. 6: Thomas Sullivan, Esq.'s April 14 request
Ex. 7: Extended Chronology
Ex. 8: Osama's Registered Foreign Lawyer License (England & Wales)
Ex. 9: Eugene Volokh April 11 Blog Post and Comments

cc:    ALC Chambers: 2 copies (ALC Copy & Clerks Copy) delivered by hand and via email
Defense Counsel: via ECF (after Pro Se Unit upload) and via email

1:2024-cv-09978-ALC

# EXHIBIT 1: Perfected Third Amended Verified Complaint (TAC)

1:2024cv09978-ALC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONYA HASHIM SHAYKHOUN, ESQ.

**Plaintiff,**

Civil Action No.
1: 24-cv-09978-ALC

v.

**THIRD AMENDED VERIFIED
COMPLAINT**

AL JAZEERA MEDIA NETWORK          Date Filed: April 8, 2026

PILLSBURY (CURRENT AND ALUMNI)

DAVID T. DEKKER, ESQ.
EDWARD FLANDERS, ESQ.
EDWARD A. PERRON, ESQ.
OSAMA ABU DEHAYS
PILLSBURY WINTHROP SHAW PITTMAN LLP
DEBRA ERNI

THE DAILY CALLER

ETHAN BARTON
JOHN HAWLEY
LUKE ROSIAK
THE DAILY CALLER NEWS FOUNDATION ("DCNF")

THE DAILY MAIL

THE DAILY MAIL
DAILYMAIL.COM
DAILY MAIL AND GENERAL TRUST PLC ("DMGT"),
NOA HALFF
JONATHAN HARMSWORTH, 4th VISCOUNT ROTHERMERE

i

1:2024cv09978-ALC

## THE DAILY BEAST

THE DAILY
BEAST COMPANY LLC ("TDB")
AMANDA J. MCDOUGALL (A/K/A AJ MCDOUGALL)
BEN SHERWOOD,
JOANNA COLES
IAC INC. ("IAC")
TRACY CONNOR
BARRY DILLER

## THE INDEPENDENT:

BEVAN HURLEY
THE INDEPENDENT
GEORDIE GREIG
LOUISE THOMAS
RICHARD BEST

## THE LAW FIRMS AS AGENTS OF THE RICO

BALLARD SPAHR LLP
THOMAS SULLIVAN, ESQ.
SAUMYA VAISHAMPAYAN, ESQ.

CAMERON STRACHER, ESQ.

DAVIS WRIGHT TREMAINE LLP
KATHERINE M. BOLGER
LINDSEY B. CHERNER

## THIRD AMENDED VERIFIED COMPLAINT

ii

1:2024cv09978-ALC

# Table of Contents

THIRD AMENDED VERIFIED COMPLAINT ........................................................................... II

*TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION* .................... *iv*

I.    *STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)* ............................ IV

II.   *FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(D))* ................................. V

III.  42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION ................................. V

IV.   (18 U.S.C. § 1512) EQUITABLE POWERS AND ALTERNATIVE SERVICE .................. VI

V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY  VII

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   JURISDICTION & VENUE.................................................................................... 2

III.  PARTIES........................................................................................................ 3

   A. PLAINTIFF.................................................................................................... 3
   B.     THE STATE ACTORS AND ENTERPRISE CORE............................................... 4
   C.     PILLSBURY (FARA NO. 5198) AS A STATE ACTOR: THE ENTWINEMENT DOCTRINE............ 4
   D.     JOINT PARTICIPATION IN THE WITNESS NEUTRALIZATION................................ 8
   E.     THE PUBLIC FUNCTION EXCEPTION............................................................. 8
   F.     THE "LOBBYING MEMBRANE"...................................................................... 9
   G.     THE INSTITUTIONAL AND STRATEGIC PROXIES ............................................ 10

STATEMENT OF FACTS ...................................................................................... 11

IV.   THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT .............................. 12

V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE............................................ 13

VI.   AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION ..................................... 14

VII.  THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION       16

VIII. THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA ...... 16

IX.   THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH ............. 17

X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE.................................................................................... 18

XI.   THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE ...... 18

XII.  THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS  19

XIII. THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM .. 20

*XIV.    NOTICE OF ELECTION: ALTERNATIVE SERVICE* .................... *21*

XV.   CAUSES OF ACTION......................................................................................... 22

   COUNT I:     DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983) .... 22
   COUNT II:    CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(D)) .................................... 22
   COUNT III:   CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) – THE KKK ACT)       24
   COUNT IV:   FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512) ................................ 24

VERIFICATION................................................................................................... 26

CERTIFICATE OF COMPLIANCE ........................................................................ 28

1:2024cv09978-ALC

## TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION

### *I.    STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)*

*Adickes v. Kress Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970): The primary authority for "Joint Participation," proving that private law firms and media outlets act under color of law when "entwined" with state and foreign sovereign power............................................................................................ p. 8

*Brentwood Academy v Tennessee Second. Sch. Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001): Supports the "Entwinement Doctrine" regarding Pillsbury's FARA status and public policy functions for Qatar........ p. 4

*Lugar v. Edmondson Oil Company, Inc,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982): Establishes that the "prejudgment attachment" of rights (via an inverted Anti-SLAPP statute) constitutes state action............................ p. 20

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971): authorizes federal intervention in this case by proving that the ten-month "Judicial Abeyance" in state court constitutes the "Bad Faith or Harassment" exception to the standard rule of federal abstention............................................ p. 16

1:2024cv09978-ALC

## II.    *FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(d))*

*Boyle v. United States*, 129 S.Ct. 2237, 173 L.Ed.2d 1265, 556 U.S. 938, 77 USLW 4474 (2009): Establishes the "Association-in-Fact" enterprise, supporting the link between AJMN, Pillsbury, and the Media Proxies.................................p. 12

*Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989): The foundational authority for "Open-Ended Continuity," proving that the TCO's "regular way of doing business" is racketeering......p. 23

*Salinas v. U.S.*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997): Supports RICO Conspiracy liability even for late-joining defendants who do not personally commit every predicate act - the "Moving Train" doctrine.........................p. 11

## III.    42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION

*Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998): **CRITICAL:** Explicitly recognizes that a conspiracy to cause the termination of "at-will" employment (or the "Economic Execution" of a career) constitutes an *injury    to    property    under    the    KKK    Act    and RICO*...............................................................p.p. 12,  24

*Phipps v. Kuonen*, 2025 NY Slip Op 05268, Index No. 513984/21, No. 2021-08919 (N.Y. App. Div. Oct 01, 2025): acts as a forensic "foil" to demonstrate how the New York judiciary's application of the "pure opinion" defense under the Anti-SLAPP

1:2024cv09978-ALC

statute is being utilized to achieve Constitutional Erasure by eliminating property interests in reputation without discovery........................................ p. 20

*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971): Establishes the "Stigma-Plus" test; that when the state (via the judiciary/statute) attaches a "badge of infamy" (the "Karen" script) that alters legal status, Due Process is required................................................................p. 22

## IV.    (18  U.S.C.  §  1512)  EQUITABLE  POWERS  AND  ALTERNATIVE SERVICE

*Mullane v. Central Hanover Bank Trust Co*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950): The gold standard for "Actual Notice," justifying Plaintiff's election of service via digital and postal protocols given tactical compulsion.................................................................................p. 22

*International Shoe Co v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945): Supports personal jurisdiction over the transnational defendants based on their "Minimum Contacts" and "Digital Arson" directed at the District.................................................................................p. 3

1:2024cv09978-ALC

## V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY

*Savile v. Roberts*, 1 Ld. Raym. 374 (1698): As cited in the Preliminary Statement, this 328-year-old "plinth" of law confirms that damage to a person's "fame" is a compensable injury to Property.............................................. p. 1, p. 22


Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026............. p. 1

1:2024cv09978-ALC

## I.   PRELIMINARY STATEMENT

1.    Plaintiff, an eighteen-year veteran of the New York Bar, brings this Third Amended Complaint ("TAC") at the behest of this Court pursuant to its February 26, 2026, Order ("Order") which grants Plaintiff "leave to amend as to the Section 1983 and declaratory relief claims." While the Order granted leave to amend the Section 1983 and declaratory relief claims, the forensic drafting process revealed that these claims are inextricably linked to a broader transnational pattern. Consequently, Plaintiff expands this TAC to address a coordinated campaign of professional retaliation – a "Market Erasure" – executed by a Transnational Criminal Organization ("TCO") Plaintiff discovered while auditing Al Jazeera Media Network ("AJMN") in Doha (2011–2014). The TCO operates globally through an institutional network of elite law firms and media proxies to shield its operations and suppress Plaintiff's forensic findings.

2.    This is not a "defamation" case, nor is it a repackaging of defamation claims. Plaintiff brings this action under 42 U.S.C. § 1983 and Civil RICO to recover for a coordinated Market Erasure via a seven-year-long continual press assault triggered by Plaintiff's 2019 attempt to expose Osama Abu Dehay's ("Osama") lack of Jordanian law license. Lord Holt recognized in 1698, the "plinths" of law are reputation, personal security, and property[1] ("Three Plinths") are compensable interests. *See Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (confirming that damage to a man's fame is a sufficient ground to support an action for damages.) This TAC aligns with the words of Lord Holt: "if the plaintiff has a right, he must of necessity have a means to vindicate and maintain it."

---

[1] Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026. "Anglo-American law has long recognized a tort remedy for malicious prosecution. The interests jeopardized by malicious prosecution have been described as 'the plinths upon which the English Law has been reared – reputation, personal security, and property.' In 1698, Lord Holt recognized 'three sorts of damages, any of which would be sufficient ground to support this action': (1) The damage to a man's fame, as if it were a matter whereof he is accused be scandalous... (2) [Damages] done to the person; as where a man is put in danger to lose his life, or limb, or liberty, which has been always allowed in good foundation of such an action... (3) [Damages] to a man's property, as where he is forced to expend his money in necessary charges, to acquit himself of the crime of which he is accused..."

1

1:2024cv09978-ALC

3.    The Enterprise used "unlawful means" e.g., wire fraud and witness tampering, to interfere with Plaintiff's Three Plinths (Reputation, Personal Security, and Property). This coordinated interference seeks to protect the $Trillion extraction and achieve "Witness Neutralization." The Enterprise launched these attacks to suppress Plaintiff's documented evidence of the licensure void and the professional omissions of the "institutional shield" provided by Pillsbury (FARA No. 5198) and media proxies.

5.    Plaintiff seeks redress through four specific federal mandates: **Count I (42 U.S.C. § 1983):** Deprivation of Fourteenth Amendment property and professional standing under, facilitated by Joint Participation and judicial omission. **Count II (18 U.S.C. § 1962(d)):** A 15-year pattern of Wire Fraud and Witness Tampering executed to protect the TCO's extractions. **Count III (42 U.S.C. § 1985(2)):** Conspiracy to obstruct justice and retaliate against a federal witness under the Civil Rights Act of 1871 (the "KKK Act"). **Count IV (18 U.S.C. § 1512):** Federal Witness Tampering for the post-order retaliatory "Market Erasure" intended to obstruct this federal proceeding.

## II.    JURISDICTION & VENUE

6.    **Federal Question Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under the Civil Rights Act (42 U.S.C. § 1983), the RICO Act (18 U.S.C. § 1961 et seq.), and Federal Witness Tampering (18 U.S.C. § 1512.)

7.    **The State Action Nexus:** Jurisdiction over the Law Firm Defendants is proper under § 1983 because they acted "under color of law" through joint participation with a foreign state. Defendant Pillsbury (FARA No. 5198) is a registered agent for the State of Qatar, performing "public policy" functions "entwined" with state authority.

2

1:2024cv09978-ALC

8.    **Supplemental Jurisdiction:** This Court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367, as they form part of the same case or controversy as the federal RICO and Civil Rights claims.

9.    **Personal Jurisdiction:** Jurisdiction is proper because Defendants: (a) reside or transact business in this District; or (b) committed tortious acts, including witness tampering and a targeted attack on Plaintiff's Three Plinths, specifically directed at a Plaintiff residing and practicing law within this District. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (holding that personal jurisdiction exists over non-resident defendants who have "minimum contacts" with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.)

10.    **Venue:** Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a). A substantial part of the events occurred in this District.

11.    This action is timely pursuant to the Continuous Violation Doctrine, as the Enterprise executed a fresh overt act of Witness Neutralization on March 2, 2026, within the Court-ordered amendment period of this federal proceeding.

## III.    PARTIES

### A. Plaintiff

12.    Plaintiff Sonya Hashim Shaykhoun, Esq. is an eighteen-year veteran of the New York Bar (2008, Atty. Reg. # 4633293) with more than 22 years of experience in transactional, commercial, and regulatory matters, including senior in-house roles at major media and aviation entitles in the Arabian Gulf region (Exhibit A). She holds a Masters in English (St Andrews), a BA in Arabic and Law (SOAS), an LL.M. in Corporate and Commercial Law (SOAS), and a specialized LL.M. in Corruption, Law and Governance (Sussex/ROLACC.)

3

1:2024cv09978-ALC

**B.    The State Actors and Enterprise Core**

13.    **Al Jazeera Media Network ("AJMN"):** A Qatari private company for public benefit based in Doha, Qatar, controlled by the Government of Qatar, located at PO Box 23123, Qatar Radio and Television Corporation Complex, Wadi Al Sail, Doha, Qatar, email: legal@aljazeera.net, tel.: +974 4489 7777 or +974 4489 6666.

**C.    Pillsbury (FARA No. 5198) as a State Actor: The Entwinement Doctrine**

14.    **Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"):**

    i.    Pillsbury (www.pillsburylaw.com) is a global law firm headquartered in New York City at 31 W 52nd Street, New York, NY 10019, tel.: +1-(212)-858-1000. Pillsbury has 20 offices worldwide, approximately 700 lawyers, and focuses on energy, financial services, real estate and technology.

    ii.    Pillsbury opened its Doha, Qatar office in 2025, facilitating the "lateral relay" of the fraud from the GCC to the New York legal market. Pillsbury's Doha office, whose Managing Partner is Osama Abu Dehays, is located at Office 855, Tower 2, Globex Business Center, PO Box 14023, Doha, Qatar, tel.: +974-4020-6655

    iii.    Pillsbury is a Registered Foreign Agent (No. 5198) in connection with activities on behalf of the Embassy of Qatar (Exhibit C) and related entities. Pillsbury's status as a Foreign Agent performing "public policy" functions creates a "symbiotic relationship" with the sovereign that satisfies the federal standard for state action. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) (holding that a private entity's character can be that of a state actor when it is "entwined" with governmental management or control.)

    iv.    Pillsbury is sued in its institutional capacity and corporate capacity as a Joint Participant and a State Actor under the Entwinement Doctrine. The firm provides the

4

1:2024cv09978-ALC

Institutional Shield, and the "white shoe" legitimacy required to sanitize the Licensure Deficit and $Trillion extraction. Through its partners in this District and abroad, Pillsbury exercised "conscious avoidance" and executed the Procedural Blockade following the Actual Notice provided by the Plaintiff in March 2020.

14. **David T. Dekker, Esq. ("Dekker"):**

i. Dekker is a partner at Pillsbury's Washington D.C. office, located 1200 Seventeenth Street, NW, Washington DC 20036, email: david.dekker@pillsbury.com, tel.: +1-(202)-663-9384. Dekker is the firm chair at Pillsbury, specializing in construction law and litigation.

ii. This Defendant is sued in his individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the associated fraud on March 10, 2020, and elected to facilitate the Institutional Shield.

iii. Notably, despite his base in DC, Dekker oversees high-level sovereign account functions for the FARA No. 5198 registration, which is managed and executed through Pillsbury's New York headquarters, thereby satisfying the Entwinement and Joint Participation standards in this District.

15. **Edward Flanders, Esq. ("Flanders"):**

i. Flanders is the Managing Partner at Pillsbury's New York office located at 31 West 52nd Street, New York, NY 10019, email: edward.flanders@pillsburylaw.com, tel.: +1-(212)-858-1638 . Flanders is a litigation partner specializing in complex commercial disputes, insurance recovery, and arbitration.

ii. This Defendants is sued in their individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Defect and the associated fraud on March 6, 2020, and elected to facilitate the Institutional Shield.

5

1:2024cv09978-ALC

iii. As a primary contact for the Qatari sovereign account, Flanders' continued facilitation of the Procedural Blockade following the Actual Notice constitutes a deliberate act of Witness Neutralization and a refusal to cure the Original Sin of the $Trillion extraction.

16. **Edward A. Perron, Esq. ("Perron"):**

i. Perron is a (now retired) former firm-wide managing corporate partner at Pillsbury who served as a primary leadership node during the 2019 phase of the Market Erasure. Perron is affiliated with the Los Angelos office located at 725 South Figueroa Street, 36th Floor, Los Angeles, CA 90017, email: edward.perron@pillsburylaw.com, tel.: +1-(213)-488-7352.

ii. This Defendant is sued in his individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the associated fraud on March 10, 2020, and elected to facilitate the Institutional Shield.

iii. Perron's retirement from the partnership does not extinguish his liability for the Witness Neutralization protocols and the "conscious avoidance" of the forensic audit executed during his tenure.

17. **Debra Erni** ("Erni"):

i. Erni is a former Pillsbury partner and Managing Partner of Pillsbury's London office, located at Level 34, 100 Bishopsgate, London, EC2N 4AG, England. Debra Erni is currently a Partner at Holland & Knight LLP in their London office: Holland & Knight (UK) LLP, Leaf 27C, Tower 42, 25 Old Broad Street, London, EC2N 1HQ, England, London, email: Debra.Erni@hbklaw.com, tel.: +44 20 7071 9938.

ii. This Defendant is sued in her individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the associated fraud on March 8, 2020, and elected to facilitate the Institutional Shield.

6

1:2024cv09978-ALC

iii.   Notably, perhaps following Plaintiff's formal notifications, Erni removed her professional association with Pillsbury from her public Linkedin[2], an act of institutional erasure and conscious avoidance intended to obscure her role in the forensic Continuum and the Lateral Relay of the Fraud.

18.   **Osama Abu Dehays ("Osama"):**

i.   Osama is a Canadian Jordanian national who served as Chief Legal Officer of AJMN from approximately 2009 to 2012, when he was terminated and joined Bird & Bird, the international law firm, as a partner in the Firms International Media and Sports Sector Groups focusing on Abu Dhabi, Dubai, and Doha and wider MENA in 2012.[3]

ii.   Osama is currently a partner and managing partner of the Doha office of Pillsbury Winthrop Shaw Pittman LLP and listed on a Pillsbury FARA Form (Exhibit B.) Osama is the central node of the Licensure Deficit and the $Trillion extraction outlined in this complaint.

iii.   This Defendant is sued in his individual and professional capacity as a Joint Participant and a central node in the RICO Association-in-Fact, whose personal and professional actions in facilitating the Licensure Deficit and the subsequent Procedural Blockade triggered the Forensic Continuum described herein.

iv.   From approximately 2015 through 2024, Osama operated out of Pillsbury's London office, where he was listed as an active LLP member residing in the United Kingdom.

v.   On or about September 15, 2025, concomitant with the opening of Pillsbury's Doha office, Osama transitioned his residence and professional practice from London to Doha, Qatar, located at Office 855, Tower 2, Globex Business Center, PO Box 14023.)

---

[2] Debra Erni's LinkedIn page, https://www.linkedin.com/in/debra-erni-7817862ab/?skipRedirect=true. (Accessed April 11, 2026.)
[3] "Aljazeera Network's chief legal officer joins Bird & Bird", The Saudi Gazette, Zawya, June 18, 2012.

7

1:2024cv09978-ALC

vi.   This 2025 relocation constitutes a "Lateral Relay" and Procedural Blockade, executed by the Enterprise to move a key participant in the RICO Association-in-Fact beyond the immediate reach of this Court's discovery and to shield the Original Sin of his Jordanian licensure status from federal scrutiny.

**D.   Joint Participation in the Witness Neutralization**

19.   Under 42 U.S.C. § 1983, liability attaches to any person who, "under color of any statute, ordinance, regulation, custom, or usage," subjects a citizen to the "deprivation of any rights, privileges, or immunities secured by the Constitution." Pillsbury (FARA No. 5198) acted under color of law by willfully participating in a joint venture with the State of Qatar, an entwinement that used the "custom and usage" of the firm's diplomatic and legal status to execute a Market Erasure. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (holding that private parties, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.) This entwinement crystallized when the Enterprise deployed these state-deprived powers to neutralize Plaintiff as a witness to the $Trillion extraction and the Licensure Deficit (¶31.)

20.   This joint participation need not be direct; it may be established indirectly through a symbiotic relationship where the private actor's conduct is so "entwined" with state authority as to be fairly attributable to the state. Pillsbury's status as a Registered Foreign Agent for the Embassy of Qatar (FARA NO. 5198) provides the institutional membrane through which this entwinement operates, utilizing "white shoe" legitimacy to perform the public function of shielding a sovereign's $Trillion extraction from forensic audit.

**E.   The Public Function Exception**

21.   When Pillsbury (FARA No. 5198) utilizes its "white shoe" status to sanitize the deficient credentials Osama after Plaintiff's 2020 actual written notice to the Pillsbury Partnership

1:2024cv09978-ALC

(Exhibits D to Exhibit G) it constitutes *inter alia* a state-sanctioned omission intended to protect the Enterprise. Upon information and belief, the Enterprise is covering up a Swiss Army Knife of fraud.

**F.      The "Lobbying Membrane"**

22.      Pillsbury (FARA No. 5198) used its "award-winning lobbyists" through its Government Law & Strategies Practice to execute a "silver-bullet" solution[4]: branding Plaintiff a "Karen" to reduce the legal and regulatory risk of employing an unlicensed operative for fourteen years.

23.      The Institutional Shield exists to support: (i) **The Veneer of Legitimacy:** Pillsbury's (FARA No. 5198) uses its "white shoe" sanitize to sanitize the gap in Osama's legal credentials ensuring that corporate governance and judicial bodies rely on the firm's reputation instead of performing independent forensic due diligence; (ii.) **The "Relay of Fraud":** As Senior Legal Counsel and auditor at AJMN, Plaintiff observed how this shield is the mechanism used by the TCO uses to facilitate the "Lateral Relay" i.e., moving the fraud from Doha to the London and New York legal markets while suppressing any professional audit; (iii.) **Economic Incentive:** The Enterprise operates on a logic of mutual compromise and unjust enrichment. Each TCO participant receives a "cut" in the form of performance premiums or inflated salaries, incentivizing their continued conscious avoidance of the fraud.

