1:2024cv09978ALC



Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
825 West End Avenue,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: +1-(929) 408-4531 | +1-(929) 996-5662

May 6, 2026

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *Shaykhoun v. Daily Mail et. al.* Case No. 1:24-cv-09978 (ALC) – Plaintiff's Point-by-Point Omnibus Rebuttal to Defendants' "Letter of Absurdities" (Dkt. 95)**

Dear Judge Carter:

**I. The Institutional Narcissism of the "Phalanx":** I write as the Plaintiff and an Officer of the Court to address the inherent institutional narcissism and institutional parochialism in the May 4, 2026, letter of Ms. Bolger – representing all Media Defendants.  Ms. Bolger attempts to use procedural norms as a "Panic Room" to hide a transnational racketeering enterprise. Both Thomas Sullivan, Esq. and Katherine

1:2024cv09978-ALC

Bolger, Esq. have variously purported to write on behalf of the entirety of the Media Defendants– a vast, international network of supposedly independent entities. This "joint defense" postering is a functional admission of the Enterprise's synchronicity. As the architect of RICO, the late Professor Emeritus G, Robert Blakey, intended the "Enterprise" be identified by its unified action. By speaking with a single, arrogant voice to dismiss the mathematically impossible licensure fraud in Doha – a fraud with global tentacles that extend to Jordan, London, New York, and Qatar – Defendants have dropped the pretense of corporate independence. They are not independent actors; they are a Phalanx operating with a singular, racketeering intent to protect their "golden goose" at the expense of the Rule of Law. In honor of Professor Blakey, I ask: *What would Professor Blakey say to Ms. Bolger*? He would view her "Martian" defense as a functional perversion of the association-in-fact.

**II. Alternate Service & The "Volokh" Waiver:** Ms. Bolger's demand for Hague Convention service – a 12-to-18-month delay – ignores the mechanical reality of the digital age and the active Doha Exodus. Fed. R. Div. P. 4(f)(3) gives the Court unfettered discretion to authorize alternate service by email. *Mullane v. Central Hanover Bank Trust Co*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Courts in the S.D.N.Y. and other District Courts regularly authorize service via email under Rule 4(f)(3) when traditional methods are "unduly burdensome" or when defendants – like these Defendants – are sophisticated global entities that communicate almost exclusively via digital means.[1] Defendants have exchanged "formal ignorance" for "public influence." By engineering curated publications in ***The Volokh Conspiracy*** (March 2, 2026, and April 11, 2026), Defendants have broadcasted actual notice of every forensic detail in the TAC to the global bar. Under the Futility Doctrine, requiring formal notice is now a "meaningless formality" that violates the Rule 1 mandate for fast justice. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2nd Cir. 1998) (authorizing judicial notice of matters of in the public domain.) Ms. Bolger argues that I "chose" to file a nearly 700-page TAC and that I should lie in the bed of my own making. The crux of this case is not defamation or copyright infringement (i.e., the grenades hurled at me by the Enterprise), rather it is the mathematical

---

[1] NBA Props., Inc. v. P'ship &amp; Unincorporated Associations Identified in Schedule &quot;A&quot;, 549 F.Supp.3d 790 (N.D. Ill. 2021): "Service by email is not specifically provided for in the Convention, but neither is it forbidden. See MacLean–Fogg Co. v. Ningbo Fastlink Equip. Co. , No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile."); Sulzer Mixpac AG v. Medenstar Indus. Co. , 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (same); Ouyeinc Ltd. v. Alucy , No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021) (same); see also Commodity Futures Trading Comm'n v. Caniff , No. 19-cv-02935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020)…"

1:2024cv09978-ALC

impossibility of Osama Abu Dehays' licensure fraud and related cover-up by Pillsbury and the RICO Enterprise – including the Media Defendants - since 2019. Ms. Bolger ignores this continuum that has been a financial and professional boot on my neck, demanding I pay thousands of dollars for international service of a nearly 700-page TAC, a demand that punitive, financially prohibitive and logistically silly. I would not need to prepare a 700-page TAC if the RICO Enterprise had not targeted me in the first place. The TAC's length was not a function of my being *Pro Se.* Rather the vastness of the RICO Enterprise's crimes necessitated that volume. As for Mr. Sullivan extending the ostensible "courtesy" of waiving service of Jonathan Harmsworth pursuant to Rule 4(d) while providing the form, what Ms. Bolger omits is that would have afforded Defendants an additional 60 days to respond to the TAC and coordinate a defense among the other members of the Enterprise. Ms. Bolger laments that I have not yet responded to Mr. Sullivan; my response was clearly the April 29, 2026, letter motion to the Court requesting *inter alia* alternate service.

