**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SONYA SHAYKHOUN, ESQ.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>AL JAZEERA MEDIA NETWORK, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 1:24-cv-09978-ALC<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE DB AND DWT DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT</u>**

Katherine M. Bolger
Lindsey B. Cherner
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Telephone:　(212) 489-8230
Facsimile:　(212) 489-8340

*Attorneys for Defendants The Daily Beast Company
LLC, AJ McDougall, Ben Sherwood, Joanna Coles,
IAC Inc., Tracy Connor, Barry Diller, Davis Wright
Tremaine LLP, Katherine M. Bolger, Esq., and
Lindsey B. Cherner, Esq.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT...................................................................................................... 1

STATEMENT OF RELEVANT FACTS........................................................................................ 2

      A.     The Parties ....................................................................................................... 2

      B.     The New York Supreme Court Action ................................................................. 3

      C.     The DB Defendants' Anti-SLAPP Fee Motion....................................................... 3

      D.     This Court Grants the DB Defendants' Motion to Dismiss the SAC ...................... 4

      E.     Plaintiff Files the TAC in Violation of This Court's Order.................................... 5

ARGUMENT.................................................................................................................................. 7

I.      Plaintiff's TAC Violates Rule 8 and the Court's Order......................................... 7

II.     Plaintiff Once Again Fails to Plead a Section 1983 Claim ................................. 10

III.    Plaintiff Fails to Plead a RICO Conspiracy ...................................................... 12

      A.     Plaintiff Fails to Plead an Agreement to Conspire................................................. 13

      B.     Plaintiff Fails to Plead a RICO Enterprise ........................................................... 14

      C.     Plaintiff Fails to Plead "a Pattern of Racketeering Activity"................................ 16

            1.     Plaintiff Fails to Plead Wire or Honest Services Fraud ............................ 17

            2.     Plaintiff Fails to Plead Witness Tampering................................................ 18

            3.     Plaintiff Fails to Plead Extortion............................................................... 19

      D.     Plaintiff Fails to Plead a Cognizable Injury or Proximate Causation ................... 19

IV.    Plaintiff Fails to Plead a Conspiracy to Obstruct Justice.................................. 21

V.     The Federal Witness Tampering Claim is Not a Claim ..................................... 22

CONCLUSION............................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
  2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................................13

*Acklin v. Eichner*,
  2021 WL 4442819 (S.D.N.Y. Sept. 27, 2021)..........................................................................13

*Anatian v. Coutts Bank (Switzerland) Ltd.*,
  193 F.3d 85 (2d Cir. 1999)........................................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................................7

*Atuahene v. City of Hartford*,
  10 F. App'x. 33 (2d Cir. 2001) ...................................................................................................7

*Black v. Ganieva*,
  619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) .......14

*Bouveng v. NYG Cap. LLC*,
  175 F. Supp. 3d 280 (S.D.N.Y. 2016).......................................................................................19

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
  2009 WL 928718 (E.D.N.Y. Mar. 31, 2009)............................................................................18

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014)....................................................................................15, 17

*Ciamriello v. Cnty. of Nassau*,
  292 F.3d 307 (2d Cir. 2022)......................................................................................................11

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
  271 F.3d 374 (2d Cir. 2001)......................................................................................................13

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ......................................................................................18

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)......................................................................................................14

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
  587 F. App'x 663 (2d Cir. 2014) ..............................................................................................14

*Dabah v. Franklin*,
    2022 WL 973834 (S.D.N.Y. Mar. 31, 2022),
    *aff'd*, 2023 WL 3577872 (2d Cir. May 22, 2023) ....................................................................10

*De Falco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001).......................................................................................................15

*Donelli v. Cnty. of Sullivan*,
    2009 WL 2365551 (S.D.N.Y. July 31, 2009) ...........................................................................21

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).................................................................................1, 10, 12, 16

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)...................................................................................................19, 20

*Gong v. Sarnoff*,
    2023 WL 4561800 (S.D.N.Y. July 17, 2023) ...........................................................................10

*Gong v. Sarnoff*,
    2024 WL 3638335 (S.D.N.Y. Aug. 1, 2024)............................................................................11

*Grayson v. Combs*,
    2026 WL 787787 (S.D.N.Y. Mar. 20, 2026) ...........................................................................13

*Hayes v. Law Firm of Aiello & Cannick*,
    2013 WL 1187439 (S.D.N.Y. Mar. 21, 2013),
    *appeal dismissed*, No. 13-1584 (2d Cir. July 26, 2013) ...........................................................11

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)........................................................................................................13

*Herrera v. Scully*,
    815 F. Supp. 713 (S.D.N.Y. 1993) ...........................................................................................21

*Ibrahim v. Pena*,
    2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017)............................................................................7

*JPMorgan Chase Bank, N.A. v. Nowak*,
    2025 WL 1938541 (S.D.N.Y. July 15, 2025) ...........................................................................12

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013).......................................................................................12

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ..............................................................................................13

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018).................................................................................................18

*Kimm v. Chang Hoon Lee and Champ, Inc.*,
   2005 WL 89386 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006)...........17, 20

*Kuczinski v. City of New York*,
   352 F. Supp. 3d 314 (S.D.N.Y. 2019)................................................................................12

*Langton v. Town of Chester*,
   2017 WL 6988708 (S.D.N.Y. Sept. 26, 2017), *R. & R. adopted*,  2020 WL 2850898
   (S.D.N.Y. June 1, 2020)......................................................................................................21

*Leneau v. Ponte*,
   2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) .......................................................................7

*McCray v. Caparco*,
   761 F. App'x 27 (2d Cir. 2019) ..........................................................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Young*,
   1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .......................................................................13

*MinedMap, Inc. v. Northway Mining, LLC*,
   2022 WL 570082 (2d Cir. Feb. 25, 2022)...........................................................................16

