UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SONYA SHAYKHOUN,

                Plaintiff

                                        Civil Action No.: 1:24-cv-09978-ALC

v.


AL JAZEERA MEDIA NETWORK, DAVID T.
DEKKAR, ESQ., EDWARD FLANDERS, ESQ.
EDWARD A. PERRON, ESQ., OSAMA ABU
DEHAYS, PILLSBURY WINTHROP SHAW
PITTMAN LLP, DEBRA ERNI, ETHAN BARTON,
JOHN HAWLEY, LUKE ROSIAK, THE DAILY
CALLER NEWS FOUNDATION, THE DAILY
MAIL, DAILYMAIL.COM, DAILY MAIL AND
GENERAL TRUST PLC, NOA HALFF,
JONATHAN HARMSWORTH, THE DAILY
BEAST COMPANY LLC, AMANDA J.
MCDOUGALL, BEN SHERWOOD, JOANNA
COLES, IAC INC., TRACY CONNOR, BARRY
DILLER, BEVAN HURLEY, THE INDEPENDENT,
GEORDIE GREIG, LOUISE THOMAS, RICHARD
BEST, BALLARD SPAHR LLP, THOMAS
SULLIVAN, ESQ., SAUMYA VAISHAMPAYAN,
ESQ., CAMERON STRACHER, ESQ., DAVIS
WRIGHT TREMAINE, LLP, KATHERINE M.
BOLGER, LINDSEY B. CHERNER,
                                Defendants.
------------------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN OPPOSITION TO PILLSBURY
DEFENDANTS' JUNE 16 MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT**

Sonya Shaykhoun, Esq.
Law Offices of Sonya Shaykhoun, Esq.
P.O. Box 142,
New York, NY 10025
Email: sonya@shaykhounlaw.com
Tel: 929-408-4531 | 929-996-5662

*Attorney / Plaintiff Pro Se*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................II

   *FEDERAL AND SUPREME COURT CASES* ..................................................... *ii*

   *FEDERAL STATUTES & RULES*.......................................................................*iii*

   *STATE STATUTES* ..............................................................................................*iii*

   *TREATISES & ACADEMIC ARTICLES*............................................................*iii*

   *NEWSPAPER & BLOG ARTICLES*...................................................................*iii*

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

I.    DOCKETS 88 AND 91 ("SO ORDERED"): JUDICIAL VALIDATION & ESTOPPEL .............................................................................................................. 3

II.   THE RICO ENTERPRISE: THE *AZIMA* BLUEPRINT ................................. 4

III.  JOINT PARTICIPATION UNDER "COLOR OF LAW"............................. 6

  A. THE DUTY OF CANDOR: NEW YORK RULES OF PROFESSIONAL CONDUCT (NYRPC) RULE 3.3.............................................................................................. 7

  B. THE "STIGMA-PLUS" DEPRIVATION AND THE ECONOMIC NEXUS........................ 8

  C. THE CORPORATE SHIELD AS A CONSTITUTIONAL INSTRUMENT .......................... 8

  D. THE § 1512 PREDICATE: WITNESS TAMPERING AS A RICO ACT ......................... 9

IV.  EDWARD FLANDERS & THE INSTITUTIONAL SHIELD ...................... 9

CONCLUSION AND REQUEST FOR DISCOVERY ............................................ 10

WORD COUNT CERTIFACTION ......................................................................... 12

CERTIFICATE OF SERVICE................................................................................ 13

# TABLE OF AUTHORITIES

**FEDERAL AND SUPREME COURT CASES**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ...............................................................................6, 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................*Passim*

*Azima v. Dechert LLP,*
No. 22-cv-8728 (S.D.N.Y.)……………………………………………1, 4, 10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)………………………………………………………....*Passim*

*Boyle v. United States,*
556 U.S. 938 (2009)…...................................................................................4, 5

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
492 U.S. 229 (1989)………………………………………………………........4

