

Law Offices of Sonya Shaykhoun, Esq.
P.O. Box 142,
New York, NY 10025

July 13, 2026

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

**Re: 1:24-cv-099780-ALC –** *Shaykhoun v. The Daily Caller et al*—**Letter Motion Requesting Leave to File a Sur-Reply ("Letter Motion") to Correct Pillsbury's July 10, 2026, Reply Memorandum of Law (Dkt. 152) and the June 30, 2026, Replies of Ballard Spahr, LLP (Dkt. 149), Cameron Stracher, LLP (Dkt. 144), and Davis Wright Tremaine, LLP (Dkt 146.)**

Dear Judge Carter:

I, the Plaintiff, respectfully request leave to file a 3-page sur-reply to address Defendants' misrepresentations of the forensic record. In considering this motion, I remind the Court that for a Rule 12(b)(6) dismissal, the Court must accept all well-pleaded facts in the Third Amended Complaint ("TAC") as true and draw all reasonable references in my favor. *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F. 3d 229, 237 (2d Cir. 2007). Because my claims are grounded in a verifiable forensic continuum—not conclusory labels—Defendants' attempts to dispute the merits of these facts are procedurally improper at this stage. My allegations may be inconvenient for Defendants, but they are still satisfactorily plausible.

**i. Forensic Misrepresentation & Corruption:** Pillsbury Winthrop Shaw Pittman LLP's ("Pillsbury") July 10, 2026, overconfidently reply that the 2019-2020 Solicitor Regulatory Authority (SRA) into Defendant Osama Abu Dehays' ("Osama")

law license and subsequent abrupt termination thereof was a dispositive clearance.[1] This is a material misrepresentation. The SRA terminated the investigation *immediately* upon my request for proof of Osama's mandatory training contract in Jordan, the identity of his supervising Senior Advocate, and the topic of his final mandatory dissertation. The SRA's summary closure—evading these core licensure requirements—is not a "clearance"; it is evidence of the Enterprise's "Institutional Shield." The SRA's inexplicable closure of the Osama file led me to believe  the Enterprise bribed SRA officials to insulate an unlicensed actor. My final exchanges with the SRA demonstrate a suspicious reticence (Exhibit A). The SRA's abrupt termination tracks with their current infamy for investigative failures.[2] Defendants' assertion that "closure" equals "clearance" is not just a weak legal argument; it is a fraud upon this Court. They knowingly suppressed the fact that the SRA never performed the substantive verification I requested and that was required to prove Osama's licensure. The Enterprise had to shut down the investigation before Osama's licensure deficit was discovered. This verifiable deceit, coupled with the systemic concealment of his licensure deficit, demands an investigation into whether the Enterprise is using this Court to legitimatize a pattern of wire fraud and potential felonious unauthorized practice of law.

**ii. Perjury of Record & Flanders' Complicity:** Pillsbury's assertion that Osama is a Jordanian "barrister" is a factual impossibility and is a predicate act of wire fraud (18 U.S.C. § 1343). The Jordanian Bar Association (JBA) does not bifurcate the legal profession into "barristers" and "solicitors."[3] My investigation—commissioned by the Al Jazeera Shareholder—was prompted by the disappearance of funds from the multi-billion-dollar Al Jazeera Turkey Channel project under Osama's control. My findings, corroborated by Yousef Al Jaber—a licensed Qatari lawyer who independently confirmed Osama's absence from the relevant registers during his own 2009 inquiry—revealed not only Osama's manifest incompetence to oversee a project of that magnitude, but concerning evidence of corporate and financial misconduct. I believe Osama is using these misappropriated assets to fund the "Karen" smear campaign designed to neutralize me as a witness. Pillsbury ratifies this fraud, marketing this unqualified individual across its global internal network and to global clients to retain revenue. As Managing Partner, Defendant Edward Flanders is

---

[1] Footnote 2, page 4.

[2] Aslett, Chloe. "Solicitor regulator censured for 'systemic failures'", BBC.com, March 6, 2026, https://www.bbc.com/news/articles/cqj9809qy7xo. (last accessed July 12, 2026); Hyde, John. "Long winter of discontent for the SRA as problems pile up." The Law Society Gazette. February 2, 2026. https://www.lawgazette.co.uk/commentary-and-opinion/long-winter-of-discontent-for-the-sra-as-problems-pile-up/5125781.article. (Last accessed July 12, 2026.) Lewis, Frances. "The SRA has a 99% 1 star service reviews on Trust Advisor what is it doing about poor/non existent service". WhatDoTheyKnow.com. May 31, 2020. https://www.whatdotheyknow.com/request/the_sra_has_a_99_1_star_service. (Last accessed July 12, 2026.)

[3] https://www.jba.org.jo/Ar/Pages/كيف_تصبح_محاميا (Last accessed July 12, 2026). It should automatically translate into English.

directly liable for the Enterprise's deceptive marketing, the FARA filing (5198), and the exploitation of Osama's increasingly impossible credentials under the doctrine of *respondeat superior*. Osama's licensure deficit and Pillsbury's cover-up are scandalous, warranting discovery and federal investigation, not dismissal. The question is why Pillsbury—and the Enterprise—is risking everything for Osama.