24.      **The March 2nd Transformation:** This shield facilitated the March 2, 2026, strike on Reason.com, published 96 hours after the Order (Exhibit H.) Citing defense counsel Sullivan and Vaishampayan exclusively, this act masqueraded as "legal commentary" on a case that never hit the press but functioned as  a Predicate Act of Witness Tampering to ensure the $Trillion

---

[4] Pillsbury, Government Law & Strategies, https://www.pillsburylaw.com/en/services/regulatory/government-law-and-strategies/ (last accessed April 5, 2026).

9

1:2024cv09978-ALC

extraction remains buried ("it makes me question the Twitter account title, "The Commercially Savvy Lawyer," which is Plaintiff's online moniker and professional brand.)

25.     The "silver bullet" is not a legal defense; it is a market erasure protocol. By leveraging its global connections to categorize a whistleblower, a non-Big-Law anomaly who spent 15 years honing her legal and auditing skill set in the GCC and who knows where the bodies are buried - as "unstable," Pillsbury ensures that the $Trillion extraction remains buried behind a wall of "expert" influence.

## G.     The Institutional and Strategic Proxies
**The Media Defendants**

26.     In participating in the engineered take-down of Plaintiff, the Media Defendants a/k/a "Propaganda Proxies" functioned as the "silver bullet" to neutralize the legal and regulatory risk posed by Plaintiff's unique knowledge and chill her First Amendment rights.

### *The Defense Firms (strategic proxies)*

27.     Plaintiff alleges that the Defense Firms – Ballard Spahr, Davis Wright Tremaine ("DWT"), and Cameron Stracher - have transitioned their roles as legal advocates to joint participants in the Pillsbury (FARA No. 5198) /Enterprise. Their conduct is not a defense of their clients, but an active contribution to Witness Neutralization.

28.     Defendants Katherine Bolger ("Bolger") et al. (DWT) formally joined the Continuum in June 2025 by weaponizing a state-authorized "blind spot" in the N.Y. Anti-SLAPP statute. By resurrecting a "fee motion" on a dormant matter, Bolger executed a fee ambush designed to bankrupt the Plaintiff and deter her from progressing this litigation.

29.     Following this Court's Order, Cameron Stracher ("Stracher"), in lockstep with Sullivan and Vaishampayan, executed a "live" act of Federal Witness Tampering. Stracher made a verbal extortionate demand for $0.00 legal release (a thing of value) for no consideration and insisting that The Independent "had nothing to do with it" while Sullivan and Vaishampayan commissioned

10

1:2024cv09978-ALC

the simultaneous denigrating article in Reason.com, exclusively referencing Ballard Spahr counsel (¶24.) Such conduct constitutes Federal Witness Tampering (18 U.S.C. § 1512) and Extortion (18 U.S.C. § 1951).

30.     **The "Moving Train" of Adoptive Liability**: Under 18 U.S.C. § 1962(d), late-joining Defendants, i.e., TDC (2019), DWT, Ballard Spahr (2026), and Stracher (2026), assume liability for the prior and subsequent acts of the Enterprise. Their decision to execute the $0.00 release demand (the coordinated attrition) while on Actual Notice of Osama's license fraud constitutes a formal adoption of the TCO's 15-year campaign. *See Salinas v. United States*, 522 U.S. 52 (1997) (holding that a conspirator may be liable for a RICO conspiracy even if they do not personally commit or agree to commit the predicate acts, so long as they intend to further the enterprise's common purpose).

## STATEMENT OF FACTS

31.     Plaintiff's Arabic fluency and 22-year transactional experience in the Gulf equipped her to identify the $Trillion extraction. From 2011 to 2014, as Senior Legal Counsel at AJMN, Plaintiff's internal reviews of high-value projects, including Al Jazeera Turk, exposed critical governance failures, kickbacks, and the inconsistencies in Osama's Licensure Deficit and background inconsistencies (Exhibit I.)

32.     After AJMN terminated Plaintiff for having her finger on the pulse of internal corruption, Plaintiff earned an LL.M. in Corruption, Law and Governance (Sussex/ROLACC), refining her ability to document the Enterprise's irregularities. Her professional discipline was further evidenced between 2015–2017 when, despite being trapped under the Kafala System, she successfully litigated an employment breach *pro se* in the Qatari Civil Court.

33.     In 2019, Plaintiff attempted to expose Osama's fraudulent 2002 Jordanian Bar membership via the DCNF. Defendants, perceiving Plaintiff as a threat, retaliated by activating journalists to

11

1:2024cv09978-ALC

execute a continual targeted smear campaign – that has yet to stop - intended to chill her whistleblowing efforts.

34.    Directly resulting from this coordinated "Market Erasure," Plaintiff - a dual-LL.M. attorney licensed in New York since 2008 - has been relegated to $30–$50 per hour document review projects. Destroying Plaintiff's senior-level earning capacity constitutes a cognizable injury to protected property interests in her law license, reputation, and business relationships under *Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998).

## IV.    THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT

35.    The "Enterprise" is a transnational Association-in-Fact comprised of the TCO Core (embedded within the legitimate entities of AJMN and the Qatari Sovereign), Pillsbury (FARA No. 5198), and various "Media or Propaganda Proxies" and "Strategic Defense Proxies." *See Boyle v. United States*, 556 U.S. 938 (2009) (holding that an association-in-fact enterprise requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.)

36.    The Enterprise's common purpose is the continuous, 15-year extraction of sovereign assets (the $Trillion extraction), pecuniary benefits, and the protection Osama's Licensure Deficit.

37.    **The Three Pillars of the Enterprise Hierarchy**: The Enterprise functions through a succession of misrepresentations, where the TCO Core provides the capital and the "Original Sin" of Osama's Licensure Deficit, while the Institutional Shield (FARA No. 5198) and Media Proxies provide the legitimate membrane" required to enforce silence and protect the $Trillion extraction. Specifically: (i.) **The TCO Core**: Embedded within AJMN, Plaintiff observed how this core provides the funding and Osama's Licensure Deficit - which serves as the Original Sin required to facilitate the $Trillion extraction; (ii.) **The Institutional Shield (The Legitimate Membrane)**: Pillsbury (FARA No. 5198) provides the "white shoe" status used to sanitize the fraud and ignore

12

1:2024cv09978-ALC

questions about Osama's legal credentials to protect the "golden goose," i.e., a deep-pocketed GCC sovereign client; (iii.) **The Media Proxies (Enforcers of Silence)**: These actors execute the "Karen" script, from August 3, 2019, through March 2, 2026, to achieve Witness Neutralization before the fraud can be exposed in the media or a state or federal forum.

38. The Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its "regular way of doing business" is the coordination of wire fraud and Witness Neutralization.

## V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE

39. **The 15-Year Unified Pattern (2011–2026):** Plaintiff defines the "Continuum" as *inter alia* the unbroken, fifteen-year sequence of racketeering and retaliatory acts executed to protect the TCO, the $Trillion extraction, and Osama's Licensure Deficit. This pattern satisfies both "closed-ended" and "open-ended" continuity, proving that racketeering is the Enterprise's regular method of transnational business. The Continuum could have begun before that but that is when Plaintiff discovered it. See Exhibit J - "Chronology of Events."

40. **The 7-Year Whistleblower Strike (2019–2026):** Within this 15-year Continuum is the specific, seven-year continual, coordinated reputational assault on Plaintiff's Three Plinths. The answer to why Plaintiff, a senior lawyer but with a limited North American footprint given her extended absence abroad, has graced the paces of Media Defendants' pages lies in the Enterprise, what it is trying to protect, and the disastrous and long reaching consequences for Defendants if subjected to forensic judicial scrutiny. The consequences go beyond the named Defendants, but impact insurers, past and present clients served by Osama, and breach professional conduct rules for the Pillsbury partners who ignored Plaintiff's Actual Notice (Exhibit K.)

13

1:2024cv09978-ALC

41. **The Transnational Relay of Misrepresentation:** The Continuum transcends "Institutional Membranes" through a succession of misrepresentations. The proverbial baton Osama's Licensure Deficit and the related "Oxford Fabrication" was passed from AJMN in Doha (2011–2012) to the "Lateral Relay" in Western law firms (2012–2026), culminating in the "silver bullet" aimed at Plaintiff in the Southern District of New York (2023–2026.)

## VI.    AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION

42. This matter has its roots in 2010 Doha when Plaintiff interviewed for and got the job of Legal Counsel at AJMN in June-July 2010. Upon information and belief, Osama sabotaged Plaintiff's onboarding after she received the job offer to join AJMN in July 2010. As a result of a deliberately bungled communication from the recruiter, Plaintiff sat in Bahrain for nearly six months waiting for her Qatari visa to materialize while she spent her savings and debtors' prison loomed. Plaintiff begged Osama to find a solution but her please fell on deaf ears (Exhibit L.) Finally arriving in Doha in February 2011, Plaintiff found the AJMN Contracts Department in a shambles, staffed with non-lawyers posing as lawyers, no files, and no paper trails. It was a corporate governance disaster.

43. In 2011, Plaintiff learned of an earlier due diligence inquiry conducted by a Qatari colleague at AJMN, Yousef Al-Jaber. Al-Jaber's investigation of the Jordanian Bar Association ("JBA") roster in Amman first identified the Licensure Deficit. This verification galvanized Plaintiff's broader audit of the systemic corruption within the AJMN Contracts Department and established the "Achilles' heel" that the Enterprise later sought to protect through Market Erasure.

44. The JBA rules on how to become a lawyer are clear. One must be a Jordanian national, resident in Jordan, be 21 or older, hold a degree in law from a recognized university/institute and not convicted of a felony or a moral misdemeanor (Exhibit M.) It is not possible to waive into the Jordanian judiciary with foreign training, even as a Jordanian national.

14

1:2024cv09978-ALC

45. Osama was terminated from AJMN in March 2012. Plaintiff was promoted and put on an investigative team to investigate mismanagement of funds and hijacked projects. Consequently, Plaintiff was subject to death threats, slashed tires, cancelled travel visas, sexual harassment, email hacking (personal and professional) to the extent that Plaintiff had a 24/7 CID protective tail.

46. Plaintiff was terminated from AJMN in December 2014 for monitoring internal corruption by Osama's replacement, himself a Sudanese lawyer with fake credentials who was also part of the TCO.

47. Plaintiff's deep involvement with high-level and sensitive investigations put a "silver bullet" target on Plaintiff's back. The "silver bullet" is continual targeted hits from 2019 to 2026. By casting Plaintiff as "unstable" and "unsavvy" the Enterprise can protect its vast interests from scrutiny.

48. The Witness Neutralization was coupled with economic duress i.e., Stracher's $0.00 release demand, to force a legal surrender. By continuing to strip Plaintiff of her reputation and her income simultaneously, the Enterprise could achieve total Witness Neutralization during the TAC period.

49. **The KKK Act Violation**: Under 42 U.S.C. § 1985(2), this coordination to "deter, by force, intimidation, or threat" a witness from attending or testifying in federal court constitutes a *per se* violation of the Civil Rights Act of 1871. The media insults are the "intimidation"; the professional liquidation is the "force."

50. **Joint Participation in Obstruction:** The March 2, 2026, Reason.com article was not independent commentary; it was a coordinated overt act of witness tampering published 96 hours after this Court's Order. By utilizing defense counsel (Ballard Spahr and Stracher) to execute this

15

1:2024cv09978-ALC

strike while on Actual Notice of the Licensure Deficit, the Defendants formalized their joint participation in the obstruction of a federal proceeding.

## VII.   THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION

51.   **The 10-Month Silence (June 2025–Present):** Plaintiff identifies a critical failure in the state-court machinery: the Cross-Motion for Sanctions against Bolger, Cherner, and DWT remains unadjudicated for ten months (Exhibit N.) This sustained silence - a "Procedural Blockade" - creates a state-sanctioned "Safe Harbor" for the Enterprise's enforcers to execute a "Market Erasure" under color of law. Because this abeyance constitutes "Bad Faith or Harassment" that renders the state forum inadequate to protect Plaintiff's constitutional property interests, federal intervention is authorized under the exception to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). Consequently, the Enterprise's joint participation with the state in maintaining this blockade subjects Plaintiff to a deprivation of rights that only this Court can redress.

## VIII.   THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA

52.   **The Predicate Fraud and the "Bounty":** Since 2011, the Enterprise has utilized the Licensure Deficit to facilitate a multi-million dollar "Bounty" for Osama. His partnership salary, predicated on the fraudulent misrepresentation of his Jordanian legal credentials, constitutes a series of distinct RICO Predicates of Wire Fraud (18 U.S.C. § 1343). This "Bounty" incentivizes the oversight of the structural "shambles" within the AJMN Contracts Department that facilitated the $Trillion extraction

53.   **The Capital Surge and Witness Neutralization:** The Enterprise utilized Plaintiff's forensic alerts, including the 2020 Notice to Pillsbury (FARA No. 5198), as a "market signal" to increase capital flow to the Institutional Shield. This is evidenced by the 2025 opening of the

16

1:2024cv09978-ALC

Pillsbury Doha Office (Exhibit O) with conspicuously little to none of the typical press or fanfare, which functioned as a performance premium for Witness Neutralization, incentivizing the Law Firm Defendants to maintain "conscious avoidance" of the Licensure Deficit.

54.    **The Economic Execution of Plaintiff:** Conversely, the Enterprise systematically liquidated Plaintiff's career through the "Market Erasure" script. While the Enterprise associates received performance premiums, the Propaganda Proxies devalued Plaintiff's eighteen-year license to zero relegating a senior-level attorney to $30–$50 per hour document review projects.

55.    **The Institutional Shield:** Pillsbury (FARA No. 5198) represents the maturation of the "Lateral Relay" - a blueprint utilizing global law firms to sanitize irregularities and protect the $Trillion extraction from New York discovery.

## IX.    THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH

56.    The Continuity of Retaliation and Predicate Wire Fraud: The Enterprise's campaign of Witness Neutralization began with a bad-faith investigation at Qatar Airways, including a solicited physical assault that necessitated Plaintiff's 2019 swift exfiltration to New York. Upon her return, the Enterprise executed a "honeypot" operation via Propaganda Proxies to identify and neutralize Plaintiff's forensic findings. This culminated in a "bait-and-switch" pivot: after being vetted by John Hawley and Luke Rosiak regarding the Licensure Deficit, the proxies coordinated with Pillsbury (FARA No. 5198). Specifically, Pillsbury's Matt Hyams transmitted fraudulent licensure data about Osama, asserting his Jordanian Bar No. is 11840, over interstate wires to suppress the audit (Exhibit P). Rather than correcting the record, the Enterprise utilized these electronic transmissions (18 U.S.C. § 1343) to publish inverted the August 3, 2019 "hit piece" functioning as a paid performance for the Enterprise to "chill" Plaintiff's testimony an protect the $Trillion extraction (Exhibit Q). When challenged, Hawley said he had to take care of his family (Exhibit R.) This coordinated strike constitutes a pattern of Federal Witness Tampering (18 U.S.C.

17

1:2024cv09978-ALC

§ 1512) that remains active through the March 2, 2026, strike. Then Editor-in-Chief of The Daily Caller's agreement to unpublish the hit piece on April 9, 2021, belies the fraudulent nature of the "hit piece" piece about Plaintiff (Exhibit S.)

## X. THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE

57. **The Post-Hoc "Fix" and Conscious Avoidance**: In 2019, Plaintiff provided direct Actual Notice and documentary evidence of the Licensure Deficit to the Solicitors Regulatory Authority (SRA) in Birmingham, England and Pillsbury (FARA No. 5198.) The SRA investigation into Osama failed because of bureaucratic reticence and potential corruption (Exhibit T.) Plaintiff emailed Pillsbury partners Debra Erni[5] Edward Flanders, David Dekker, and Edward Perron (now retired) about Osama (Exhibits D – G.) Rather than investigating the deficit, Pillsbury engaged in "conscious avoidance" to protect its Qatari billable relationship, tactically assigning a "co-chair" to oversee the Middle East Practice in London and to buffer Osama while maintaining its Institutional Shield. To obstruct the audit, the Enterprise utilized sovereign leverage ("Wasta" – nepotism and/or a bribe in Arabic slang) to execute a post-hoc insertion of Osama into the JBA roster (Exhibit U.) This 2019 administrative "fix" - evidenced by a digital photograph appearing in a record that was "dark" for seventeen years -cannot retroactively sanitize fourteen years of Wire Fraud (18 U.S.C. § 1343.) By accepting this forensic impossibility as "proof" of a 2002 license, the Defendants formalized their joint participation in the RICO Conspiracy.

## XI. THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE

58. **Internal Corroboration and the Doha "Smuggling"**: While performing high-level document review for Pillsbury (FARA No. 5198) via one of the document review agencies in mid-

---

[5] Debra Erni is now with Holland & Knight in London: https://www.hklaw.com/en/professionals/e/erni-debra. Accessed April 8, 2026.

18

1:2024cv09978-ALC

2025, Plaintiff observed internal communications promoting the Doha office while it remained publicly non-existent. This internal campaign confirms that Pillsbury actively holds Osama out as a licensed lawyer despite the Licensure Deficit. The Enterprise's subsequent "smuggling" of Osama to Doha -a jurisdiction without an American extradition treaty - constitutes a deliberate act to obstruct this litigation (18 U.S.C. § 1512.)

59.     **The Binding Agent (Mutual Compromise)**: The Enterprise is anchored by a "culture of compromise" where professionals are integrated through mutual documentation of illicit activities. This "binding agent" ensures that witnesses to the $Trillion extraction remain silent to protect their professional security. This operational reality -confirmed to Plaintiff through direct professional admissions -explains the precision of the "Karen" script overseen by Defendant Richard Best, whose tenure in Dubai provided the tactical exposure to implement this GCC-specific mechanism of mutual control.

60.     **Corporate Sabotage and the "Suitcase" Predicates**: The Enterprise utilized "corporate saboteurs" within AJMN to prevent the establishment of foreign bureaus, thereby facilitating a "suitcase money" protocol for moving capital. Plaintiff's attempts to discipline this structural failure and establish bank accounts nearly got her killed as it directly threatened the Enterprise's operational secrecy, resulting in the subsequent Witness Neutralization campaign and "Market Erasure" script.

## XII.   THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS

61.     **The Fair Use Mirage and State Action**: The Media Defendants utilized the First Amendment and the "Fair Use" doctrine as a "mirage" to obscure active racketeering. While a newspaper may report a tweet under fair use, it may not coordinate with a foreign sovereign or RICO Enterprise to execute a professional liquidation. By inverting the N.Y. Anti-SLAPP law (Civil Rights Law § 76-a) into a state-authorized shield, the Defendants utilized this "pure opinion"

19

1:2024cv09978-ALC

mirage to eradicate Plaintiff's property interests without discovery. See *Phipps v. Kuonen*, 2025 NY Slip Op 05268 (N.Y. App. Div. Oct 01, 2025) (demonstrating the judiciary's use of the "pure opinion" defense to eliminate property interests in reputation). Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), this joint participation in the seizure of property pursuant to a state statute characterizes the Media Defendants as state actors.

62.     **Statutory Violations (RICO and § 1985)**: The March 2, 2026, "Post-Order Insult" published 96 hours after this Order - citing only Ballard Spahr counsel - proves a coordinated script of Witness Tampering (18 U.S.C. § 1512) and Extortionate Attrition (18 U.S.C. § 1951.) This tactical compulsion, combined with Stracher's demand for a $0.00 release, constitutes a digital iteration of the intimidation prohibited by 42 U.S.C. § 1985(2.) Despite having Actual Notice of the Licensure Deficit, Pillsbury (FARA No. 5198) neglected its duty to prevent this conspiracy, instead providing the "Institutional Membrane" to finance the smear (42 U.S.C. § 1986). This coordinated liquidation enforces the "Karen" script as a market signal to neutralize the Plaintiff and safeguard the Enterprise's $Trillion extraction.

## XIII.  THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM

63.     **The Illicit "Bounty" and Witness Neutralization**: Since 2012 when he joined Bird & Bird, Osama has drawn a continuous partnership salary estimated in the tens of millions, predicated on the fraudulent misrepresentation of his Jordanian licensure. Each electronic transmission of this salary constitutes a distinct RICO Predicate of Wire Fraud (18 U.S.C. § 1343.) This "bounty" necessitated the professional liquidation of Plaintiff - the sole auditor capable of exposing the $Trillion extraction. To enforce Plaintiff's silence regarding the Enterprise's "suitcase money" protocols at AJMN, the TCO utilized a 15-year campaign of tactical compulsions, including

20

1:2024cv09978-ALC

the weaponization of Qatar's Kafala System and financial hostage-taking, to achieve Witness Neutralization.

64.    **The Time-Extraction Racket and Irreparable Harm**: Plaintiff has been forced to divert fifteen years of her prime earning capacity into a state of involuntary forensic servitude to combat the Enterprise's assaults on her Three Plinths. This "time-extraction racket" is designed to preclude Plaintiff's practice of law while she defends her life against the Enterprise's "target beacons." The Daily Mail's intentional publication of Plaintiff's residential data signaled for Plaintiff's physical liquidation.  This psychological and physical assault constitutes irreparable harm that cannot be remedied by money alone, necessitating a mandatory injunction to unpublish the retaliatory articles and redact all private data.

## XIV.   NOTICE OF ELECTION: ALTERNATIVE SERVICE

65.    **The FCPA and Honest Services Fraud**: The Enterprise utilized the Licensure Deficit and the "Lateral Relay" to facilitate payments to foreign officials, securing legal mandates through a "Quid Pro Quo of Silence." These acts constitute violations of the Foreign Corrupt Practices Act (15 U.S.C. § 78dd-1) and Honest Services Fraud (18 U.S.C. § 1346.) By providing an "Institutional Shield" for an unlicensed professional, the Law Firm Defendants deprived the Sovereign, i.e., Qatar, of honest services, a recognized RICO predicate that anchored the $Trillion extraction.

66.    **FARA Non-Disclosure and State Action**: The failure of Pillsbury (FARA No. 5198) to disclose the Licensure Deficit in its Department of Justice filings violates 22 U.S.C. § 611. This non-disclosure provides the "color of law" for the Section 1983 claim and facilitated the "Market Erasure" of Plaintiff's anti-corruption credentials.

67.    **Service and the April 8 Machine**: Pursuant to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), Plaintiff elects service via U.S. Mail and Email to bypass the Enterprise's

21

1:2024cv09978-ALC

"Jurisdictional Safe Harbor" and ensure the Licensure Deficit data is brought before this Court by

the April 8 deadline.

## XV.  CAUSES OF ACTION

### COUNT I:  DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983)
### (Against All Defendants for Constitutional Erasure via Joint Participation)

68.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     **State Action via Joint Participation**: The private Defendants acted under color of law by willfully participating in joint activity with the State of Qatar and the New York State Judiciary.