**III. The Futility of the "Arsonist's Conference":** Ms. Bolger's complaint that I did not request a conference is an exercise in institutional narcissism. A conference is predicated on the assumption that the parties are acting in good faith to narrow issues, not a spoilation window for an active RICO enterprise. Asking to "confer" while the Phalanx maintains the ruse of Osama Abu Dehays' impossible licensure – and executes a Doha Exodus - is like a fireman asking to confer with an arsonist while the building burns. Courts excuse the failure to confer when a conference would be fruitless. *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 196 (N.D. W.Va. Mar. 30, 2000) ("Indeed, any effort to meet and confer would have been futile. See *Kidwiler*, 192, F.R.D. at 196-98 (finding, under the totality of circumstances, that a telephone call or in person meeting was not required before plaintiff filed his motion to compel because such 'would not likely have been successful in resolving this discovery dispute.'") *Allen v. Amazon*, 2025 WL 3719889 (N.D. Tex. Dec. 23, 2025) (The *Allen* court "can excuse a failure to confer when 'it is clear that the motion is opposed and that a conference would neither have eliminated nor narrowed the parties' dispute.") In *Jenkins v. Miller*, 2024 WL 3174519 (D. Vt. Jun. 26, 2024) the Court found that Jenkins' unsuccessful efforts were sufficient and rejected defendants' challenge to the process. While I remain willing to confer with Defendants, their coordinated rejection of the TAC as a "shotgun pleading" and historical reticence dictate that a conference would be a futile and meaningless formality. Additional to Defendants' curation of **The Volokh Conspiracy**, the orchestrated "anonymous" and thinly veiled trolling comments by members of the Enterprise speak to a malicious and "win at any cost" mentality. Any suggestion that a private conversation would have resulted in a "voluntary" sharing of the records,

1:2024cv09978-ALC

while Pillsbury Doha is being reshuffled, is fantastical. Court-supervised discovery is the only mechanism available to protect an Officer of the Court from the bullying tactics of an Enterprise that has spent years robbing me of my three plinths.

**IV. Inherent Authority vs. "White Shoe" Hierarchy:** Ms. Bolger's claim that I provide "no authority" for the Court to supervise discovery or liaise with international counterparts is a study in institutional arrogance. Ms. Bolger operates under the false impression that I require her "permission" to act – treating a peer and Officer of the Court as a junior associate. While the Media Defendants savaged my reputation as an "international Karen," Ms. Bolger attempts to "boss" this litigation with impunity. Neither pedigree nor firm stature entitles Ms. Bolger to a *de facto* right to silence an attorney tasked with rooting out corruption. This Court has an inherent authority to manage its affairs and protect the integrity of the statute from liquidation. *Chambers v. Nasco, Inc*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962). The Court does not need Ms. Bolger's permission to exercise its creation-given power to ensure that a transnational racketeering enterprise does not outrun the Law.

**V. Mandatory Preservation Order:** Ms. Bolger's claim that a "Freeze" is unnecessary ignores the forensic reality of the Doha Exodus. Pillsbury has maintained silence since my March 2020 notice of the defective licensure. An Order is required where there is "demonstrated risk" of evidence loss. *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004), *Conklin v. Specialist, L.L.C.* (In re Complaint of Specialist LLC), Case No. 16-CV-2515 (KMK), Case No. 16-CV-3353 (KMK), Case No. 16-CV-3579 (KMK) (S.D. N.Y. Nov 22, 2016), 7. Given Defendants' vast resources, an Order imposes "zero" harm; it serves only to secure the integrity of the statute. Preservation is only "unnecessary" to those seeking a spoliation window. One must ask: *What exactly does Ms. Bolger not want this Court to see?*

Respectfully submitted,

Sonya Shaykhoun, Esq., Plaintiff *Pro Se*