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ...............................................................................15

*Palm Beach Strategic Income, LP v. Salzman*,
   457 F. App'x 40 (2d Cir. 2012)...........................................................................................8

*Palomino Master Ltd. v. Credit Suisse Grp. AG*,
   2026 U.S. Dist. LEXIS 65327 (S.D.N.Y. Mar. 26, 2026) ..................................................13

*Patterson v. City of Utica*,
   370 F.3d 322 (2d Cir. 2004)................................................................................................12

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   2021 WL 960394 (E.D.N.Y. Mar. 15, 2021),
   *aff'd,* 2022 WL 480475 (2d Cir. Feb. 17, 2022) ................................................................20

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
   745 F. Supp. 2d 343 (S.D.N.Y. 2010).................................................................................14

*Sadallah v. City of Utica*,
   383 F.3d 34 (2d Cir. 2004)...................................................................................................12

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988)..................................................................................................7

*Shaykhoun v. The Daily Mail et al.*,
  Index No. 100558/2024 (Sup. Ct. N.Y. Cnty.) ...................................................................3, 4

*Simmons v. Abruzzo*,
  49 F.3d 83 (2d Cir. 1995)....................................................................................................8

*Skilling v. United States*,
  561 U.S. 358 (2010)............................................................................................................18

*Sowell v. Kelly*,
  2023 WL 6813096 (S.D.N.Y. Oct. 16, 2023) ..................................................................8, 9

*Spiteri v. Russo*,
  2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd*, 622 F. App'x 9 (2d Cir. 2015)...............19

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008)................................................................................................16

*Trump v. N.Y. Times Co.*,
  800 F. Supp. 3d 1297 (M.D. Fla. 2025)..................................................................................8

*Tsipouras v. W&M Props., Inc.*,
  9 F. Supp. 2d 365 (S.D.N.Y. 1998) ......................................................................................19

*United States v. Amato*,
  86 F. App'x 447 (2d Cir. 2004)............................................................................................18

*United States v. Chastain*,
  145 F.4th 282 (2d Cir. 2025) ...............................................................................................17

*United States v. Smith*,
  985 F. Supp. 2d 547 (S.D.N.Y. Apr. 4, 2014) .......................................................................18

*Watral v. Silvernails Farms, LLC*,
  177 F. Supp. 2d 141 (E.D.N.Y. 2001), *aff'd*, 51 F. App'x 62 (2d Cir. 2002) .........................16

*Westchester Cnty. Indep. Party v. Astorino*,
  137 F. Supp. 3d 586 (S.D.N.Y. 2015)...................................................................................19

*Zahl v. Kosovsky*,
  2011 WL 779784 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) ...............22

*Zamora v. Fit Int'l Grp. Corp.*,
  834 F. App'x 622 (2d Cir. 2020) ..........................................................................................14

**Statutes**

17 U.S.C. § 505.................................................................................................................1

18 U.S.C. § 1343.............................................................................................................17

18 U.S.C. § 1346.............................................................................................................18

18 U.S.C. §§ 1512 *et seq.*......................................................................................2, 6, 22

18 U.S.C. § 1951(b)(2) ...................................................................................................19

18 U.S.C. § 1962(d) ...............................................................................................5, 12, 13

28 U.S.C. § 1927.............................................................................................................22

42 U.S.C. § 1983.......................................................................................................... *passim*

42 U.S.C. § 1985(2) .....................................................................................................6, 21

N.Y. Civil Rights Law § 70-a ........................................................................................1, 4

**Other Authorities**

Fed. R. Civ. P. 8 *et seq*...............................................................................................1, 7, 8

Fed. R. Civ. P. 9(b) ......................................................................................................17, 18

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 7

Defendants The Daily Beast Company LLC, AJ McDougall, Ben Sherwood, Joanna Coles, IAC Inc., Tracy Connor, and Barry Diller (the "DB Defendants") and Davis Wright Tremaine LLP, Katherine M. Bolger, Esq., and Lindsey B. Cherner, Esq. (the "DWT Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Sonya Shaykhoun's Third Amended Complaint (Dkt. 89-1) ("TAC") pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and for attorneys' fees and costs pursuant to 17 U.S.C. § 505 and N.Y. Civil Rights Law § 70-a.

## PRELIMINARY STATEMENT

This action began as a defamation claim against the DB Defendants and other media outlets based on their reporting on Plaintiff's viral Tweet about her encounter with food vendors in Riverside Park, but has now morphed into something entirely different. Rather than amend her pleading to try to remedy the pleading failures this Court identified in her Section 1983 and declaratory relief claims, Plaintiff instead uses the TAC to allege a far-flung and wholly implausible conspiracy involving (among others) various law firms, news publications and the Qatari government that have allegedly conspired to destroy her career on account of her long-ago disclosure that a certain attorney lacked a Jordanian law license. This Court should dismiss Plaintiff's nonsensical TAC.

*First*, Plaintiff's newly minted, hopelessly convoluted, and wholly conclusory claims against 30 alleged co-conspirators violate Rule 8 and this Court's Order. The Court need look no further to dismiss the TAC with prejudice.

*Second*, even if the Court were to consider the claims on the merits, they would fail as Plaintiff fails to plead the elements of her claims. Specifically, Plaintiff failed to cure the deficiencies this Court already identified in her Section 1983 claim because she still has not identified a state actor with whom the DB (or newly named DWT) Defendants purportedly acted

1

in concert.  Plaintiff also has failed to allege any element of her brand-new claims for RICO conspiracy and conspiracy to obstruct justice.  And Plaintiff's federal witness tampering claim fails out of the gate because there is no private right of action under 18 U.S.C. § 1512.

This Court has given Plaintiff every opportunity to state a plausible claim, and she has not done so.  The Court should again dismiss this case, this time with prejudice.