*Haddle v. Garrison,*
525 U.S. 121 (1998)....................................................................................8

*Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479 (1985)………....…....…...................................................................6

*United States v. Turkette,*
452 U.S. at 590-591………………………………………………………….4

## FEDERAL STATUTES & RULES

18 U.S.C. § 1512..................................................................................................9

18 U.S.C. § 1962(d)..............................................................................................9

42 U.S.C. § 1983.........................................................................................*Passim*

Federal Rule of Civil Procedure 12(f).................................................................4

## STATE STATUTES

New York Civil Rights Law § 76-a (anti-SLAPP )...........................................5, 7, 8

New York Rules of Professional Conduct (NYRPC) Rule 3.3…………………………7

## TREATISES & ACADEMIC ARTICLES

G. Robert Blakey, *Foreword: Debunking RICO's Myriad Myths*, 64 St. John's L. Rev. 701 (1990)………………………………………………………………………………4

Devine T, Reaves A. *Whistleblowing and Research Integrity: Making a Difference Through Scientific Freedom*. Handbook of Academic Integrity. 2015 Nov 27:957–72. doi: 10.1007/978-981-287-098-8_31. PMCID: PMC7122572…………………………5

Eugene Volokh, *Scholarship, Blogging, and Tradeoffs: On Discovering, Disseminating, and Doing,* 84 Wash. U. L. Rev. 1089 (2006), p. 1096………………..3

## NEWSPAPER & BLOG ARTICLES

Amanda J. McDougall, *NYC Lawyer Roasted for Calling 911 on a Food Vendor*, The Daily Beast (May 19, 2023), https://www.thedailybeast.com/nyc-lawyer-sonya-shaykhoun-roasted-for-calling-911-on-a-food-vendor/.................................................1

Noa Halff, *Outrage Erupts After NYC Lawyer Unleashes Fury on Vendors Selling Food Without a Permit in Local Park*, Daily Mail (May 19, 2023), https://www.dailymail.co.uk/news/article-12103463/Outrage-erupts-NYC-lawyer-unleashes-fury-vendors-selling-food-without-permit-local-park.html........................1

Bevan Hurley, *NYC Lawyer Roasted on Twitter for Reporting Illegal Food Stand Rails Against City's "Rapid Deterioration"*, The Independent (May 19, 2023), https://www.independent.co.uk/news/world/americas/food-stall-lawyer-sonya-shaykhoun-new-york-b2342213.html.............................................................................1

Eugene Volokh, *Reproducing Controversial Tweet in News Story Fair Use*, The Volokh Conspiracy        (Mar.        2,        2026,        2:54        PM), https://reason.com/volokh/2026/03/02/reproducing-controversial-tweet-in-news-story-fair-use/.............................................................................*Passim*

Eugene Volokh, *Follow-Up to "Reproducing Controversial Tweet in News Story = Fair Use" Post*,        The        Volokh        Conspiracy        (Apr.        11,        2026), https://reason.com/volokh/2026/04/11/follow-up-to-reproducing-controversial-tweet-in-news-story-fair-use-post/.............................................................................*Passim*

**PRELIMINARY STATEMENT**

Defendants' attempt to characterize this action as unrelated to Pillsbury and "improper" is a tactical misdirection to conceal a live transnational RICO Enterprise. The Third Amended Complaint ("TAC") documents a sophisticated, transnational racketeering protocol orchestrated by Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), which weaponized institutional and media assets to sanitize Defendant Osama Abu Dehays' ("Osama") licensure deficit and neutralize Plaintiff, the whistleblower who exposed it. The TAC satisfies *Twombly/Iqbal:* it documents a granular, "rinse-and-repeat" coordination protocol marked by identical caption errors across separate law firms; hyper-synchronized media "tactical strikes" (viz. the "2023 Karen Smear"[1] in *The Daily Beast*, *The Daly Mail*, and *The Independent*—collectively the "Media Defendants"); *The Volokh Conspiracy* strikes[2] (the "Volokh Strikes"), weaponized to influence chambers; and, Pillsbury's active ratification of Osama's licensure deficit on its website. *Azima v. Dechert LLP,* No. 22-cv-8728 (S.D.N.Y.) proves that global white-shoe law firms cannot circumvent civil RICO liability by deploying their "infrastructure, partners, employees, financial resources, and