**iii. Conflating RICO Pleading Standards:** Defendants demand a formal hierarchy to establish a RICO enterprise, ignoring *Boyle v. United States*, 556 U.S. 938 (2009). RICO liability turns on function, not form—a continuing unit of actors with a common purpose. My TAC (and the proposed substituted Exhibit J Updated Extended Chronology[4]) maps this functional unit through—*inter alia*—synchronized media strikes against me and the strategic deployment of the licensure deficient Osama into Pillsbury's global offices, including New York office, via a global Teams meeting. The absence of a RICO "org chart" is not a pleading defect; it is a hallmark of this clandestine enterprise, which Defendant Debra Erni's immediate, defensive scrubbing of digital footprints confirms.

**iv. Procedural Overreach & Rule 12(f):** Defendants improperly convert a 12(b)(6) motion into a fact-finding exercise. Defendants characterize the TAC's allegations as "improper," yet refuse to invoke the Fed. R. Civ. P. 12(f). Instead, Defendants inappropriately demand granular evidentiary proof of the RICO Enterprise, conflating the plausibility standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) with the higher evidentiary burden reserved for Summary Judgement. By forcing this Court to evaluate the merits of evidence before discovery, Defendants use administrative friction to bypass the Section 1983 issues this Court allowed. Courts in this Circuit consistently hold that Rule 12(f) motions are "disfavored" and "should be granted only when the pleading to be stricken has no possible relation to the controversy." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2nd Cir. 1976). Defendants' refusal to use Rule 12(f) while simultaneously demanding an evidentiary standard exceeding the pleading requirements, confirms their aim is the suppression of evidence.

**v. Correction of Legal Framework:** Defendants conflate defamation claims with the broad protections afforded by the RICO Act and the *Haddle v. Garrison*, 525 U.S. 121 (1998) doctrine. Under *Simmons v. Abruzzo*, 49 F.3d 83 (2nd Cir. 1995) the focus must remain on the substantive grievance. The "scandal" here—a verified licensure deficit compounded by coordinated Enterprise-led retaliation—trumps hyper-technical pleading challenges. I have maintained since December 2024 that Defendants weaponized the New York anti-SLAPP statute; through the RICO lens, this is not a defensive procedural move, but an extortionate predicate act. Defendants'

---

[4] See the Letter Motion I will upload immediately after I upload this Letter Motion regarding the substitution of Exhibit J (Docket 77 with the original TAC) for the Updated Extended Chronology (Docket 97).

attempt to trivialize this forensic continuum to a simple defamation claim is a strategic effort to evade the Court's jurisdiction over these racketeering predicates.

**vi. Witness Neutralization Protocol:** Defendants misrepresent the record. Pillsbury falsely claims the TAC does not reference their internal marketing of Osama's MENA practice into the New York office and across Pillsbury's global internal network—a fact I observed during a 2025 document review project. Ballard Spahr trivializes the coordination between Defendant Luke Rosiak and Matt Hyams regarding Osama's fraudulent license, ignoring my months-long collaboration with *The Daily Caller* to expose this deficit. *The Daily Caller* published a derisory article about me instead. The fixer, Defendant John Hawley, initially confirmed Osama's "Certificate of Good Standing" was "a very good fake," later stonewalling me on the status of the Osama exposé. Defendant Ethan Barton subsequently retracted their derisory article in April 2021 immediately after I accused them of accepting money to smear me to bury the Osama story. Defendant Bolger illicitly seeks anti-SLAPP damages in this federal Section 1983 and RICO action, despite the statute's inapplicability. The "Karen" media strikes—evidenced by linguistic symmetry and synchronicity—constitute a pre-vetted, paid-for "hit" designed to specifically dissuade me from exposing Osama's licensure fraud,  establishing witness tampering (18 U.S.C. § 1512.) This was not a reactive event, but a protracted "witness neutralization" protocol, escalating from localized social media hazing to international media—a foundational element of the RICO conspiracy.

**vii.    Page-Limit Discipline:** Defendants' reliance on *BYD Co. Ltd. V. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y 2021) to argue "waiver" is a transparent act of desperation. Unlike the plaintiff in *BYD*, who conceded their public figure status and failed to amend, I have consistently asserted the sufficiency of my TAC. My filings were constrained by judicial page limits; my decision to focus on the central RICO/Section 1983 issues rather than rebutting every peripheral argument should not be misconstrued as a waiver. I incorporate my Omnibus Response (Dkt. 140) by reference as my substantive rebuttal to Pillsbury. Defendants' predictable mischaracterization of my page-limited filings as a "waiver" is a disingenuous attempt to suppress the forensic evidence of their racketeering conduct that remains squarely before this Court. A sur-reply is necessary to stabilize the forensic record and prevent Defendants from misleading the court via administrative friction to evade the substantive evidence of their racketeering conduct evidenced on the docket. Doing otherwise would offend the Rule of Law.

Respectfully submitted,

/s/ Sonya Shaykhoun, Esq.

Sonya Shaykhoun, Esq.

4