70.     **Procedural Blockade**: Defendants leveraged the ten-month judicial abeyance in the state court as a "safe harbor" to execute a financial "Squeeze Play" and contribute to the "Market Erasure" of the Plaintiff.

71.     **Fourteenth Amendment Deprivation**: These acts resulted in a *per se* deprivation of Plaintiff's property interest in her professional standing since 2004 and membership in the New York Bar since 2008. See *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding that Due Process is required when a state's action attaches a "badge of infamy" that alters an individual's legal status or professional standing); see also *Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (Lord Holt, C.J.) (confirming that damage to a person's fame is a compensable injury to property.)

### COUNT II:  CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(d))
### (Against All Defendants for a 15-Year Pattern of Racketeering)

72.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

73.     **The Association-in-Fact Enterprise:** Defendants are associated-in-fact as a transnational enterprise - a "Swiss Army Knife" of fraud - coordinated to extract sovereign assets

22

1:2024cv09978-ALC

and shield those extractions from forensic audit. This Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its regular way of doing business is the coordination of wire fraud and Witness Neutralization. See *Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (holding that RICO continuity is established when predicate acts are part of a defendant's regular way of conducting business.)

74. **The TCO Core and Institutional Membrane**: The TCO embedded within the Qatari Sovereign and AJMN serves as the administrative core, while Pillsbury (FARA No. 5198) provides the "white shoe" Institutional Membrane required to sanitize the $Trillion extraction.

75. **Predicate Acts: Wire Fraud (18 U.S.C. § 1343)**: The Enterprise utilized a Succession of Misrepresentations regarding Osama's purported Jordanian law license and the apparent "Oxford Fabrication" (Exhibit V) as material inducements to secure multi-million-dollar legal mandates and partnership salaries.

76. **Predicate Acts: Witness Tampering (18 U.S.C. § 1512)**: The Enterprise executed a coordinated campaign of Witness Neutralization, including the "Karen" script and the March 2, 2026, Post-Order Insult, specifically intended to discourage the Plaintiff's participation in federal proceedings.

77. **Predicate Acts: Extortion (18 U.S.C. § 1951)**: Following this Court's February Order, the Enterprise utilized tactical compulsion, specifically the $0.00 release demand coupled with the threat of professional disparagement, to force a legal surrender for no consideration.

78. **Honest Services Fraud (18 U.S.C. § 1346)**: By shielding an unlicensed Jordanian lawyer, Pillsbury deprived the Sovereign of its right to the "Honest Services" of a legitimate professional, a specific fraud that anchored the $Trillion extraction.

23

1:2024cv09978-ALC

## COUNT III: CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT)

### (Against All Defendants for Conspiratorial Retaliation Against a Federal Witness)

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. **The *Haddle v. Garrison* Standing**: Pursuant to the Civil Rights Act of 1871, it is unlawful for two or more persons to conspire to deter, by force, intimidation, or threat, a witness from attending or testifying in any court of the United States.

81. **Interference with Professional Marketability**: Defendants conspired to interfere with Plaintiff's business relationships - relegating her to $30 - $50-per-hour document review projects - specifically to intimidate her into abandoning her role as a whistleblower in this federal action.

82. **The $4.5 Billion Delta**: This conspiratorial interference constitutes a direct injury to Plaintiff's property and business interests, for which the statute provides a federal remedy.

## COUNT IV: FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512)
### (Against All Defendants for Post-Order Retaliation)

83 Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. **Obstruction of a Federal Proceeding**: Following this Court's Order, Defendants executed a retaliatory campaign intended to obstruct the due administration of justice.

85. **The March 2026 Overt Act**: The publication of disparaging material in Reason.com during a court-ordered amendment period was a tactical market erasure designed to force Plaintiff's withdrawal from the case.

**PRAYER FOR RELIEF: WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants, jointly and severally, for: (A) Special Damages in an amount no less than $1.5 Billion, representing the forensic delta of Plaintiff's career liquidation and loss of professional property; (B) Treble Damages pursuant to 18 U.S.C. § 1964(c); (C) Compensatory and Punitive Damages for the coordinated reputational assault and witness tampering, in an amount

24

1:2024cv09978-ALC

to be determined at trial; (D) Equitable Relief, including a permanent mandatory injunction restraining Defendants from further interference with Plaintiff's professional marketability and a redaction of residential data; and (E) Costs and Fees, including reasonable attorneys' fees and the costs of this litigation.

Respectfully Submitted,

Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

25

1:2024cv09978-ALC

**VERIFICATION**

I, **Sonya Hashim Shaykhoun, Esq.**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that:

1.  I am the Plaintiff in the above-captioned action.

2.  I have read the foregoing Third Amended Complaint and know the contents thereof.

3.  The factual allegations contained therein, including the mathematical impossibility of Defendant Osama's licensure, the $Trillion extraction from AJMN, and the March 2026 retaliatory "Insult" are true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4.  I possess the specialized forensic training and first-hand evidentiary knowledge required to act as a sovereign auditor who, from 2012 to 2014, personally investigated an integral part of the described Transnational Criminal Organization while employed as a Senior Legal Counsel at AJMN in Doha.

5.  My knowledge of the $Trillion extraction and the Licensure Deficit is informed by my eight years working in Doha, Qatar and professional training, including an LL.M. in Corruption, Law and Governance from the University of Sussex and the Rule of Law and Anti-Corruption Center (ROLACC) (2016-2018) in Doha, Qatar.

6.  I further verify that I provided Actual Notice of the Licensure Deficit and the associated fraud to the Pillsbury Partners named herein on specific dates in March 2020, as documented in the Exhibits attached to this Complaint.

1:2024cv09978-ALC
Executed on this 8th day of April 2026, in New York, New York.

Respectfully Submitted,

Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

27

1:2024cv09978-ALC

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, I hereby certify that this Memorandum of Law complies with the length limitations set forth in the Individual Practices of Judge Andrew L. Carter, Jr. This document was prepared in Century Schoolbook 12-point font and contains **7009** words, exclusive of the parts of the memorandum exempted by the Court's rules. In preparing this certification, I relied on the word count of the word-processing system used to prepare the document.

Dated: April 8, 2026

*/s/ Sonya Shaykhoun, Esq.*
Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

28

1:2024-cv-09978-ALC

# EXHIBIT 2: Redlined Comparison (Original TAC Filed April 8, 2026 vs. Perfected TAC)

Based on a comparison of the **April 8 filing copy** and the **April 21 final version**, the following is a breakdown of the structural, forensic, and factual updates integrated into the final **Third Amended Verified Complaint (TAC)**.

## I. Structural & Jurisdictional Realignments

- **Expansion of Plaintiff's Background:** The April 21 version provides more granular detail regarding Plaintiff's academic credentials, specifically clarifying her separate LL.M. degrees from SOAS and the University of Sussex, whereas the earlier version was more generalized.

- **Refined "State Action" Definitions:** The later version adds specific subsections (D, E, and F) to the "Parties" section to explicitly delineate **Joint Participation**, the **Public Function Exception**, and the "**Lobbying Membrane**."

- **Table of Contents Expansion:** The final version includes a significantly more detailed Table of Contents, adding several new forensic sections such as "**The Lateral Relay of Fraud**" and "**The Culture of Compromise**".

## II. Enhanced Forensic and Factual Details

- **The "Lateral Relay" and Doha Office:** The April 21 version adds a major factual update regarding the 2025 opening of Pillsbury's Doha office, framing it as a "lateral relay" to move the fraud from the GCC to the New York legal market.

- **Individual Pillsbury Partner Liability:** The final version contains extensive new paragraphs for individual defendants **David T. Dekker, Edward Flanders, Edward A. Perron**, and **Debra Erni** . It specifically alleges they received **Actual Notice** of the licensure deficit in March 2020 and elected to facilitate an "Institutional Shield".

- **Relocation of Defendant Osama:** The April 21 version documents Defendant Osama's September 2025 transition from London to Doha. It characterizes this as a "Procedural Blockade" intended to move a key RICO participant beyond the reach of the Court's discovery.

- **The March 2, 2026 "Overt Act":** The final version places heavy emphasis on a new "fresh overt act" of witness tampering—a Reason.com article published

during the court-ordered amendment period.

## III. Statutory and Cause of Action Updates

- **Refined RICO Predicates:** While both versions address RICO, the April 21 version more clearly anchors the conspiracy in **Wire Fraud (18 U.S.C. § 1343) and Honest Services Fraud (18 U.S.C. § 1346)**.

- **Federal Witness Tampering (18 U.S.C. § 1512):** This count was significantly expanded in the final version to address "post-order retaliation" intended to force a legal surrender.

- **Refinement of § 1985(2) (KKK Act):** The final version links the professional liquidation of Plaintiff's career ("Economic Execution") directly to a conspiracy to deter a federal witness.

## IV. Formatting and Certification Changes

- **Included Signature:** I did not sign the original April 8 version in all places.

- **Additional Format Changes:** I made some formatting changes to the latest iteration of the TAC that I did not catch before doing the comparison draft. These formatting changes are not material enough to warrant a full reprint (e.g., applying "Double spacing" to paragraph 38 after creating the comparison document).

- **Word Count Adjustments:** The April 8 version was certified at **6,066 words**. The April 21 version was expanded and finalized at exactly **7,009 words** to maximize the forensic record while staying within Judge Carter's individual practices.

- **Internal Citations:** The April 21 version includes far more robust internal cross-references (e.g., citing specific paragraphs like "¶ 2" or "¶ 31") to link facts to legal counts.

1:2024cv09978-ALC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SONYA HASHIM SHAYKHOUN, ESQ.**

**Plaintiff,**

**Civil Action No.**
**1: 24-cv-09978-ALC**

**v.**
~~COMPLAINT~~VERIFIED

**THIRD AMENDED**

COMPLAINT

**AL JAZEERA MEDIA NETWORK**          **Date Filed: April 8, 2026**

**PILLSBURY**~~:~~ (CURRENT AND ALUMNI)

DAVID T. DEKKER, ESQ.
EDWARD FLANDERS, ESQ.
EDWARD A. PERRON, ESQ.
OSAMA ABU DEHAYS
PILLSBURY WINTHROP SHAW PITTMAN LLP
DEBRA ERNI

**THE DAILY CALLER**

ETHAN BARTON
JOHN HAWLEY
LUKE ROSIAK
THE DAILY CALLER NEWS FOUNDATION ("DCNF")

**THE DAILY MAIL**

THE DAILY MAIL~~,~~
DAILYMAIL.COM~~,~~
DAILY MAIL AND GENERAL TRUST PLC
("DMGT"),
NOA HALFF~~,~~
JONATHAN HARMSWORTH, 4th VISCOUNT ROTHERMERE

i

1:2024cv09978-ALC

1:2024cv09978-ALC

1:2024cv09978-ALC

**THE DAILY BEAST**

THE DAILY
BEAST COMPANY LLC ("TDB");
AMANDA J. MCDOUGALL (A/K/A AJ
MCDOUGALL);
BEN SHERWOOD,
JOANNA COLES,
IAC INC. ("IAC");
TRACY CONNOR,
BARRY DILLER,


**THE INDEPENDENT:**

BEVAN HURLEY,
THE INDEPENDENT,
GEORDIE GREIG,
LOUISE THOMAS,
RICHARD BEST


**THE LAW FIRMS AS AGENTS OF THE RICO**

BALLARD SPAHR LLP
THOMAS SULLIVAN, ESQ.
SAUMYA VAISHAMPAYAN, ESQ.


CAMERON STRACHER, ESQ.

DAVIS WRIGHT TREMAINE LLP
KATHERINE M. BOLGER
LINDSEY B. CHERNER

1:2024cv09978-ALC

## THIRD AMENDED VERIFIED COMPLAINT

1:2024cv09978-ALC

# Table of Contents

TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION .......................... i

I.    STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983) ................. I

II.    FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(D)) ........................ II

III.    42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION ............... II

IV.    (18 U.S.C. § 1512) EQUITABLE POWERS AND ALTERNATIVE SERVICE ........ III

V.    THE "SIGNATURE" PRECEDENT: LORD HOLT ................................. III

I.    PRELIMINARY STATEMENT ............................................... 1

II.    JURISDICTION & VENUE ................................................. 3

III.    PARTIES ............................................................... 4

A. PLAINTIFF ............................................................... 4
B.    THE STATE ACTORS AND ENTERPRISE CORE ............................. 4
C.    PILLSBURY (FARA No. 5198) AS A STATE ACTOR: THE ENTWINEMENT DOCTRINE ..... 4
D.    JOINT PARTICIPATION IN THE WITNESS NEUTRALIZATION ................ 5
E.    THE PUBLIC FUNCTION EXCEPTION .................................... 6
F.    THE "LOBBYING MEMBRANE" .......................................... 6
G.    THE INSTITUTIONAL AND STRATEGIC PROXIES .......................... 7

STATEMENT OF FACTS ....................................................... 9

IV.    THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT ............ 10

V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE .................... 11

VI.    AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION ................ 12

VII.    THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION ...... 15

VIII. THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA ....... 15

IX.    THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH ....... 16

X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE ..... 17

XI.    THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE ...... 18

XII.    THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS ........ 19

XIII.    THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM .. 20

XIV.    NOTICE OF ELECTION: ALTERNATIVE SERVICE ...................... 21

XV.    CAUSES OF ACTION ................................................... 22

COUNT I:    DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983) ... 22
COUNT II:    CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(b)) .................... 22
COUNT III:    CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT) ..... 24
COUNT IV:    FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512) ................... 25

1:2024cv09978-ALC

*PRAYER FOR RELIEF* ........................................................................................ ~~25~~

*VERIFICATION* ................................................................................................... ~~26~~

THIRD AMENDED VERIFIED COMPLAINT ............................................................ IV

*TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION* ............... *viii*

I.    *STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)* ....................... VIII

II.    *FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(D))* ............................... X

III.    42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION ..................... X

IV.    (18 U.S.C. § 1512) EQUITABLE POWERS AND ALTERNATIVE SERVICE ......... XI

V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY ................................................................................................ XIII

I.    PRELIMINARY STATEMENT ............................................................................ 1

II.    JURISDICTION & VENUE .............................................................................. 3

III.    PARTIES ...................................................................................................... 4

A. PLAINTIFF ......................................................................................................... 4
B.    THE STATE ACTORS AND ENTERPRISE CORE ................................................. 4
C.    PILLSBURY (FARA NO. 5198) AS A STATE ACTOR: THE ENTWINEMENT DOCTRINE ......... 5
D.    JOINT PARTICIPATION IN THE WITNESS NEUTRALIZATION .......................... 10
E.    THE PUBLIC FUNCTION EXCEPTION .............................................................. 11
F.    THE "LOBBYING MEMBRANE" ....................................................................... 11
G.    THE INSTITUTIONAL AND STRATEGIC PROXIES ............................................ 12

STATEMENT OF FACTS ........................................................................................ 14

IV.    THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT ..................... 15

V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE ................................. 16

VI.    AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION .......................... 17

VII.    THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION .......................................................................................................... 19

VIII.    THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA ...... 20

IX.    THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH ......... 21

X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE .......................................................................... 22

XI.    THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE ...... 23

XII.    THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS .................................................................................................................. 24

XIII.    THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM .. 25

*XIV.    NOTICE OF ELECTION: ALTERNATIVE SERVICE* ..................... *26*

XV.    CAUSES OF ACTION ..................................................................................... 27

COUNT I:    DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983) ... 27
COUNT II:    CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(D)) .................................. 28
COUNT III:    CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT)        29

vi

1:2024cv09978-ALC

COUNT IV:    FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512) ........................................ 30

VERIFICATION ................................................................................................................................ 3

CERTIFICATE OF COMPLIANCE ................................................................................................ 5

1:2024cv09978-ALC

## TABLE OF AUTHORITIES: FORENSIC CATEGORIZATION

*I.       I.—STATE ACTION AND THE "COLOR OF LAW" (42 U.S.C. § 1983)*

*Adickes v. Kress Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970): The primary authority for "Joint Participation," proving that private law firms and media outlets act under color of law when "entwined" with state and foreign sovereign power...................................................................................p. 58

*Brentwood Academy v Tennessee Second. Sch. Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001): Supports the "Entwinement Doctrine" regarding Pillsbury's FARA status and public policy functions for Qatar....... p. 54

*Lugar v. Edmondson Oil Company, Inc,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982): Establishes that the "prejudgment attachment" of rights (via an inverted Anti-SLAPP statute) constitutes state action............................ p. 1920

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971): authorizes federal intervention in this case by proving that the ten-month "Judicial Abeyance" in state court constitutes the "Bad Faith or Harassment" exception to the standard rule of federal abstention.................................................. p. 1516

1:2024cv09978-ALC

## II.    *FEDERAL RICO AND CONTINUITY (18 U.S.C. § 1962(d))*

*Boyle v. United States*, 129 S.Ct. 2237, 173 L.Ed.2d 1265, 556 U.S. 938, 77 USLW 4474 (2009): Establishes the "Association-in-Fact" enterprise, supporting the link between AJMN, Pillsbury, and the Media Proxies....................................p. 10̶12

*Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989): The foundational authority for "Open-Ended Continuity," proving that the TCO's "regular way of doing business" is racketeering......p. 23

*Salinas v. U.S.*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997): Supports RICO Conspiracy liability even for late-joining defendants who do not personally commit every predicate act - the "Moving Train" doctrine......................... p. 9̶11

## III.    42 U.S.C. § 1985(2)) PROPERTY INTERESTS AND REPUTATION

*Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998): **CRITICAL:** Explicitly recognizes that a conspiracy to cause the termination of "at-will" employment (or the "Economic Execution" of a career) constitutes an *injury     to     property     under     the     KKK     Act     and RICO*....................................................................p.p. 10̶,12̶ 24

*Phipps v. Kuonen*, 2025 NY Slip Op 05268, Index No. 513984/21, No. 2021-08919 (N.Y. App. Div. Oct 01, 2025): acts as a forensic "foil" to demonstrate how the New

1:2024cv09978-ALC

York judiciary's application of the "pure opinion" defense under the Anti-SLAPP statute is being utilized to achieve Constitutional Erasure by eliminating property interests in reputation without discovery.............................................. p. ~~19~~20

Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971): Establishes the "Stigma-Plus" test; that when the state (via the judiciary/statute) attaches a "badge of infamy" (the "Karen" script) that alters legal status, Due Process is required..............................................................................p. 22

## IV.    (18 U.S.C. § 1512) EQUITABLE POWERS AND ALTERNATIVE SERVICE

Mullane v. Central Hanover Bank Trust Co, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950): The gold standard for "Actual Notice," justifying Plaintiff's election of service via digital and postal protocols given tactical compulsion.......................................................................................p. ~~21~~22

International Shoe Co v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945): Supports personal jurisdiction over the transnational defendants based on their "Minimum Contacts" and "Digital Arson" directed at the District..............................................................................................p. 3

1:2024cv09978-ALC

xii

## V.    SECONDARY SOURCES: CONSTITUTIONAL TORTS AND JUDICIAL ACCOUNTABILITY

*Savile v. Roberts*, 1 Ld. Raym. 374 (1698): As cited in the Preliminary Statement, this 328-year-old "plinth" of law confirms that damage to a person's "fame" is a compensable injury to Property..................................................................... p. 1, p. 2922

Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026............p. 1

## I.    PRELIMINARY STATEMENT

1.    Plaintiff, an eighteen-year veteran of the New York Bar, brings this Third Amended Complaint ("TAC") at the behest of this Court pursuant to its February 26, 2026, Order ("Order") which grants Plaintiff "leave to amend as to the Section 1983 and declaratory relief claims." While the Order granted leave to amend the Section 1983 and declaratory relief claims, the forensic drafting process revealed that these claims are inextricably linked to a broader transnational pattern. Consequently, Plaintiff expands this TAC to address a coordinated campaign of professional retaliation – a "Market Erasure" – executed by a Transnational Criminal Organization ("TCO") Plaintiff discovered while auditing Al Jazeera Media Network ("AJMN") in Doha (2011–2014). The TCO operates globally through an institutional network of elite law firms and media proxies to shield its operations and suppress Plaintiff's forensic findings.

2.    This is not a "defamation" case, nor is it a repackaging of defamation claims. Plaintiff brings this action under 42 U.S.C. § 1983 and Civil RICO to recover for a coordinated Market Erasure via a seven-year-long continual press assault triggered by Plaintiff's 2019 attempt to expose Osama Abu Dehay's ("Osama") lack of Jordanian law license. Lord Holt recognized in 1698, the "plinths" of law are reputation, personal security, and property[1] ("Three Plinths") are compensable interests. *See*

---

[1] Jacob Paul Goldstein. "From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions." *Columbia Law Review*, vol. 106, no. 3, 2006, pp. 643–78. *JSTOR*, http://www.jstor.org/stable/4099447. Accessed 25 Mar. 2026. "Anglo-American law has long recognized a tort remedy for malicious prosecution. The interests jeopardized by malicious prosecution have been described as 'the plinths upon which the English Law has been reared – reputation, personal security,

1:2024cv09978-ALC

*Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (confirming that damage to a man's fame is a sufficient ground to support an action for damages.) This TAC aligns with the words of Lord Holt: "if the plaintiff has a right, he must of necessity have a means to vindicate and maintain it."

3.      The Enterprise used "unlawful means" e.g., wire fraud and witness tampering, to interfere with Plaintiff's Three Plinths (Reputation, Personal Security, and Property). This coordinated interference seeks to protect the $Trillion extraction and achieve ~~witness neutralization.~~"Witness Neutralization." The Enterprise launched these attacks to suppress Plaintiff's documented evidence of the licensure void and the professional omissions of the "institutional shield" provided by Pillsbury (FARA No. 5198) and media proxies.

5.      Plaintiff seeks redress through four specific federal mandates: **Count I (42 U.S.C. § 1983):** Deprivation of Fourteenth Amendment property and professional standing under, facilitated by Joint Participation and judicial omission. **Count II (18 U.S.C. § 1962(d)):** A 15-year pattern of Wire Fraud and Witness Tampering executed to protect the TCO's extractions. **Count III (42 U.S.C. § 1985(2)):** Conspiracy to obstruct justice and retaliate against a federal witness under the Civil Rights Act of 1871 (the "KKK Act"). **Count IV (18 U.S.C. § 1512):** Federal Witness Tampering for

---

and property.' In 1698, Lord Holt recognized 'three sorts of damages, any of which would be sufficient ground to support this action': (1) The damage to a man's fame, as if it were a matter whereof he is accused be scandalous...(2) [Damages] done to the person; as where a man is put in danger to lose his life, or limb, or liberty, which has been always allowed in good foundation of such an action...(3) [Damages] to a man's property, as where he is forced to expend his money in necessary charges, to acquit himself of the crime of which he is accused..."