<u>**STATEMENT OF RELEVANT FACTS**</u>

**A.    The Parties**

Plaintiff pleads that she is an "eighteen-year-veteran of the New York Bar (2008, Atty. Reg. #4633293) with more than 22 years of experience in transactional, commercial, and regulatory matters," including as an in-house media lawyer.  TAC ¶ 12.

*The Daily Beast* is a leading online media company that publishes news and analysis through its website, www.thedailybeast.com.  Bolger Decl. ¶ 3.  Defendant AJ McDougall is a former reporter at *The Daily Beast*; in May 2023, she was *The Daily Beast*'s breaking news reporter.  *Id.*  Defendant Ben Sherwood is *The Daily Beast*'s Publisher and Chief Executive Officer.  *Id.*  Defendant Joanna Coles is *The Daily Beast*'s Chief Creative and Content Officer.  *Id.* Defendant Tracy Connor is *The Daily Beast*'s former Editor-in-Chief.  *Id.*  Defendant IAC Inc. is a partial owner of *The Daily Beast*.  *Id.*  Defendant Barry Diller is the Chairman and Senior Executive of IAC Inc.  *Id.*

Davis Wright Tremaine LLP ("DWT") is a nationally recognized media law firm that has served as outside counsel for the DB Defendants in all state and federal court proceedings brought against them by Plaintiff.  *Id.* ¶ 4.  Katherine M. Bolger, Esq., a partner in DWT's media practice with over 25 years of media litigation experience, has served as lead counsel in both the state and

federal actions. *Id.* Lindsey B. Cherner, Esq., a senior associate in DWT's media practice for five years, has also served as counsel in both the state and federal actions.

### B.    The New York Supreme Court Action

Plaintiff originally filed suit in New York Supreme Court on May 16, 2024, alleging defamation (among other claims) in connection with a May 18, 2023, news article published by *The Daily Beast* entitled "*Lawyer Roasted for Calling 911 on 'Unlicensed' Food Vendor in NYC Park*" (the "Article"). Dkt. 66-1; *see also Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty.).

The DB Defendants' counsel and Judge d'Auguste advised Plaintiff on multiple occasions that New York's anti-SLAPP statute applied to her claims, rendering her liable for mandatory attorneys' fees if she proceeded without a substantial basis in fact or law, and encouraged her to withdraw her complaint. *Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. June 2, 2025), NYSCEF No. 38 (Ex. D to the DB Defendants' anti-SLAPP motion); *see also Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. Nov. 19, 2024), NYSCEF No. 17 (Ex. 14 to Plaintiff's Amended Complaint, offering Plaintiff a 10-day safe harbor to drop her case).

Ultimately, on December 31, 2024, Plaintiff voluntarily discontinued her New York Supreme Court action. *Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. Dec. 31, 2024) NYSCEF No. 26 ("Notice of Withdrawal of Action/Proceeding"). But she had commenced this action four days earlier, on December 27, 2024.

### C.    The DB Defendants' Anti-SLAPP Fee Motion

In light of Plaintiff's decision to continue pursuing her claims against the DB Defendants in this Court, the DB Defendants filed a motion for attorneys' fees in the state court action, seeking

to recover fees incurred therein between November 1 and November 20, 2024. *Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. June 2, 2025), NYSCEF Nos. 33-43.  Plaintiff then filed a cross-motion for sanctions, reprimand, and disciplinary referral against the DB Defendants' counsel for seeking fees.  *Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. June 11, 2025), NYSCEF Nos. 49-58.  Briefing on both motions followed, and on October 14, 2025, Judge d'Auguste denied the DB Defendants' motion for anti-SLAPP attorneys' fees without prejudice to seeking such relief in a separate action pursuant to Civil Rights Law § 70-a. NYSCEF No. 68.

Five days later, Plaintiff filed a motion to waive court costs, fees, and expenses in connection with filing her sanctions motion.  *Shaykhoun v. The Daily Mail et al.*, Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. Oct. 19, 2025), NYSCEF Nos. 69-73.  On April 10, 2026, Judge d'Auguste denied that motion, describing the sanctions motions as "ill-founded" and not coming close to the "well-known and high burden necessary . . . to award sanctions for frivolous conduct." *Shaykhoun v. The Daily Mail et al,* Index No. 100558/2024 (Sup. Ct. N.Y. Cnty. Apr. 10, 2026), NYSCEF No. 77.  No further activity has occurred in the state court action.

### D.    This Court Grants the DB Defendants' Motion to Dismiss the SAC

After Plaintiff amended her complaint several times in this action, on June 16, 2025, the DB Defendants moved to dismiss the Second Amended Complaint ("SAC").  *See* Dkt. 64-66.

On February 26, 2026, this Court issued an Opinion and Order (the "Order"), granting the DB Defendants' motion in its entirety.  Dkt. 75.  *First*, the Court dismissed Plaintiff's copyright infringement claim with prejudice, as her  failure to register a copyright for her Tweet prior to filing suit was "fatal."  *Id.* at 9.  The Court also concluded that all four fair use factors weighed in favor of the DB Defendants' use of the Tweet and, consequently, dismissed the copyright

4

infringement claim on that additional basis. *Id.* at 9–17, 21. *Second*, the Court dismissed Plaintiff's Section 1983 claim because the SAC failed to plead that the DB Defendants acted in concert with a state actor to commit an unconstitutional act. *Id.* at 17. The Court ruled that the DB Defendants were "not state actors" and that their "invocation of a state law [New York's anti-SLAPP statute] in the state court action d[id] not constitute joint activity or acting under the color of state law." *Id.* at 17–18. The Court further held that Plaintiff's allegation that her First Amendment right to petition was chilled when she voluntarily withdrew her claims in state court was "insufficient to establish . . . depriv[ation] of a constitutional right," as her repeated filings demonstrated that she was not silenced. *Id.* at 19. *Third*, the Court dismissed the SAC's declaratory relief claim and declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 19–20. *Finally*, while expressing skepticism that Plaintiff could fashion any amendments that would alter its analysis, the Court gave Plaintiff the limited opportunity to amend her Section 1983 and declaratory relief claims. *Id.* at 21.