---

[1] Amanda J. McDougall, *NYC Lawyer Roasted for Calling 911 on a Food Vendor*, The Daily Beast (May 19, 2023), https://www.thedailybeast.com/nyc-lawyer-sonya-shaykhoun-roasted-for-calling-911-on-a-food-vendor/; Noa Halff, *Outrage Erupts After NYC Lawyer Unleashes Fury on Vendors Selling Food Without a Permit in Local Park*, Daily Mail (May 19, 2023), https://www.dailymail.co.uk/news/article-12103463/Outrage-erupts-NYC-lawyer-unleashes-fury-vendors-selling-food-without-permit-local-park.html; and, Bevan Hurley, *NYC Lawyer Roasted on Twitter for Reporting Illegal Food Stand Rails Against City's "Rapid Deterioration"*, The Independent (May 19, 2023), https://www.independent.co.uk/news/world/americas/food-stall-lawyer-sonya-shaykhoun-new-york-b2342213.html

[2] Eugene Volokh, *Reproducing Controversial Tweet in News Story Fair Use*, The Volokh Conspiracy (Mar. 2, 2026, 2:54 PM), https://reason.com/volokh/2026/03/02/reproducing-controversial-tweet-in-news-story-fair-use/; Eugene Volokh, *Follow-Up to "Reproducing Controversial Tweet in News Story = Fair Use" Post*, The Volokh Conspiracy (Apr. 11, 2026), https://reason.com/volokh/2026/04/11/follow-up-to-reproducing-controversial-tweet-in-news-story-fair-use-post/.

1

reputation" to liquidate a witness. Defendants pretend the TAC is "difficult to decipher," yet filed an exhaustive 24-page memorandum (Dkt. 142) targeting its merits. The TAC is not illegible; it is merely inconvenient for the Enterprise.

## FACTUAL BACKGROUND

The TAC (Dkt. 89) establishes a seven-year pattern of racketeering designed to protect Osama's licensure fraud and Qatari billables while targeting Plaintiff. Three persistent markers of coordination are: (1) **The 2019 "Bait and Switch":** In August 2019, after Plaintiff's  inquiries, Defendant John Hawley admitted to possessing "a massive amount of info and wild stuff" about the Enterprise before abruptly stonewalling[3]; simultaneously Defendant Rosiak—coordinated with Pillsbury's PR apparatus—published a "hit piece" in *The Daily Caller* neutralizing the Osama investigation (Exhibit Q). Rosiak immediately disappeared on an unannounced "sabbatical," concurrent with a 300-acre land purchase in Virginia revealed by forensic audits (now scrubbed); (2) **The 2023-2026 Neutralization Cycle:** The Enterprise deployed predatory, mirrored jargon across the 2023 Karen Smear to damage, dox[4], and blacklist Plaintiff via social media "do not hire" imperatives. This escalated into the *Volokh Strikes*, published on March 2, 2026[5]—published on the heels of the Court's Order (Dkt. 75) and April 11, 2026[6]. The Volokh Strikes recycled

---

[3] Defendant John Hawley told Plaintiff he "had to take care of my family" and directed her to "lose my number."

[4] Because of the March 2, 2026, Volokh article, which effectively republished *The Daily Mail* article, which includes Plaintiff's home address, Plaintiff bought a P.O. Box for security measures as, Plaintiff has always held, the publication of her home address was a signal to others to harass her, not to mention a gross breach of the data privacy laws in England.

[5] *Volokh*, March 2, 2026.