2

the post-order retaliatory "Market Erasure" intended to obstruct this federal proceeding.

## II.    JURISDICTION & VENUE

6.      **Federal Question Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under the Civil Rights Act (42 U.S.C. § 1983), the RICO Act (18 U.S.C. § 1961 et seq.), and Federal Witness Tampering (18 U.S.C. § 1512.)

7.      **The State Action Nexus:** Jurisdiction over the Law Firm Defendants is proper under § 1983 because they acted "under color of law" through joint participation with a foreign state. Defendant Pillsbury (FARA No. 5198) is a registered agent for the State of Qatar, performing "public policy" functions "entwined" with state authority.

8.      **Supplemental Jurisdiction:** This Court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367, as they form part of the same case or controversy as the federal RICO and Civil Rights claims.

9.      **Personal Jurisdiction:** Jurisdiction is proper because Defendants: (a) reside or transact business in this District; or (b) committed tortious acts, including witness tampering and a targeted attack on Plaintiff's Three Plinths, specifically directed at a Plaintiff residing and practicing law within this District. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (holding that personal jurisdiction exists over non-resident defendants who have "minimum contacts" with the forum such that the

3

1:2024cv09978-ALC

maintenance of the suit does not offend traditional notions of fair play and substantial justice.)

10.    **Venue:** Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a). A substantial part of the events occurred in this District.

11.    This action is timely pursuant to the Continuous Violation Doctrine, as the Enterprise executed a fresh ~~Overt Act~~overt act of ~~witness neutralization~~Witness Neutralization on March 2, 2026, within the Court-ordered amendment period of this federal proceeding.

## III.    PARTIES

### A. Plaintiff

12.    Plaintiff Sonya Hashim Shaykhoun, Esq. is an eighteen-year veteran of the New York Bar (2008, Atty. Reg. # 4633293) with more than 22 years of experience in transactional, commercial, and regulatory matters, including senior in-house roles at major media and aviation entitles in the Arabian Gulf region (Exhibit A). She holds a Masters in English (St Andrews), a BA in Arabic and Law (SOAS), an LL.M. in Corporate and Commercial Law (SOAS), and a specialized LL.M. in Corruption, Law and Governance (Sussex/ROLACC.)

### B.    The State Actors and Enterprise Core

13.    **Al Jazeera Media Network ("AJMN"):** A Qatari private company for public benefit based in Doha, Qatar, controlled by the Government of Qatar—, located at PO Box 23123, Qatar Radio and Television Corporation Complex, Wadi Al Sail, Doha, Qatar, email: legal@aljazeera.net, tel.: +974 4489 7777 or +974 4489 6666.

1:2024cv09978-ALC

14.    Osama Abu Dehays ("Osama") is a Canadian Jordanian national who served as Chief Legal Officer of AJMN from approximately 2009 to 2012. Osama is currently a partner and managing partner of the Doha office of Pillsbury Winthrop Shaw Pittman LLP and listed on a Pillsbury FARA Form (Exhibit B.)

## C.    Pillsbury (FARA No. 5198) as a State Actor: The Entwinement Doctrine

14. **Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"):** A

   i.    Pillsbury (www.pillsburylaw.com) is a **global law firm** headquartered in New York City at 31 W 52nd Street, New York, NY 10019, tel.: +1-(212)-858-1000. Pillsbury has 20 offices worldwide, approximately 700 lawyers, **and** focuses on energy, financial services, real estate and technology.

   ii.    Pillsbury opened its Doha, Qatar office in 2025, facilitating the "lateral relay" of the fraud from the GCC to the New York legal market. Pillsbury's Doha office, whose Managing Partner is Osama Abu Dehays, is located at Office 855, Tower 2, Globex Business Center, PO Box 14023, Doha, Qatar, tel.: +974-4020-6655

   iii.    Pillsbury is a Registered Foreign Agent (No. 5198) in connection with activities on behalf of the Embassy of Qatar (Exhibit C) and related entities. Pillsbury's status as a Foreign Agent performing "public policy" functions creates a "symbiotic relationship" with the sovereign that satisfies the federal standard for state action. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) (holding that a private entity's

5

1:2024cv09978-ALC

character can be that of a state actor when it is "entwined" with governmental management or control.)

D.    Joint Participation in the Witness Neutralization

iv.    16Pillsbury is sued in its institutional capacity and corporate capacity as a Joint Participant and a State Actor under the Entwinement Doctrine. The firm provides the Institutional Shield, and the "white shoe" legitimacy required to sanitize the Licensure Deficit and $Trillion extraction. Through its partners in this District and abroad, Pillsbury exercised "conscious avoidance" and executed the Procedural Blockade following the Actual Notice provided by the Plaintiff in March 2020.

14.    **David T. Dekker, Esq. ("Dekker"):**

i.    Dekker is a partner at Pillsbury's Washington D.C. office, located 1200 Seventeenth Street, NW, Washington DC 20036, email: david.dekker@pillsbury.com, tel.: +1-(202)-663-9384. Dekker is the firm chair at Pillsbury, specializing in construction law and litigation.

ii.    This Defendant is sued in his individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the associated fraud on March 10, 2020, and elected to facilitate the Institutional Shield.

iii.    Notably, despite his base in DC, Dekker oversees high-level sovereign account functions for the FARA No. 5198 registration, which is managed and executed through Pillsbury's New York headquarters, thereby satisfying the Entwinement and Joint Participation standards in this District.

6

1:2024cv09978-ALC

15. **Edward Flanders, Esq. ("Flanders"):**

   i. Flanders is the Managing Partner at Pillsbury's New York office located at 31 West 52nd Street, New York, NY 10019, email: edward.flanders@pillsburylaw.com, tel.: +1-(212)-858-1638 . Flanders is a litigation partner specializing in complex commercial disputes, insurance recovery, and arbitration.

   ii. This Defendants is sued in their individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Defect and the associated fraud on March 6, 2020, and elected to facilitate the Institutional Shield.

   iii. As a primary contact for the Qatari sovereign account, Flanders' continued facilitation of the Procedural Blockade following the Actual Notice constitutes a deliberate act of Witness Neutralization and a refusal to cure the Original Sin of the $Trillion extraction.

16. **Edward A. Perron, Esq. ("Perron"):**

   i. Perron is a (now retired) former firm-wide managing corporate partner at Pillsbury who served as a primary leadership node during the 2019 phase of the Market Erasure. Perron is affiliated with the Los Angelos office located at 725 South Figueroa Street, 36th Floor, Los Angeles, CA 90017, email: edward.perron@pillsburylaw.com, tel.: +1-(213)-488-7352.

   ii. This Defendant is sued in his individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the

7

1:2024cv09978-ALC

associated fraud on March 10, 2020, and elected to facilitate the Institutional Shield.

iii. Perron's retirement from the partnership does not extinguish his liability for the Witness Neutralization protocols and the "conscious avoidance" of the forensic audit executed during his tenure.

17. **Debra Erni ("Erni"):**

i. Erni is a former Pillsbury partner and Managing Partner of Pillsbury's London office, located at Level 34, 100 Bishopsgate, London, EC2N 4AG, England. Debra Erni is currently a Partner at Holland & Knight LLP in their London office: Holland & Knight (UK) LLP, Leaf 27C, Tower 42, 25 Old Broad Street, London, EC2N 1HQ, England, London, email: Debra.Erni@hbklaw.com, tel.: +44 20 7071 9938.

ii. This Defendant is sued in her individual and professional capacity as a Joint Participant who received Actual Notice of the Licensure Deficit and the associated fraud on March 8, 2020, and elected to facilitate the Institutional Shield.

iii. Notably, perhaps following Plaintiff's formal notifications, Erni removed her professional association with Pillsbury from her public Linkedin[2], an act of institutional erasure and conscious avoidance intended to obscure her role in the forensic Continuum and the Lateral Relay of the Fraud.

18. **Osama Abu Dehays ("Osama"):**

---

[2] Debra Erni's LinkedIn page, https://www.linkedin.com/in/debra-erni-7817862ab/?skipRedirect=true. (Accessed April 11, 2026.)

8

1:2024cv09978-ALC

i.    Osama is a Canadian Jordanian national who served as Chief Legal Officer of AJMN from approximately 2009 to 2012, when he was terminated and joined Bird & Bird, the international law firm, as a partner in the Firms International Media and Sports Sector Groups focusing on Abu Dhabi, Dubai, and Doha and wider MENA in 2012.[3]

ii.    Osama is currently a partner and managing partner of the Doha office of Pillsbury Winthrop Shaw Pittman LLP and listed on a Pillsbury FARA Form (Exhibit B.) Osama is the central node of the Licensure Deficit and the $Trillion extraction outlined in this complaint.

iii.    This Defendant is sued in his individual and professional capacity as a Joint Participant and a central node in the RICO Association-in-Fact, whose personal and professional actions in facilitating the Licensure Deficit and the subsequent Procedural Blockade triggered the Forensic Continuum described herein.

iv.    From approximately 2015 through 2024, Osama operated out of Pillsbury's London office, where he was listed as an active LLP member residing in the United Kingdom.

v.    On or about September 15, 2025, concomitant with the opening of Pillsbury's Doha office, Osama transitioned his residence and professional practice from London to Doha, Qatar, located at Office 855, Tower 2, Globex Business Center, PO Box 14023.)

---

[3] "Aljazeera Network's chief legal officer joins Bird & Bird", The Saudi Gazette, Zawya, June 18, 2012.

9

1:2024cv09978-ALC

vi.     This 2025 relocation constitutes a "Lateral Relay" and Procedural Blockade, executed by the Enterprise to move a key participant in the RICO Association-in-Fact beyond the immediate reach of this Court's discovery and to shield the Original Sin of his Jordanian licensure status from federal scrutiny.

## D.     Joint Participation in the Witness Neutralization

19.    Under 42 U.S.C. § 1983, liability attaches to any person who, "under color of any statute, ordinance, regulation, custom, or usage," subjects a citizen to the "deprivation of any rights, privileges, or immunities secured by the Constitution." Pillsbury (FARA No. 5198) acted under color of law by willfully participating in a joint venture with the State of Qatar, an entwinement that used the "custom and usage" of the firm's diplomatic and legal status to execute a Market Erasure. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (holding that private parties, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.) This entwinement crystallized when the Enterprise deployed these state-deprived powers to neutralize Plaintiff as a witness to the $Trillion extraction and the Licensure Deficit (¶31.)

20. This joint participation need not be direct; it may be established indirectly through a symbiotic relationship where the private actor's conduct is so "entwined" with state authority as to be fairly attributable to the state. Pillsbury's status as a Registered Foreign Agent for the Embassy of Qatar (FARA NO. 5198) provides the institutional membrane through which this entwinement operates, utilizing "white

10

1:2024cv09978-ALC

shoe" legitimacy to perform the public function of shielding a sovereign's $Trillion extraction from forensic audit.

## E.    The Public Function Exception

21. When Pillsbury (FARA No. 5198) utilizes its "white shoe" status to sanitize the deficient credentials Osama after Plaintiff's 2020 actual written notice to the Pillsbury Partnership (Exhibits D to Exhibit G) it constitutes *inter alia* a state-sanctioned omission intended to protect the Enterprise. Upon information and belief, the Enterprise is covering up a Swiss Army Knife of fraud.

## F.    The "Lobbying Membrane"

22. Pillsbury (FARA No. 5198) used its "award-winning lobbyists" through its Government Law & Strategies Practice to execute a "silver-bullet" solution[4]: branding Plaintiff a "Karen" to reduce the legal and regulatory risk of employing an unlicensed operative for fourteen years.

23. The Institutional Shield exists to support: (i) **The Veneer of Legitimacy:** Pillsbury's (FARA No. 5198) uses its "white shoe" sanitize to sanitize the gap in Osama's legal credentials ensuring that corporate governance and judicial bodies rely on the firm's reputation instead of performing independent forensic due diligence; (ii.) **The "Relay of Fraud":** As Senior Legal Counsel and auditor at AJMN, Plaintiff observed how this shield is the mechanism used by the TCO uses to facilitate the "Lateral Relay" i.e., moving the fraud from Doha to the London and New York legal

---

[4]    Pillsbury,    Government    Law    &    Strategies, https://www.pillsburylaw.com/en/services/regulatory/government-law-and-strategies/ (last accessed April 5, 2026).

markets while suppressing any professional audit; (iii.) **Economic Incentive:** The Enterprise operates on a logic of mutual compromise and unjust enrichment. Each TCO participant receives a "cut" in the form of performance premiums or inflated salaries, incentivizing their continued conscious avoidance of the fraud.

24. **The March 2nd Transformation:** This shield facilitated the March 2, 2026, strike on Reason.com, published 96 hours after the Order (Exhibit H.) Citing defense counsel Sullivan and Vaishampayan exclusively, this act masqueraded as "legal commentary" on a case that never hit the press but functioned as a Predicate Act of Witness Tampering to ensure the $Trillion extraction remains buried ("it makes me question the Twitter account title, "The Commercially Savvy Lawyer," which is Plaintiff's online moniker and professional brand.)

25. The "silver bullet" is not a legal defense; it is a market erasure protocol. By leveraging its global connections to categorize a whistleblower, a non-Big-Law anomaly who spent 15 years honing her legal and auditing skill set in the GCC and who knows where the bodies are buried - as "unstable," Pillsbury ensures that the $Trillion extraction remains buried behind a wall of "expert" influence.

### G.    The Institutional and Strategic Proxies
-The Media Defendants

26. In participating in the engineered take-down of Plaintiff, the Media Defendants a/k/a "Propaganda Proxies" functioned as the "silver bullet" to neutralize the legal and regulatory risk posed by Plaintiff's unique knowledge and chill her First Amendment rights.

*The Defense Firms (strategic proxies)*

27. Plaintiff alleges that the Defense Firms – Ballard Spahr, Davis Wright Tremaine ("DWT"), and Cameron Stracher - have transitioned their roles as legal advocates to joint participants in the Pillsbury (FARA No. 5198) /Enterprise. Their conduct is not a defense of their clients, but an active contribution to ~~witness neutralization~~Witness Neutralization.

28. Defendants Katherine Bolger ("Bolger") et al. (DWT) formally joined the Continuum in June 2025 by weaponizing a state-authorized "blind spot" in the N.Y. Anti-SLAPP statute. By resurrecting a "fee motion" on a dormant matter, Bolger executed a fee ambush designed to bankrupt the Plaintiff and deter her from progressing this litigation.

29. Following this Court's Order, Cameron Stracher ("Stracher"), in lockstep with Sullivan and Vaishampayan, executed a "live" act of Federal Witness Tampering. Stracher made a verbal extortionate demand for $0.00 legal release (a thing of value) for no consideration and insisting that The Independent "had nothing to do with it" while Sullivan and Vaishampayan commissioned the simultaneous denigrating article in Reason.com, exclusively referencing Ballard Spahr counsel (¶24.) Such conduct constitutes Federal Witness Tampering (18 U.S.C. § 1512) and Extortion (18 U.S.C. § 1951).

30. **The "Moving Train" of Adoptive Liability**: Under 18 U.S.C. § 1962(d), late-joining Defendants, i.e., TDC (2019), DWT, Ballard Spahr (2026), and Stracher (2026), assume liability for the prior and subsequent acts of the Enterprise. Their decision to execute the $0.00 release demand (the coordinated attrition) while on

13

Actual Notice of Osama's license fraud constitutes a formal adoption of the TCO's 15-year campaign. *See Salinas v. United States*, 522 U.S. 52 (1997) (holding that a conspirator may be liable for a RICO conspiracy even if they do not personally commit or agree to commit the predicate acts, so long as they intend to further the enterprise's common purpose).

## STATEMENT OF FACTS

31. Plaintiff's Arabic fluency and 22-year transactional experience in the Gulf equipped her to identify the $Trillion extraction. From 2011 to 2014, as Senior Legal Counsel at AJMN, Plaintiff's internal reviews of high-value projects, including Al Jazeera Turk, exposed critical governance failures, kickbacks, and the inconsistencies in Osama's Licensure Deficit and background inconsistencies (Exhibit I.)

32. After AJMN terminated Plaintiff for having her finger on the pulse of internal corruption, Plaintiff earned an LL.M. in Corruption, Law and Governance (Sussex/ROLACC), refining her ability to document the Enterprise's irregularities. Her professional discipline was further evidenced between 2015–2017 when, despite being trapped under the Kafala System, she successfully litigated an employment breach *pro se* in the Qatari Civil Court.

33. In 2019, Plaintiff attempted to expose Osama's fraudulent 2002 Jordanian Bar membership via the DCNF. Defendants, perceiving Plaintiff as a threat, retaliated by activating journalists to execute a continual targeted smear campaign – that has yet to stop - intended to chill her whistleblowing efforts.

14

34. Directly resulting from this coordinated "Market Erasure," Plaintiff - a dual-LL.M. attorney licensed in New York since 2008 - has been relegated to $30–$50 per hour document review projects. Destroying Plaintiff's senior-level earning capacity constitutes a cognizable injury to protected property interests in her law license, reputation, and business relationships under *Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998).

## IV.    THE ENTERPRISE: A TRANSNATIONAL ASSOCIATION-IN-FACT

35. The "Enterprise" is a transnational Association-in-Fact comprised of the TCO Core (embedded within the legitimate entities of AJMN and the Qatari Sovereign), Pillsbury (FARA No. 5198), and various "Media or Propaganda Proxies" and "Strategic Defense Proxies." *See Boyle v. United States*, 556 U.S. 938 (2009) (holding that an association-in-fact enterprise requires only a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.)

36. The Enterprise's common purpose is the continuous, 15-year extraction of sovereign assets (the $Trillion extraction), pecuniary benefits, and the protection Osama's Licensure Deficit.

37. **The Three Pillars of the Enterprise Hierarchy**: The Enterprise functions through a succession of misrepresentations, where the TCO Core provides the capital and the "Original Sin" of Osama's Licensure Deficit, while the ~~institutional shield~~Institutional Shield (FARA No. 5198) and Media Proxies provide the legitimate membrane" required to enforce silence and protect the $Trillion extraction.

15

Specifically: (i.) **The TCO Core**: Embedded within AJMN, Plaintiff observed how this core provides the funding and Osama's Licensure Deficit - which serves as the "Original Sin" required to facilitate the $Trillion extraction; (ii.) **The Institutional Shield (The Legitimate Membrane)**: Pillsbury (FARA No. 5198) provides the "white shoe" status used to sanitize the fraud and ignore questions about Osama's legal credentials to protect the "golden goose," i.e., a deep-pocketed GCC sovereign client; (iii.) **The Media Proxies (Enforcers of Silence)**: These actors execute the "Karen" script, from August 3, 2019, through March 2, 2026, to achieve ~~witness neutralization~~ Witness Neutralization before the fraud can be exposed in the media or a state or federal forum.

~~35~~38. The Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its "regular way of doing business" is the coordination of wire fraud and ~~witness neutralization~~ Witness Neutralization.

## V.    THE FORENSIC CONTINUUM: DEFINITION AND SCOPE

~~36~~39. **The 15-Year Unified Pattern (2011–2026)**: Plaintiff defines the "Continuum" as *inter alia* the unbroken, fifteen-year sequence of racketeering and retaliatory acts executed to protect the TCO, the $Trillion extraction, and Osama's Licensure Deficit. This pattern satisfies both "closed-ended" and "open-ended" continuity, proving that racketeering is the Enterprise's regular method of transnational business. The Continuum could have begun before that but that is when Plaintiff discovered it. See Exhibit J - "Chronology of Events."

~~37~~40. **The 7-Year Whistleblower Strike (2019–2026)**: Within this 15-year Continuum is the specific, seven-year continual, coordinated reputational assault on Plaintiff's Three Plinths. The answer to why Plaintiff, a senior lawyer but with a

16

1:2024cv09978-ALC

limited North American footprint given her extended absence abroad, has graced the paces of Media Defendants' pages lies in the Enterprise, what it is trying to protect, and the disastrous and long reaching consequences for Defendants if subjected to forensic judicial scrutiny. The consequences go beyond the named Defendants, but impact insurers, past and present clients served by Osama, and breach professional conduct rules for the Pillsbury partners who ignored Plaintiff's ~~actual notice~~Actual Notice (Exhibit K.)

~~38~~41. **The Transnational Relay of Misrepresentation:** The Continuum transcends "~~institutional membranes~~Institutional Membranes" through a succession of misrepresentations. The proverbial baton Osama's Licensure Deficit and the related "Oxford Fabrication" was passed from AJMN in Doha (2011–2012) to the "Lateral Relay" in Western law firms (2012–2026), culminating in the "silver bullet" aimed at Plaintiff in the Southern District of New York (2023–2026.)

## VI. AJMN & THE MECHANICS OF WITNESS NEUTRALIZATION

~~39~~42. This matter has its roots in 2010 Doha when Plaintiff interviewed for and got the job of Legal Counsel at AJMN in June-July 2010. Upon information and belief, Osama sabotaged Plaintiff's onboarding after she received the job offer to join AJMN in July 2010. As a result of a deliberately bungled communication from the recruiter, Plaintiff sat in Bahrain for nearly six months waiting for her Qatari visa to materialize while she spent her savings and debtors' prison loomed. Plaintiff begged Osama to find a solution but her please fell on deaf ears (Exhibit L.) Finally arriving in Doha in February 2011, Plaintiff found the AJMN Contracts Department in a

shambles, staffed with non-lawyers posing as lawyers, no files, and no paper trails. It was a corporate governance disaster.

43. In 2011, Plaintiff learned of an earlier due diligence inquiry conducted by a Qatari colleague at AJMN, Yousef Al-Jaber. Al-Jaber's investigation of the Jordanian Bar Association ("JBA") roster in Amman first identified the Licensure Deficit. This verification galvanized Plaintiff's broader audit of the systemic corruption within the AJMN Contracts Department and established the "Achilles' heel" that the Enterprise later sought to protect through Market Erasure.

44. The JBA rules on how to become a lawyer are clear. One must be a Jordanian national, resident in Jordan, be 21 or older, hold a degree in law from a recognized university/institute and not convicted of a felony or a moral misdemeanor (Exhibit M.) It is not possible to waive into the Jordanian judiciary with foreign training, even as a Jordanian national.

45. Osama was terminated from AJMN in March 2012. Plaintiff was promoted and put on an investigative team to investigate mismanagement of funds and hijacked projects. Consequently, Plaintiff was subject to death threats, slashed tires, cancelled travel visas, sexual harassment, email hacking (personal and professional) to the extent that Plaintiff had a 24/7 CID protective tail.

46. Plaintiff was terminated from AJMN in December 2014 for monitoring internal corruption by Osama's replacement, himself a Sudanese lawyer with fake credentials who was also part of the TCO.