### E.    Plaintiff Files the TAC in Violation of This Court's Order

Plaintiff filed the TAC on April 10, 2026. Dkt. 78. After multiple attempted amendments to her pleading, on April 28, 2026, the DB Defendants consented to Plaintiff's request to replace her TAC with a "perfected version," with the understanding that doing so would be "without prejudice to the arguments raised in Defendants' [prior] oppositions which may be renewed on a motion to dismiss" and that there would be no further changes to the TAC. Dkt. 90 (referring to Dkt. 89–1). This Court granted Plaintiff's request as so conditioned. Dkt. 91.

The TAC alleges four causes of action against the DB and DWT Defendants: (1) deprivation of rights under color of law (the "Section 1983" claim), *see* TAC ¶¶ 68–71; (2) civil RICO conspiracy under 18 U.S.C. § 1962(d), *see id.* ¶¶ 72–78; (3) conspiracy to obstruct justice

under 42 U.S.C. § 1985(2), *see id.* ¶¶ 79–82; and (4) federal witness tampering under 18 U.S.C. § 1512, *see id.* ¶¶ 83–85.  These claims have little or no connection to any of Plaintiff's earlier claims.  Instead, Plaintiff alleges an ill-defined conspiracy, involving 30 co-defendants, including *inter alia* multiple news outlets and their litigation counsel, who she alleges are participating in a "press assault triggered by Plaintiff's 2019 attempt to expose Osama Abu Dehay's ("Osama") lack of Jordanian law license."  *Id.* ¶ 2.  These allegations arise not from the DB Defendants' reporting on her food vendor Tweet, but instead from her prior alleged employment as Senior Legal Counsel at Al Jazeera Media Network ("AJMN") in Qatar more than a decade ago.  *Id.* ¶¶ 31–34.

Indeed, Plaintiff no longer pleads *any* allegations against the DB Defendants; they are named only in the case caption.  Presumably, Plaintiff intends for the TAC's repeated references to the undefined "Media Proxies" or "Media Defendants" to include the DB Defendants.  *See id.* ¶¶ 1, 3, 26, 35, 37, 40, 61.  Even as pled against an amorphous group, however, Plaintiff's allegations are well-nigh incomprehensible—e.g., that the Media Proxies "engineered [her] take-down" by seeking to "neutralize the legal and regulatory risk posed by Plaintiff's unique knowledge [of "Osama's" non-licensure] and chill her First Amendment rights."  *Id.* ¶ 26.

The DWT Defendants' alleged role is no clearer.  They are referenced by name in only four paragraphs of the TAC, *see id.* ¶¶ 27–28, 30, 51, which otherwise group together the "Law Firm Defendants" and "Defense Firms" without any delineation of their supposed roles in Plaintiff's fanciful conspiracy.  *See generally* ¶¶ 1, 7, 53, 65.  To the extent discernible, the TAC alleges that the DWT Defendants are no longer legal advocates but, rather, joint conspirators because they filed an anti-SLAPP fee motion in state court, and Judge d'Auguste delayed ruling on Plaintiff's cross-motion.  *See id.* ¶¶ 27–28, 51.

6

## ARGUMENT

This Court should dismiss Plaintiff's TAC and end this litigation once and for all because Plaintiff has not plausibly alleged a claim of any kind against the DB or DWT Defendants.

To survive dismissal under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Ibrahim v. Pena*, 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiff's TAC does not even do that much, and fails for numerous reasons.

## I.    PLAINTIFF'S TAC VIOLATES RULE 8 AND THE COURT'S ORDER

Most fundamentally, Plaintiff's TAC must be dismissed for failure to comply with even the basic requirement of Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001) (internal quotation omitted). A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . fail[s] to satisfy this minimum standard." *Id.*; *see also Leneau v. Ponte*, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim[.]"). Failure to comply with Rule 8 is sufficient grounds for dismissal. *See Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988) (holding that district court was "within the bounds of discretion

7

to strike or dismiss the complaint for noncompliance with Rule 8" where *pro se* complaint spanned "15 single-spaced pages" and contained "a surfeit of detail"); *accord Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (recognizing district courts' authority to dismiss complaints that fail to comply with Rule 8); *see also Trump v. N.Y. Times Co.*, 800 F. Supp. 3d 1297, 1298–99 (M.D. Fla. 2025) (dismissing complaint under Rule 8).

Even under a generous and lenient application of Rule 8, the TAC is improper. Plaintiff's TAC is neither short nor plain. Instead, it is a shotgun pleading replete with superfluous, ambiguous, and conclusory allegations with no nexus to any actions purportedly taken by the DB or DWT Defendants. The TAC does not plead *any* allegations against the DB Defendants; instead, it repeatedly groups the "Media Defendants/Proxies" without any alleged factual basis to distinguish their conduct or adequate notice as to which claims are pled against them. TAC ¶¶ 1, 3 26, 35, 37, 40, 61. Likewise, the DWT Defendants are only mentioned by name in four paragraphs (on behalf of their clients) for filing an anti-SLAPP motion against Plaintiff and for the state court judge's purported delay in ruling on Plaintiff's cross-motion; otherwise, the TAC makes no effort to delineate which law firm or attorney participated in which allegedly unlawful acts against her. *See, e.g., id.* ¶¶ 1, 7, 53, 65. This is insufficient to state a claim against any party as a matter of law.

In addition, courts in this Circuit "routinely dismiss[] claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases); *see also Sowell v. Kelly*, 2023 WL 6813096, at *4 (S.D.N.Y. Oct. 16, 2023) ("The Court is authorized to dismiss any claims asserted in any amended pleading that go beyond the scope of the operative pleading, and the

8

permitted amendment.").