[6] Eugene Volokh, *Follow-Up to "Reproducing Controversial Tweet in News Story = Fair Use" Post*, The Volokh Conspiracy (Apr. 11, 2026), https://reason.com/volokh/2026/04/11/follow-up-to-reproducing-controversial-tweet-in-news-story-fair-use-post/.

*The Daily Mail* smear to intimidate Plaintiff and influence chambers, a strategy Professor Volokh himself avers: "If the blog post is interesting, it might make its way to one of the judges, either directly or by influencing the clerk's analysis."[7]; and, (3) **The Institutional Shield & Synchronicity:** As of June 30, 2026, Pillsbury continues to ratify Osama's licensure fraud and he remains on Pillsbury's website.[8] Pillsbury and Davis Wright Tremaine LLP ("DWT") submitted memoranda containing identical, non-random caption errors—misnaming the action *Shaykhoun v. Al Jazeera Media Network*—providing empirical proof of a centralized defensive playbook. The Enterprise has coordinated to obstruct these proceedings since the Order (Dkt. 75.)

**ARGUMENT**

**I.    DOCKETS 88 AND 91 ("SO ORDERED"): JUDICIAL VALIDATION & ESTOPPEL**

Defendants' procedural objections are an impermissible collateral attack on the Court's prior Orders at Dockets 88 and 91. While the Pillsbury Defendants are late to the party—having failed to sign the stipulation at Docket 90—this Court formally and independently ratified the TAC as the final operative pleading at Docket 91. Defendants cannot now invoke a procedural nullity to dismiss a pleading that they have already engaged with through 24 pages of exhaustive merits briefing. The doctrine of judicial estoppel precludes Defendants from treating the TAC as an anchored reality to obtain judicial relief while simultaneously attacking its

---

[7] Eugene Volokh, *Scholarship, Blogging, and Tradeoffs: On Discovering, Disseminating, and Doing,* 84 Wash. U. L. Rev. 1089 (2006), p. 1096.

[8] Osama Abu Dehays' Pillsbury biography, https://www.pillsburylaw.com/en/lawyers/osama-abu-dehays.html, last accessed June 28, 2026.

procedural legitimacy. Having bypassed Federal Rules of Civil Procedure 12(f) to participate in substantive briefing, Defendants have waived all scope objections; this Court's on-the-record ratification of the TAC is final.

## II.    THE RICO ENTERPRISE: THE *AZIMA* BLUEPRINT

Professor G. Robert Blakey, the primary architect of the RICO statute, wrote: "the major purpose of Title IX…[was] to address the infiltration of legitimate business by organized crime'… Congress wanted to reach both 'legitimate' and illegitimate' enterprises."[9] RICO is "not just mobsters."[10] Under *H.J. Inc. v. Northwestern Bell Telephone Co.* 492 U.S. 229 (1989), RICO is designed to reach institutional corruption. This legal mandate is applied in *Azima,* which confirms that when a law firm deploys its "infrastructure, partners, employees, financial resources, and reputation" to neutralize a target, it ceases to function as an advocate and becomes a central node in a racketeering enterprise. Consequently, Defendants' conduct constitutes the type of "legitimate" infiltration Congress intended to reach.

Defendants' characterizations of these allegations as "conclusory" and "speculative" ignores the *Boyle v. United States*, 556 U.S. 938 (2009) standard. The record establishes that this association-in-fact Enterprise acts as a transnational criminal organization ("TCO"), operated by a unified command structure that integrates legitimate legal and media nodes to execute the singular, repeated racketeering purpose of sanitizing Osama's licensure deficit. This structural "meeting of the minds" transforms independent actors into a single, racketeering Enterprise

---

[9] G. Robert Blakey, *Forword: Debunking RICO's Myriad Myths*, St. John's law Review, Vol. 64, Fall 1990, Number 4, p. 709. Citing *United States v. Turkette*, 452 U.S. at 590-591.
[10] *Id.*, Footnote 56, p. 709.