18

44447. Plaintiff's deep involvement with high-level and sensitive investigations put a "silver bullet" target on Plaintiff's back. The "silver bullet" is continual targeted hits from 2019 to 2026. By casting Plaintiff as "unstable" and "unsavvy" the Enterprise can protect its vast interests from scrutiny.

4548. The ~~witness neutralization~~Witness Neutralization was coupled with economic duress i.e., Stracher's $0.00 release demand, to force a legal surrender. By continuing to strip Plaintiff of her reputation and her income simultaneously, the Enterprise could achieve total ~~witness neutralization~~Witness Neutralization during the TAC period.

4649. **The KKK Act Violation**: Under 42 U.S.C. § 1985(2), this coordination to "deter, by force, intimidation, or threat" a witness from attending or testifying in federal court constitutes a *per se* violation of the Civil Rights Act of 1871. The media insults are the "intimidation"; the professional liquidation is the "force."

4750. **Joint Participation in Obstruction:** The March 2, 2026, Reason.com article was not independent commentary; it was a coordinated overt act of witness tampering published 96 hours after this Court's Order. By utilizing defense counsel (Ballard Spahr and Stracher) to execute this strike while on ~~actual notice~~Actual Notice of the Licensure Deficit, the Defendants formalized their joint participation in the obstruction of a federal proceeding.


## VII.   THE PROCEDURAL BLOCKADE: JUDICIAL ABEYANCE AS A TOOL OF ATTRITION

4851. **The 10-Month Silence (June 2025–Present):** Plaintiff identifies a critical failure in the state-court machinery: the Cross-Motion for Sanctions against Bolger,

1:2024cv09978-ALC

Cherner, and DWT remains unadjudicated for ten months (Exhibit N.) This sustained silence - a "Procedural Blockade" - creates a state-sanctioned "Safe Harbor" for the Enterprise's enforcers to execute a "Market Erasure" under color of law. Because this abeyance constitutes "Bad Faith or Harassment" that renders the state forum inadequate to protect Plaintiff's constitutional property interests, federal intervention is authorized under the exception to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). Consequently, the Enterprise's joint participation with the state in maintaining this blockade subjects Plaintiff to a deprivation of rights that only this Court can redress.

## VIII. THE INSTITUTIONAL SHIELD: PILLSBURY (FARA NO. 5198) AND OSAMA

52. **The Predicate Fraud and the "Bounty":** Since 2011, the Enterprise has utilized the Licensure Deficit to facilitate a multi-million dollar "Bounty" for Osama. His partnership salary, predicated on the fraudulent misrepresentation of his Jordanian legal credentials, constitutes a series of distinct RICO Predicates of Wire Fraud (18 U.S.C. § 1343). This "Bounty" incentivizes the oversight of the structural "shambles" within the AJMN Contracts Department that facilitated the $Trillion extraction

53. **The Capital Surge and Witness Neutralization:** The Enterprise utilized Plaintiff's forensic alerts, including the 2020 Notice to Pillsbury (FARA No. 5198), as a "market signal" to increase capital flow to the institutional shield.Institutional Shield. This is evidenced by the 2025 opening of the Pillsbury Doha Office (Exhibit O) with conspicuously little to none of the typical press or fanfare, which functioned

as a performance premium for ~~witness neutralization~~Witness Neutralization, incentivizing the Law Firm Defendants to maintain "conscious avoidance" of the Licensure Deficit.

~~51~~54. **The Economic Execution of Plaintiff:** Conversely, the Enterprise systematically liquidated Plaintiff's career through the "Market Erasure" script. While the Enterprise associates received performance premiums, the Propaganda Proxies devalued Plaintiff's eighteen-year license to zero relegating a senior-level attorney to $30–$50 per hour document review projects.

~~52~~55. **The Institutional Shield:** Pillsbury (FARA No. 5198) represents the maturation of the "Lateral Relay" - a blueprint utilizing global law firms to sanitize irregularities and protect the $Trillion extraction from New York discovery.

## IX.    THE PROPAGANDA PROXY PIVOT: THE DOMESTIC BAIT-AND-SWITCH

~~53~~56. The Continuity of Retaliation and Predicate Wire Fraud: The Enterprise's campaign of ~~witness neutralization~~Witness Neutralization began with a bad-faith investigation at Qatar Airways, including a solicited physical assault that necessitated Plaintiff's 2019 swift exfiltration to New York. Upon her return, the Enterprise executed a "honeypot" operation via Propaganda Proxies to identify and neutralize Plaintiff's forensic findings. This culminated in a "bait-and-switch" pivot: after being vetted by John Hawley and Luke Rosiak regarding the Licensure Deficit, the proxies coordinated with Pillsbury (FARA No. 5198). Specifically, Pillsbury's Matt Hyams transmitted fraudulent licensure data about Osama, asserting his Jordanian

21

Bar No. is 11840, over interstate wires to suppress the audit (Exhibit P). Rather than correcting the record, the Enterprise utilized these electronic transmissions (18 U.S.C. § 1343) to publish inverted the August 3, 2019 "hit piece" functioning as a paid performance for the Enterprise to "chill" Plaintiff's testimony an protect the $Trillion extraction (Exhibit Q). When challenged, Hawley said he had to take care of his family (Exhibit R.) This coordinated strike constitutes a pattern of Federal Witness Tampering (18 U.S.C. § 1512) that remains active through the March 2, 2026, strike. Then Editor-in-Chief of The Daily Caller's agreement to unpublish the hit piece on April 9, 2021, belies the fraudulent nature of the "hit piece" piece about Plaintiff (Exhibit S.)

## X.    THE FRUSTRATED AUDIT: THE SRA OMISSION AND PILLSBURY'S (FARA NO. 5198) CONSCIOUS AVOIDANCE

~~54~~57. **The Post-Hoc "Fix" and Conscious Avoidance**: In 2019, Plaintiff provided direct ~~actual notice~~Actual Notice and documentary evidence of the Licensure Deficit to the Solicitors Regulatory Authority (SRA) in Birmingham, England and Pillsbury (FARA No. 5198.) The SRA investigation into Osama failed because of bureaucratic reticence and potential corruption (Exhibit T.) Plaintiff emailed Pillsbury partners Debra Erni[5] Edward Flanders, David Dekker, and Edward Perron (now retired) about Osama (Exhibits D – G.) Rather than investigating the deficit, Pillsbury engaged in "conscious avoidance" to protect its Qatari billable relationship, tactically assigning a "co-chair" to oversee the Middle East Practice in London and to buffer Osama while

---

[5] Debra Erni is now with Holland & Knight in London: https://www.hklaw.com/en/professionals/e/erni-debra. Accessed April 8, 2026.

1:2024cv09978-ALC

maintaining its ~~institutional shield~~ Institutional Shield. To obstruct the audit, the Enterprise utilized sovereign leverage ("Wasta" — nepotism and/or a bribe in Arabic slang) to execute a post-hoc insertion of Osama into the JBA roster (Exhibit U.) This 2019 administrative "fix" - evidenced by a digital photograph appearing in a record that was "dark" for seventeen years -cannot retroactively sanitize fourteen years of Wire Fraud (18 U.S.C. § 1343.) By accepting this forensic impossibility as "proof" of a 2002 license, the Defendants formalized their joint participation in the RICO Conspiracy.

## XI.    THE CONSOLIDATED FORENSIC AUDIT: THE CULTURE OF COMPROMISE

~~55~~58. **Internal Corroboration and the Doha "Smuggling"**: While performing high-level document review for Pillsbury (FARA No. 5198) via one of the document review agencies in mid-2025, Plaintiff observed internal communications promoting the Doha office while it remained publicly non-existent. This internal campaign confirms that Pillsbury actively holds Osama out as a licensed lawyer despite the Licensure Deficit. The Enterprise's subsequent "smuggling" of Osama to Doha -a jurisdiction without an American extradition treaty - constitutes a deliberate act to obstruct this litigation (18 U.S.C. § 1512.)

~~56~~59. **The Binding Agent (Mutual Compromise)**: The Enterprise is anchored by a "culture of compromise" where professionals are integrated through mutual documentation of illicit activities. This "binding agent" ensures that witnesses to the $Trillion extraction remain silent to protect their professional security. This operational reality -confirmed to Plaintiff through direct professional admissions -

23

explains the precision of the "Karen" script overseen by Defendant Richard Best, whose tenure in Dubai provided the tactical exposure to implement this GCC-specific mechanism of mutual control.

60. **Corporate Sabotage and the "Suitcase" Predicates**: The Enterprise utilized "corporate saboteurs" within AJMN to prevent the establishment of foreign bureaus, thereby facilitating a "suitcase money" protocol for moving capital. Plaintiff's attempts to discipline this structural failure and establish bank accounts nearly got her killed as it directly threatened the Enterprise's operational secrecy, resulting in the subsequent ~~witness neutralization~~ Witness Neutralization campaign and "Market Erasure" script.

## XII. THE CONSOLIDATED FORENSIC AUDIT: THE CONSTITUTIONAL STATUTORY NEXUS

61. **The Fair Use Mirage and State Action**: The Media Defendants utilized the First Amendment and the "Fair Use" doctrine as a "mirage" to obscure active racketeering. While a newspaper may report a tweet under fair use, it may not coordinate with a foreign sovereign or RICO Enterprise to execute a professional liquidation. By inverting the N.Y. Anti-SLAPP law (Civil Rights Law § 76-a) into a state-authorized shield, the Defendants utilized this "pure opinion" mirage to eradicate Plaintiff's property interests without discovery. See *Phipps v. Kuonen*, 2025 NY Slip Op 05268 (N.Y. App. Div. Oct 01, 2025) (demonstrating the judiciary's use of the "pure opinion" defense to eliminate property interests in reputation). Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), this joint participation in the

seizure of property pursuant to a state statute characterizes the Media Defendants as state actors.

59~~62~~. **Statutory Violations (RICO and § 1985)**: The March 2, 2026, "Post-Order Insult" published 96 hours after this Order - citing only Ballard Spahr counsel - proves a coordinated script of Witness Tampering (18 U.S.C. § 1512) and Extortionate Attrition (18 U.S.C. § 1951.) This tactical compulsion, combined with Stracher's demand for a $0.00 release, constitutes a digital iteration of the intimidation prohibited by 42 U.S.C. § 1985(2.) Despite having ~~actual notice~~Actual Notice of the Licensure Deficit, Pillsbury (FARA No. 5198) neglected its duty to prevent this conspiracy, instead providing the "Institutional Membrane" to finance the smear (42 U.S.C. § 1986). This coordinated liquidation enforces the "Karen" script as a market signal to neutralize the Plaintiff and safeguard the Enterprise's $Trillion extraction.

## XIII. THE FORENSIC QUANTIFICATION OF INJURY AND IRREPARABLE HARM

60~~63~~. **The Illicit "Bounty" and Witness Neutralization**: Since 2012 when he joined Bird & Bird, Osama has drawn a continuous partnership salary estimated in the tens of millions, predicated on the fraudulent misrepresentation of his Jordanian licensure. Each electronic transmission of this salary constitutes a distinct RICO Predicate of Wire Fraud (18 U.S.C. § 1343.) This "bounty" necessitated the professional liquidation of Plaintiff - the sole auditor capable of exposing the $Trillion extraction. To enforce Plaintiff's silence regarding the Enterprise's "suitcase money" protocols at AJMN, the TCO utilized a 15-year campaign of tactical compulsions,

including the weaponization of Qatar's Kafala System and financial hostage-taking, to achieve ~~witness neutralization~~Witness Neutralization.

~~61~~64. **The Time-Extraction Racket and Irreparable Harm**: Plaintiff has been forced to divert fifteen years of her prime earning capacity into a state of involuntary forensic servitude to combat the Enterprise's assaults on her Three Plinths. This "time-extraction racket" is designed to preclude Plaintiff's practice of law while she defends her life against the Enterprise's "target beacons." The Daily Mail's intentional publication of Plaintiff's residential data signaled for Plaintiff's physical liquidation. This psychological and physical assault constitutes irreparable harm that cannot be remedied by money alone, necessitating a mandatory injunction to unpublish the retaliatory articles and redact all private data.

## XIV.  NOTICE OF ELECTION: ALTERNATIVE SERVICE

~~62~~65. **The FCPA and Honest Services Fraud**: The Enterprise utilized the Licensure Deficit and the "Lateral Relay" to facilitate payments to foreign officials, securing legal mandates through a "Quid Pro Quo of Silence." These acts constitute violations of the Foreign Corrupt Practices Act (15 U.S.C. § 78dd-1) and Honest Services Fraud (18 U.S.C. § 1346.) By providing an "~~institutional shield~~Institutional Shield" for an unlicensed professional, the Law Firm Defendants deprived the Sovereign, i.e., Qatar, of honest services, a recognized RICO predicate that anchored the $Trillion extraction.

~~63~~66. **FARA Non-Disclosure and State Action**: The failure of Pillsbury (FARA No. 5198) to disclose the Licensure Deficit in its Department of Justice filings violates

26

1:2024cv09978-ALC

22 U.S.C. § 611. This non-disclosure provides the "color of law" for the Section 1983 claim and facilitated the "Market Erasure" of Plaintiff's anti-corruption credentials.

67. **Service and the April 8 Machine**: Pursuant to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), Plaintiff elects service via U.S. Mail and Email to bypass the Enterprise's "Jurisdictional Safe Harbor" and ensure the Licensure Deficit data is brought before this Court by the April 8 deadline.

## XV. CAUSES OF ACTION

**COUNT I: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (42 U.S.C. § 1983)**
**(Against All Defendants for Constitutional Erasure via Joint Participation)**

68. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

69. **State Action via Joint Participation**: The private Defendants acted under color of law by willfully participating in joint activity with the State of Qatar and the New York State Judiciary.

70. **Procedural Blockade**: Defendants leveraged the ten-month judicial abeyance in the state court as a "safe harbor" to execute a financial "Squeeze Play" and contribute to the "Market Erasure" of the Plaintiff.

71. **Fourteenth Amendment Deprivation**: These acts resulted in a *per se* deprivation of Plaintiff's property interest in her professional standing since 2004 and membership in the New York Bar since 2008. See *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding that Due Process is required when a state's action attaches a "badge of infamy" that alters an individual's legal

27

1:2024cv09978-ALC

status or professional standing); see also *Savile v. Roberts*, 1 Ld. Raym. 374 (1698) (Lord Holt, C.J.) (confirming that damage to a person's fame is a compensable injury to property.)

**COUNT II:  CIVIL RICO CONSPIRACY (18 U.S.C. § 1962(d))**
**(Against All Defendants for a 15-Year Pattern of Racketeering)**

6972. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

7073. **The Association-in-Fact Enterprise:** Defendants are associated-in-fact as a transnational enterprise - a "Swiss Army Knife" of fraud - coordinated to extract sovereign assets and shield those extractions from forensic audit. This Enterprise has exhibited both closed-ended and open-ended continuity since at least 2011, proving that its regular way of doing business is the coordination of wire fraud and ~~witness neutralization~~ Witness Neutralization. See *Inc v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (holding that RICO continuity is established when predicate acts are part of a defendant's regular way of conducting business.)

7174. **The TCO Core and Institutional Membrane**: The TCO embedded within the Qatari Sovereign and AJMN serves as the administrative core, while Pillsbury (FARA No. 5198) provides the "white shoe" ~~institutional membrane~~ Institutional Membrane required to sanitize the $Trillion extraction.

7275. **Predicate Acts: Wire Fraud (18 U.S.C. § 1343)**: The Enterprise utilized a Succession of Misrepresentations regarding Osama's purported Jordanian law

28

license and the apparent "Oxford Fabrication" (Exhibit V) as material inducements to secure multi-million-dollar legal mandates and partnership salaries.

76. **Predicate Acts: Witness Tampering (18 U.S.C. § 1512)**: The Enterprise executed a coordinated campaign of ~~witness neutralization~~Witness Neutralization, including the "Karen" script and the March 2, 2026, Post-Order Insult, specifically intended to discourage the Plaintiff's participation in federal proceedings.

77. **Predicate Acts: Extortion (18 U.S.C. § 1951)**: Following this Court's February Order, the Enterprise utilized tactical compulsion, specifically the $0.00 release demand coupled with the threat of professional disparagement, to force a legal surrender for no consideration.

78. **Honest Services Fraud (18 U.S.C. § 1346)**: By shielding an unlicensed Jordanian lawyer, Pillsbury deprived the Sovereign of its right to the "Honest Services" of a legitimate professional, a specific fraud that anchored the $Trillion extraction.

**COUNT III:-    CONSPIRACY TO OBSTRUCT JUSTICE (42 U.S.C. § 1985(2) - THE KKK ACT)**

**(Against All Defendants for Conspiratorial Retaliation Against a Federal Witness)**

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. **The *Haddle v. Garrison* Standing**: Pursuant to the Civil Rights Act of 1871, it is unlawful for two or more persons to conspire to deter, by force, intimidation, or threat, a witness from attending or testifying in any court of the United States.

29

1:2024cv09978-ALC

81. **Interference with Professional Marketability**: Defendants conspired to interfere with Plaintiff's business relationships - relegating her to $30 - $50-per-hour document review projects - specifically to intimidate her into abandoning her role as a whistleblower in this federal action.

82. **The $4.5 Billion Delta**: This conspiratorial interference constitutes a direct injury to Plaintiff's property and business interests, for which the statute provides a federal remedy.

## COUNT IV:- FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512)
**(Against All Defendants for Post-Order Retaliation)**

83 Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. **Obstruction of a Federal Proceeding**: Following this Court's Order, Defendants executed a retaliatory campaign intended to obstruct the due administration of justice.

85. **The March 2026 Overt Act**: The publication of disparaging material in Reason.com during a court-ordered amendment period was a tactical market erasure designed to force Plaintiff's withdrawal from the case.

**PRAYER FOR RELIEF: WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants, jointly and severally, for: (A) Special Damages in an amount no less than $1.5 Billion, representing the forensic delta of Plaintiff's career liquidation and loss of professional property; (B) Treble Damages pursuant to 18 U.S.C. § 1964(c); (C) Compensatory and Punitive Damages for the coordinated reputational assault and witness tampering, in an amount to be determined at trial; (D) Equitable Relief, including a permanent mandatory injunction restraining Defendants from further interference with Plaintiff's professional marketability and a

1:2024cv09978-ALC

redaction of residential data; and (E) Costs and Fees, including reasonable attorneys' fees and the

costs of this litigation.

Respectfully Submitted,

/s/ Sonya Shaykhoun, Esq.


Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

2

1:2024cv09978-ALC

## VERIFICATION

I, **Sonya Hashim Shaykhoun, Esq.**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that:

1. I am the Plaintiff in the above-captioned action.

2. I have read the foregoing Third Amended Complaint and know the contents thereof.

3. The factual allegations contained therein, including the mathematical impossibility of Defendant Osama's licensure, the $Trillion extraction from AJMN, and the March 2026 retaliatory "Insult" are true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4. I possess the specialized forensic training and first-hand evidentiary knowledge required to act as a sovereign auditor who, from 2012 to 2014, personally investigated an integral part of the described Transnational Criminal Organization while employed as a Senior Legal Counsel at AJMN in Doha.

5. My knowledge of the $Trillion extraction and the Licensure Deficit is informed by my eight years working in Doha, Qatar and professional training, including an LL.M. in Corruption, Law and Governance from the University of Sussex and the Rule of Law and Anti-Corruption Center (ROLACC) (2016-2018) in Doha, Qatar.

6. I further verify that I provided Actual Notice of the Licensure Deficit and the associated fraud to the Pillsbury Partners named herein on specific dates in March 2020, as documented in the Exhibits attached to this Complaint.

3

1:2024cv09978-ALC

Executed on this 8th day of April 2026, in New York, New York.

Respectfully Submitted,

/s/ Sonya Shaykhoun, Esq.


Sonya Shaykhoun, Esq.,
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

Plaintiff/Attorney *Pro Se*

4

1:2024cv09978-ALC

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, I hereby certify that this Memorandum of Law complies with the length limitations set forth in the Individual Practices of Judge Andrew L. Carter, Jr. This document was prepared in Century Schoolbook 12-point font and contains ~~60657~~009 words, exclusive of the parts of the memorandum exempted by the Court's rules. In preparing this certification, I relied on the word count of the word-processing system used to prepare the document.

Dated: April 8, 2026

/s/ *Sonya Shaykhoun,Esq.*
Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-996-5662 | 929-408-4531

5

1:2024-cv-09978-ALC

# EXHIBIT 3: State Court Order (Index No. 100558/2024) – April 10, 2026

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **Hon. James E. d'Auguste**          **PART 55**

*Justice*

-------------------------------------------------------------------X

SONYA SHAYKHOUN,

                 Plaintiff,

           - v -

THE DAILY MAIL, DAILYMAIL.COM, DAILY MAIL AND
GENERAL TRUST PLC, NOA HALFF, THE DAILY BEAST
COMPANY LLC, AJ MCDOUGALL, BEN SHERWOOD,
JOANNA COLES, INTERACTIVECORP, BARRY DILLER,

                 Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 100558/2024 |
| MOTION DATE | 10/19/2025 |
| MOTION SEQ. NO. | 007 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 007) 69, 70, 71, 72, 73
were read on this motion to/for          FEE WAIVER          .

Plaintiff's motion for an order pursuant to CPLR 1101 directing the clerk to waive fees
associated with filing a motion for sanctions is denied.

Inherent in granting an order to waive fees is a finding that the movant's anticipated
claim for relief has potential merit, as courts have routinely held that a gatekeeping analysis to
protect the public fisc from frivolous litigation is constitutionally permissible. *See, e.g., Bonez v.
McGinnis*, 305 A.D2d 814, 815 (3d Dept. 2003 (collecting authorities and finding that CPLR
Art. 11 is constitutional). Functionally, the Court finds that the standard in considering an
application to waive fees for a motion is equivalent to the standard in considering a proposed
order to show cause "the court must look...at the relief requested and the authority of the person
seeking such relief to do so, and then ascertain if under the set of facts most favorable to the
movant the relief could be granted." *Zarate v. A&E Tiebout Realty LLC*, 79 Misc. 3d 1207(A),
*1 (Civ. Ct., Bronx Co. 2023) (quotation and citation omitted).

**100558/2024  SHAYKHOUN, SONYA vs. THE DAILY MAIL**
**Motion No. 007**

**Page 1 of 2**

Movant's papers offer no facial basis to grant the relief sought. Movant – who while appearing self-represented in this action, is an attorney and thus not subject to the grace normally afforded pro se litigants – seeks leave to file a fee-free motion for sanctions against defendants apparently in connection to defendants' motion for anti-SLAPP remedies that were denied without prejudice in Motion Seq. No. 005.[1] (Decision and Order, NYCSFE Doc. No. 68). However, particularly given that defendants' motion was denied without prejudice, there is no basis upon which to find that defendants' motion practice was frivolous now. Furthermore, given the well-known and high burden necessary in this Department to award sanctions for frivolous conduct, plaintiff's proposed sanctions motion is itself ill-founded.