Here, Plaintiff's TAC goes far beyond the limited confines of the amendment permitted by the Court's Order. The Court ruled that "although Plaintiff has failed to 'identif[y] any amendments that would alter the Court's analysis' as to the Section 1983 and declaratory relief claims, she has requested leave to amend, and it is plausible that additions to her complaint may allege sufficient facts to state a cause of action." Dkt. 75 at 21. Accordingly, its Order permitting amendment was expressly limited to Plaintiff's "Section 1983 and declaratory relief claims." *Id.* (Conclusion). But Plaintiff's TAC goes far beyond that. The 35-page TAC improperly adds new parties and asserts new claims, including new, incomprehensible conspiracy theories. In fact, it has almost nothing to do with Plaintiff's original claims.

This case is just like *McCray v. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019). There, the district court gave plaintiff permission to replead his complaint concerning a March 2008 arrest, but plaintiff's amended pleading "named 45 defendants and add[ed] new claims related to events that occurred after March 2008." *Id.* at 29. The district court *sua sponte* dismissed claims and defendants involved in events that transpired after the March 2008 stop and arrest "because they went beyond the scope of the permitted amendment." *Id.* at 30. On appeal, the Second Circuit affirmed the district court's "refusal to allow an amended complaint with fifty additional pages of allegations encompassing unrelated events occurring months and years later than those originally pleaded." *Id.* Further, plaintiff's failure to confine his pleading to the scope of the permitted amendment was "sufficiently obvious to warrant only [the court's] summary recognition." *Id.* Plaintiff has similarly disregarded the Court's Order with her TAC, stringing together wholly unrelated parties and events spanning more than a decade of her career. Because these additional claims and parties were added without authorization, the civil RICO conspiracy, conspiracy to

9

obstruct justice, and federal witness tampering claims should be dismissed on this additional basis.

## II.    PLAINTIFF ONCE AGAIN FAILS TO PLEAD A SECTION 1983 CLAIM

Even if the Court were to consider the TAC on its merits, the Court should dismiss it.  As to the one claim in the TAC that Plaintiff was allowed to replead, her Section 1983 claim, Plaintiff has again failed to plead its elements.  To plead such a claim, "a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  *Dabah v. Franklin*, 2022 WL 973834, at *3 (S.D.N.Y. Mar. 31, 2022), *aff'd*, 2023 WL 3577872 (2d Cir. May 22, 2023).  As this Court previously held, because the DB Defendants "are not state actors" Plaintiff "must allege Defendants 'acted in concert with the state actor to commit an unconstitutional act.'"  Dkt. 75 at 17 (citing *Ciamriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2022)).  Plaintiff once again has failed to do so.

*First*, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Id.* at 17–18.  As discussed above, the TAC does not contain *any* specific allegations about what the DB or DWT Defendants did or did not do or with whom.  This alone dooms Plaintiff's claim.

*Second*, the TAC still fails to identify a state actor with whom the DB or DWT Defendants allegedly acted in concert to commit an unconstitutional act.  The TAC identifies Qatar, the Pillsbury law firm, and the New York State Judiciary as purported state actors.  But none of these are sufficient as a matter of law.  As to Qatar, actions allegedly undertaken with a foreign government do not constitute acts under color of state law under Section 1983.  *See Gong v. Sarnoff*, 2023 WL 4561800, at *7 (S.D.N.Y. July 17, 2023) (holding that "acts by a foreign government . . . cannot constitute conduct under color of state law under Section 1983").  As to

10

the Pillsbury law firm, private law firms are not state actors. *Hayes v. Law Firm of Aiello & Cannick*, 2013 WL 1187439, at *4 (S.D.N.Y. Mar. 21, 2013) ("Defendants, Plaintiff's privately retained former attorney and that attorney's law firm, are clearly not state actors."), *appeal dismissed*, No. 13-1584 (2d Cir. July 26, 2013). Finally, Plaintiff's theory that the DB and DWT Defendants colluded with the New York Judiciary was previously rejected in the Court's dismissal Order. Plaintiff again focuses on the conduct of her state court action, arguing this time that a delayed ruling on her cross-motion for sanctions and fee waiver somehow constituted joint activity. But this Court rejected just such a theory in dismissing the SAC, holding that the DB Defendants' invocation of the anti-SLAPP statute in filings before Judge d'Auguste did not constitute acting in concert with the state. *See* Dkt. 75 at 18. Simply put, Plaintiff's frustration with the timing of a court ruling does not support a finding that the DB or DWT Defendants were "willful participant[s] in joint activity with the State." *Ciamriello*, 292 F.3d at 324.

*Third*, Plaintiff fails again to plead "some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Gong v. Sarnoff*, 2024 WL 3638335, at *4 (S.D.N.Y. Aug. 1, 2024) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)). Specifically, the TAC does not plead any facts plausibly suggesting that the DB or DWT Defendants had an "express or tacit" agreement with Qatar, the New York Judiciary, the Pillsbury law firm, or anyone else to "achieve the unlawful end" of retaliating against Plaintiff. In fact, the TAC does not even allege that the DB or DWT Defendants have ever communicated with the other co-defendants, let alone agreed with them to harm her.

*Fourth*, Plaintiff's assertion that she has been deprived of her "property interest in her professional standing" and "membership in the New York bar" (TAC ¶ 71), without more, does not implicate a deprivation of a liberty or property interest compensable under Section 1983. The

11

loss of one's reputation can violate the Due Process Clause only "if the loss of reputation is associated with the deprivation of a federally protected liberty interest," *i.e.*, a stigma plus claim. *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 324 (S.D.N.Y. 2019); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (reputational harm or damage to one's standing in the community, without more, does not constitute a deprivation of a liberty or property interest under Section 1983); *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004) (same).  Here, Plaintiff fails to allege the "plus" necessary to make her Due Process claim cognizable.  And in any event, her admissions that she remains in good standing as "an eighteen-year veteran of the New York Bar" undercut her claim of reputational harm.  TAC ¶¶ 1, 12.  For all of these reasons, the Section 1983 claim should be dismissed with prejudice.