perpetrating a fraud on the global legal market. The Enterprise is symbiotic: (i) **The Pillsbury Node:** The use of its "white shoe" institutional capital and the intentional suppression of Osama's licensure fraud to maintain Qatari billables; (ii) **The Smokescreen Syndrome:** The deployment of retaliatory "tactical strikes" intended to neutralize Plaintiff, a whistleblower[11]; and, (iii) **Enforcement Spokes:** Defense Counsel deploy extortionate litigation maneuvers—i.e., the weaponization of the anti-SLAPP statute, $0.00 global release demands, and pre-vetted media strikes—to achieve economic attrition and suppress Plaintiff's forensic audit findings.

Under *Boyle*, this association-in-fact (requiring purpose, relationship, and longevity) is empirically evident through three objective "procedural tells": (i) **Documented Synchronicity:** identical, non-random caption errors across separate firms (Dkts. 126 and 142) constitute a manifest "meeting of minds"[12]; (ii) **Ongoing Deception:** Pillsbury's continued ratification of Osama, *sans* license, as Managing Partner of Pillsbury Doha—where he relocated with atypical PR silence in 2025 to evade discovery and extradition and Defendant Debra Erni conspicuously scrubbed her Pillsbury partnership history[13]; and (iii) **Tactical Coordination:** The Enterprise's memoranda use shared syntax and identical errors, establishing a centralized

---

[11] See Devine T, Reaves A. *Whistleblowing and Research Integrity: Making a Difference Through Scientific Freedom*. Handbook of Academic Integrity. 2015 Nov 27:957–72. doi: 10.1007/978-981-287-098-8_31. PMCID: PMC7122572. (Whistleblowers serve an important function in speaking truth to power but face serious challenges and reprisals that demand legal protections and support from society at large.) This article cites "silencing tactics" including *inter alia* "'the smokescreen syndrome'—a process routinely used to publicly discredit or build a damaging record on paper against the whistle-blower", "Paralyzing their careers," "Eliminating their jobs," and "Blacklisting them."

[12] DWT never made this mistake with the caption before Pillsbury entered the fray.

[13] Debra Erni, former Managing Partner of Pillsbury London—conspicuously scrubbed her decade-long Pillsbury partnership from her LinkedIn[13] and Holland & Knight professional biography. Debra Erni's LinkedIn profile: https://www.linkedin.com/in/debra-erni-7817862ab/. Last accessed on June 27, 2026.

playbook. This coordination extends to the derisory commentary under the Volokh Strikes, which mirrors Defendants' litigation rhetoric, signaling these synchronized media strikes are overt acts of witness tampering—and an attempted subversion of judicial oversight—calculated to influence this Court's chambers. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) confirms RICO is designed to reach the infiltration of legitimate entities by racketeering activity. Defendants' demand for "more specificity" requires this Court to ignore the stark facts the TAC sets out and that satisfy *Twombly/Iqbal.* Congress enacted civil RICO to dismantle entities that camouflage criminal activity behind legitimate professional operations[14]; the shoe fits, and Defendants must wear it.

## III.    JOINT PARTICIPATION UNDER "COLOR OF LAW"

Defendants' "private actor" immunity defense is a legal fiction that fails under the *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) standard. This is not a novel collection of independent actions, but the transnational playbook Plaintiff audited during her tenure in Doha. Plaintiff observed and documented this exact methodology of witness neutralization—wherein the Enterprise leverages internal "saboteurs," foreign sovereign interests, and media proxies to protect institutional fraud; this pattern is the hallmark of the Enterprise's *modus operandi*. Pillsbury and the media proxies integrated themselves into the TCO core to conduct a retaliatory liquidation of Plaintiff's constitutional rights. This 42 U.S.C. § 1983 liability claim is well-pleaded through three overlapping nexuses: (i) **Joint Participation/Entwinement:** Pillsbury acted "under color of law" by exercising sovereign authority via its

---

[14] *Blakey, supra,* note 9, at page 709.