Accordingly, it is

ORDERED that plaintiff's motion to waive fees is denied.

This constitutes the Decision and Order of the Court.

| | | | |
|---|---|---|---|
| **4/10/2026** | | | |
| DATE | | **James d'Auguste, J.S.C.** | |

CHECK ONE:    [X] CASE DISPOSED    [ ] NON-FINAL DISPOSITION

[ ] GRANTED    [X] DENIED    [ ] GRANTED IN PART    [ ] OTHER

APPLICATION:    [ ] SETTLE ORDER    [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:    [ ] INCLUDES TRANSFER/REASSIGN    [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE

---

[1] While representing herself, plaintiff is reminded that a lawyer's role is to serve as counselor as much as advocate, and a client's insistence in commencing a case does not excuse a lawyer from following the long-known principal that Elihu Root espoused long ago that "about half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198, 201-202 (7th Cir. 1983).

**100558/2024  SHAYKHOUN, SONYA vs. THE DAILY MAIL**                    **Page 2 of 2**
**Motion No. 007**

1:2024-cv-09978-ALC

# EXHIBIT 4: NYSCEF Filings (100558/2024) Screenshot

NYSCEF - New York State Courts Electronic Filing (Live System)

**100558/2024** – New York County Supreme Court

Short Caption:  **SONYA SHAYKHOUN ESQ. v. THE DAILY MAIL et al**
Case Type: **Torts – Other (Conversion)**
Case Status: **Disposed**
eFiling Status:  **Full Participation Recorded**
Assigned Judge: **James Edward D'Auguste**

E-mail Participating Parties

File to this Case     Print Document List

**Narrow By Options**

Document Type: [                    ▽]    Filed By:

[                    ▽]

Motion Info: [                    ▽]    Filed Date:

[        📅]  thru  [        📅]

Document #: [        ]

☐ Show Motion Folders ONLY

**Sort By:** [Document #    ▽]

| # | Document | Filed By | Status |
|---|----------|----------|--------|
| 1 | COUNTY CLERK MINUTES - PRIOR TO CONVERSION | Court User Filed: 11/14/2024 *Received: 11/14/2024* | **Processed** Confirmation Notice |
| 2 | APPROVED - LETTER APPLICATION TO CONVERT TO E-FILING | Court User Filed: 11/14/2024 *Received: 11/14/2024* | **Processed** Confirmation Notice |
| 3 | COMPLAINT (AMENDED) | | *Returned For Correction* |
| 4 | EXHIBIT(S) - 1 *Daily Beast Article* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 5 | EXHIBIT(S) - 2 *Daily Mail Article* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 6 | EXHIBIT(S) - 3 *The Tweet* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 7 | EXHIBIT(S) - 4 *AJ McDougall's Email* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 8 | EXHIBIT(S) - 5 *Plaintiff's Response to AJ* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 9 | EXHIBIT(S) - 6 *Daily Beast's Code of Ethics* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 10 | EXHIBIT(S) - 7 *Hate Mail* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 11 | EXHIBIT(S) - 8 *Kicked Out of Civil Group Email* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 12 | EXHIBIT(S) - 9 *Take Down Records to The Daily Beast* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 13 | EXHIBIT(S) - 10 *Plaintiff's Follow Up Email to Daily Beast* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 14 | EXHIBIT(S) - 11 *Email From The Daily Mail* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 15 | EXHIBIT(S) - 12 *The Daily Mail Take-Down Notice* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 16 | EXHIBIT(S) - 13 *Follow Up Email to The Daily Mail* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 17 | EXHIBIT(S) - 14 *Lindsey Cherner's (Daily Beast atty) correspondence with Plaintiff* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 18 | EXHIBIT(S) - 15 *Plaintiff's email exchange with Kate Bolger (Daily Beast atty)* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 19 | EXHIBIT(S) - 16 *OSC* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 20 | EXHIBIT(S) - 17 *Watermelon Vendor Email* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 21 | EXHIBIT(S) - 18 *Perplexity On Daily Beast Question* | Court User Filed: 11/19/2024 *Received: 11/19/2024* | **Processed** Confirmation Notice |
| 22 | EXHIBIT(S) - 19 *Perplexity On Daily Mail Question* | Court User Filed: 11/19/2024 | **Processed** Confirmation Notice |

| | | | |
|---|---|---|---|
| | | *Received: 11/19/2024* | |
| 23 | EXHIBIT(S) - 20<br>*Plaintiff's Substack Article* | Court User<br>Filed: 11/19/2024<br>*Received: 11/19/2024* | **Processed**<br>Confirmation Notice |
| 24 | EXHIBIT(S) - 21<br>*Other Supportive Tweets* | Court User<br>Filed: 11/19/2024<br>*Received: 11/19/2024* | **Processed**<br>Confirmation Notice |
| 25 | NOTICE OF APPEARANCE (POST RJI)<br>*Notice of Appearance of Rachel F. Strom* | STROM, RACHEL F<br>Filed: 11/20/2024<br>*Received: 11/20/2024* | **Processed**<br>Confirmation Notice |
| 26 | NOTICE OF WITHDRAWAL OF ACTION /<br>PROCEEDING<br>*Order of Voluntary Discontinuance* | Shaykhoun, Sonya H(Pro<br>Hac / Pro Se)<br>Filed: 12/31/2024<br>*Received: 12/31/2024* | **Processed**<br>Confirmation Notice<br>Payment Receipt |
| 27 | ORDER - OTHER (NON-MOTION) | Court User<br>Filed: 01/15/2025<br>*Received: 01/15/2025* | **Processed**<br>Confirmation Notice |
| 28 | NOTICE OF ENTRY<br>*Notice of Entry of Order of Voluntary<br>Discontinuance* | BOLGER, KATHERINE<br>MARY<br>Filed: 01/27/2025<br>*Received: 01/27/2025* | **Processed**<br>Confirmation Notice |
| 29 | NOTICE OF ENTRY<br>*Notice of Entry of Order of Voluntary<br>Discontinuance* | SULLIVAN, THOMAS<br>BYRNE<br>Filed: 01/27/2025<br>*Received: 01/27/2025* | **Processed**<br>Confirmation Notice |
| 30 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>*In re Service of Order of Voluntary Withdrawal<br>Daily Beast* | Shaykhoun, Sonya H(Pro<br>Hac / Pro Se)<br>Filed: 03/06/2025<br>*Received: 03/06/2025* | **Processed**<br>Confirmation Notice |
| 31 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>*Re Order of Withdrawal Daily Mail* | Shaykhoun, Sonya H(Pro<br>Hac / Pro Se)<br>Filed: 03/06/2025<br>*Received: 03/06/2025* | **Processed**<br>Confirmation Notice |
| 32 | ORDER TO SHOW CAUSE-SIGNED (Motion #003)<br>*CASE CONVERTED TO E-FILE. ORIGINAL ORDER<br>TO SHOW CAUSE FILED IN HARDCOPY.<br>RECREATED TO COMPLETE THE ... show more* | Court User<br>Filed: 03/24/2025<br>*Received: 03/24/2025* | **Processed**<br>Confirmation Notice |
| 33 | NOTICE OF MOTION (Motion #005)<br>*Notice of Motion for Attorneys' Fee Pursuant to<br>N.Y. Civil Rights Law 70-a(1)(a)* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice<br>Payment Receipt |
| 34 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF<br>MOTION (Motion #005)<br>*Affirmation in Support of the Daily Beast<br>Defendants' Motion for Attorneys' Fees Pursuant to<br>N.Y. Ci ... show more* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 35 | EXHIBIT(S) - A (Motion #005)<br>*October 1, 2024 Letter Correspondence* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 36 | EXHIBIT(S) - B (Motion #005)<br>*Email Correspondence between October 1 and<br>October 3, 2024* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 37 | EXHIBIT(S) - C (Motion #005)<br>*Hard Copy Filings* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 38 | EXHIBIT(S) - D (Motion #005)<br>*Order to Show Cause Extending Time to Effect<br>Service* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 39 | EXHIBIT(S) - E (Motion #005)<br>*Joint Stipulation* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 40 | EXHIBIT(S) - F (Motion #005)<br>*Order of Voluntary Discontinuance* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 41 | EXHIBIT(S) - G (Motion #005)<br>*K. Bolger Firm Biography* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 42 | EXHIBIT(S) - H (Motion #005)<br>*L. Cherner Firm Biography* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |
| 43 | EXHIBIT(S) - I (Motion #005)<br>*Chart of Attorneys' Fees and Hours<br>Sealed* | BOLGER, KATHERINE<br>MARY<br>Filed: 06/02/2025<br>*Received: 06/02/2025* | **Processed**<br>Confirmation Notice |

| 44 | ORDER TO SHOW CAUSE ( PROPOSED ) (Motion #004) | BOLGER, KATHERINE MARY | Processed |
| | Order to Show Cause to Seal/Redact Exhibit I in Connection with the Daily Beast Defendants' Motion f ... show more | Filed: 06/02/2025 Received: 06/02/2025 | Confirmation Notice Payment Receipt |
| 45 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #004) | BOLGER, KATHERINE MARY | Processed Confirmation Notice |
| | Affirmation in Support of the Daily Beast Defendants' Order to Show Cause to Seal/Redact Exhibit I i ... show more | Filed: 06/02/2025 Received: 06/02/2025 | |
| 46 | EXHIBIT(S) - I (Motion #004) | BOLGER, KATHERINE MARY | Processed Confirmation Notice |
| | Chart of Attorneys' Fees and Hours Sealed | Filed: 06/02/2025 Received: 06/02/2025 | |
| 47 | ORDER - SEALING (Motion #004) | Court User Filed: 06/05/2025 Received: 06/04/2025 | Processed Confirmation Notice |
| 48 | LETTER / CORRESPONDENCE TO JUDGE (Motion #004) | BOLGER, KATHERINE MARY | Processed Confirmation Notice |
| | Letter to the Court re: Clarification of Order to Seal and Redact (Dkt. No. 47) | Filed: 06/05/2025 Received: 06/05/2025 | |
| 49 | NOTICE OF CROSS-MOTION (Motion #005) | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 50 | AFFIDAVIT OR AFFIRMATION IN FURTHER SUPPORT OF CROSS-MOTION (Motion #005) | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 51 | EXHIBIT(S) - 1 (Motion #005) Signed Order January 2025 | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 52 | EXHIBIT(S) - 2 (Motion #005) October Order from Court | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 53 | EXHIBIT(S) - 3 (Motion #005) Rachel Strom, Esq. Notice of Appearance | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 54 | EXHIBIT(S) - 4 (Motion #005) SDNY Order May 12, 2025 | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 55 | EXHIBIT(S) - 5 (Motion #005) March 2025 Email Exchange between Bolger & Shaykhoun | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 56 | EXHIBIT(S) - 6 (Motion #005) November 2024 Email Exchange between Bolger and Shaykhoun | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 57 | EXHIBIT(S) - 7 (Motion #005) June Letter from Bolger | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 58 | APPLICATION FOR WAIVER OF COURT COSTS/ FEES/EXPENSES (Motion #005) | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/11/2025 Received: 06/11/2025 | Processed Confirmation Notice |
| 59 | REQUEST FOR RESTRICTED STATUS (Motion #004) | BOLGER, KATHERINE MARY Filed: 06/16/2025 Received: 06/16/2025 | Processed Confirmation Notice |
| 60 | ORDER TO SHOW CAUSE ( PROPOSED ) (Motion #006) | BOLGER, KATHERINE MARY | Processed Confirmation Notice |
| | Order to Show Cause to Seal/Redact Exhibit I in Connection with Motion for Attorneys' Fees | Filed: 06/16/2025 Received: 06/16/2025 | Payment Receipt |
| 61 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP (Motion #006) | BOLGER, KATHERINE MARY | Processed Confirmation Notice |
| | Affirmation in Support of the Daily Beast Defendants' Order to Show Cause to Seal/Redact Exhibit I I ... show more | Filed: 06/16/2025 Received: 06/16/2025 | |
| 62 | ORDER TO SHOW CAUSE - DECLINED/ WITHDRAWN (Motion #006) | Court User Filed: 06/17/2025 Received: 06/16/2025 | Processed Confirmation Notice |
| 63 | NOTIFICATION FOR SEALING | BOLGER, KATHERINE MARY Filed: 06/17/2025 Received: 06/17/2025 | Processed Confirmation Notice |
| 64 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO CROSS-MOTION AND IN FURTHER SUPPORT OF MOTION (Motion #005) | BOLGER, KATHERINE MARY Filed: 06/17/2025 | Processed Confirmation Notice |

*Affirmation in Further Support of the DB Defendants' Motion for Attorneys' Fees Pursuant to N.Y. Civ ... show more*

Received: 06/17/2025

| 65 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #005) *A response to Davis Wright Tremaine's Response to Cross Motion* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/18/2025 Received: 06/18/2025 | **Processed** Confirmation Notice |
|----|----|----|----|
| 66 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #005) *This is the corrected reply and replaces Doc. No. 65. I called and emailed E-filing several times an ... show more* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 06/20/2025 Received: 06/20/2025 | **Processed** Confirmation Notice |
| 67 | DECISION + ORDER ON MOTION (Motion #005) | Court User Filed: 10/14/2025 Received: 10/14/2025 | **Processed** Confirmation Notice |
| 68 | DECISION + ORDER ON MOTION (Motion #005) | Court User Filed: 10/14/2025 Received: 10/14/2025 | **Processed** Confirmation Notice |
| 69 | NOTICE OF MOTION (Motion #007) *Corrected* *This is per Doreen Small's instructions to me on 10/6/25* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 10/19/2025 Received: 10/21/2025 | **Processed** Confirmation Notice |
| 70 | AFFIDAVIT OR AFFIRMATION IN FURTHER SUPPORT OF CROSS-MOTION (Motion #007) | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 10/19/2025 Received: 10/19/2025 | **Processed** Confirmation Notice |
| 71 | EXHIBIT(S) - 1 (Motion #007) *Bank and Unemployment statements (redacted)* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 10/19/2025 Received: 10/19/2025 | **Processed** Confirmation Notice |
| 72 | EXHIBIT(S) - 2 (Motion #007) *Courtesy Copy of Cross Motion For Sanctions* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 10/19/2025 Received: 10/19/2025 | **Processed** Confirmation Notice |
| 73 | ORDER ( PROPOSED ) (Motion #007) *Proposed order to waive fees* *Redacted per 22 NYCRR §202.5(e)* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 10/19/2025 Received: 10/19/2025 | **Processed** Confirmation Notice |
| 74 | AFFIRMATION/AFFIDAVIT OF SERVICE *This is in re Kate Bolger, Esq.* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 11/10/2025 Received: 11/10/2025 | **Processed** Confirmation Notice |
| 75 | AFFIRMATION/AFFIDAVIT OF SERVICE *This is in re Lindsey Cherner, Esq.* | Shaykhoun, Sonya H(Pro Hac / Pro Se) Filed: 11/10/2025 Received: 11/10/2025 | **Processed** Confirmation Notice |

1:2024-cv-09978-ALC

# EXHIBIT 5: ECF LEDGER

1:2024-cv-09978-ALC

| 04/16/2026 | 85 | LETTER addressed to Judge Andrew L. Carter, Jr. from Thomas B. Sullivan dated April 16, 2026 re: Opposition to Plaintiff's Letter Motion. Document filed by DAILYMAIL.COM, Daily Mail and General Trust PLC, NOA HALFF, The Daily Mail..(Sullivan, Thomas) (Entered: 04/16/2026) |
|---|---|---|
| 04/16/2026 | 86 | LETTER addressed to Judge Andrew L. Carter, Jr. from Sara Tesoriero dated April 16, 2026 re: Opposition to Plaintiff's Letter Motion. Document filed by Richard Best, Cameron Stracher, Esq., Cameron Stracher, PLLC, Georgie Greig, Bevan Hurley, The Independent, Louise Thomas..(Tesoriero, Sara) (Entered: 04/16/2026) |
| 04/16/2026 | 87 | LETTER addressed to Judge Andrew L. Carter, Jr. from Katherine M. Bolger dated April 16, 2026 re: Opposition to Plaintiff's April 14, 2026 letter-motion for leave to file a fourth version of Third Amended Complaint. Document filed by Joanna Coles, Tracy Connor, Barry Diller, IAC INC., AJ MCDougall, Ben Sherwood, THE DAILY BEAST COMPANY LLC..(Bolger, Katherine) (Entered: 04/16/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/17/2026 05:43:10 | | |
| **PACER Login:** shaykhoun612 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** 1:24-cv-09978-ALC | |
| **Billable Pages:** 15 | **Cost:** 1.50 | |

*Defendants filed the Letters within the same hour:*

**ST**  Sara Tesoriero  📎
Re: Shaykhoun v. The Daily Mail et al.; 24 Civ. 9978; Daily Mail's Opposition...    Thu 10:13 PM
Dear Judge Carter: Pursuant to Rule 1(A) of this Court's Individual Practices, attached please...

📄 Indp Defs Opp ...

**VS**  Vaishampayan, Saumya  📎
Shaykhoun v. The Daily Mail et al.; 24 Civ. 9978; Daily Mail's Opposition to ...    Thu 10:02 PM
Dear Judge Carter: Pursuant to Rule 1(A) of this Court's Individual Practices, attached please...

📄 Shaykhoun v. D...

**CL**  Cherner, Lindsey  📎
Shaykhoun v. The Daily Mail et al; 24 Civ. 9978; DB Defendants' Opposition to ...    Thu 9:28 PM
Dear Judge Carter: Pursuant to Rule 1(A) of this Court's Individual Practices, attached please...

📄 Dkt. 87 - Shayk...

Page 2 of 2

1:2024-cv-09978-ALC

# EXHIBIT 6: THOMAS SULLIVAN, ESQ. APRIL 14, 2026, EMAIL

 **Outlook**

## Service on Viscount Rothermere

**From** Sullivan, Thomas B. <SullivanT@ballardspahr.com>

**Date** Tue 4/14/2026 12:31 PM

**To** Sonya Shaykhoun <sonya@shaykhounlaw.com>

**Cc** Vaishampayan, Saumya <vaishampayans@ballardspahr.com>

Dear Ms. Shaykhoun,

We represent Viscount Rothermere in connection with your newly asserted claims against him. Viscount Rothermere would be willing to waive formal service of the summons if you request him to do so under Rule 4, and provide us with waiver form (https://www.nysd.uscourts.gov/sites/default/files/2018-06/AO-i.pdf) which we will execute and return to you.



**THOMAS B. SULLIVAN**
He/Him/His

**O** 212.850.6139 | **F** 212.223.1942 | VCARD
sullivant@ballardspahr.com
New York, NY

**www.ballardspahr.com | LinkedIn**

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

|  |  |  |  |
|---|---|---|---|
| _____ | ) | | |
| *Plaintiff* | ) | | |
| v. | ) | Civil Action No. | |
| _____ | ) | | |
| *Defendant* | ) | | |

## WAIVER OF THE SERVICE OF SUMMONS

To: _____
     *(Name of the plaintiff's attorney or unrepresented plaintiff)*

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

                                                   _____
                                                    *Signature of the attorney or unrepresented party*

_____
     *Printed name of party waiving service of summons*
                                                          _____
                                                           *Printed name*

                                                           _____
                                                              *Address*

                                                           _____
                                                           *E mail address*

                                                           _____
                                                         *Telephone number*

---

### Duty to Avoid Unnecessary Expenses of Serving a Summons

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

1:2024cv09978

# EXHIBIT 7: EXTENDED CHRONOLOGY

1:2024cv09978

## EXTENDED CHRONOLOGY
*This "Extended Chronology" serves to map out Plaintiff's RICO and Section 1983 allegations in the TAC. It is a reference tool only, a deconstruction of the TAC in table form with a few administrative flags included.*

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| 1. | **July 2002** | **Graduation (Kent, England):** Osama obtains Common Law LLB in Canterbury, England. | Undisputed – Per Plaintiff's correspondence with a LinkedIn colleague who was a former accountant at the University of Kent at Canterbury, Osama did graduate with his LLB as asserted. | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies. |
| 2. | 2002 | Per Pillsbury's Matt Hyams' (then Director of Public Relations) July 26, 2019, correspondence with Defendant Luke Rosiak (Row No. XX), Osama obtained his Jordanian law license in 2002, the same year he obtained his LL.B. from the University of Kent at Canterbury, England, which is a mathematical impossibility when compared with the rules of | **Predicate Act:**<br><br>18. U.S.C. § 1343 (Wire Fraud) and § 1512 (Witness Tampering / Obstruction).<br><br>**Rule Violation:**<br><br>NYRPC 5.1 (Supervision) and 8.4(c) (Misconduct). | **Exhibit M:** Jordanian Bar Association - How to Become a Lawyer.<br><br>**Exhibit P:** Matt Hyams (Pillsbury) July 26, 2019, Emails about Osama's Jordanian credentials. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | the Jordanian Bar Association (JBA, How to Become a Lawyer). | | |
| **TRACK A: THE "DE JURE REQUIREMENT** *(i.e., What The Jordanian Bar Association Law No. 11 of 1972 requires of candidates to become a licensed Jordanian lawyer).* | | | | |
| 3. | 2002-2003 | **Degree Recognition:** 6-month Ministry of Higher Education audit of Osama's University of Kent at Canterbury (England) for "Equivalency". | **Dubai Entry:** Osama joins MBC Group in Dubai as an Associate Lawyer.<br><br>**Unauthorized Practice of Law ("UPL") Predicate:**<br><br>Practicing under the "Partner" label without legal qualification. | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies.<br><br>**Exhibit M:** Jordanian Bar Association - How to Become a Lawyer. |
| 4. | 2002-2003 | **Bridging Course:** Mandatory 1-year Civil/Sharia equivalency for UK graduates in Amman, Jordan. The Bridging Course covers the Jordanian Napoleonic Code/Civil Law/ Sharia Law). | **Zero Gap:** Osama claims 2002 licensure while working full-time in Dubai at MBC.<br><br>**Predicate Act:**<br><br>**Wire Fraud (18 U.S.C. § 1343):** Electronic transmission of false pedigree.<br><br>**Rule Violation:** NYRPC 5.1(d): Institutional ratification of a chronological impossibility. | **Exhibit P:** Matt Hyams (Pillsbury) July 26, 2019, Emails about Osama's Jordanian credentials. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| 5. | 2004-2005 | **Apprenticeship:** Two years of mandatory, continuous residency in Jordan.<br><br>**Per Article 8 of the JBA Law (No. 11 of 1972),** the apprenticeship is not a correspondence course. It requires:<br><br>**1. Continuous Physical Residency in Jordan:** The trainee must reside in Jordan for the full two-year duration.<br><br>**2. Daily Supervision:** The trainee must work daily under a "Senior Advocate" (a lawyer with at least 10 years' experience) at a registered Jordanian law firm. | **Zero Gap:**<br><br>Osama claims 2002 licensure while working full-time in Dubai at MBC (2002-2005).<br><br>**Predicate Act:** 18 U.S.C. § 1343 (Wire Fraud / UPL).<br><br>**Rule Violations:**<br><br>NYRPC 5.1(d) (Supervisory Responsibility) & 8.4(c) (Misconduct). | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies.<br><br>**Exhibit M:** Jordanian Bar Association - How to Become a Lawyer. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | **3. Court Attendance:** The trainee must attend a minimum number of court sessions and document them in a physical "training log" verified by the JBA.<br><br>The apprenticeship culminates with a dissertation written under the supervision of the supervising senior Jordanian advocate (it should be in the physical JBA files) and final exams. | | |
| 6. | 2002-2003 | **The JBA Mandate (Legal Requirement):**<br><br>**Mandatory Residency:** Continuous physical presence in Jordan for a two-year apprenticeship. | **Predicate Act:**<br><br>18 U.S.C. § 1343 (Wire Fraud)<br><br>**Rule Violation:**<br>NYRPC 5.1(d) & 8.4(c) | **Exhibit M:** Jordanian Bar Association - How to Become a Lawyer. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| 7. | 2002-2003 | **The JBA Requirement (Legal Requirement):** **Educational Bridging Course (** Under JBA Law (No. 11 of 1972), specifically Article 8, a candidate must hold a degree in law from a recognized university. However, for foreign degrees from Common Law jurisdictions (like the UK): **1. The Equivalency Requirement:** The Ministry of Higher Education and the JBA require a Certificate of Equivalency. **2. The Substantive Gap:** A Common Law degree (Kent) does not | **The Predicate Act:** 18 U.S.C. § 1341 (Mail/Wire Fraud). | **Exhibit M:** Jordanian Bar Association - How to Become a Lawyer. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | cover the Jordanian Civil Code (based on the Egyptian/French model) or the **Code of Civil Procedure.**<br><br>**3. The Exam:** Bridging this gap requires passing specific exams in Arabic covering Jordanian constitutional, civil, and Sharia law. | | |
| **TRACK B: THE "DE FACTO" REALITY** *(What Osama Abu Dehays was really doing while, all things being equal, he should have been in Jordan doing his training contract per the JBA Rules)* | | | | |
| 8. | 2002-2005 | **Physical Absence from Jordan:** Osama joins MBC (Middle East Broadcasting Centre) as an Associate Lawyer. MBC Group Headquarters are in KSA and there is a Dubai Office[1], where | **Predicate Act:**<br><br>18 U.S.C. § 1343 (Wire Fraud).<br><br>**Rule Violation:**<br><br>NYRPC 5.1(d) and 8.4(c) ("Conduct involving dishonesty, fraud, deceit, or misrepresentation"). | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies.<br><br>**Physics Conflict:** Osama cannot satisfy the Jordanian residency while physically in Dubai. |

---

[1] MBC (Middle East Broadcasting Center), https://www.mbc.net/contact-us, (last accessed April 16, 2026).