## III.    PLAINTIFF FAILS TO PLEAD A RICO CONSPIRACY

Even if the Court considers Plaintiff's new claims, new parties, and vague theories of harm, the Court should dismiss the TAC.  As to the RICO claim, to adequately allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must plead facts plausibly establishing as to each alleged conspirator "(1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same." *JPMorgan Chase Bank, N.A. v. Nowak*, 2025 WL 1938541, at *5 (S.D.N.Y. July 15, 2025). Proper pleading of an underlying substantive RICO violation is also required to sustain a RICO conspiracy claim.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).  Thus, a civil RICO conspiracy plaintiff must also plausibly allege that she "was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (internal quotations omitted).  In addition to pleading a substantive RICO violation, a civil RICO

12

plaintiff must also plead "injury to the plaintiff's business or property" and "causation of the injury by the defendant's violation." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001).

"Courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted); *see Acklin v. Eichner*, 2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021) (civil RICO claims to be scrutinized especially carefully given that "civil RICO has resulted in a flood of what are and should be state court cases that are being reframed and brought in federal court as RICO actions"). Here, Plaintiff's efforts to plead the elements of a civil RICO conspiracy claim under 18 U.S.C. § 1962(d) fall far short.

## A.      Plaintiff Fails to Plead an Agreement to Conspire

The "core of a RICO civil conspiracy is an agreement," and so the complaint must specifically allege facts plausibly establishing an "agreement involving each of the defendants to commit at least two predicate acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25–26 (2d Cir. 1990). Conclusory allegations that defendants "agreed" or "conspired," without supporting factual content, are insufficient as a matter of law. *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Young*, 1994 WL 88129, at *30 (S.D.N.Y. Mar. 15, 1994) (collecting cases). Courts in this Circuit regularly dismiss RICO claims where the complaint fails to plead the existence of any such "agreement." *Palomino Master Ltd. v. Credit Suisse Grp. AG*, 2026 U.S. Dist. LEXIS 65327, at *40 (S.D.N.Y. Mar. 26, 2026) (dismissing RICO conspiracy claim where pleading failed to allege "any facts suggesting when the alleged agreement was formed, what its terms were, or how any particular defendant manifested assent to it"); *Grayson v. Combs*, 2026 WL 787787, at *5

13

(S.D.N.Y. Mar. 20, 2026) (same).

Here, Plaintiff fails to plead the existence of any agreement among the alleged RICO conspirators, let alone when the agreement was formed, with whom, the terms, or how either the DB or DWT Defendants manifested assent to it.  The Court should dismiss on this basis alone.

**B.      Plaintiff Fails to Plead a RICO Enterprise**

The TAC also fails to plausibly allege the existence of a RICO enterprise or that the DB or DWT Defendants were part of one.   An association-in-fact enterprise requires "an ongoing organization" that "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (citations omitted).

As to the purpose requirement, "the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted).  "Individuals or entit[i]es that do not share such a common purpose cannot be considered part of a RICO enterprise as a matter of law."  *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 351 (S.D.N.Y. 2010); *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014).[1]

Here, far from alleging a common purpose, the TAC affirmatively alleges that the RICO defendants had *different* purposes.  For instance, the "Media Proxies," (presumably including the DB Defendants) were allegedly motivated to harm Plaintiff's reputation by "execut[ing] the

---

[1] Moreover, because "RICO's common purpose requirement demands more than general synchronicity or shared enmity," *Black v. Ganieva*, 619 F. Supp. 3d 309, 333 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023), allegations that all defendants may have had reason to "engineer[] [the] take-down of Plaintiff," *see* TAC ¶ 26, however far-fetched, do not establish that they were acting "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests."  *D. Penguin Bros.*, 587 F. App'x at 668.

14

'Karen' script" in their news reporting. TAC ¶ 37. Meanwhile, the DWT Defendants were allegedly financially motivated to recover attorneys' fees in the New York state court action. *Id.* ¶ 28. Other co-defendants were allegedly motivated to cover up Osama's lack of a Jordanian law license. *Id.* ¶¶ 22–23, 37. These distinct alleged "individual self-interests" do not add up to a "common purpose" under RICO.

In addition, the relationship between the DB and DWT Defendants, let alone between them and the other RICO defendants, does not support an association-in-fact RICO enterprise. To determine whether such an enterprise exists, courts "analyze the hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (internal quotes omitted). While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have "*some* part in directing those affairs." *See De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (emphasis added) (internal quotations omitted). Here, "[a]ccepting plaintiff's allegations as sufficient to allege a RICO enterprise would lead to [an] absurd conclusion," *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 300 (E.D.N.Y. 2017) (citation omitted), namely that the relationships among journalists, news publications, and their litigation counsel are hallmarks of a RICO enterprise. The TAC does not allege any facts that could support such a counterintuitive notion.

Finally, the TAC does not plausibly allege the required "longevity" of the enterprise. "A plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)."

15

*First Cap. Asset Mgmt.*, 385 F.3d at 180 (internal citation omitted).  Continuity is analyzed "with respect to each defendant individually."  *Id.* at 180.