registered foreign agent status (FARA 5198) for the State of Qatar. By suppressing Osama's licensure deficit to protect profits, Pillsbury and the TCO fused their private commercial interests with Qatari state action; (ii) **Procedural Weaponization:** Defendants privatized the state's coercive power by manipulating Civil Rights Law § 76-a (anti-SLAPP) as a financial weapon to nullify federal litigation via state-sanctioned financial exhaustion; and, (iii) **The "Stigma-Plus" Doctrine:** The Enterprise's protocol to devalue Plaintiff's law license and destroy Plaintiff's professional standing constitutes a state-imposed burden, surpassing reputational harm, to permanently deprive Plaintiff's liberty interest in her chosen profession.

Under *Adickes*, private parties act "under color of law" by engaging in joint activity with state agents. This Enterprise is a global network with a domestically integrated actor. The TCO core—embedded within Qatar and AJMN's operational apparatuses—leverages U.S. corporate footprints to execute its scheme. Pillsbury, as primary legal architect, leveraged its FARA status to bridge the sovereign's interests with the domestic legal framework, while the Media Defendants served as the "enforcement arm" to liquidate the whistleblower. By harnessing these conduits, Defendants purposefully availed themselves of the U.S. legal system; they are properly classified as state actors under § 1983.

## A. The Duty of Candor: New York Rules of Professional Conduct (NYRPC) Rule 3.3

Per Rule 3.3 of the NYRPC, Attorneys' affirmative duty of candor refutes Defendants' collective "legal advocacy" defense. Attorneys—as officers of the court—may not knowingly make false statements to a tribunal. Pillsbury breaches this duty by

knowingly concealing Osama's licensure deficit from this Court, while exploiting their FARA status to sanitize his partnership standing.

## B. The "Stigma-Plus" Deprivation and the Economic Nexus

Plaintiff pleads a cognizable § 1983 claim under the "stigma-plus" doctrine; the "plus" is the weaponization of procedural mechanisms to achieve economic attrition. Defendants leveraged state-authorized fee-shifting to force an involuntary surrender of federal claims, effectively "privatizing" the state's coercive power. Pursuant to *Haddle v. Garrison*, 525 U.S. 121 (1998), the liquidation of Plaintiff's law practice and marketability[15] violates her constitutionally protected property interests.

## C. The Corporate Shield as a Constitutional Instrument

Defendants cannot hide behind their "white shoe" status while directing a licensure concealment protocol. The TAC outlines how, despite receiving official notice that Osama's Jordanian law license is an impossibility, Pillsbury maintained him as Managing Partner of Pillsbury Doha. This is institutional integration,[16] not infiltration. By legitimizing Osama, Pillsbury embodied the enforcement arm of a racketeering conspiracy, abandoning its role as a global law firm. Pillsbury exploited various Enterprise cogs to silence Plaintiff via the media "hit pieces" and the weaponization of the New York anti-SLAPP statute—a statutory fee-shifting mechanism designed to financially punish those seeking justice. Defendants integrated themselves into the state's enforcement power, satisfying the § 1983 state-

---

[15] Plaintiff has been so thoroughly "cancelled" in commerce she cannot even get a part-time menial job.
[16] Osama's partner tenure at Bird & Bird (2012-2014) warrants discovery to determine if this firm identified the licensure deficit, potentially establishing a pattern of systemic concealment. Plaintiff learned of Osama's licensure deficit via her former AJMN colleague, Yousef Al Jaber, who investigated and sued Osama in Doha prior to Plaintiff's 2011 arrival in Doha.

action nexus. The Court must ignore Defendants' trappings of prestige and scrutinize the Enterprise's raw racketeering machinations.