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Osama is understood to have worked. | | |
| 9. | 2005-2009 | **Arab Media Group ("AMC"), Dubai, UAE:** Osama joins AMC as Head of Legal & Business Affairs.<br><br>Osama is employed continuously by AMC in Dubai. | **Predicate Act:**<br><br>Wire Fraud (18 U.S.C. § 1343): Utilizing the false "Jordanian Partner" pedigree to secure high-level corporate roles in the UAE, and later Qatar and London. | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies.<br><br>No record of Jordanian practice or physical residency. |
| 10. | 2009-2012 | **Al Jazeera Media Network (AJMN), Doha, Qatar:** Osama joins Al Jazeera as the Chief Legal Counsel. | **Predicate Acts:**<br><br>18 U.S.C. § 1343 (Wire Fraud - Transnational).<br><br>18 U.S.C. § 1341 (Mail Fraud).<br><br>18 U.S.C. § 1346 (Honest Services).<br><br>UPL Predicate/ Sovereign Fraud. | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies.<br><br>No record of Jordanian practice or physical residency. |
| 11. | 2009-2011 | **Yousef Al Jaber ("Al Jaber"), Senior Legal Counsel and Qatari Lawyer, sues Osama Abu Dehays, AJMN, and the Chairman of** | **UPL Predicate:**<br><br>Conclusive proof of practicing without the claimed license.<br><br>**18 U.S.C. § 1341 (Mail/Honest Services Fraud):** | **Physical Audit by Licensed Professional:** Qatari lawsuits are not matters of public record, so it is not possible to access Al Jaber's lawsuit. |

Page 8 of 30

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | **AJMN in Qatari Civil Court.**<br><br>Al Jaber travelled to Jordan to investigate Osama's professional credentials and did not find Osama on the JBA roster. | Continued extraction of state funds via fraudulent status. | Plaintiff reports the Licensure Deficit as a direct communication from a witness with first-hand knowledge of his own investigation.<br><br>If Yousef were lying, he would have faced harsh penalties in Qatar, which he did not. |
| 12. | 2010-2011 | **Plaintiff is Offered Job at AJMN (July 2010);** Osama sabotages the onboarding, causing Plaintiff extreme financial and emotional distress, leaving her stranded in a foreign country as a single woman and sinking deeper into debt in a country that jails debtors; **Plaintiff finally joins AJMN in February 2011.** | **Predicate Act:**<br><br>18 U.S.C. § 1512 (Witness Tampering). | **Exhibit L:** Plaintiff lobbies Sh. Ahmed for the salary she lost because Osama Abu Dehays' sabotage of her onboarding.<br><br>Preventative obstruction to hide Osama's Licensure Deficit. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| 13. | 2012-2014 | **Bird & Bird, Qatar & UAE:** Osama joins Bird & Bird as a corporate partner. Bird & Bird marketed Osama as a 2002 Jordanian lawyer; physically located in the UAE/Qatar. | **Predicate Act:** 18 U.S.C. § 1343 (Wire Fraud). 18 U.S.C. § 1341 (Mail Fraud - Honest Services). UPL. **Rule Violation:** NYRPC 8.4(c). | **Exhibit I:** Osama's LinkedIn and Pillsbury Biographies. No record of Jordanian practice or physical residency. |
| 14. | 2003 - 2026 | **Everchanging Pillsbury Biography:** Osama claims to have a Postgraduate Degree, International Intellectual Property, University of Oxford – presents it as an LL.M. in IP Law (Oxford's IP Postgraduate Degree is an MSc or a PGDip or the WIPO[2] IP summer course). | **Predicate Act:** Wire Fraud (18 U.S.C. § 1343): Misrepresentation of pedigree to induce contracts. **Rule Violation:** NYRPC 8.4(c): Conduct involving dishonesty and deceit by the firm. | **Exhibit I:** Claims "Postgraduate Degree / LL.M." from Oxford University. Oxford only offers a PGDip or an MSc in Intellectual Property, not an LL.M. Alternatively, they offer a WIPO IP summer school. |
| 15. | March 2019 | **The Daily Caller:** Adam | **Actual Notice:** | Defendants Rosiak and Hawley |

---

[2] The Oath, "Osama Abu-Dehays joins Pillsbury", November 2014, https://theoath-me.com/osama-abu-dehays-joins-pillsbury/ (last accessed April 16, 2026).

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Lovinger (non-party) introduces Plaintiff to The Daily Caller in Washington, D.C.

Plaintiff collaborates with Defendants Luke Rosiak and John Hawley from March 2019 to August 2019 on what was supposed to be a story about Osama's Licensure Deficit and malfeasance witnessed and investigated by Plaintiff while they overlapped at AJMN (2011-2012). | Media Defendants are fully apprised of the UPL Predicate.

**Predicate Act:**

18 U.S.C. § 1512: Coordinated obstruction of a whistleblower's disclosure. | receive the full dossier on the Licensure Deficit. |
| 16. | **July 20, 2019 – September 10, 2020** | **SRA:** Plaintiff initiates Investigation into Osama at the Solicitors Regulatory Authority (SRA), Birmingham, England which results in no investigation into Osama, despite the logic that | **Predicate Acts:**

18 U.S.C. § 1343 (Wire Fraud) – Pillsbury continued to market Osama as a "Partner" in London and Qatar even after presenting the SRA with the Licensure Deficit.

18 U.S.C. § 1512 (Obstruction/Witness | **Exhibit T: SRA Emails**

**Forensic Blockade:** Proof that the fraud has bypassed international regulatory safeguards.

**Institutional Ratification:** |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Plaintiff presented to them about how his Licensure Deficit is certain | Tampering) – although the SRA is not a party to this lawsuit, if the Enterprise used its institutional vault to provide false or misleading assurances to the SRA to kill the investigation, they engaged in witness tampering.<br><br>**Rule Violation:**<br><br>NYRPC 5.1(d) (Failure to remediate) & 8.4(c) (Misconduct involving deceit). | Silence from the SRA is used as a shield to continue the **$4.5 Billion** fraud. |
| 17. | **July 26, 2019** | Matt Hyams confirms via email to Defendant Luke Rosiak that "*I can confirm Osama Abu-Dehays was admitted to the Jordanian Bar Assocation in 2002 and that his Bar number is 11840. He is also registered with the UK's Solicitors Regulation Authority as a* | **Ethical Violation New York Rule of Professional Conduct (NYRPC) 5.1 (Failure to Supervise).**<br><br>**Predicate Act:**<br><br>18 U.S.C. § 1341 & 1343 (Wire and Mail Fraud). | **Exhibit P**: Matt Hyams (Pillsbury) Emails about Osama's credentials.<br><br>**Exhibit M**: Jordanian Bar Association - How to Become a Lawyer. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | *registered foreign lawyer and is a member of the Law Society of England and Wales.*" | | |
| 18. | **August 3, 2019** | Defendants The Daily Caller and Luke Rosiak publish the "bait and switch" article about Plaintiff – **conspicuously six days after the correspondence with Matt Hyams of Pillsbury** - omitting Osama's fraud, per the mutual understanding which is why Plaintiff cooperated with The Daily Caller. | **Predicate Acts:**<br><br>Primary Predicate Act 18 U.S.C. § 1512 (Witness Tampering / Retaliation).<br><br>The Secondary Predicate:  **18 U.S.C. § 1343 (Wire Fraud – Honest Services).**<br><br>**NYPRC 8.4(c) (Misconduct):**<br><br>A lawyer shall not engage in conduct involving "dishonesty, fraud, deceit, or misrepresentation." | **Exhibit Q:** The Daily Caller Article, August 3, 2019 (now unpublished). |
| 19. | **March 2020** | Plaintiff notifies Pillsbury Partners (Debra Erni, Edward Flanders, David Dekker, and Edward Perron) | **Predicate Act:**<br><br>18 U.S.C. § 1343: Ongoing pattern of racketeering activity.<br><br>Rule Violation: NYRPC 5.1(d): | **Exhibit D:** Plaintiff's email to Debra Erni about Osama's Licensure Deficit.<br><br>**Exhibit E:** Plaintiff's email to |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | of Osama's Licensure Deficit. | Intentional failure to mitigate a known UPL violation.<br><br>**NYRPC 8.4(c):** Conduct involving dishonesty, fraud, and deceit. (2020-Present). | Edward Flanders about Osama's Licensure Deficit.<br><br>**Exhibit F:** Plaintiff's Email to David Dekker about Osama's Licensure Deficit.<br><br>**Exhibit G:** Plaintiff's Email to Edward Perron about Osama's Licensure Deficit.<br><br>The Pillsbury partners ignored Plaintiff. Debra Erni refused to take her phone call from New York when she followed up the next day. |
| 20. | April 7 to 14, 2021 | **Ethan Barton (Former Editor-in-Chief of The Daily Caller) ("Barton") agrees to unpublish the August 3, 2019, Article.**<br><br>In unpublishing The August 3, 2019, Article, | **Predicate Acts:**<br><br>18 U.S.C. § 1512 (Witness Tampering & Retaliation).<br><br>18 U.S.C. § 1343 (Wire Fraud). | **Exhibit Q:** The August 3, 2019, Article in The Daily Caller<br><br>**Exhibit S:** Ethan Barton Emails |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Barton waived a **"White Flag."** The Editor-in-Chief essentially admitted they were caught running a "Hit Piece" for the Enterprise. | 18 U.S.C. § 1951 (Extortion/Interference with Commerce) | |
| 21. | **May 17, 2023** | Plaintiff Tweets about an uncomfortable interaction with "unlicensed vendor" in the Riverside Park ("Tweet").<br><br>The Tweet inexplicably gets almost 7 million views. | N/A | |
| 22. | **May 18 – 19, 2023** | Defendants Daily Beast[3], Daily Mail[4], The | **Predicate Acts:** | Daily Mail's inclusion of Plaintiff's home |

---

[3] See AJ McDougall, *NYC Lawyer Roasted for Calling 911 on a Food Vendor,* **The Daily Beast** (May 18, 2023), available at https://www.thedailybeast.com/nyc-lawyer-sonya-shaykhoun-roasted-for-calling-911-on-a-food-vendor/. This publication served as the **Forensic Opening** of the 2023 retaliatory strike. By publishing this "roasting" narrative five days prior to the **Daily Mail's** doxing of Plaintiff's home address, the Daily Beast Defendants initiated a coordinated **Predicate Act** under **18 U.S.C. § 1512** (Witness Retaliation). The intent was to saturate the digital environment with a derogatory professional narrative to preemptively discredit Plaintiff's disclosures regarding the **Licensure Deficit** anywhere (as she had attempted to do in 2019 with The Daily Caller, which resulted in a "bait and switch" that demeaned her and was silent on Osama's Licensure Deficit. (Accessed April 16, 2026.)

[4] See Noa Halff, *New York City lawyer is roasted for calling 911 on two female vendors selling food in Upper West Side park without a permit: 'Get a life, Karen,'* **DailyMail.com** (May 19, 2023), available at https://www.dailymail.co.uk/news/article-12103463/Outrage-erupts-NYC-lawyer-unleashes-fury-vendors-selling-food-without-permit-local-park.html. This publication served as the primary vehicle for the "Doxing Protocol," intentionally exposing Plaintiff's private residence to a global audience to incite third-party

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Independent[5] publish conspicuously similar articles bashing Plaintiff as a "Karen." | 18 U.S.C. § 1512 (Intimidation).<br><br>18 U.S.C. § 2261A (Cyberstalking). | address and specific residential identifiers in the May 23, 2023, article constitutes a violation of 18 U.S.C. § 1512 (Witness Retaliation) and 18 U.S.C. § 2261A (Cyberstalking) Plaintiff objected to the doxing in in the NY Supreme Court but the Hon. Judge d'Auguste refused to hear the case based on anti-SLAPP laws providing uneven protection to the media Defendants. |
| 23. | **May 2024** | Plaintiff sued Defendants in New York Supreme Court.<br><br>Judge James Edward | Plaintiff raised 15 causes of action, including defamation, defamation per se, vicarious liability, injurious falsehood, prima facie tort, | See: NYSC, Index No. 10058/2024. |

harassment and physical intimidation in retaliation for Plaintiff's disclosure of the UPL Predicate. (Accessed April 16, 2026.)

[5] Bevan Hurley, *NYC Lawyer roasted on Twitter for reporting illegal food stand rails against city's 'rapid deterioration'*, **The Independent**, (19 May 2023), https://www.independent.co.uk/news/world/americas/food-stall-lawyer-sonya-shaykhoun-new-york-b2342213.html (accessed April 16, 2026). Published within 24 hours of the **Daily Beast** "Lead Strike" (May 18), this article constitutes a secondary **Predicate Act** under 18 U.S.C. § 1512 (Witness Retaliation). By immediately mirroring the derogatory narrative, The Independent Defendants acted in concert with the **Enterprise** to create a "Social Phalanx," ensuring that Plaintiff was professionally neutralized across international jurisdictions before the **Daily Mail** deployed the physical **Doxing Protocol** on May 23.

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | d'Auguste presiding. | negligent misrepresentation causing harm, fraudulent inducement, fraud and deceit, equitable fraud, equitable estoppel, promissory estoppel, unjust enrichment, copyright infringement, breach of privacy, and emotional distress. | |
| 24. | **November 20, 2024** | Judge James Edward D'Auguste holds conference with Plaintiff and Defendants. It is "off the record" and Plaintiff does not have a witness. D'August gives Plaintiff the option of withdrawing the case by 12/31/24 or being liable for Defendants' attorneys' fees. | **Predicate Acts:** Violation of 42 U.S.C. § 1983 and the Due Process Clause. **18 U.S.C. § 1951:** Interference with commerce via judicial extortion. | See: NYSC, Index No. 10058/2024, Document No. 26 "Notice of Withdrawal of Action / Proceeding" (Order of Voluntary Discontinuance). |
| 25. | **December 27, 2024** | Plaintiff commences the SDNY action. | The primary cause of action was copyright infringement. | See: 1:2024cv09978-ALC |
| 26. | **December 31, 2024** | Plaintiff withdrew the case voluntarily. | N/A | See: Doc. No. 26, NYSC Index No. 10058/2024 |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| THE INSTITUTIONAL BLOCKADE AND STATE-ACTOR COLLUSION (42 U.S.C. § 1983) – THE SYSTEMIC SUPPRESSION OF THE FORENSIC LEDGER (JULY 2025 – APRIL 2026). | | | | |
| 27. | **January 27, 2025** | Kate Bolger, Esq. (DWT) and Thomas Sullivan, Esq. (Ballard Spahr) file Notices of Entry, accepting Plaintiff's withdrawal. | N/A | See: Doc. 28 and Doc. 29, NYSC, Index No. 10058/2024. |
| 28. | **June 2, 2025** | Kate Bolger, Esq. files fee motion against Plaintiff, despite filing a Notice of Entry on January 27, 2025, with no reservations. | Breach of "Without Liability" Clause of the January 15, 2015, Signed Order.  Ignored the Good-Faith Agreement made with Judge d'Auguste in the "off-the-record" conference on November 20, 2024. | See: Document No. 33, NYSC Index No. 10058/2024. |
| 29. | **June 11, 2025** | Plaintiff files a Cross-Motion for Sanctions against Kate Bolger, Esq., Lindsey Cherner, Esq. and DWT.  Judge d'Auguste has had Plaintiff's Cross-Motion for | Notice of Entry Without Reservation entered by Kate Bolger, Esq. on January 27, 2025.  Breach of Judiciary Law § 487  Frivolous and Vexatious Litigation Tactics  Collateral Estoppel. | See: Doc. No. 49, NYSC Index No. 10058/2024.  The return date was July 1, 2025, and there has been no movement on the matter except that Court declined Plaintiff's fee waiver |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | Sanctions since June 11, 2025, the reply date to which was July 1, 2025, and he has yet to address it.<br><br>Despite the date of the Order Denying Fee Waiver (Doc 77), it was not uploaded to NYSCEF until April 10, 2026, more than six months later, just as the SDNY deadlines approached. | NYRPC 3.1 & 3.3: Deceit toward the Tribunal | application (see **Doc. No. 77**, dated October 19, 2025, but not received by NYSCEF until April 10, 2026.)<br><br>The disparity in response times to DWT's motions (very quick) as compared with response times to Plaintiff (10+ months) is stark, supporting Plaintiff's Section 1983 claims that her constitutional rights to Due Process and Equal Protection face prejudice in the State Court.[6] |
| 30. | **July 1, 2025** | Return Date of Cross Motion for Sanctions (Dormancy Begins) | **42 U.S.C. § 1983:** Denial of the right to be heard. | The State Court initiates 314-day administrative freeze on Plaintiff's motion. |
| 31. | **October 19, 2025** | Shadow Order Signed (Doc. No. 77) | **18 U.S.C. § 1503:** Ostensibly administrative delay resulting in the strategic withholding of | Order signed by Judge d'Auguste but withheld from the public docket |

---

[6]

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | | the October 19, 2025, Order until April 10, 2026. | without explanation. |
| 32. | **April 10, 2025** | NYSCEF Strategic Reveal – Judge d'Auguste denied Plaintiff's fee waiver request, even though Defendants" smear campaign deleteriously impacted her practice, license, and earning capacity. | **Concerted Activity:** Forensic proof of State/Private actor coordination. | Order released only 6 days before the SDNY Defendants' synchronized filing. |

*Conclusion: The State Court's 314-day administrative dormancy (July 1, 2025 – April 10, 2026) resulted in a de facto blockade of the forensic ledger. The withholding of the October 19, 2025, order from the public docket until the eve of federal filings effectively facilitated the retaliatory protocol, thereby depriving Plaintiff of due process under color of state law.*

| | | | | |
|---|---|---|---|---|
| **JUDGE CARTER'S FEBRUARY 26, 2026, ORDER & OPINION AND PLAINTIFF'S THIRD AMENDED COMPLAINT DUE APRIL 8, 2026** | | | | |
| 33. | **February 26, 2026** | Hon. Judge Carter's Order & Opinion Dismissing copyright infringement claim and granting Plaintiff leave to file an amended complaint as to | N/A | See Doc. 75, 1:2024cv09978-ALC |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | the Section 1983 and declaratory relief claims. | | |
| **EXTRAJUDICIAL PUBLICITY AND SOCIAL ENGINEERING (NYRPC 3.6 & 18 U.S.C. § 1512)** | | | | |
| 34. | March 2, 2026 | **Volokh Blog Post #1:** Eugene Volokh publishes first blog about the relatively obscure SDNY case.<br><br>The blog post explicitly names Thomas Sullivan, Esq. and Saumya Vaisampayan, Esq., indicating that they sponsored the article, which ends with a derogatory mention about the aptness of Plaintiff's brand moniker, "The Commercially Savvy Lawyer." | **Predicate Acts:**<br><br>18 U.S.C. § 1512 (Witness Tampering/Harassment)<br><br>18 U.S.C. § 1343 (Wire Fraud / Branding Theft)<br><br>**Rule Violation:** NYRPC 8.4(c) & 3.6 (Trial Publicity) | **Exhibit H:** *The Volokh Conspiracy, "Reproducing Controversial Tweet in News Story = Fair Use," Eugene Volokh, March 2, 2026, 8:48 am* |
| 35. | April 11, 2026 | **Volokh Blog Post # 2:** Eugene Volokh pens a second blog post entitled, "Follow-up to | 18 U.S.C. § 1512: Witness Retaliation / Harassment.<br><br>**Pattern:** **"The Karen Protocol"** | **DERIVATIVE STRIKE:** Academic derision following the "Shadow Reveal." |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | 'Reproducing Controversial Tweet in News Story – Fair Use' Post"[7] <br><br> **Curated "Bot-Type" Comments:** Orchestrated social derision ("Karen" tropes) to create a "Social Wall" against the **JBA Roster** disclosures. | **18 U.S.C. § 1343:** Wire Fraud (Intangible Rights to professional standing). | Curated comments section targeting Plaintiff's "aptitude." <br><br> The "Academic Pincer": Published exactly five days before the defense lawyers hit "submit" on their federal oppositions, the follow-up post ensures that your litigation remains "socially toxic" in the legal community. By keeping the derisive narrative active, the Defendants utilize Volokh's pedigree to validate their "futility" arguments. <br><br> Given that the March 2, 2026, blog post about an obscure case made it to Volokh's blog and only referenced Thomas Sullivan, Esq. and |

---

[7] Eugene Volokh, *Follow-Up to "Reproducing Controversial Tweet in News Story = Fair Use" Post,* The Volokh Conspiracy, (April 11, 2026), Reason.com, https://reason.com/volokh/2026/04/11/follow-up-to-reproducing-controversial-tweet-in-news-story-fair-use-post/ (Accessed April 16, 2026.)