Here, the TAC alleges neither closed-ended nor open-ended continuity.  To plead closed-ended continuity, a civil RICO plaintiff must allege predicate acts spanning at least two years.  *See MinedMap, Inc. v. Northway Mining, LLC*, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).  The TAC alleges that the "Media Defendants" participated in the so-called "Karen" script from August 2019 through March 2026.  *See* TAC ¶ 37.  But the DB Defendants are not alleged to have had any role in any viable predicate act, *see infra*, and their only alleged "role" was the publication of a single news article in May 2023.  *Id.*  As to the DWT Defendants, the TAC alleges only that they participated in the purported enterprise by filing an anti-SLAPP motion, which occurred less than two years ago.  *See id.* ¶ 28.  There is no close-ended continuity.  Nor is there open-ended continuity, which exists only where the alleged enterprise is "engaged in primarily criminal conduct" or the "nature of the predicate acts themselves imply a threat of criminal activity."  *See Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 150 (E.D.N.Y. 2001), *aff'd*, 51 F. App'x 62 (2d Cir. 2002).  Here, the only alleged acts are the publication by the DB Defendants of a news article and the filing by the DWT Defendants of an anti-SLAPP motion.  TAC ¶¶ 28, 37.  Clearly, these are not criminal acts.  Plaintiff has failed to allege the requisite continuity.

### C.    Plaintiff Fails to Plead "a Pattern of Racketeering Activity"

The TAC fares no better when it comes to pleading substantive racketeering activity.  The predicate acts purportedly underlying Plaintiff's RICO claim are (1) wire and honest services fraud; (2) witness tampering; and (3) extortion.  The TAC fails to plausibly allege any of these predicate acts.

16

### 1.     Plaintiff Fails to Plead Wire or Honest Services Fraud

To plead wire fraud, Plaintiff was required to allege "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires," *BWP Media USA*, 69 F. Supp. 3d at 362, and to allege those elements with particularity under Federal Rule of Civil Procedure 9(b). *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88–89 (2d Cir. 1999). Accordingly, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 88. In addition, wire fraud specifically requires a scheme to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. "[T]he misappropriation of 'property rights'" is essential; conduct that merely is "deceptive" or "depart[s] from traditional notions of fundamental honesty and fair play" is insufficient to support wire fraud. *United States v. Chastain*, 145 F.4th 282, 296 (2d Cir. 2025).

Here, the TAC does not allege that the DB Defendants published their Article or that the DWT Defendants filed their clients' anti-SLAPP motion in order to "obtain[] money or property" or that Plaintiff was "induced to part with anything of value as a result" of those acts. *Kimm v. Chang Hoon Lee and Champ, Inc.*, 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 F. App'x 14 (2d Cir. 2006). Instead, Plaintiff's theory of wire fraud is based entirely on alleged "[m]isrepresentations regarding Osama's purported Jordanian law license" and the so-called "Oxford fabrication" which allegedly were "material inducements to secure multi-million-dollar legal mandates and partnership salaries." TAC ¶ 75. But the TAC contains no allegations—nor could it—that the DB or DWT Defendants had any role in this purported misconduct. The TAC also fails to plead wire fraud with particularity: it does not identify any specific statements that were fraudulently made, let alone who made them, where and when they were made, or how they

17

were fraudulent.  Put simply, the TAC does not come close to pleading a wire fraud claim.[2]

Finally, the Supreme Court has limited the scope of the honest services fraud statute under 18 U.S.C. § 1346 to only cover *quid pro quo* arrangements, namely kickbacks or bribes in violation of a fiduciary duty.  *Skilling v. United States*, 561 U.S. 358, 368 (2010); *see also United States v. Smith*, 985 F. Supp. 2d 547, 590 (S.D.N.Y. Apr. 4, 2014).  Here, the TAC does not even attempt to allege a *quid pro quo* in exchange for a kickback or bribe received by the DB or DWT Defendants.  Thus, Plaintiff fails to allege honest services fraud.

### 2.    Plaintiff Fails to Plead Witness Tampering

Plaintiff also fails to allege witness tampering under 18 U.S.C. § 1512(b), which "makes it a crime to intimidate, threaten or 'corruptly persuade' a potential witness, or to attempt to do so, with intent to influence [the witness's] testimony in an official proceeding."  *United States v. Amato*, 86 F. App'x 447, 450 (2d Cir. 2004) (quoting 18 U.S.C. § 1512(b)).  Notably, neither a claim of defamation nor routine litigation tactics can support a claim for witness tampering.  *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 138 & n.8 (E.D.N.Y. 2010) (noting that "defamation does not provide a requisite predicate act for a RICO claim"); *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) ("allegations of frivolous, fraudulent, or baseless litigation activities— without more—cannot constitute a RICO predicate act").

Here, the TAC makes no allegations sufficient to state a claim for witness tampering.  All Plaintiff alleges is that she was "discourage[d]" from "participation in federal proceedings" on

---

[2] The TAC also does not satisfy the wire fraud statute's interstate requirement.  Fatally, in violation of Rule 9(b), the TAC does not plead *where* the DB or DWT Defendants allegedly transmitted or received any wire communications and does not even plead that the communications were interstate.  *See Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *5 & n.1 (E.D.N.Y. Mar. 31, 2009) (wire fraud claims held "legally deficient because they fail to allege that the relevant wire communications were of an interstate nature").

account of the purported enterprise's "Karen" script and insults by a co-defendant.  TAC ¶ 76.

That is insufficient as a matter of law.

### 3.    Plaintiff Fails to Plead Extortion

Plaintiff also fails to plead extortion, which requires interference or attempted interference with interstate commerce by the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *see Spiteri v. Russo*, 2013 WL 4806960, at *48 (E.D.N.Y. Sept. 7, 2013) (dismissing extortion claim where no allegation defendants "received or attempted to receive something tangible" from plaintiff), *aff'd*, 622 F. App'x 9 (2d Cir. 2015).  "Threats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion."  *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 320 (S.D.N.Y. 2016).