### D. The § 1512 Predicate: Witness Tampering as a RICO Act

Defendants argue—as strategic distraction— that 18 U.S.C. § 1512 lacks a private right of action. Plaintiff does not assert § 1512 as a standalone civil claim; it is a predicate act of racketeering supporting the RICO conspiracy charge. RICO explicitly incorporates § 1512 as an actionable predicate act of racketeering. Defendants' argument—that there is no private right of action for the criminal statute itself—is legally irrelevant to the sufficiency of the RICO conspiracy claim. The Enterprise's synchronized media strikes—specifically the Volokh Strikes, are not incidental conduct. By customizing these strikes to influence this Court's chambers and neutralize Plaintiff, Defendants have engaged in overt acts of witness tampering. These acts forced Plaintiff to procure an anonymous P.O. Box for safety, and they underpin the "pattern" prohibited by 18 U.S.C. § 1962(d).

### IV.    EDWARD FLANDERS & THE INSTITUTIONAL SHIELD

The record refutes Pillsbury's claim that the TAC lacks specificity as to Defendant Edward Flanders ("Flanders.") Flanders was no passive observer; as Managing Partner of Pillsbury New York—where Plaintiff worked briefly in mid-2025—he was the administrative architect of the Enterprise's "institutional shield." Plaintiff's personal observations of Flanders' internal firmwide invitations to attend Osama's Middle East marketing meeting, establishes his active role in promoting and willful blindness to the Enterprise's fraud. Despite these 2025 internal directives, Flanders received formal, written notice of Osama's licensure deficit in March 2020—5.5 years

earlier—a communication he consciously avoided and suppressed to protect the firm's corrupt interests; this was the moment the Enterprise was born. Directly overseeing Pillsbury's FARA No. 5198 filings, Flanders knowingly maintains these misrepresentations to the Department of Justice to preserve fraud-based profits. Keeping Osama as a partner was not "routine litigation" but the systemic unauthorized practice of law to maintain a foothold in the Qatari market—subverting ABA Rule 5.5 and the integrity of the profession. Flanders' suppression of documented notice, plus his facilitation of media neutralization, established his role as a central node in the Enterprise. Beyond unethical, this conduct is a coordinated, systemic fraud on the tribunal, executed to protect lucrative sovereign billables. Defendants' demand for "more specificity" is calculated to ignore the factual record that Flanders created through his active concealment.

**CONCLUSION AND REQUEST FOR DISCOVERY**

Forensic truth, not personal grievance, propels this action. The TAC charts a seven-year racketeering Enterprise to: sanitize Osama's licensure fraud, safeguard the Qatari billables, and neutralize Plaintiff, whose whistleblowing exposed the scheme. Defendants' avoidance of discovery, masked as "standard litigation activity," confirms the Enterprise's radioactive nature. *Azima* confirms a global law firm may constitute a civil RICO Enterprise, and the TAC satisfies *Twombly/Iqbal*. The "litigation privilege" shields legitimate advocacy, not extra-judicial witness tampering or the weaponization of media proxies to obstruct this federal proceeding. Plaintiff respectfully requests that this Court to deny Defendants' motion to dismiss and advance this action to immediate discovery.

Dated:        June 30, 2026
              New York, New York

                              Respectfully submitted,

                              */s/ Sonya Shaykhoun, Esq.*

                              Sonya Shaykhoun, Esq.
                              Law Offices of Sonya Shaykhoun, Esq.
                              P.O. Box 142,
                              New York, NY 10025
                              Email: sonya@shaykhounlaw.com
                              Tel: 929-408-4531

                              *Plaintiff Pro Se*

11

## WORD COUNT CERTIFACTION

I, Sonya Shaykhoun, hereby certify that this Reply Memorandum of Law in Opposition is 10 pages in length pursuant to this Court's Individual Practices of Andrew L. Carter, Jr. and contains 2,688 words, in compliance with Rule 2(B) of this Court's Individual Practices and Local Rule 7.1. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

Dated:    June 30, 2026                          */s/ Sonya Shaykhoun*
        New York, NY                          Sonya Shaykhoun

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all parties of record in the case.


/s/ Sonya Shaykhoun
Sonya Shaykhoun

13