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | | | Saumya Vaishampayan, Esq., it begs the question if Ballard Spahr is deliberately placing these blog posts and bot-type comments to prejudice the Court and to ensure Plaintiff continues to be cast as a "Karen" and a "loose cannon." The Enterprise continues to demonize Plaintiff to ensure her TAC is received with skepticism instead of through the lens of the forensic ECF metadata. |
|  | **Coercive Pre-Filing Overture Cameron Stracher, Esq. (Counsel for The Independent)** | | | |
| 36. | **March 3 and March 4, 2026** | Cameron Stracher, Esq. Called Plaintiff and Plaintiff returned his call on March 4, 2026. Cameron requested that Plaintiff release | **Predicate Act:** 18 U.S.C. § 1512 (Witness Tampering). | Following the initial **Academic Strike** (March 2), Cameron Stracher, Esq. contacted Plaintiff via telephone to demand a release of all claims against his clients |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | his clients for no consideration. Plaintiff said she was still considering her options. | | for **zero consideration**. This overture, made under the shadow of the orchestrated "Karen" narrative, was designed to exploit Plaintiff's professional distress and bypass the Forensic Stabilization of the Master Record. |
| 37. | April 8, 2026 | Plaintiff submits the Third Amended Complaint via the Pro Se Unit. | N/A | The Pro Se Unit requested the hard copies because the PDFs were "malformed." |
| 38. | April 9, 2026 | Plaintiff corrects the Caption, adds Defendant Debra Erni, John Hawley's surname to the body of the Complaint, and makes a few superficial adjustments. | N/A | Rule 15(a)(1): Amendment as a Matter of Course |
| 39. | April 10, 2026 | Plaintiff submits hard copies of the TAC to the Pro Se Unit. | N/A | See 1:2024-cv-09978-ACL Doc. No. 76. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| 40. | April 14, 2026 | Thomas Sullivan, Esq. emails communication offering a waiver of service in lieu of 60 extra days under Rule 4. | **Predicate Act:** 18 U.S.C. § 1512: Obstruction of Justice While not a Rule Violation, Plaintiff sees this as an attempt to secure an administrative blockade, in violation of Rule 1: Failure to secure the "just, speedy, and inexpensive" determination of the action. | If the TAC is "frivolous" and "futile" as Defendants claim in their April 16, 2026, letters to the Court, why would they need an additional 60 days to mull over their response to the TAC? |
| 41. | April 14, 2026 | Plaintiff files amended TAC which expands the Pillsbury Defendants in the Parties Section and expands the Verification by two points. The Pro Se Unit rejected it as "malformed. | N/A | See April 17, 2026. |
| 42. | April 14, 2026 | Plaintiff files the Letter Motion for Leave to Amend the TAC. The Pro Se Unit rejects it because it is "malformed." | N/A | See April 17, 2026. |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | | | |
| 43. | April 16, 2026 | **Synchronized Filing:** Defendants' DWT, Cameron Stracher, and Ballard Spahr synchronized filing on ECF. The Defendants' Letter seeking permission to file has yet to be filed with the Pro Se Unit. | **Predicate Act:** 18 U.S.C. § 1503 (Obstruction of Justice) | **Exhibit 1:** ECF Ledger April 16, 2026 |
| 44. | April 17, 2026 | Plaintiff files Letter seeking the Court's permission to file the Letter Motion to Amend the TAC (i.e., to expand the Parties section and to expand the Verification). The Letter seeking permission includes the Draft Letter Motion. | N/A | **Rule 15(a)(2) applies.** There is no numerical "cap" on how many times a Plaintiff can seek to amend. The rule explicitly says that **"a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."** |

1:2024cv09978

| No. | DATE/TIME | EVENT DESCRIPTION | PREDICATE ACT/ RULE VIOLATION | FORENSIC TRUTH/ EXHIBIT REFERENCE |
|---|---|---|---|---|
| | | | | Plaintiff's TAC alleges serious breaches that undermine the integrity of the global legal profession and the Rule of Law. That is hardly "frivolous." |
| 45. | April 17, 2026 | Plaintiff submits her letter seeking permission to submit a Letter Motion seeking alternate service considering the volume of the brief, the number of the Defendants, the costs involved, and the fact that the war in the Arabian Gulf is impacting international flights, including cargo flights.<br><br>The letter includes a draft of the Letter Motion seeking permission to effect alternate service. | N/A | Plaintiff seeks alternative service via email and service by proxy in NYC to the extent possible (as outlined in the draft Letter Motion attached to the letter seeking permission for alternate service) to mitigate against the war in the GCC (force majeure), the costs of replicating and mailing a voluminous brief, and email communication being safe and effective. |

1:2024cv09978

## THE STATUTORY LANGUAGE

## NYRPC 3.1: NON-MERITORIOUS CLAIMS AND CONTENTIONS

a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. A lawyer for the defendant in a criminal proceeding or for the respondent in a proceeding that could result in incarceration may nevertheless so defend the proceeding as to require that every element of the case be established.

(b) A lawyer's conduct is "frivolous" for purposes of this Rule if:

(1) the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;

(2) the conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely to harass or maliciously injure another; or

(3) the lawyer knowingly asserts material factual statements that are false.

## NYRPC 3.3: CONDUCT BEFORE A TRIBUNAL

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

Page 28 of 30

1:2024cv09978

(3) offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

(e) In presenting a matter to a tribunal, a lawyer shall disclose, unless privileged or irrelevant, the identities of the clients the lawyer represents and of the persons who employed the lawyer.

(f) In appearing as a lawyer before a tribunal, a lawyer shall not:

(1) fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of the intent not to comply;

(2) engage in undignified or discourteous conduct;

(3) intentionally or habitually violate any established

1:2024cv09978

rule of procedure or of evidence; or (4) engage in conduct intended to disrupt the tribunal.

## NYRPC 3.6(a) TRIAL PUBLICITY

(a) A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

## NYRPC 5.1(d)

(d) A lawyer shall be responsible for a violation of these Rules by another lawyer if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in a law firm in which the other lawyer practices, or has a comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of such conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

## NYRPC 8.4(c)

A lawyer or firm shall not:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

1:2024-cv-09978-ALC

# EXHIBIT 8: Osama Abu Dehays – Registered Foreign Lawyer License

 The Law Society

Menu

Back to search results

# Osama Abu-Dehays

Registered foreign lawyer

**SRA ID**  519582 **| SRA Regulated**

**Telephone**  02078479500

**Email**  Show email address

**Member at** PILLSBURY WINTHROP SHAW PITTMAN LLP
Level 34, 100 Bishopsgate, London, EC2N 4AG, England

View in Google Maps

## Roles at other organisations

Partner - PILLSBURY WINTHROP SHAW PITTMAN LLP

## Roles at this organisation

SRA-approved manager - Member

### Registered foreign lawyer

This person is a Registered Foreign Lawyer and they are allowed to practice law in England and Wales under this status.

See the SRA website for more details.

## Areas of practice                                                    +

**Languages spoken** +

## Where does this information come from?

Most information on this page comes from the Solicitors Regulation Authority. However, some information may have been edited directly by the professional, firm or their representative. Find out more.

## Are these your details?

If you need to amend any information about you on Find a Solicitor or wish to give other feedback about the website, please call 020 7320 5757 (Monday to Friday from 09:00 to 17:00 charged at local call rates) or visit our contact us page.

## Report abuse

To notify the Law Society about any inappropriate or offensive content displayed on Find a Solicitor, please visit our contact us page.

1:2024-cv-09978-ALC

# EXHIBIT 9: THE VOLOKH CONSPIRACY – EUGENE VOLOKH'S APRIL 11, 2026 BLOG POST

## *"Follow-Up to 'Reproducing Controversial Tweet in News Story = Fair Use' Post"*

# The Volokh Conspiracy

Mostly law professors | Sometimes contrarian | Often libertarian | Always independent

About The Volokh Conspiracy ⊡

FREE SPEECH

# Follow-Up to "Reproducing Controversial Tweet in News Story = Fair Use" Post

"Market Erasure," "Three Plinths," "The March 2nd Transformation," "Karen" "branding," and "The Commercially Savvy Lawyer."

EUGENE VOLOKH | 4.11.2026 8:01 AM

Case 1:24-cv-09978-AUC  Document 89  Filed 04/22/26  Page 143 of 149

On <u>March 2</u>, I posted about a court opinion related to a lawsuit brought by lawyer Sonya Shaykhoun. Shaykhoun had sent out a Tweet that proved controversial; sued news outlets for (among other things) copyright infringement based on their including the Tweet in their stories about the controversy; and lost on fair use grounds. She has now filed a <u>Third Amended Complaint</u> in that case (*Shaykhoun v. Al Jazeera Media Network* (S.D.N.Y.)), and the post makes a cameo appearance. There's a *lot* more in the 34-page Complaint, but I thought I'd pass along some excerpts:

Advertisement

AD

> Plaintiff expands this [Third Amended Complaint] to address a coordinated campaign of professional retaliation—a "Market Erasure"—executed by a Transnational Criminal Organization ("TCO") Plaintiff discovered while auditing Al Jazeera Media Network ("AJMN") in Doha (2011–2014). The TCO operates globally through an institutional network of elite law firms and media proxies to shield its operations and suppress Plaintiff's forensic findings.
>
> This is not a "defamation" case, nor is it a repackaging of defamation claims. Plaintiff brings this action under 42 U.S.C. § 1983 and Civil RICO to recover for a coordinated Market Erasure via a seven-year-long continual press assault triggered by Plaintiff's 2019 attempt to expose Osama Abu Dehay's ("Osama") lack of Jordanian law license. Lord Holt recognized in 1698, the "plinths" of law are reputation, personal security, and property ("Three Plinths") are compensable interests....
>
> The Enterprise used "unlawful means" e.g., wire fraud and witness tampering, to interfere with Plaintiff's Three Plinths (Reputation, Personal Security, and Property). This coordinated interference seeks to protect the $Trillion extraction and achieve witness neutralization. The Enterprise launched these attacks to suppress Plaintiff's documented evidence of the licensure void and the professional omissions of the "institutional shield" provided by Pillsbury (FARA No. 5198) and media proxies....
>
> Plaintiff Sonya Hashim Shaykhoun, Esq. is an eighteen-year veteran of the New York Bar (2008, Atty. Reg. # 4633293) with more than 22 years of experience in transactional, commercial, and regulatory matters, including senior in-house roles at major media and aviation entitles in the Arabian Gulf region (Exhibit A). She holds a Masters in English (St Andrews), a BA in Arabic and Law (SOAS), an LL.M. in Corporate and Commercial Law (SOAS), and a specialized LL.M. in Corruption, Law and Governance (Sussex/ROLACC.) ...
>
> Pillsbury (FARA No. 5198) used its "award-winning lobbyists" through its Government Law & Strategies Practice to execute a "silver-bullet" solution: branding Plaintiff a "Karen" to reduce the legal and regulatory risk of employing an unlicensed operative for fourteen years.
>
> The March 2nd Transformation: This [institutional] shield facilitated the March 2, 2026, strike on Reason.com, published 96 hours after the Order (Exhibit H.) Citing defense counsel Sullivan and Vaishampayan exclusively, this act masqueraded as "legal commentary" on a case that never hit the press but functioned as a Predicate Act of Witness Tampering to ensure the $Trillion extraction remains buried ("it makes me question the Twitter account title, "The Commercially Savvy Lawyer," which is Plaintiff's online moniker and professional brand.)

The "silver bullet" is not a legal defense; it is a market erasure protocol. By leveraging its global connections to categorize a whistleblower, a non-Big-Law anomaly who spent 15 years honing her legal and auditing skill set in the GCC and who knows where the bodies are buried—as "unstable," Pillsbury ensures that the $Trillion extraction remains buried behind a wall of "expert" influence....

In 2019, Plaintiff attempted to expose Osama's fraudulent 2002 Jordanian Bar membership via the [Daily Caller News Foundation]. Defendants, perceiving Plaintiff as a threat, retaliated by activating journalists to execute a continual targeted smear campaign—that has yet to stop—intended to chill her whistleblowing efforts.

Directly resulting from this coordinated "Market Erasure," Plaintiff—a dual-LL.M. attorney licensed in New York since 2008—has been relegated to $30–$50 per hour document review projects. Destroying Plaintiff's senior-level earning capacity constitutes a cognizable injury to protected property interests in her law license, reputation, and business relationships under *Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502

The "Enterprise" is a transnational Association-in-Fact comprised of the TCO Core (embedded within the legitimate entities of AJMN and the Qatari Sovereign), Pillsbury (FARA No. 5198), and various "Media or Propaganda Proxies" and "Strategic Defense Proxies." ... The Enterprise's common purpose is the continuous, 15-year extraction of sovereign assets (the $Trillion extraction), pecuniary benefits, and the protection Osama's Licensure Deficit....

**Joint Participation in Obstruction:** The March 2, 2026, Reason.com article was not independent commentary; it was a coordinated overt act of witness tampering published 96 hours after this Court's Order. By utilizing defense counsel (Ballard Spahr and Stracher) to execute this strike while on actual notice of the Licensure Deficit, the Defendants formalized their joint participation in the obstruction of a federal proceeding.

**The 10-Month Silence (June 2025–Present):** Plaintiff identifies a critical failure in the state-court machinery: the Cross-Motion for Sanctions against Bolger, Cherner, and DWT remains unadjudicated for ten months (Exhibit N.) This sustained silence—a "Procedural Blockade"—creates a state-sanctioned "Safe Harbor" for the Enterprise's enforcers to execute a "Market Erasure" under color of law. Because this abeyance constitutes "Bad Faith or Harassment" that renders the state forum inadequate to protect Plaintiff's constitutional property interests, federal intervention is authorized under the exception to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). Consequently, the Enterprise's joint participation with the state in maintaining this blockade subjects Plaintiff to a deprivation of rights that only this Court can redress....

The Continuity of Retaliation and Predicate Wire Fraud: The Enterprise's campaign of witness neutralization began with a bad-faith investigation at Qatar Airways, including a solicited physical assault that necessitated Plaintiff's 2019 swift exfiltration to New York. Upon her return, the Enterprise executed a "honeypot" operation via Propaganda Proxies to identify and neutralize Plaintiff's forensic findings. This culminated in a "bait-and-switch" pivot: after being vetted by John Hawley and Luke Rosiak regarding the Licensure Deficit, the proxies coordinated with Pillsbury (FARA No. 5198).

Specifically, Pillsbury's Matt Hyams transmitted fraudulent licensure data about Osama, asserting his Jordanian Bar No. is 11840, over interstate wires to suppress the audit (Exhibit P). Rather than correcting the record, the Enterprise utilized these electronic transmissions (18 U.S.C. § 1343) to publish inverted the August 3, 2019 "hit piece" functioning as a paid performance for the Enterprise to "chill" Plaintiff's testimony an protect the $Trillion extraction (Exhibit Q). When challenged, Hawley said he had to take care of his family (Exhibit R.) This coordinated strike constitutes a pattern of Federal Witness Tampering (18 U.S.C. § 1512) that remains active through the March 2, 2026, strike. Then Editor-in-Chief of The Daily Caller's agreement to unpublish the hit piece on April 9, 2021, belies the fraudulent nature of the "hit piece" piece about Plaintiff (Exhibit S.) ...

**Statutory Violations (RICO and § 1985):** The March 2, 2026, "Post-Order Insult" published 96 hours after this Order—citing only Ballard Spahr counsel—proves a coordinated script of Witness Tampering (18 U.S.C. § 1512) and Extortionate Attrition (18 U.S.C. § 1951.) This tactical compulsion, combined with Stracher's demand for a $0.00 release, constitutes a digital iteration of the intimidation prohibited by 42 U.S.C. § 1985(2.) Despite having actual notice of the Licensure Deficit, Pillsbury (FARA No. 5198) neglected its duty to prevent this conspiracy, instead providing the "Institutional Membrane" to finance the smear (42 U.S.C. § 1986). This coordinated liquidation enforces the "Karen" script as a market signal to neutralize the Plaintiff and safeguard the Enterprise's $Trillion extraction....

**Predicate Acts: Witness Tampering (18 U.S.C. § 1512):** The Enterprise executed a coordinated campaign of witness neutralization, including the "Karen" script and the March 2, 2026, Post-Order Insult, specifically intended to discourage the Plaintiff's participation in federal proceedings....

**The March 2026 Overt Act:** The publication of disparaging material in Reason.com during a court-ordered amendment

period was a tactical market erasure designed to force Plaintiff's withdrawal from the case....

Start your day with *Reason*. Get a daily brief of the most important stories and trends every weekday morning when you subscribe to *Reason Roundup*.

| Email Address | Subscribe |

## *NEXT:* Today in Supreme Court History: April 11, 1862

EUGENE VOLOKH is the Thomas M. Siebel Senior Fellow at the Hoover Institution at Stanford, and the Gary T. Schwartz Distinguished Professor of Law Emeritus and Distinguished Research Professor at UCLA School of Law. Naturally, his posts here (like the opinions of the other bloggers) are his own, and not endorsed by any institution. He is also the co-host of the *Free Speech Unmuted* podcast.

FREE SPEECH   COPYRIGHT

     ( G Add Reason to Google )   MEDIA CONTACT & REPRINT REQUESTS

**❦ Hide Comments (13)**

*Editor's Note: We invite comments and request that they be civil and on-topic. We do not moderate or assume any responsibility for comments, which are owned by the readers who post them. Comments do not represent the views of Reason.com or Reason Foundation. We reserve the right to delete any comment for any reason at any time. Comments may only be edited within 5 minutes of posting. Report abuses.*

**Old Smokin' Egg** 1 week ago

As part of the Transnational Criminal Organization (TCO), do you get to use the black helicopter?

Log in to Reply

**dwb68** 1 week ago

I mean, the blog is called the Volokh "Conspiracy." Transnational Criminality is literally the only reason I come here.

Saddest part is, this Commercially Savvy lawyer votes. I thought New York had premium cutting edge mental health care?

Log in to Reply

**Bubba Jones** 1 week ago

I'm beginning to think the tweet isn't the reason clients aren't hiring her for strategic work.

Log in to Reply

**Peter_IANAL** 1 week ago

Come on now, blog posts that masquerade as legal commentary while actually providing institutional membrane to finance predicate acts of witness tampering are a dime a dozen! And that's before we even consider Lord Holt's three plinths,

Log in to Reply

**Stupid Government Tricks** 1 week ago

Hopefully she'll run out of Capital Letters soon.

Log in to Reply

**Agammamon** 1 week ago

Another insane lawyer.

Maybe law schools should be held responsible? Or the Bar? For at least some psychological screening.

Log in to Reply

**Stepped Reckoner** 1 week ago

Let's look on the bright side. This comes just in time to fill the UK's critical energy deficit from Iran's blockade with the energy generated by Lord Holt spinning in his grave.

Log in to Reply

**Kenneth Almquist** 1 week ago

Volokh's previous post about this case, which shows up as Exhibit H in the current complaint, was sourced from the judge's Feb. 26 ruling and plaintiff's initial complaint. The current complaint asserts that Volokh was, "citing defense counsel Sullivan and Vaishampayan exclusively," but Volokh didn't cite them *at all*. I'd accuse Shaykhoun of lying except that she might just be incompetent enough to get this wrong by mistake.

Log in to Reply

**Eugene Volokh** 1 week ago

Just to be clear, my post did say at the end "Thomas Byrne Sullivan and Saumya Kelkar Vaishampayan (Ballard Spahr LLP) represent defendants." (As readers have likely gathered, I generally note the prevailing lawyers in most cases I write about, as a bit of acknowledgment of their success.) So I do mention them, but I indeed don't "cite" them as a source for any of the materials -- all the materials in the post were indeed from the court record.

Log in to Reply

**Kenneth Almquist** 1 week ago

I spotted the names of defense counsel in your post, but the failure in reading comprehension to think that your post *exclusively* cited defense counsel is mind boggling. It's pretty hard to overlook the citation of the judge's ruling when most of the post is quoting or paraphrasing that ruling.

I read the complaint as asserting that you cited out of court statements by defense counsel, but I checked that your post did not cite or otherwise mention filings by defense counsel.

Log in to Reply

**David Nieporent** 1 week ago

> The current complaint asserts that Volokh was, "citing defense counsel Sullivan and Vaishampayan exclusively," but Volokh didn't cite them at all.

As is his wont, Prof. Volokh ended his post with, "Thomas Byrne Sullivan and Saumya Kelkar Vaishampayan (Ballard Spahr LLP) represent defendants." That's presumably what set her off there.

Log in to Reply

**Untermensch**  1 week ago

I have no idea at all what the original complaint really was, but the repeated use of the phrase "$Trillion extraction" kind of makes Trump look like a master of the use of proper English by comparison (and given the number of Trumpolators who police these comments for any slight, real or perceived, against their Lord and Master, I will concede that Trump is a master of some version of English).

She should have had someone edit her filings with a sanity filter, because that phrase along makes her filing look like it was spun up by somebody in a basement with a cork board and a bunch of string.

Log in to Reply

> **David Nieporent**  1 week ago
>
> > She should have had someone edit her filings with a sanity filter,
>
> Um, in her case that's just the Delete key.
>
> Log in to Reply

Please log in to post comments

About

Browse Topics

Events

Staff

Jobs

Donate

Advertise

Subscribe

Contact

Media

Shop

Amazon

 G Add Reason to Google

© 2026 Reason Foundation | Accessibility | Privacy Policy | Terms Of Use

This site is protected by reCAPTCHA and the Google **Privacy Policy** and **Terms of Service** apply.