But that is all the TAC alleges.  Plaintiff claims that the "[e]nterprise used tactical compulsion, specifically the $0.00 release demand coupled with the threat of professional disparagement, to force a legal surrender for no consideration."  TAC ¶ 77.  In other words, a co-defendant offered Plaintiff the option to withdraw her lawsuit to avoid facing additional fee motions.  These garden-variety litigation decisions cannot form the basis of an extortion claim.

### D.    Plaintiff Fails to Plead a Cognizable Injury or Proximate Causation

"RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). The TAC fails because it does not allege any "concrete financial loss."  *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015).  "Mere injury to character [or] business reputation [is] not actionable under civil RICO."  *Tsipouras v. W&M Props., Inc.*, 9 F.

19

Supp. 2d 365, 368 (S.D.N.Y. 1998); *see also Chang Hoon Lee*, 196 F. App'x at 16 ("generalized reputational harms alleged . . . are too speculative to constitute an injury to business or property"). Plaintiff's allegations of injury to her "reputation" due to "the retaliatory articles" (TAC ¶¶ 3, 64), are, therefore, insufficient.[3]

The TAC also fails to adequately plead causation. To do so, "the plaintiff must allege 'that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.'" *First Nationwide Bank*, 27 F.3d at 769 (citation omitted). "This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *Id.* (citations omitted).

Here, the TAC does not plead causation. In fact, Plaintiff actually pleads the contrary, alleging the "consequences go beyond the named Defendants." TAC ¶ 40. In addition, much of Plaintiff's alleged injury predates and is unrelated to any actions by the DB or DWT Defendants. The TAC alleges: "Plaintiff was subject to death threats, slashed tires, cancelled travel visas, sexual harassment, email hacking (personal and professional)" since 2012; she was also "terminated from AJMN in December 2014." *Id.* ¶¶ 45–46. It also alleges that she was "branded" a "Karen" by August 2019, years before the DB Defendants published their Article or the DWT Defendants represented them. *Compare id.* ¶ 37 *with* Dkt. 66-1. In light of these allegations of long-standing damage previously suffered by Plaintiff, the DB and DWT Defendants cannot be the proximate cause of injury to her reputation. For all of these reasons, Plaintiff's RICO claim

---

[3] Plaintiff's additional allegations that she was harmed because she has been "relegated to $30-$50 per-hour document review projects," with destruction of her "senior-level earning capacity" (TAC ¶ 34), are also deficient as it is purely speculative, and the TAC fails to identify a single business relationship allegedly lost on account of any predicate act attributable to the DB or DWT Defendants. *See, e.g.*, *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021) (dismissing complaint that "fail[s] to identify specific instances of lost business and only conclusorily allege[s] potential lost clients"), *aff'd*, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

must be dismissed.

## IV.    PLAINTIFF FAILS TO PLEAD A CONSPIRACY TO OBSTRUCT JUSTICE

The TAC also fails to state a claim for conspiracy to obstruct justice against the DB or DWT Defendants.  To assert a claim under 18 U.S.C. § 1985(2), a plaintiff must allege "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely therein, which (3) causes injury to the claimant."  *Grant v. Abbott House*, 2016 WL 796864, at *6 (S.D.N.Y. Feb. 22, 2016) (quoting *Herrera v. Scully*, 815 F. Supp. 713, 726 (S.D.N.Y. 1993) (citing Section 1985(2))). Significantly, Section 1985(2) only encompasses actions intended to "prevent witnesses from *appearing in federal courts*."  *Herrera*, 815 F. Supp. at 726 (emphasis added).  Courts readily dismiss conspiracy claims where the plaintiff fails to allege facts indicating a conspiracy to obstruct justice or intimidate a witness.  *Donelli v. Cnty. of Sullivan*, 2009 WL 2365551, at *7 (S.D.N.Y. July 31, 2009) (dismissing Section 1985(2) claim where plaintiff relied on conclusory allegation in violation of Rule 8(a)).  This Court should do so here.

*First*, the TAC fails to plead the existence of any agreement to conspire to prevent Plaintiff's attendance or testimony in any federal court.  That alone bars Plaintiff's claim.

*Second*, the TAC does not allege the use of "force, intimidation, or threat."  *Langton v. Town of Chester*, 2017 WL 6988708, at *7 (S.D.N.Y. Sept. 26, 2017) (holding obstruction claim was "futile" where plaintiff "fail[ed] to allege facts that the defendants sought to deter her, or any witness, 'by force, intimidation, or threat' from attending any court in the United States or testifying freely therein . . ."), *R. & R. adopted*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020).  On the contrary, the TAC alleges only "media insults," a settlement offer that Plaintiff found unacceptable, and a co-defendant's comments to Reason.com to "intimidate her into abandoning

21

her role as a whistleblower in this federal action." TAC ¶ 81; *see e.g.*, *id.* ¶¶ 26–30, 48–50. Clearly, these alleged acts do not amount to force or intimidation.

## V.    THE FEDERAL WITNESS TAMPERING CLAIM IS NOT A CLAIM

Finally, to the extent the TAC can even be interpreted to assert a federal witness tampering claim against either the DB or DWT Defendants, such a claim necessarily fails as there is no private right of action under 18 U.S.C. § 1512. *See, e.g., Zahl v. Kosovsky*, 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, the DB and DWT Defendants respectfully request that the Court dismiss the TAC with prejudice and grant them such other and further relief as the Court deems appropriate, including an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1927.

Dated: May 12, 2026
New York, New York

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Katherine M. Bolger
Lindsey B. Cherner
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340
katebolger@dwt.com
lindseycherner@dwt.com

*Attorneys for the DB and DWT Defendants*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

I, Katherine M. Bolger, hereby certify that this memorandum of law is 22 pages in length and contains 7,228 words, in compliance with Rule 2(B) of this Court's Individual Practices and Local Civil Rule 7.1(c).  In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  May 12, 2026

_____

Katherine M. Bolger

23